Brady J. Hall (ISB No. 7873)
brady@melawfirm.net
Marisa S. Crecelius (ISB No. 8011)
marisa@melawfirm.net
*Moore Elia Kraft & Hall, LLP*
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031

*Attorneys for Defendants Idaho Department of Corrections, Henry Atencio, Jeff Zmuda, Howard Keith Yordy, Richard Craig, and Rona Siegert*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ADREE EDMO, | ) | Case No. 1:17-cv-151-BLW |
| | ) | |
| Plaintiffs, | ) | **MEMORANDUM IN SUPPORT OF IDOC** |
| | ) | **DEFENDANTS' FIRST MOTION FOR** |
| vs. | ) | **DISPOSITIVE RELIEF** |
| | ) | |
| IDAHO DEPARTMENT OF | ) | |
| CORRECTION; HENRY ATENCIO, in | ) | |
| his official capacity; JEFF ZMUDA, in | ) | |
| his official capacity; HOWARD KEITH | ) | |
| YORDY, in his official and individual | ) | |
| capacities; CORIZON, INC.; SCOTT | ) | |
| ELIASON; MURRAY YOUNG; | ) | |
| RICHARD CRAIG; RONA SIEGERT; | ) | |
| CATHERINE WHINNERY; AND | ) | |
| DOES 1-15; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COME NOW Defendants Idaho Department of Correction, Henry Atencio, Jeff Zmuda, Howard Keith Yordy, Richard Craig and Rona Siegert (collectively referred to as the "IDOC Defendants"), by and through their counsel of record, Moore Elia Kraft & Hall, LLP, and pursuant to District Local Rule Civ. 7.1(b)(1), hereby submit this separate memorandum in support containing all of the reasons and points and authorities in support of the *IDOC Defendants' Initial Motion for Dispositive Relief*.

## LEGAL STANDARDS

### 1.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co.*, 336 F.3d at 889.

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to being stricken. Fed. R. Civ. P. 56(c)(2).[3] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ.

P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## 2.   Motion to Dismiss Standard

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. A 12(b)(6) motion may be based on the expiration of the applicable statute of limitations period for the claims asserted in the complaint. Review of the merits of the 12(b)(6) motion is limited to the face of the complaint. A court's inquiry is whether the allegations in the pleading are sufficiently set forth. The plaintiff need only present a "short and plain statement of the claim" that shows the plaintiff is entitled to relief and that provides the defendant with fair notice of the grounds for the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if there is a lack of any cognizable legal theory or a failure to plead sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court generally should not

consider materials outside the complaint and pleadings. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997).

## ANALYSIS

### 1. <u>All of Ms. Edmo's claims not properly exhausted should be dismissed.</u>

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e, *et seq.*, prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). However, an inmate need only exhaust those remedies that are "available"—that is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Proper exhaustion is required "even where it may appear futile." *Nunez v. Duncan*, 591 F.3d 1217, 1231 (9th Cir. 2010) (quoting *Booth*, 532 U.S. at 741). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion [,] should be decided at the very beginning of the litigation." *Id.* at 1171. Rule 56 prohibits the courts from resolving genuine disputes of material fact on summary judgment. However, if a genuine dispute exists as to material facts relating to an exhaustion defense such that summary judgment is inappropriate, the Court is authorized—but not required—to decide the disputed facts in an appropriate preliminary proceeding, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[ ] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). In all cases, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies

