Lori Rifkin, Esq. (CA # 244081)
(*pro hac vice*)
HADSELL STORMER & RENICK LLP
4300 Horton Street, #15
Emeryville, CA 94608
Telephone: (415) 685-3591
Facsimile:  (626) 577-7079
Email: lrifkin@hadsellstormer.com

Dan Stormer, Esq. (CA # 101967)
(*pro hac vice*)
HADSELL STORMER & RENICK LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile:  (626) 577-7079
Email: dstormer@hadsellstormer.com

Attorneys for Plaintiffs

Craig Durham (ISB # 6428)
Deborah Ferguson (ISB # 5333)
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, ID 83702
Telephone: 208-345-5183
Facsimile: 208-908-8663
Emails: chd@fergusondurham.com
         DAF@fergusondurham.com

Amy Whelan, Esq. (CA # 215675)
(*pro hac vice*)
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone: 415-365-1338
Facsimile: 415-392-8442
Email: AWhelan@NCLRights.org

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADREE EDMO (a/k/a MASON EDMO), <br><br> Plaintiff, <br><br> v. <br><br> IDAHO DEPARTMENT OF CORRECTION; HENRY ATENCIO, in his official capacity; JEFF ZMUDA, in his official capacity; HOWARD KEITH YORDY, in his official and individual capacities; CORIZON, INC.; SCOTT ELIASON; MURRAY YOUNG; RICHARD CRAIG; RONA SIEGERT; CATHERINE WHINNERY; and DOES 1-15; <br><br> Defendants. | Case No.: 1:17-cv-00151-BLW <br><br> **PLAINTIFF'S RESPONSE TO IDOC DEFENDANTS' FIRST MOTION FOR DISPOSITIVE RELIEF [DKT. 39]** <br><br> Complaint Filed:    April 6, 2017 <br> Discovery Cut-Off:    None Set <br> Motion Cut-Off:    None Set <br> Trial Date:    None Set |

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................ ii

I.      INTRODUCTION .............................................................................. 1

II.     STATEMENT OF FACTS .................................................................. 2

III.    LEGAL ARGUMENT ......................................................................... 3

        A.     Legal Standard ....................................................................... 3

        B.     Plaintiff Properly Exhausted Her Claims Under the PLRA ................................. 4

               1.     Defendants Did Not Meet Their Burden to Raise and Prove
                      Failure to Exhaust as an Affirmative Defense ............................. 5

               2.     Plaintiff Exhausted Her Claims Through the IDOC
                      Grievance Process ................................................................. 6

        C.     None of Plaintiff's Legal Claims are Barred by
               Statutes of Limitations ......................................................... 10

        D.     Plaintiff Properly Pled Her Claim for Relief Under the ADA
               and Section 504 of the Rehabilitation Act ............................. 11

               1.     Defendant IDOC is Not Immune From Suit Under
                      the ADA and Section 504 of the Rehabilitation Act ................. 11

               2.     Gender Dysphoria is Outside the Scope of The ADA's
                      Exclusion of "Gender Identity Disorders Not Resulting
                      From Physical Impairments" ............................................. 11

               3.     Excluding Gender Dysphoria Under the ADA
                      Would Violate the Constitution .......................................... 14

        E.     Plaintiff Properly Pled a Claim for Relief Under Section 1557 of the
               Affordable Care Act ............................................................. 17

        F.     Plaintiff Properly Noticed and Pled Her Negligence Claims Against
               Defendants Atencio, Zmuda, and Yordy ............................. 18

IV.     CONCLUSION ................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkins v. City of New York*
    143 F. Supp. 3d 134 (S.D.N.Y. 2015)..................................................................15

*Aiello v. Litscher*
    104 F. Supp. 2d 1068 (W.D. Wis. 2000) ...........................................................8

*Albino v. Baca*
    747 F.3d 1162 (9th Cir. 2014) ........................................................................5

*Arnold v. United Parcel Serv., Inc.*
    136 F.3d 854 (1st Cir. 1998)..........................................................................13

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)...............................................................................4, 19

*Ass'n for L.A. Deputy Sheriffs v. Cty. of Los Angeles*
    648 F.3d 986 (9th Cir. 2011) ........................................................................4

*Barden v. City of Sacramento*
    292 F.3d 1073 (9th Cir. 2002) .....................................................................13

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)................................................................................3, 4

*Blatt v. Cabela's Retail, Inc.*
    No. 5:14-cv-04822,
    2017 WL 2178123 (E.D. Pa. May 18, 2017)..........................................*passim*

*Bolling v. Sharpe*
    347 U.S. 497 (1954)..................................................................................15

*Brown v. Plata*
    563 U.S. 493 (2011)....................................................................................1

*Brown v. Valoff*
    422 F.3d 926 (9th Cir. 2005) ........................................................................5

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*
    637 F.3d 1047 (9th Cir. 2011) .......................................................................4

*Callum v. CVS Health Corp.*
    137 F. Supp. 3d 817 (D.S.C. 2015).................................................................17

*Castellano v. City of New York*
    142 F.3d 58 (2d Cir. 1998)............................................................................13

*Clark v. State of California*
    123 F.3d 1267 (9th Cir. 1997) ....................................................................11

*Cleburne v. Cleburne Living Center*
    473 U.S. 432 (1995)....................................................................................16

*Consol. Rail Corp. v. Darrone*
    465 U.S. 624 (1984)....................................................................................13

*Doe 1 v. Trump*
    No. 17–1597, 2017 WL 4873042 (D.D.C. 2017) .........................................15

*Erickson v. Pardus*
    551 U.S. 89 (2007)........................................................................................3

*Escambia Cty. v. McMillan*
    466 U.S. 48 (1984)......................................................................................14

*Esparza v. Univ. Med. Ctr. Mgmt. Corp.*
    No. 17-4803,
    2017 U.S. Dist. LEXIS 142944 (E.D. La. Sep. 5, 2017) ...................................17

*Fabian v. Hosp. of Cent. Conn.*
    172 F. Supp. 3d 509 (D. Conn. 2016).....................................................15, 17

*Fox TV Stations, Inc. v. Aereokiller, LLC*
    851 F.3d 1002 (9th Cir. 2017) ....................................................................14

*Glenn v. Brumby*
    663 F.3d 1312 (11th Cir. 2011) .............................................................15, 17

*Griffin v. Arpaio*
    557 F.3d 1117 (9th Cir. 2009) .............................................................6, 7, 10

*Heilweil v. Mount Sinai Hosp.*
    32 F.3d 718 (2d Cir. 1994), *cert. denied*, 513 U.S. 1147, 130 L. Ed. 2d
    1063, 115 S. Ct. 1095 (1995).......................................................................13

*Henrietta D. v. Bloomberg*
    331 F.3d 261 (2d Cir. 2003)........................................................................13