effectively unavailable to him." *Albino*, 747 F.3d at 1172. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Here, it is undisputed that the IDOC's Grievance Process was at all times available to Ms. Edmo. (*Statement of Material Facts in Support of IDOC Defendants' Initial Motion for Dispositive Relief* (hereinafter "*SMF*"), ¶ 3). However, Ms. Edmo did not complete the IDOC's Grievance Process as to the September 29, 2015 self-castration attempt or the December 31, 2016 self-castration attempt. (*Id*. at ¶¶ 6-7) Nor did Ms. Edmo complete the IDOC's Grievance Process within the relevant time period regarding claims for injuries and "severe symptoms" allegedly incurred as a result of the "Defendants' failure to adequately treat Plaintiff's gender dysphoria." (*SMF*, ¶ 8) Further, Ms. Edmo did not properly and time complete the Grievance Process as to her claims challenging IDOC's policies prohibiting her from possessing or wearing women's makeup, obtaining a legal name change, and/or being transferred to a women's correctional institution. (*Declaration of Dana Maybon* ("*Maybon Decl*."), ¶ 15)

It appears that Ms. Edmo completed the IDOC Grievance Process on several issues and incidents that are (or may be) subjects of this lawsuit: the August 10, 2016 sexual assault (*Maybon Decl*., ¶ 12); wearing a feminine hairstyle (*Maybon Decl*., Exh. D, pp. 1-2); staff use of gender pronouns (*Maybon Decl*., Exh. D, pp. 3-8); denial of electrolysis or hair remover (*Maybon Decl*., Exh. D, pp. 11-12); alleged denial of a medical/mental health evaluation with a "qualified gender identity disorder evaluator" (*Maybon Decl*., Exh. D, pp. 15-16); being housed in the Behavioral Health Unit ("BHU") (*Maybon Decl*., Exh. D, pp. 17-18); and denial of a medical memo for female underwear and/or "panties" (*Maybon Decl*., Exh. D, pp. 19-20). However, the remaining allegations and claims in Ms. Edmo's Second Amended Complaint have

not been properly exhausted and should be dismissed. See, e.g., *Jones v. Bock*, 549 U.S. 199, 211 (2007).

## 2.  **The two-year statute of limitations bars Ms. Edmo from bringing any claims that arose prior to April 6, 2015.**

It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims, *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973, 980–81 (2007); *McCabe v. Craven*, 145 Idaho 954, 957, 188 P.3d 896, 899 (2008). In Idaho, that limitations period is two years. *See* Idaho Code § 5-219(4). Idaho Courts must look to federal law to determine the date at which a § 1983 action accrues. *Kato*, 549 U.S. at 388, 127 S.Ct. at 1095. Generally, federal law states that "accrual occurs when the plaintiff has a complete and present cause of action" and "can file suit and obtain relief." *Id.* (internal quotations removed). In other words, the statute of limitations begins to run "when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* 549 U.S. at 390, 127 S.Ct. at 1097 (internal quotations omitted).

Here, it appears that Ms. Edmo seeks to recover damages for injuries and "severe symptoms" that she allegedly suffered as a result of incidents that occurred more than two years prior to the filing of this civil rights lawsuit on April 6, 2017. (*Dkt. 36*, ¶¶ 8, 9, 44-45, 64, 67, 79, 88, 93, 95, 101,108, and 113) For example, Ms. Edmo alleges that she attempted suicide in February 2014 and that she "experienced severe symptoms" between 2012 to early 2015 as a result of Defendants' having "denied and/or ignored Plaintiff's requests." (*Dkt. 36*, ¶¶ 44(a)-(j), 45, and 49) (*SMF*, ¶¶ 5, 8) However, to the extent Ms. Edmo seeks damages for those events that occurred prior to April 6, 2015 (two years prior to the date Ms. Edmo commenced this lawsuit), the same are barred by the applicable two-year statute of limitations. Idaho Code § 5-219(4).

**MEMORANDUM IN SUPPORT OF IDOC DEFENDANTS' FIRST MOTION FOR DISPOSITIVE RELIEF – pg. 8**

Accordingly, Ms. Edmo should be precluded from requesting monetary compensation for, or challenging the constitutionality of, those alleged incidents and violations that occurred prior to April 6, 2015.