*Henry A. v. Willden*
    678 F.3d 991 (9th Cir. 2012) ........................................................................4

*Houser v. Corizon*
    No. 1:13-cv-00006-EJL,
    2014 U.S. Dist. LEXIS 121358 (D. Idaho Aug. 27, 2014).................................6

*Howard v. Waide*
    534 F.3d 1227 (10th Cir. 2008) ....................................................................7

*Johnson v. Johnson*
    385 F.3d 503 (5th Cir. 2004) .....................................................................6, 7

*Johnson v. Killian*
    680 F.3d 234 (2d Cir. 2012)..........................................................................7

*Jones v. Bock*
    549 U.S. 199 (2007)......................................................................................6

*Lewis v. Washington*
    197 F.R.D. 611 (N.D. Ill. 2000) ...................................................................8

*Miranda B. v. Kitzhaber*
    328 F.3d 1181 (9th Cir. 2003) ....................................................................11

*Norsworthy v. Beard*
    87 F. Supp. 3d 1104 (N.D. Cal. 2015) ...................................................15, 17

*Parzyck v. Prison Health Servs. Inc.*
    627 F.3d 1215 (11th Cir. 2010) ....................................................................7

*Prescott v. Rady Children's Hospital-San Diego*
    No. 16-cv-02408,
    2017 WL 4310756 (S.D. Cal. Sept. 27, 2017)........................................15, 17

*Riggs v. Valdez*
    No. 1:09-cv-010-BLW,
    2010 U.S. Dist. LEXIS 111870 (D. Idaho Oct. 18, 2010).................................9

*Rumble v. Fairview Health Servs.*
    No. 14-cv-2037,
    2015 U.S. Dist. LEXIS 31591 (D. Minn. Mar. 16, 2015)................................17

*Safe Air for Everyone v. Idaho*
    469 F. Supp. 2d 884 (D. Idaho 2006) ...........................................................11

*Schroer v. Billington*
    577 F. Supp. 2d 293 (D.D.C. 2008)........................................................15, 17

*Schwenk v. Hartford*
    204 F.3d 1187 (9th Cir. 2000) ...............................................................15, 17

*SEPTA v. Gilead Scis., Inc.*
    102 F. Supp. 3d 688 (E.D. Pa. 2015) ................................................................17

*Smith v. City of Salem*
    378 F.3d 566 (6th Cir. 2004) ....................................................................15, 17

*Spaude v. Corr. Corp. of Am.*
    No. 1:10-cv-00551-CWD,
    2011 U.S. Dist. LEXIS 122599 (D. Idaho Oct. 21, 2011) ..................................7

*Starr v. Baca*
    652 F.3d 1202 (9th Cir. 2011) ..........................................................................4

*Steece v. Corr. Corp. of Am., Inc.*
    No. 2:11-cv-00089-EJL,
    2012 U.S. Dist. LEXIS 32186 (D. Idaho Mar. 8, 2012) ...........................7, 9, 10

*Strong v. David*
    297 F.3d 646 (7th Cir. 2002) ............................................................................6

*Sulton v. Wright*
    265 F. Supp. 2d 292 (S.D.N.Y. 2003) ...............................................................7

*Tcherepnin v. Knight*
    389 US. 322 (1967) ........................................................................................13

*Turley v. Rednour*
    729 F.3d 645 (7th Cir. 2013) .........................................................................7, 8

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*
    858 F.3d 1034 (7th Cir. 2017) .......................................................................15

*Williams v. Paramo*
    775 F.3d 1182 (9th Cir. 2015) ..........................................................................5

## FEDERAL STATUTES

29 U.S.C. § 701 (Section 504 of the Rehabilitation Act of 1973) ............................1, 11

42 U.S.C. § 1997e(a) (Prison Litigation Reform Act) ..................................................4

42 U.S.C. § 12211 (Americans with Disabilities Act)............................................12, 16

42 U.S.C. § 18116 (Section 1557 of the Affordable Care Act) ...........................1, 17, 18

## STATE STATUTES

Idaho Code § 6-905 ........................................................................................................18

## RULES AND REGULATIONS

28 C.F.R. § 35.104 ........................................................................................................14

Federal Rule of Civil Procedure
      § 5.1 ..................................................................................................................14
      § 8(a) .................................................................................................................3
      § 56 ...................................................................................................................5

## UNITED STATES DEPARTMENT OF JUSTICE STATEMENTS OF INTEREST

*Blatt v. Cabela's Retail, Inc.*
      No. 5:14-cv-04822,
      2015 WL 9872493 (E.D. Pa. Nov. 16, 2015) ......................................12, 14, 16

*Doe v. Arrisi*
      No. 3:16-cv-08640-MAS-DEA (D. N.J.), ECF 49, filed July 17, 2017 ............12

*Doe v. Dzurenda*
      No. 3:16-cv-01934-RNC (D. Conn.), ECF 57, filed Oct. 27, 2017 ..................12

## SECONDARY SOURCES

2012 Moore's Federal Practice § 12.34[1][a] (2012) ....................................................4

Christine Michelle Duffy, *The Americans with Disabilities Act of 1990 and the
      Rehabilitation Act of 1973*, in *Gender Identity and Sexual Orientation
      Discrimination in the Workplace: A Practical Guide*, at 16-77 (Christine
      Michelle Duffy ed. Bloomberg BNA 2014) ............................................14, 16

Kevin M. Barry et al., *A Bare Desire to Harm: Transgender People and the Equal
      Protection Clause*, 57 B.C. L. Rev. 507, 574 (2016) ......................................16

Ruth Colker, *Homophobia, AIDS Hysteria, and the Americans with Disabilities
      Act*, 8 J. Gender Race & Just. 33, 36-38, 42-44, 50 (2004) ..............................16

## I.    INTRODUCTION

Defendants Idaho Department of Corrections ("IDOC") and Corizon diagnosed Plaintiff Adree Edmo with Gender Dysphoria but, along with the individually-named Defendants, have continually denied her minimally adequate treatment for this serious medical condition.  As a result, Ms. Edmo has experienced and continues to experience significant distress resulting in debilitating depression, anxiety, attempted suicide, and multiple incidents of genital self-harm. Second Amended Complaint ("SAC"), ECF 36, ¶ 27.  This is precisely the type of harm the American Psychiatric Association identifies as the result of the failure to provide necessary treatment for Gender Dysphoria.  *Id.*¶ 32.  IDOC Defendants have also consistently discriminated against and mistreated Plaintiff because she is a transgender woman and has a diagnosis of Gender Dysphoria, including disciplining her for expressing herself in a feminine manner consistent with her gender identity and failing to protect her from the serious risk of sexual assault.  Plaintiff has  continued to seek treatment despite Defendants' attempts to deter her, consistently requesting access to necessary medical care as well as treatment from custody staff that accords with the basic human dignity the Supreme Court has recognized prisoners retain despite incarceration.  *See Brown v. Plata*, 563 U.S. 493, 510 (2011).