### 3. Ms. Edmo cannot maintain her claim under the Americans with Disabilities Act.

Ms. Edmo's "Fourth Claim for Relief" apparently seeks to recover monetary damages against the IDOC for alleged violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 121-1, *et seq.* (*Dkt. 36*, ¶ 95) This claim, however, should be dismissed against the IDOC for the two following reasons:

First, the IDOC is a department of the State of Idaho, which is immune from suit in federal court pursuant to the Eleventh Amendment. The Eleventh Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890). The Supreme Court has consistently applied the Eleventh Amendment's jurisdictional bar to states and state entities "regardless of the nature of the relief sought." See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Moreover, only a "person" may be sued pursuant to 42 U.S.C. § 1983, and a state is not considered a "person" under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Second, Ms. Edmo's alleged disability, Gender Identity Disorder/Gender Dysphoria, is specifically excluded from the definition of "disability" as defined under the ADA and the Rehabilitation Act. See 42 U.S.C. § 12211(b)(1) and 29 U.S.C. § 705(20)(F)(i). See also *Johnson v. Fresh Mark, Inc*., 98 Fed.Appx. 461 462 (6th Cir. 2004). Absent a qualifying disability, Ms. Edmo's ADA claim should be dismissed.

### 4.  **Ms. Edmo's Affordable Care Act Claim should be dismissed.**

In her "Fifth Claim for Relief", Ms. Edmo alleges that IDOC Defendants Henry Atencio, Jeff Zmuda, and Howard Keith Yordy discriminated against Ms. Edmo on the basis of her transgendered status and diagnosis of Gender Dysphoria, and that such alleged discrimination was a violation of Section 1557 of the Affordable Care Act (ACA), 42 U.S.C. § 18116. (*Dkt. 36*, ¶¶ 97-101) However, the ACA did not create a new enforcement mechanism, but instead incorporated those "enforcement mechanisms provided for and available under such title VI, title IX, section 504, such Age Discrimination Act," saying that those statutes "shall apply for purposes of violations of this subsection." And, as set forth above, gender identity disorders (now known as Gender Dysphoria) are excluded from Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 701. See 49 U.S.C. § 705(20)(F)(i) (stating that "for purposes of sections 791, 793, and 794 of this title, the term 'individual with a disability' does not include an individual on the basis of ....*gender identity disorders* not resulting from physical impairments, or other sexual behavior disorders") (emphasis added).

### 5.  **Ms. Edmo's negligence claim against three IDOC Defendants should be dismissed.**

Ms. Edmo's "Seventh Claim for Relief" alleges that IDOC Defendants Henry Atencio, Jeff Zmuda, and Howard Keith Yordy were negligent under Idaho law. (*Dkt. 36*, ¶¶ 111-115) There are two primary reasons why Ms. Edmo's negligence claim should be dismissed:

First, Ms. Edmo's Second Amended Complaint lacks the requisite factual assertions "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. In other words, although Rule 8 of the Federal Rules of Civil Procedure "does not require detailed factual allegations,…it demands

more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id*. (internal quotation marks omitted).

Here, Ms. Edmo has alleged absolutely no facts to suggest that Mr. Atencio, Mr. Zmuda, or Mr. Yordy were negligent, that is that they (1) owed Ms. Edmo a legal duty of care, (2) that they breached that legal duty of care, (3) that Ms. Edmo sustained actual damages, and (4) that the damages Ms. Edmo sustained were proximately caused by the Defendants' alleged breaches. See, e.g., *O'Guin v. Bingham County*, 142 Idaho 49, 52 (2005) (setting forth the common law elements that a plaintiff pursuing a claim of negligence in Idaho must establish). In paragraph 111 and 112 of the Second Amended Complaint (*Dkt. 36*), Ms. Edmo sets forth only conclusory allegations that unspecified "Defendants" generally "failed to comply with professional standards", yet Ms. Edmo has not alleged a single fact even suggesting that Mr. Atencio, Mr. Zmuda, and/or Mr. Yordy acted in a manner that deviated from such "professional standards" or even a general duty of care.