Plaintiff asserted seven legal claims in her Second Amended Complaint:  1) Failure to provide medical treatment in violation of the Eighth Amendment; 2) Discrimination based on sex in violation of the Equal Protection Clause of the Fourteenth Amendment; 3) Discrimination based on the diagnosis of Gender Dysphoria in violation of the Equal Protection Clause of the Fourteenth Amendment; 4) Discrimination on the basis of Gender Dysphoria in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act; 5) Discrimination based on sex in violation of Section 1557 of the Affordable Care Act; 6) Failure to protect from harm in violation of the Eighth Amendment; and 7) Negligence in violation of Idaho state law.

Defendants filed what they termed a "First Motion for Dispositive Relief" that set forth the legal standards that apply to motions for summary judgment and dismissal, but did not specify which legal claims Defendants are moving to summarily adjudicate.  ECF 43.

Defendants also argued that Plaintiff failed to exhaust some unspecified subset of her claims. *Id.* at 5-8. Defendants specifically moved to dismiss Plaintiff's fourth claim (ADA and Rehabilitation Act); fifth claim (Affordable Care Act); and seventh claim (Negligence) as to Defendants Atencio, Zmuda, and Yordy. *Id.* at 9-13. Plaintiff duly exhausted and met the pleading standard for all of the claims presented in her Second Amended Complaint. This Court should deny Defendants' motion in its entirety.

## II.     STATEMENT OF FACTS

Plaintiff Adree Edmo has been incarcerated since April 2012. SAC ¶ 1. Ms. Edmo is a transgender woman—and individual whose gender identity (female) is different from the male gender assigned to her at birth.[1] *Id.* In July 2012 Defendants IDOC and Corizon diagnosed Ms. Edmo with Gender Dysphoria, a serious medical condition characterized by strong cross-gender identification, and strong and persistent discomfort about one's assigned sex. *Id.* ¶¶ 1, 40. Prior to being incarcerated, Ms. Edmo lived full-time as a woman. *Id.* ¶¶ 3, 39. After Defendants diagnosed Ms. Edmo with Gender Dysphoria, she sought appropriate medical treatment, including access to feminizing hormones, evaluation for sex affirming surgery,[2] and the ability to live as a woman while incarcerated. *Id.* ¶ 4. However, Defendants have refused to allow Plaintiff to access such medically necessary treatment, and instead have repeatedly punished Plaintiff for expressing her gender identity, including subjecting her to solitary confinement. *Id.* ¶¶ 4, 41-44, 49-51, 54. Defendants' denial of necessary medical treatment as well as punishment of Ms. Edmo for expressing her gender identity have caused Ms. Edmo grave and unnecessary suffering and harm, including two attempted self-castrations. *Id.* ¶¶ 5, 45-48.

Gender Dysphoria is a diagnosable and highly treatable condition recognized by the American Psychiatric Association and included in the DSM-5, as well as the International

---

[1] A transgender person is someone whose gender identity—that is, an individual's internal sense of being male or female—does not align with his or her assigned sex at birth. *See, e.g.,* Am. Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 451 (5th ed. 2013) ("DSM-5"); U.S. Office of Personnel Mgmt., Guidance Regarding the Employment of Transgender Individuals in the Federal Workplace.

[2] This is sometimes referred to as "sex reassignment surgery."

Classification of Diseases-10. (World Health Organization). *Id.* ¶ 26. Like many other medical conditions, Gender Dysphoria can be ameliorated through medical treatment. *Id.* ¶¶ 27-28. World Professional Association for Transgender Health ("WPATH"), the leading international organization focused on transgender health care, has established internationally accepted Standards of Care for the treatment of Gender Dysphoria. *Id.* The current version of the Standards of Care, Version 7, was published in September 2011, and constitutes the prevailing standard of care used by medical and mental health professionals treating Gender Dysphoria. *Id.* The Standards of Care set forth medical treatment options for Gender Dysphoria and require that a competent medical professional with knowledge and expertise in Gender Dysphoria evaluate a patient for appropriate and necessary treatment options, which, in addition to living in accordance with the person's gender identity, may include hormone therapy, surgery to change primary and/or secondary characteristics, and/or psychotherapy addressing the negative impact of Gender Dysphoria and stigma on mental health. *Id.* ¶¶ 33-36. The Standards of Care apply to incarcerated as well as non-incarcerated people. *Id.* ¶ 36.

## III.    LEGAL ARGUMENT

### A.    Legal Standard

Defendants set forth the legal standards for courts considering summary judgment and motions to dismiss without specifying the claims for which Defendants are moving for summary adjudication. Given that the summary judgment standard applies at this stage of the case only to Defendants' affirmative defense of failure to exhaust, Plaintiff addresses the legal standard along with Defendants' arguments on that point in the next section.

The legal standard for analyzing a motion to dismiss applies to the rest of Defendants' arguments. Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "Rule 8(a) '*does not impose a probability requirement at*

*the pleading stage*; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556; emphasis in *Starr*).

"The party moving for dismissal has the burden of showing that no claim has been stated." 2012 Moore's Federal Practice § 12.34[1][a] (2012) (citations omitted). "When ruling on a motion to dismiss, [a court] accept[s] all factual allegations in the complaint as true[,] … construe[s] the pleadings in the light most favorable to the nonmoving party," and "draws all reasonable inferences in favor of the plaintiff." *Ass'n for L.A. Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). The relevant inquiry is "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for L.A. Deputy Sheriffs*, 648 F.3d at 991. If the motion to dismiss is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012) (citations omitted).

## B.    Plaintiff Properly Exhausted Her Claims Under the PLRA

The Prison Litigation Reform Act ("PLRA") requires pre-complaint exhaustion of administrative remedies for all federal claims brought by state prisoners who challenge the conditions of their confinement. 42 U.S.C. § 1997e(a). Defendants concede that Plaintiff properly exhausted at least portions of her claims as she "completed the IDOC Grievance Process on several issues and incidents that are (or may be) subjects of this lawsuit." ECF 43 at 7. Defendants argue vaguely that unenumerated "remaining allegations and claims in Plaintiff's Second Amended Complaint have not been properly exhausted and should be dismissed." *Id.* at 8. However, Defendants fail to satisfy their burden to raise and prove the absence of exhaustion, nor do they properly apply the standards that govern administrative exhaustion of a particular

legal claim.  It is clear from the evidence Plaintiff submitted as Exhibit B to her Second Amended Complaint, as well as the evidence Defendants submitted in support of their motion, that Plaintiff duly exhausted administrative remedies for all claims in her Second Amended Complaint.