Second, Ms. Edmo's state negligence claim against Mr. Atencio, Mr. Zmuda and Mr. Yordy should be dismissed because Ms. Edmo failed to file timely and sufficient notices of claims pursuant to Idaho Code § 6-905. The filing of a tort claim with the Secretary of State is a mandatory condition precedent, and when read together with Idaho Code § 6-908, it is clear that failure to comply with the notice requirement bars a suit regardless of how legitimate it might be. See, e.g., *Driggers v. Grafe*, 148 Idaho 295, 297 (2009) and *Banks v. University of Idaho*, 118 Idaho 607, 608 (1990). In order to comply with the notice of claim requirement, Ms. Edmo was required to file tort claims with the Secretary of State within 180 days and to provide, among

other information, the "time and place the injury or damage occurred" and the "names of all persons involved, if known." Idaho Code §§ 6-905 and 6-907.

It is undisputed that Ms. Edmo has only filed three tort claims since November 2014. (*Declaration of Lisa Mason* ("*Mason Decl*."), ¶ 3 and Exhs. A, B, and C) None of those tort claims, however, make any reference to Mr. Atencio, Mr. Zmuda, or Mr. Yordy, and no allegations stated therein infer that any of the IDOC Defendants had any involvement or knowledge of the incidents raised. (*Id.*) (*SMF*, ¶ 10) Similarly, the December 12, 2016 tort claim contains no date, time, or location that the referenced "negligent acts" or "sexual assault" occurred. (*SMF*, ¶ 9) Further, while the February 13, 2017 tort claim was timely filed as to the December 31, 2016 self-castration attempt, it was not timely filed within 180 days of the September 29, 2015 self-castration attempt. (*SMF*, ¶ 10)

At the very most, Ms. Edmo complied with Idaho Code § 6-905 as to only one incident: the December 31, 2016 self-castration attempt. (*SMF*, ¶ 10) (*Mason Decl*., Exh. C) That tort claim was filed within 180 days of the alleged August 2016 sexual assault. (*Id.*) However, there are no factual allegations in the Second Amended Complaint (*Dkt. 36*) for Ms. Edmo's negligence claim to survive summary dismissal against Mr. Atencio, Mr. Zmuda, or Mr. Yordy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, notice of any and all other incidents for which Ms. Edmo seeks damages in negligence against those three IDOC Defendants was not properly or timely filed as required by Idaho Code § 6-905. (*Mason Decl*., ¶ 3) Accordingly, all of those claims should be dismissed pursuant to Idaho Code § 6-908.

**CONCLUSION**

For the foregoing reasons, the IDOC Defendants respectfully request that this Court grant the *IDOC Defendants' Initial Motion for Dispositive Relief* and enter an order consistent with the relief requested in the motion. The IDOC Defendants also request that, after ruling on the motion, the Court orders Ms. Edmo to file a third amended complaint removing those claims and causes of actions that are dismissed.

DATED this 1st day of November, 2017.

Moore Elia Kraft & Hall, LLP

*/s/Brady J. Hall*
*Attorneys for Defendants Idaho Department of Correction, Henry Atencio, Jeff Zmuda, Howard Keith Yordy, Richard Craig, and Rona Siegert*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of November, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Dylan Eaton
deaton@parsonsbehle.com

J. Kevin West
kwest@parsonsbehle.com

Brady Hall
brady@melawfirm.net

Lori Rifkin
lrifkin@hadsellstormer.com

Dan Stormer
dstormer@hadsellstormer.com

Craig Durham
chd@fergusondurham.com

Deborah Ferguson
daf@fergusondurham.com

Amy Whelan
awhelan@nclrights.org

*/s/Brady J. Hall*

**MEMORANDUM IN SUPPORT OF IDOC DEFENDANTS' FIRST MOTION FOR DISPOSITIVE RELIEF – pg. 14**