1.    Defendants Did Not Meet Their Burden to Raise and Prove Failure to Exhaust as an Affirmative Defense

Defendants' argument that Plaintiff failed to exhaust some unspecified subset of her claims does not satisfy their burden to raise and prove the affirmative defense of failure to exhaust administrative remedies.  *See Albino v. Baca*, 747 F.3d 1162, 1170, 1176 (9th Cir. 2014) (holding that failure to exhaust is an affirmative defense that defendant must plead and prove in a PLRA case, following the summary judgment procedure provided by Rule 56); Fed. R. Civ. P. 56(a) (A party moving for summary judgment must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); *see also Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (explaining that "defendants have the burden of raising and proving the absence of exhaustion").  It is not the job of Plaintiff or the Court to parse through Defendants' legal papers and construct an argument for them that they failed to make. Defendants' failure to meet the basic requirements of moving for summary judgment under the Federal Rules is itself grounds for denying their motion as to an alleged failure to exhaust.

Not only must Defendants identify with specificity the claims on which they seek summary judgment, but they also carry the burden of "prov[ing] that there was an available administrative *remedy* and that the prisoner did not exhaust that available remedy."  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015); *see also Brown*, 422 F.3d at 936-37 ("[A] defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process."). Defendants alleged in only vague terms that "the remaining allegations and claims in Plaintiff's Second Amended Complaint" have not been exhausted, ECF 43 at 7-8, without specifying each claim on which they seek summary judgment and without articulating

what administrative remedy was actually available as to these purported unexhausted claims in light of Plaintiff's numerous and ongoing grievances regarding Defendants' failure to adequately treat her Gender Dysphoria.  Because Defendants have not met their initial burden to establish absence of exhaustion, this Court should reject their affirmative defense that Plaintiff failed to exhaust.

2.    <u>Plaintiff Exhausted Her Claims Through the IDOC Grievance Process</u>

Even if Defendants had satisfied their burden to raise the defense of failure to exhaust, Defendants' own evidence as well as the documents Plaintiff submitted with her Complaint demonstrate that Plaintiff diligently exhausted all legal claims asserted in her Second Amended Complaint.  The Supreme Court held in *Jones v. Bock*, 549 U.S. 199, 218 (2007), that a prison's own grievance process, and not the PLRA, "define[s] the boundaries of proper exhaustion," including the factual specificity that is needed to complete a proper grievance or administrative complaint. When the prison's rules do not dictate the requisite level of detail for proper review, a prisoner's complaint "suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (adopting the standard in *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).  This is so because the primary purpose of a prison's administrative review system is to "notify the prison of a problem and to facilitate its resolution." *Griffin*, 557 F.3d at 1120; *see also Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).

District courts in Idaho have applied these general principles to the IDOC grievance process available to Ms. Edmo,[3] and determined that to satisfy the exhaustion requirement, all a prisoner need do is bring a general problem to the prison's attention such that the prison has an opportunity to try to correct the issue.  As the district court explained in *Houser v. Corizon*, No. 1:13-cv-00006-EJL, 2014 U.S. Dist. LEXIS 121358, at *12-14 (D. Idaho Aug. 27, 2014):

> A grievance is not the equivalent of a "summons and complaint that initiates adversarial litigation," *see Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004), and it need not "contain every fact necessary to prove each element of an eventual

---

[3] *See* Dkt. No. 41-2 at 7 ("A description of the problem must be written within the appropriate area on one *Offender Concern Form*"); *see also* AF 11 in Pl.'s Statement of Material Facts in Dispute Regarding IDOC Defs.' First ECF 43 for Dispos. Relief, filed herewith.

> legal claim," *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). It is instead sufficient if the prisoner brings a problem to the prison's attention in compliance with the prison's administrative rules such that officials can understand the nature of the complaint and have the opportunity to fix it.

*See also Spaude v. Corr. Corp. of Am.*, No. 1:10-cv-00551-CWD, 2011 U.S. Dist. LEXIS 122599, at *11-13 (D. Idaho Oct. 21, 2011) ("[T]o exhaust administrative remedies properly, a prisoner is not required to include every factual circumstance or an offer of evidentiary proof in a grievance that might later support a complete cause of action in a complaint," rather, a prisoner's grievances must only "provide enough information . . . to allow prison officials to take appropriate responsive measures."). Specific instances of harm are "factual indicia" that support general claims for relief, but "are not themselves claims for which administrative remedies must be exhausted." *See Steece v. Corr. Corp. of Am., Inc.*, No. 2:11-cv-00089-EJL, 2012 U.S. Dist. LEXIS 32186, at *13-14 (D. Idaho Mar. 8, 2012).

As a corollary to the above general rule, courts in several circuits have also made clear that "[i]n order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 649-50 (7th Cir. 2013); *see also Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012) (per curiam) (holding that a prisoner's 2005 exhausted grievance was sufficient to exhaust his 2007 claims based on a continuing violation when the 2005 grievance raised the identical issue); *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (holding that a prisoner was "not required to initiate another round of the administrative grievance process on the exact same issue each time an alleged deprivation of rights occurred"); *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008) (after plaintiff had exhausted a grievance regarding harassment and threats, he was not required to file a separate grievance for the same risks identified in the first grievance); *Johnson*, 385 F.3d at 521 (stating that plaintiff was not required to file separate grievances to "exhaust claims that arose from the same continuing failure to protect him from sexual assault").[4] Thus, according to these circuits,

---

[4] District courts to examine the issue have similarly concluded that a prisoner need not grieve separate instances of the same continuing harm. *See Sulton v. Wright*, 265 F. Supp. 2d 292, 295-

when a prisoner plaintiff grieves a continuing violation, she need not file "multiple, successive grievances raising the same issue," and can therefore satisfy her exhaustion requirement "once [the] prison has received notice of, and an opportunity to correct [the] problem." *Turley*, 729 F.3d at 650.

Applying these standards, it is clear that Plaintiff exhausted each of her present legal claims through the prison grievance process. The claims in her Second Amended Complaint arise from several core issues, including Defendants' failure to provide her with adequate and necessary medical treatment for Gender Dysphoria, and Defendants' decision to discipline Plaintiff and deny her certain requests based on sex-based stereotyping about the ways that she should appear based on the sex assigned her at birth. Plaintiff properly filed numerous grievances describing these core concerns of Defendants' failure to adequately treat her Gender Dysphoria from both medical and custody standpoints, and Defendants' improper imposition of discipline against Plaintiff for expressing her gender identity.[5] These grievances provided

99 (S.D.N.Y. 2003) (holding that two grievances filed during the course of a several-year period of repeated delays in treating an inmate's injured knee sufficed to exhaust the entire course of conduct, despite the prison system's rule that grievances must be filed within fourteen days of an occurrence); *Aiello v. Litscher*, 104 F. Supp. 2d 1068, 1074 (W.D. Wis. 2000) (holding that when inmates have filed a grievance regarding a prison policy, they need not file grievances regarding subsequent incidents in which the policy is applied); *cf. Lewis v. Washington*, 197 F.R.D. 611, 614 (N.D. Ill. 2000) (holding that inmates complaining about various aspects of the conditions in their housing unit need only grieve their placement in that unit, not each of the various alleged unconstitutional conditions present in the unit, "otherwise the defendants could obstruct legal remedies to unconstitutional actions by subdividing the grievances . . . .").

[5] Defendants' own "Offender Grievance Listing," ECF 41-3, shows that Ms. Edmo's grievances address, *inter alia*, the following: "gender identity disorder / proper dosage of estrogen not process" (9/2/14), "changing h[er] male gender marker to female" which will not be processed because it "is beyond IDOC's control" (12/1/14), "not being allowed panties as a medically necessary undergarment" (12/17/14), "placement into unit 8 because of feminem [sic] behaviors due to my Gender dysphoria" (2/17/15), "not being allowed to express h[er] religious expression of being 'two-spirited'" and have a female hairstyle (3/5/15), harassment "because of my gender dysphoria" by denying make up and female hairstyles (4/13/15), "humiliation" caused by refusal to use female pronouns (4/22/15), concerns about general policy that doctor "disregarded h[er] risks of future harm ([s]he tried to castrate h[er] testicles)" which could be solved by allowing Ms. Edmo "to express h[er] gender" (10/13/15), "being denied adequate / appropriate medical care for my serious condition of GID" (11/4/15), "being denied an endocrinologist & medical treatment wpath standards. This is creating a substantial risk of future harm of autocastrating myself" (12/16/15), "not being provided timely adequate medical/mental health care, specifically a medical/mental health evaluation for the medical necessity pre-requisite of sex reassignment surgery by a qualified gender identity disorder evaluator," (4/4/16), "not being allowed to move out of BHU because of my status as an GID inmate," (5/9/16), Warden Yordy "not allow[ing]

Defendants ample opportunity to remedy their underlying denial of treatment as well as use of discipline.

Defendants make the bizarre assertion that Plaintiff was obligated to file grievances for her attempts to self-castrate and other severe symptoms resulting from Defendants' failure to properly treat her Gender Dysphoria.  Plaintiff repeatedly grieved Defendants' failure to treat her underlying medical condition that, without necessary and appropriate treatment, resulted in Plaintiff's self-castration attempts and other serious symptoms of Gender Dysphoria.  And, in fact, Plaintiff's December 15, 2015 grievance specifically described her concern that denial of necessary medical treatment created a "substantial risk of future harm of autocastrating myself." ECF 41-3.  As the case law cited above makes clear, Plaintiff's grieving of Defendants' failure to treat was sufficient to exhaust administrative remedies.  The harms Plaintiff experienced are evidence or "factual indicia" of Defendants' deliberate indifference, not independent claims she must grieve. *See Steece,* 2012 U.S. Dist. LEXIS 32186, at *13-14.

The only other specific "claims" Defendants allege that Plaintiff did not exhaust are her complaints challenging IDOC's policies prohibiting her from possessing or wearing women's makeup, obtaining a legal name change, and/or being transferred to a women's correctional institution.  ECF 43 at 7.  As an initial matter, Defendants' own evidence demonstrates that Plaintiff did specifically grieve the denial of makeup on April 13, 2015 and October 21, 2015.[6] ECF 41-3. More importantly, it is clear Plaintiff repeatedly grieved the core underlying issues that she receive appropriate and necessary treatment for Gender Dysphoria, that she be permitted

---

my medical/mental health providers to issue me a medical memo for panties for my psychological support of treating my GID," (6/1/16), "I was raped & suffer personal injury because ISCI Warden Yordy & Sgt. Meldrum failed to protect me by housing me; an extremely feminine appearing/diagnosed transsexual woman with unit 09," (12/12/16), along with many other issues stemming from the core concerns arising from the prison's response to Ms. Edmo's Gender Dysphoria.

[6] Defendants appear not to count grievances Plaintiff submitted that Defendants refused to process as exhausted, as, for example, with the grievance Plaintiff submitted on October 21, 2015 about being denied cosmetics.  ECF 41-3.  As this Court has recognized, "[w]hen prison officials prevent a prisoner from using the correct channels to route a complaint . . . the failure to adhere to technical requirements will be excused." *Riggs v. Valdez,* No. 1:09-cv-010-BLW, 2010 U.S. Dist. LEXIS 111870, at *9 (D. Idaho Oct. 18, 2010).

to express herself in accordance with her gender identity as part of her treatment for Gender Dysphoria, and that prison officials refer to her in a manner that recognizes her as female, which are the bases for her federal claims. *See* Doc. No. 12 , Initial Review Order, at 15 ("Therefore, as a result of the IDOC's and Corizon's blanket policies and without consideration of Plaintiff's unique medical treatment requirements, Defendants are allegedly refusing Plaintiff the one treatment that would render her capable of being housed in a women's prison and to have a real-life experience as a woman in a way that would not complicate the safety and security concerns behind the IDOC's feminine-appearance and anatomically-based housing policies. For these reasons, the Court concludes that Plaintiff has stated plausible Eighth Amendment medical care claims regarding her treatment for GD.").

Furthermore, Courts have explicitly rejected Defendants' argument that Plaintiff cannot rely on specific events to prove her underlying claims or calculate her damages where these specific allegations were not separately grieved. *See, e.g.*, *Griffin*, 557 F.3d at 1120; *Steece*, 2012 U.S. Dist. LEXIS 32186, at *13-14. Plaintiff repeatedly and diligently grieved her complaints that Defendants were denying her necessary treatment for Gender Dysphoria, refused to allow her to express herself accordance with her gender identity; and were discriminating against her based on her Gender Dysphoria. Accordingly, Plaintiff exhausted her administrative remedies as to all of the claims raised in her Second Amended Complaint.

### C.    None of Plaintiff's Legal Claims are Barred by Statutes of Limitations

Defendants argue that, based on applicable statutes of limitations, Plaintiff should not be able to recover damages for harms she suffered as a result of incidents that occurred more than two years prior to the filing of the instant lawsuit. Plaintiff does not dispute that the applicable statutes of limitations period is two years, and Defendants have not pointed to any of her enumerated legal claims for relief that they maintain should be dismissed as beyond the statute of limitations.

/ / /

/ / /

PLTF'S RESP TO IDOC DEFTS 1ST
MTN FOR DISPOSITIVE RELIEF                    -10-

D.       **Plaintiff Properly Pled Her Claim for Relief Under the ADA and Section 504 of the Rehabilitation Act**

      1.       <u>Defendant IDOC is Not Immune From Suit Under the ADA and Section 504 of the Rehabilitation Act</u>

Defendants assert that IDOC, as a department of the State of Idaho, "is immune from suit in federal court pursuant to the Eleventh Amendment." ECF 43 at 9. However, Defendants neglect to cite any cases considering Eleventh Amendment immunity specifically as to ADA and Rehabilitation Act claims. As Plaintiff accurately stated in her Second Amended Complaint, IDOC is not entitled to immunity from suit under the Eleventh Amendment on Plaintiff's cause of action under the ADA and Section 504 of the Rehabilitation Act. SAC ¶ 94. With respect to the ADA, it is "settled precedent" in the Ninth Circuit that Congress "validly abrogated the states' Eleventh Amendment sovereign immunity under Title II." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1185 (9th Cir. 2003); *see also Safe Air for Everyone v. Idaho*, 469 F. Supp. 2d 884, 887 (D. Idaho 2006) ("The Ninth Circuit has recognized that Congress' [sic] enacted both the ADA and RA under the Fourteenth Amendment to prohibit discrimination against the disabled and both statutes were 'within the scope of appropriate legislation under the Equal Protection Clause as defined by the Supreme Court.' As such, the Ninth Circuit has "concluded that Congress validly abrogated the states' Eleventh Amendment sovereign immunity under Title II.") (quoting *Clark v. State of California*, 123 F.3d 1267, 1270 (9th Cir. 1997)). With respect to Section 504 of the Rehabilitation Act, IDOC voluntarily accepts federal funds, and has thus additionally waived any right to Eleventh Amendment immunity from suit. *Miranda B.,* 328 F.3d at 1186 ("In Clark, not only did we conclude that Congress validly abrogated the states' Eleventh Amendment immunity under Section 504, but we also held that states, by accepting federal funds, waived any Eleventh Amendment immunity they might have possessed.").

      2.       <u>Gender Dysphoria is Outside the Scope of The ADA's Exclusion of "Gender Identity Disorders Not Resulting From Physical Impairments"</u>

Defendants argue that Plaintiff is foreclosed from pursuing a claim under the ADA

because her disability, which Defendants reference as "Gender Identity Disorder/Gender Dysphoria," is "specifically excluded from the definition of 'disability' as defined under the ADA and the Rehabilitation Act."  ECF 43 at 9.  In fact, as at least one federal court has recognized, Gender Dysphoria is not excluded under the ADA.  *See Blatt v. Cabela's Retail, Inc.*, No. 5:14-cv-04822, 2017 WL 2178123 (E.D. Pa. May 18, 2017); *accord* U.S. Department of Justice Statements of Interest in *Blatt v. Cabela's Retail, Inc.*, No. 5:14-cv-04822, 2015 WL 9872493 (E.D. Pa. Nov. 16, 2015); *Doe v. Dzurenda*, No. 3:16-cv-01934-RNC (D. Conn.), ECF 57, filed Oct. 27, 2017; *Doe v. Arrisi*, No. 3:16-cv-08640-MAS-DEA (D. N.J.), ECF 49, filed July 17, 2017.  This is because the diagnosis of "Gender Dysphoria" does not, as a matter of law, fall under the ADA's exclusion of "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders not resulting from physical impairments*, or other sexual behavior disorders."  42 U.S.C. § 12211(b)(1) (emphasis added).  In 2013, the American Psychiatric Association revised the DSM to remove the diagnosis of "Gender Identity Disorder" and introduce the diagnosis of "Gender Dysphoria."  Gender Dysphoria references scientific evidence  of the physiological etiology of the diagnosis.[7]  DSM-5 at 451-59.  This revision to the DSM recognizes that being transgender is not itself a mental illness and, most important for this Court, that Gender Dysphoria likely results from a "physical impairment" as that term is broadly defined within the ADA.  As such, it is not part of the ADA's narrow exclusion for "gender identity disorders not resulting from a physical impairment."

The *Blatt* court also recognized, as this Court should, that the ADA exclusion refers "only [to] the condition of identifying with a different gender," and does not encompass "a condition like [plaintiff's] gender dysphoria, which goes beyond merely identifying with a different gender and is characterized by clinically significant distress and other impairments that may be disabling." *Blatt*, 2017 WL 2178123, at *2.  Because Gender Dysphoria can be a disabling

---

[7] Gender Dysphoria is a diagnostic term for a serious medical condition characterized not only by a marked incongruence between gender identity and assigned sex, but, also, a strong desire to be rid of one's primary and secondary sex characteristics and/or to acquire primary/secondary sex characteristics of the other gender, and intense emotional pain and suffering resulting from this incongruence.  DSM-5 at 451-53.

condition that "substantially limits [ ] major life activities of interacting with others, reproducing, and social and occupational functioning," it is not excluded from ADA coverage. *Id.* at *4. Defendants did not contend in their motion that Plaintiff's Gender Dysphoria is not a disabling condition that substantially limits her major life activities, and, even if they had, this is a question of fact that must be developed through discovery. It is therefore inappropriate at the motion to dismiss phase.

The *Blatt* Court's holding that Gender Dysphoria does not fall under the ADA's exclusion is also consistent with the U.S. Supreme Court's admonition that "remedial legislation should be construed broadly to effectuate its purposes." *Tcherepnin v. Knight*, 389 US. 322, 336 (1967); *see also Consol. Rail Corp. v. Darrone,* 465 U.S. 624, 634, (1984) (recognizing that Rehabilitation Act has "remedial purpose"); *Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002) ("In fact, the ADA must be construed "broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2d Cir. 2003) (construing ADA broadly) *Castellano v. City of New York*, 142 F.3d 58, 69 (2d Cir. 1998) (noting "ADA's broad remedial purpose"); *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 861 (1st Cir. 1998) (observing that ADA is a remedial statute and so should be construed broadly); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994) ("Because the [Rehabilitation] Act is a remedial statute, it and the regulations promulgated under it are to be construed broadly."), *cert. denied*, 513 U.S. 1147, 130 L. Ed. 2d 1063, 115 S. Ct. 1095 (1995). In passing the ADA and including a narrow exclusion for "gender identity disorders not resulting from physical impairments," Congress excluded only the "condition of identifying with a different gender," and not "disabling conditions that persons who identify with a different gender may have," such as Gender Dysphoria. *Blatt*, 2017 WL 2178123, at *4.

Notably, the United States Department of Justice ("DOJ"), the agency charged with enforcing the ADA, has filed multiple statements of interest, including in recent months,

agreeing that Gender Dysphoria is not excluded from ADA coverage.  In the *Blatt* case, DOJ filed a statement of interest stating that the "Gender Identity Disorders exclusion" of the ADA does not extend to Gender Dysphoria because the available scientific evidence suggests that Gender Dysphoria results from a "physical impairment," which the applicable regulations define broadly to mean "[a]ny physiological disorder or condition" affecting various body systems including 'neurological,' 'reproductive,' or 'genitourinary.'"  *Blatt*, 2015 WL 9872493 (citing 28 C.F.R. § 35.104).[8]  DOJ also filed statements of interest in two other cases in July and October 2017 taking the position that the ADA exclusion does not apply to Gender Dysphoria.  *Doe v. Dzurenda*, Case No. 3:16-cv-01934-RNC (D. Conn.), ECF 57; *Doe v. Arrisi*, Case No. 3:16-cv-08640-MAS-DEA (D. N.J.), ECF 49.

3.    Excluding Gender Dysphoria Under the ADA Would Violate the Constitution[9]

The conclusion that Gender Dysphoria falls outside the scope of the ADA exclusion is also necessitated by the doctrine of constitutional avoidance, which directs courts not to "decide a constitutional question if there is some other ground upon which to dispose of the case." *Blatt*, 2017 WL 2178123 at *2-3; *see Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984); *Fox TV Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1013 (9th Cir. 2017).  The statutory reading of the ADA Defendants advocate would exclude Gender Dysphoria from coverage under the ADA based on the fact that it is a condition experienced only by transgender people. As such, the exclusion would act as a proxy for categorically excluding transgender people from protection under the law, and would therefore amount to facial discrimination by the federal government

---

[8] A growing body of medical research suggests that the incongruence between the sex assigned at birth and an individual's internal sense of being male or female is caused by "genetics and/or in utero exposure to the 'wrong' hormones during the development of the brain, such that the anatomic physical body and the brain develop in different gender paths."  Christine Michelle Duffy, *The Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973*, in *Gender Identity and Sexual Orientation Discrimination in the Workplace: A Practical Guide*, at 16-77 (Christine Michelle Duffy ed. Bloomberg BNA 2014) (discussing recent medical studies); *see also* DSM-5 at 457 (discussing genetic and possibly hormonal contribution to Gender Dysphoria).

[9] Plaintiff is concurrently filing notice of the constitutional question raised and serving this notice on the Attorney General of the United States in accordance with Fed. R. Civ. P. 5.1.

against transgender people in violation of the Constitution.  *See, e.g.*, *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) (Fifth Amendment imposes the same equal protection obligations on the federal government as the Fourteenth Amendment does on the states).

The Ninth Circuit has already held that discrimination against transgender people is prohibited as a form of sex discrimination.  *See Schwenk v. Hartford*, 204 F.3d 1187, 1201–02 (9th Cir. 2000) (discrimination against a transgender woman is sex discrimination); *Prescott v. Rady Children's Hospital-San Diego*, No. 16-cv-02408, 2017 WL 4310756, at *4 (S.D. Cal. Sept. 27, 2017) ("discrimination on the basis of transgender identity is discrimination on the basis of sex"); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015) ("discrimination against transgender individuals is a form of gender-based discrimination subject to intermediate scrutiny under the Equal Protection Clause"); *see also Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) ("[D]iscrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender."); *Smith v. City of Salem*, 378 F.3d 566, 572-73 (6th Cir. 2004) (same); *Fabian v. Hosp. of Cent. Conn.*, 172 F. Supp. 3d 509, 527 (D. Conn. 2016) ("discrimination on the basis of transgender identity is discrimination on the basis of sex"); *Schroer v. Billington*, 577 F. Supp. 2d 293, 308 (D.D.C. 2008) (discrimination against transgender woman was "literally discrimination 'because of . . . sex'").

The ADA exclusion, as it applies to transgender people, cannot pass constitutional muster regardless of whether the court applies strict scrutiny to discrimination against transgender people as a suspect or quasi-suspect classification under the Supreme Court's four-factor test, or intermediate scrutiny as a sex-based classification.  *See, e.g., Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) (applying "heightened review" under Equal Protection Clause to transgender students); *Doe 1 v. Trump*, No. 17–1597, 2017 WL 4873042, at *27-28 (D.D.C. 2017) (same); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) (stating that "transgender people have suffered a history of persecution and discrimination" and "are a quasi-suspect class" under the Equal Protection Clause); *Norsworthy*,

1120 (N.D. Cal. 2015) (applying intermediate scrutiny to discrimination against transgender prisoner).  Such an exclusion is not narrowly tailored to a compelling government interest, nor does it serve any legitimate government interest at all.  Indeed, the legislative history of the ADA demonstrates that, if such a categorical bar were what Congress intended by the exclusion of people with "gender identity disorders not resulting from physical impairments," that bar was motivated by impermissible animus and would therefore not even pass muster under rational basis review.  *See, e.g.,* Kevin M. Barry et al., *A Bare Desire to Harm: Transgender People and the Equal Protection Clause*, 57 B.C. L. Rev. 507, 574 (2016) ("Senators Armstrong, Helms, and Rudman repeatedly invoked immorality as the justification for the transgender exclusions, decrying the ADA's coverage of "sexually deviant behavior."); *accord* Christine Michelle Duffy, *The Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973*, in *Gender Identity and Sexual Orientation Discrimination in the Workplace: A Practical Guide*, at 16-38 to -39 (Christine Michelle Duffy ed. Bloomberg BNA 2014) (compiling ADA's legislative history); Ruth Colker, *Homophobia, AIDS Hysteria, and the Americans with Disabilities Act*, 8 J. Gender Race & Just. 33, 36-38, 42-44, 50 (2004) (same).

Excluding persons with Gender Dysphoria from the ADA would also violate the Constitution because it would impermissibly discriminate against one class of persons based on disability.  *See, e.g. Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1995) (striking down a local ordinance that discriminated against people with intellectual disabilities).  In order to avoid this constitutional issue, the *Blatt* court ruled that the ADA's exclusion with respect to "gender identity disorders not resulting from physical impairments" does not exclude the actual disabling medical condition of Gender Dysphoria, as set forth *supra*.  *Blatt*, 2017 WL 2178123 at *2; *see also Blatt*, 2015 WL 9872493 (DOJ Statement of Interest).  This interpretation is consistent with both the Constitution and the legislative history of § 12211. *Id.* at *3.

Plaintiff alleged in her Second Amended Complaint that she has been diagnosed with Gender Dysphoria by IDOC and Corizon.  Thus, under a reading of the ADA consistent with the Constitution, Plaintiff has properly stated a claim for relief under the ADA based on Defendants'

discrimination against her and denial of benefits to her because of Gender Dysphoria.[10]

E.    **Plaintiff Properly Pled a Claim for Relief Under Section 1557 of the Affordable Care Act**

Defendants materially misstate the allegations of Plaintiff's Second Amended Complaint in their argument to dismiss Plaintiff's claim for violation of § 1557 of the Affordable Care Act ("ACA").  Defendants describe Plaintiff's claim as alleging Defendants discriminated against her "on the basis of her transgendered [sic] status and diagnosis of Gender Dysphoria."  ECF 43 at 10.  To the contrary, Plaintiff alleged that Defendants violated the ACA by discriminating against her on the basis of sex.  SAC ¶¶99-100.  *See, e.g.*, *Schwenk*, 204 F.3d at 1201–02; *Prescott*, 2017 WL 4310756, at *4; *Norsworthy*, 87 F. Supp. 3d at 1119; *see also Glenn*, 663 F.3d at 1317; *Smith*, 378 F.3d at 572-73; *Fabian*, 172 F. Supp. 3d at 527; *Schroer*, 577 F. Supp. 2d at 308.  Accordingly, Plaintiff stated a proper claim for relief under § 1557 of the ACA.

Defendants also argue, without legal authority, that the ACA "did not create a new enforcement mechanism."  ECF 43 at 10.  In fact, Courts that have considered claims brought under § 1557 of the ACA have found that "Congress intended to create a private right and private remedy for violations of Section 1557 by expressly incorporating the enforcement provisions of the four federal civil rights statutes."  *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 848 (D.S.C. 2015); *accord Esparza v. Univ. Med. Ctr. Mgmt. Corp.,* No. 17-4803, 2017 U.S. Dist. LEXIS 142944, at *10 (E.D. La. Sep. 5, 2017) ("Section 1557 is enforceable via an implied private right of action.");  *SEPTA v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698 (E.D. Pa. 2015) ("We therefore find that Congress intended to create a private right of action for alleged violations of Section 1557."); *Rumble v. Fairview Health Servs.*, No. 14-cv-2037 (SRN/FLN), 2015 U.S. Dist. LEXIS 31591, at *29 (D. Minn. Mar. 16, 2015) (same).  Thus, Plaintiff has stated a claim for relief based on Defendants' discrimination against her based on

---

[10] If this Court is inclined to hold that the ADA exclusion applies at the motion to dismiss stage, despite Defendants' failure to proffer factual evidence that would be necessary for such a finding, Plaintiff requests an opportunity to fully brief the relevant medical issues and research that apply to this issue.

sex in the provision of health care services in violation of § 1557 of the ACA.

F.    **Plaintiff Properly Noticed and Pled  Her Negligence Claims Against Defendants Atencio, Zmuda, and Yordy**

Defendants' argument to dismiss Plaintiff's negligence claims against Defendants Atencio, Zmuda, and Yordy suffers in the first instance from the same defect as their exhaustion claims:  Defendants focus solely on the specific example of harm Plaintiff provided in the Notice of Claim while completely ignoring the underlying actions and omissions Plaintiff specifically enumerated as the "cause of damages"—i.e. the negligent actions resulting in harm.  In her February 10, 2017 Notice of Claim, which Plaintiff attached as Exhibit A to her Second Amended Complaint, Plaintiff clearly stated, "The State of Idaho, its agents, servants, and employees failed to provide necessary medical care…"  ECF 36 at 27.  Thus, Plaintiff complied with the notice requirements of Idaho Code § 6-905 with respect to the State of Idaho as well as its agents, servants, and employees involved in decisions and delivery of her medical care.  The information she included was sufficient to put the State and high-level IDOC administrators including Atencio, Zmuda, and Yordy, on notice of her claim such that IDOC could evaluate her claim and respond if it so elected.

Defendants also erroneously claim that Plaintiff "has alleged absolutely no facts to suggest that Mr. Atencio, Mr. Zmuda, or Mr. Yordy were negligent."  ECF 43 at 11.  In the Second Amended Complaint, Plaintiff described the role of Defendant Atencio in her medical care:  As Director of IDOC, Atencio is responsible for administering and overseeing the operations of IDOC and Atencio is also the final reviewer for treatment decisions by IDOC's Management and Treatment Committee, which includes decisions about Plaintiff's treatment.  SAC ¶ 14.  Similarly, Plaintiff alleged that Defendant Zmuda, as Deputy Director of IDOC, is specifically charged by IDOC policy to oversee implementation of health care services and treatment in IDOC including the development and implementation of standard operating procedures to effectuate health care delivery.  SAC ¶ 15.  With respect to Defendant Yordy, Plaintiff alleged that as Warden of ISCI where Plaintiff is housed, Yordy was a member of her

Management and Treatment Committee, and directly participated in review and denials of her requests for appropriate treatment for Gender Dysphoria.  SAC ¶ 16.  Thus, Plaintiff established the duties of care Defendants Atencio, Zmuda, and Yordy owed her as a prisoner housed in IDOC.  Plaintiff further alleged that IDOC has a custom, practice, and/or *de facto* policy of failing to provide necessary medical treatment for Gender Dysphoria, which, per the allegations in ¶¶ 14-16, falls directly into the purview of Defendants Atencio, Zmuda, and Yordy and is an allegation of breach of duty of care.  SAC ¶ 42.  These detailed allegations about the responsibilities of Defendants and the roles they played in decisions about Plaintiff's treatment are hardly "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, they set forth why each Defendant "is liable for the misconduct alleged" in a manner that is more than sufficient at the pleading stage.  *Id.*

Finally, the Magistrate Judge already determined that Plaintiff stated a plausible state-law claim against Defendant Yordy when reviewing her original Complaint in this matter.  ECF 12 at 19. Thus, pursuant to the Magistrate Judge's ruling that Defendants may not file a motion for dismissal on the basis of failure to state a claim, ECF 12 at 22, Defendant Yordy's motion to dismiss Plaintiff's negligence claim is improper.  Defendants Atencio and Zmuda were not named as Defendants at that time so the Magistrate Judge did not review those claims.  For the reasons described, Plaintiff's amendment of the complaint to include negligence claims against Defendants Atencio and Zmuda was proper.

/ / /

/ / /

/ / /

## IV.    CONCLUSION

For the reasons set forth above, this Court should deny Defendants' Motion for Dispositive Relief in its entirety.  If the Court grants dismissal of any of Plaintiff's claims, it should do so with leave to amend.


Dated: November 22, 2017                    Respectfully Submitted,

                                                         NATIONAL CENTER FOR LESBIAN RIGHTS

                                                         FERGUSON DURHAM

                                                         HADSELL STORMER & RENICK LLP


                                                         By:  ___/s/ - Lori E. Rifkin_____
                                                                 Lori E. Rifkin
                                                         Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of November, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Dylan Eaton
deaton@parsonsbehle.com

J. Kevin West
kwest@parsonsbehle.com

Attorneys for Corizon Defendants

Brady James Hall
brady@melawfirm.net

Attorney for IDOC Defendants


                                            /s/ - Lori E. Rifkin
                                            Lori E. Rifkin