UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADREE EDMO (MASON EDMO),<br><br>               Plaintiff,<br><br>v.<br><br>IDAHO DEPARTMENT OF<br>CORRECTION, *et al.*,<br><br>               Defendants. | Case No. 1:17-cv-00151-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' First Motion for Dispositive Relief (Dkt. 39). The Court held a hearing on April 4, 2018, and the Court now issues the following Memorandum Decision and Order.

## BACKGROUND

Edmo is a male-to-female transgender prisoner, in the custody of the Idaho Department of Corrections ("IDOC"). Edmo's medical records indicate diagnoses of Gender Identity Disorder (GID) and Gender Dysphoria (GD). Edmo remains anatomically male but identifies as female. As a result of IDOC's policy to assign an inmate's facility in accordance with the inmate's primary sexual characteristics, Edmo is currently incarcerated in a men's prison at Idaho State Correctional Institution ("ISCI"). According to Edmo, common treatments of GID/GD are the "real-life" experience of

living full-time within the desired gender, hormonal therapy, and sex reassignment surgeries. After being diagnosed with GID/GD, Edmo requested treatment including access to feminizing hormones, evaluation for sex affirming surgery, and the ability to live as a woman while incarcerated. Edmo alleges that Defendants denied certain necessary medical treatment resulting in Edmo's suffering harm, including two attempted self-castrations.

Edmo filed a complaint alleging that Defendants' actions violated the following: (1) the Eighth Amendment by failing to protect her from harm and it's prohibition on cruel and unusual punishment; the Fourteenth Amendment's guarantee of equal protection; (2) the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act by discriminating in provision of medical treatment and participation in programs and services; (3) the nondiscrimination provision of the Affordable Care Act (ACA) by discriminating based on sex, sex stereotyping, and/or gender identity; and (4) Idaho tort law by negligently failing to provide treatment. *Amended Complaint, Dkt. 36*.

Defendants now seek summary judgment on all claims for which administrative remedies were not exhausted, and dismissal under FRCP 12(b)(6) of statutorily time-barred claims, ADA claims, ACA claims, and state negligence claims.

## LEGAL STANDARDS

### 1. Motion for Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out

the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## 2. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery, such as a statute of limitations. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings

establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866, n.1 (9th Cir. 2004)**.** The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

## DISCUSSION

### 1. Exhaustion of Administrative Remedies

Inmates must exhaust their available administrative remedies before bringing civil rights actions based on prison conditions. The federal Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies for all federal claims brought by state prisoners who challenge the conditions of their confinement in a federal complaint. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Exhaustion must be proper; meaning "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 204.

Failure to exhaust is an affirmative defense that, in rare situations, may be asserted in a Rule 12(b)(6) motion to dismiss. *Albino v. Baca*, 747 F.3d 1162 (9th Cir. April 3, 2014) (en banc) ("In a few cases, a prisoner's failure to exhaust may be clear from the

face of the complaint."). If, however, the material facts underlying the exhaustion issue are genuinely disputed, the Court may decide the issue on a motion for summary judgment under Rule 56. *Id.*

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1170-71.

Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Albino*, 747 F.3d at 1170-71. *See Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (the court has the discretion to take evidence at a preliminary hearing to resolve any questions of credibility or fact and that the plaintiff must establish the facts by a preponderance of the evidence, just as he would have to do at trial).

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

## 2. IDOC's Grievance Procedure

The IDOC grievance process is contained generally in IDOC Policy 316: Offender Grievance Process. The grievance procedure is contained in IDOC Division of Prisons Standard Operating Procedure 316.02.01.001. *See Maybon Decl., Dkt. 41 ¶ 3.*

The IDOC grievance procedure consists of three stages. *Id*. ¶ 5. First, an inmate must seek an informal resolution by filling out an Offender Concern Form, addressed to the most appropriate staff member. *Id.* ¶ 6. If the issue is not informally resolved, offenders are required under the Grievance Process to file a Grievance within thirty days of the incident or problem that is the basis for the Grievance. *Id.*¶ 7. Only one issue may be raised in each grievance and the offender must also suggest a solution or proposed remedy. *Id.* The grievance information is then entered into the Corrections Integrated System, and the Grievance Coordinator assigns the grievance to the staff member most capable of responding to and, if appropriate, resolving the issue. *Id.* ¶ 8. That staff member responds to the grievance and returns it to the Grievance Coordinator. *Id.*

The Grievance Coordinator then forwards the grievance to a "reviewing authority". *Id.* The reviewing authority returns the grievance to the Grievance Coordinator, who logs the response into the database and sends the completed grievance back to the inmate. *Id.*

The third step of the Grievance Process requires the offender to submit an appeal to the Grievance Coordinator within 14 days of the date the level two responder provided his/her reviewing authority response. *Id.* ¶ 9. Upon receipt of the appeal, the Grievance Coordinator provides the appeal to the appellate authority who is typically the Warden of the facility. If it is a medical grievance, the Health Services Director is the appellate authority. After the appeal is decided, the Grievance Coordinator returns the completed appeal form to the inmate. *Id*. The grievance process is exhausted at the end of all three of these steps. *Id*. ¶ 9.

Here, both Edmo and Defendants agree that Edmo properly exhausted administrative remedies for several issues in this case. These include the following: (1) an August 10, 2016 sexual assault, (2) being allowed to wear a feminine hairstyle, (3) IDOC staff use of masculine gender pronouns, (4) denial of electrolysis or hair remover, (5) alleged denial of a medical/mental health evaluation with a qualified gender identity disorder evaluator, (6) being housed in the Behavioral Health Unit, (7) and denial female underwear. *Dkt. 44*; *Dkt. 43*; *Maybon Decl. Dkt. 41*.

However, Defendants contend that Edmo failed to properly exhaust several claims including: (1) Claim for damages Edmo sustained as a result of a September 29, 2015 self-castration attempt, (2) Claim for damages sustained as a result of a December 31, 2016 self-castration attempt; (3) Claim for damages and/or equitable relief related to policy prohibiting Plaintiff from wearing women's makeup in a male prison; (4) Claim for damages or equitable relief regarding a legal name change while incarcerated; and

(5) Claim for damages and/or equitable relief related to the alleged failure to transfer Edmo to a women's correctional facility. *Dkt. 47. Maybon Decl. Dkt. 41, Exhibits C and D.*

### A. *Self-Castration Attempts*

Edmo's First and Seventh claims seek damages for "harms" suffered. *Compl. Dkt. 36, ¶¶ 88, 113.* Although the alleged harms suffered are not specified within each claim for relief, Edmo references two self-castration attempts throughout the Complaint's Factual Allegations. *Id. at ¶¶ 5, 46-48.*

Defendants contend that Edmo did not independently raise self-castration as an issue the inmate sought to have addressed through IDOC's grievance process and thereby failed to exhaust administrative remedies. *Dkt. 47.* In response, Edmo points to several grievances that reference the castration attempts and argues that, even if not properly grieved, the attempts were "factual indicia" of Defendants' denial of care and thus not claims which require grieving. *Dkt. 44.*

The Ninth Circuit has made clear that a critical function of the grievance process is to provide prison officials with the opportunity to address the identified grievance and correct prison error accordingly. *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016). A grievance is not the equivalent of a "summons and complaint that initiates adversarial litigation," *see Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir.2004), and it need not "contain every fact necessary to prove each element of an eventual legal claim," *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir.2009.) It is instead sufficient if the prisoner

brings a problem to the prison's attention in compliance with the prison's administrative rules such that officials can understand the nature of the complaint and have the opportunity to fix it. *Houser v. Corizon*, 2014 WL 4249873, at *5 (D. Idaho Aug. 27, 2014).

The Court will first address whether the castration attempts were exhausted independently before deciding whether they may be properly classified as examples of denial of care which would not require specific grievances.

In Grievance II 15000117 Edmo sought the ability to wear makeup and a treatment plan which would accommodate such to avoid "future harm." *Maybon Decl., Dkt. 41-3, Ex. C.* This grievance is targeted at resolving a dispute regarding the ability to wear makeup, and does not raise the occurrence of self-castration so as to provide IDOC the opportunity to address the incident as part of the administrative dispute resolution process.

In Grievance II 150001166 Edmo sought reimbursement of a personal blanket that was lost after a self-castration attempt. *Id*. Similarly, this grievance did not raise the castration attempt as a matter Edmo sought to dispute in a manner which would provide opportunity for resolution.

In Grievance II 150001348, Edmo states "I am being denied an endocrinologist & medical treatment [to] wpath [sic] standards. This is creating a substantial risk of future harm of auto-castrating myself. I shouldn't have to wait for 30, 60, 90 days until next [appointment]." *Id*. In this grievance, Edmo specifically sought an appointment

with and treatment by an endocrinologist. The grievance was thus targeted at a perceived denial of medical care, not at resolving a castration attempt. Additionally, this grievance was filed 78 days after the first castration attempt and over one year before the occurrence of the second attempt. Therefore, this grievance could not properly cover either castration as its essential purpose.

Under these circumstances, the Court agrees with Defendants, and finds that Edmo did not exhaust administrative remedies regarding self-castration attempts.

However, the Court is persuaded by Edmo's argument that the castration attempts do not require separate grievances as they are claimed as a result of not receiving requested medical treatments which were properly grieved. *Dkt. 41-3*. Edmo also points to case law in which this Court has noted that exhaustive examples ("factual indicia") offered to support a specific claim need not be grieved separately. *See e.g. Spaude v. Corr. Corp. of Am.*, 2011 WL 5038922 (D. Idaho Oct. 21, 2011); *Houser v. Corizon*, 2014 WL 4249873 (D. Idaho Aug. 27, 2014); *Steece v. Corr. Corp. of Am.*, 2012 WL 761923 (D. Idaho Mar. 8, 2012). An inmate is not required to grieve every detail of how a perceived deprivation occurred. Instead, it is enough for an inmate to articulate the deprivation with enough specificity to allow prison officials the opportunity to investigate and correct the deficiency. *Steece,* 2012 WL 761923, at *5.

For example, in *Spaude*, a plaintiff who had properly grieved "institutional indifference to inmate safety" was not required to grieve each specific example of policy and procedure that exemplified indifference to inmate safety before alleging it in court.

2011 WL 5038922, at *3. Had prison officials addressed the plaintiff's initial grievance they would have discovered the mirrored reflections of indifference throughout. *Id*. In *Houser*, an inmate who properly grieved that Corizon stalled and delayed treatments was allowed to proceed with a count alleging a not-grieved example of treatment delay through "concealment of x-rays". *Houser v. Corizon*, No. 1:13-CV-00006-EJL, 2014 WL 4249873, at *5 (D. Idaho Aug. 27, 2014). Similarly, the *Steece* court found that inmates need not separately grieve each of a prison's policies that highlight institutional aversion to prisoner protection when "failure to protect from harm" is properly grieved. *Steece*, 2012 WL 761923, at *5. In each case the inmate's grievances were consistent with the PLRA and IDOC's requirement of providing prison officials with the opportunity to understand the nature of the complaint and address its essential purpose accordingly.

Here, Edmo alerted prison officials to her concerns regarding perceived denial of medical care through the grievance process prior to both castration attempts. Edmo argues that had gender reassignment surgery been provided as was requested through those grievances, self-castration would not have occurred.

Edmo first attempted self-castration on September 29, 2015. Prior to that, Edmo filed Grievance II 140000312 requesting evaluation by a specialist for gender reassignment surgery. This grievance should have served to provide prison officials opportunity to understand Edmo's complaint and address it accordingly. Though the

Court makes no finding regarding the prison's response to Edmo's grievance, it is undisputed that Edmo was not provided with gender reassignment surgery.

Edmo's second castration attempt occurred on December 31, 2016. Similarly, prior to that attempt, Edmo filed Grievance II 150001080 which specifically stated "I am being denied an endocrinologist & medical treatment [to] WPATH standards. This is creating a substantial risk of future harm of autocastrating myself." *Maybon Decl., Dkt. 41-3*. Although this grievance was ultimately denied by prison officials and filed over one year before the second castration attempt, it should have served to sufficiently alert prison officials to Edmo's complaint that gender reassignment surgery had not been provided.

Based on the information contained in these grievances, the exhaustion requirement was properly satisfied as related to the claims Edmo raises here.  In particular, Edmo alerted prison officials of a desire to be provided with gender reassignment surgery and that a denial could result in self-castration.

As noted in *Spaude*, if a prisoner seeks relief based on facts or theories too far afield from the subject matter that was brought before prison officials, then the prisoner cannot be said to have exhausted remedies before raising those claims. 2011 WL 5038922, at *5. Here, however, Edmo's grievances provided enough information to allow prison officials to take appropriate responsive measures.

Defendants additionally argue that if a prisoner seeks monetary damages as a result of perceived injury, the incident of injury must be specifically grieved. In support,

Defendants point to *Daniels v. Blades*, which held that the plaintiff who was seeking monetary damages for injuries sustained during an alleged assault was required to exhaust administrative remedies pertaining to those injuries. 2017 WL 874567, * 2 (D. Idaho March 3, 2017). However, *Daniels* is factually distinguishable. In *Daniels*, not only had the prisoner failed to specifically grieve his injuries, but he failed to file a grievance after being moved to a prison tier that he knew housed members of a gang the prisoner had dropped out of and failed to file a grievance regarding the alleged assault by those gang members which had produced his injuries. *Id*. Thus, prison officials were not provided opportunity to address Daniels' issue before the lawsuit was filed. As discussed above, a lack of grievances regarding Edmo's concern over sex reassignment surgery is not the case here. Accordingly, Defendant's Motion to Dismiss will be denied regarding the castration claims.

### B.  *Access to Makeup*

Defendants assert that Edmo did not exhaust administrative remedies relating to a policy prohibiting males from wearing women's makeup. However, they admit that the policy about males wearing female hairstyles were properly exhausted.

Grievance II 150000395, which was fully processed, states a concern regarding makeup and hairstyle. Accordingly, the Court finds access to makeup has been properly grieved and Defendant's Motion to Dismiss this matter will be denied.

**C.** *Name Change*

Edmo has not provided evidence of having grieved a name change. Thus, Edmo has not properly exhausted administrative remedies regarding a name change. Accordingly, Defendant's Motion to Dismiss will be granted without prejudice.

**D.** *Transfer to Women's Facility*

Grievance II 170000899, which addresses Edmo's request for transfer to a women's facility, has not been fully exhausted through the grievance process. Accordingly, Defendant's Motion to Dismiss will be granted without prejudice.

**3. Americans with Disabilities Act Claims**

In order to state a claim under Title II of the ADA, a plaintiff must allege: (1) a disability, (2) consisting of a physical or mental impairment, (3) which substantially limits, (4) one or more major life activities, (5) that they were either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, and (6) such exclusion, denial of benefits, or discrimination was by reason of the disability. 42 U.S.C. § 12101.

Section 12211(b)(1) goes on to provide: "Under this chapter, the term 'disability' shall not include (1) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders."

Defendants argue that Edmo's diagnosis falls under gender identity disorder as specifically excluded from the ADA, and in the alternative that a diagnosis of gender dysphoria is interchangeable with that of gender identity disorder which it recently replaced in the psychiatric field. In contrast, Edmo argues that a diagnosis of gender dysphoria is different from that of gender identity disorder, and thus is not excluded.

As presented here, the issue of whether Edmo's diagnosis falls under a specific exclusion of the ADA presents a genuine dispute of material fact in this case. Therefore, Edmo's ADA claim will not be dismissed.

### 4. Affordable Care Act Claims

Defendants contend that Congress, in adopting the ACA, did not create a private right of action for discrimination, but instead relied upon enforcement mechanisms already available under such anti-discrimination statutes as Title VI, Title IX, § 504 of the Rehabilitation Act, and the Age Discrimination Act. *Dkt. 47*. The contrary view, of course, is that the ACA provides its own enforcement mechanism which stacks upon the enforcement mechanisms available under those statutes. *Dkt. 44*.

The Court must begin with the plain language of the statute. *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). Congress may create a private right of action to enforce federal law through explicit language in the statute, or by implication. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The Court must determine whether the statute manifests an intent to create both a private right and also a private remedy. *Id.* Statutory intent on this latter point is determinative. *Id*. Without it, a cause of action does not exist

and courts may not create one, no matter how desirable that might be as a policy matter. *Id.* at 286-87 (internal citations omitted). The text of the statute must be "phrased in terms of person benefitted" for a statute to create such private rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002).

Section 1557 expressly incorporates four federal civil rights statutes and includes similar rights-creating language found in those statutes. See 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."); 20 U.S.C. § 1681 ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ..."); 42 U.S.C. § 6102 ("[N]o person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance."); 29 U.S.C. § 794 ("No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....").

Section 1557 cross-references these four federal civil rights statutes to provide the classes of those protected by the statute's non-discrimination provision. The cross

reference to these statutes and the use of similar rights-creating terms sufficiently manifests Congressional intent to create a private right. See 42 U.S.C. § 18116(a) ("an individual shall not, on the ground prohibited [under the federal civil rights statutes], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under" a variety of programs and activities). In addition, 42 U.S.C. § 18116(a) expressly provides a private remedy by stating that the "enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection." Finally, 42 U.S.C. § 18116(b) states, "[n]othing in this title (or an amendment made by this title) shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under [the four federal statutes]." This reinforces the notion that Congress intended create a private right and remedy by not limiting the rights provided under the cross-referenced federal statutes. Therefore, cross-referencing the statutes and the express incorporation of the enforcement mechanisms from those statutes is probative of Congressional intent to provide both a private right and a private remedy for violations of Section 1557. Accordingly, Defendant's Motion to Dismiss this claim will be denied.

### 5. Statute of Limitation Issues

The statute of limitations period for filing a civil rights lawsuit under 42 U.S.C. § 1983 is determined by the statute of limitations period for personal injuries in the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261 (1985) (later overruled only as to

claims brought under the Securities Exchange Act of 1934, not applicable here). Idaho

Code § 5-219 provides for a two-year statute of limitations for professional malpractice,

personal injury, and wrongful death actions. Federal civil rights actions arising in Idaho

are governed by this two-year statute of limitations.

Although the Court relies upon the state statute of limitations to determine the

time for filing a claim, the Court uses federal law to determine when a claim accrues.

*Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). The Ninth Circuit has

determined that a claim accrues when the plaintiff knows, or should know, of the injury

that is the basis of the cause of action. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir.

1996). Under this "discovery rule," the statute begins to run once a plaintiff knows of his

injury and its cause. *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986). A

claim accrues upon awareness of an actual injury, "and not when the plaintiff suspects a

legal wrong." *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1049 (9th

Cir. 2008).

Here, Defendants argue that Edmo seeks to recover damages for injuries and

"severe symptoms" that she allegedly suffered as a result of incidents that occurred more

than two years prior to the filing of this civil rights lawsuit on April 6, 2017. *Dkt. 43.*

(Pointing to *Dkt. 36*, ¶¶ 8, 9, 44-45, 64, 67, 79, 88, 93, 95, 101,108, and 113). Defendants

specifically note that Edmo described an attempted suicide in February 2014 and

"experienced severe symptoms" between 2012 to early 2015 as a result of Defendants'

having "denied and/or ignored Plaintiff's requests." *Dkt. 43*. (Pointing to *Dkt. 36*, ¶¶ 44(a)-(j), 45, and 49) (*SMF*, ¶¶ 5, 8).

Edmo does not dispute the effect of the applicable statute of limitations, but points out that the claims actually included in her complaint accrued less than two years prior to the filing of her complaint and are therefore not time barred. Accordingly, Defendant's request to preclude Edmo from seeking damages arising from events that occurred prior to April 6, 2015 will be granted. However, claims accruing after that date are not time-barred and will not be dismissed.

### 6. State Negligence Claims

Idaho Code § 6-905 of the Idaho Tort Claims Act states: All claims against the state arising under the provisions of this act and all claims against an employee of the state for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the secretary of state within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, whichever is later."

Idaho Code § 6-907 goes on to provide that: "All claims presented to and filed with a governmental entity shall accurately describe the conduct and circumstances which brought about the injury or damage, describe the injury or damage, state the time and place the injury or damage occurred, state the names of all persons involved, if known, and shall contain the amount of damages claimed…"

Defendants claim that Edmo did not properly comply with the Idaho Tort Claims Act, cannot sue the state officials in their official capacity because of 11th Amendment immunity, and failed to plead Defendants' wrongdoing with sufficient specificity. *Dkt. 47.* Edmo provided only a limited response to these contentions, arguing only that the notice requirements of the ITCA were satisfied. Notably, she did not otherwise address whether she complied with other provisions of the statute.

Edmo's 11/24/2014 tort claim (Claim 1) identifies disciplinary reports issued regarding Edmo's feminine hairstyle as a violation of the Prison Rape Elimination Act. *Dkt. 42. Ex 1.* Although named defendants were not specifically listed in the filing of this tort, it served to notify the state of Edmo's underlying claim and was filed within 180 days of a DOR received on July 07, 2014.

Edmo's 12/12/2016 tort claim (Claim 2) does not provide a date on which the alleged injury was suffered, does not specify any alleged negligent acts, and does not specify anyone who was involved. *Dkt. 42. Ex. 2.* As such, it does not properly notify the state of Edmo's claim, nor does it comply with the 180 day filing mandate under Idaho Code § 6-905.

Edmo's 02/13/2017 tort claim (Claim 3) identifies a 09/29/2015 and a 12/31/2016 castration attempt. *Dkt. 42. Ex. 3.* The claim was not filed within 180 days of the 09/29/2015 attempt, but was properly filed as to the 21/31/2016 attempt. As such, Edmo may only proceed regarding the latter claim.

Accordingly, Defendant's request to dismiss Edmo's state negligence claims will be denied as to Claim 1, granted as to Claim 2, and denied regarding the first castration attempt and granted regarding the second attempt found in Claim 3.

## ORDER

**IT IS ORDERED:**

1. Defendants' First Motion for Dispositive Relief (Dkt. 39) is **GRANTED IN PART and DENIED IN PART.**

    a. Defendants' Motion for Summary Judgment is GRANTED regarding a name change and transfer to a women's facility. Plaintiff may proceed on self-castration and access to makeup claims.

    b. Defendants' Motion to Dismiss Americans with Disabilities Act claims is DENIED without prejudice.

    c. Defendants' Motion to Dismiss Affordable Care Act claims is DENIED without prejudice.

    d. Defendants' Motion to Dismiss statutorily time-barred claims is GRANTED.

    e. Defendants' Motion to Dismiss State Negligence Claim 1 is DENIED without prejudice.

    f. Defendants' Motion to Dismiss State Negligence Claim 2 is GRANTED.

g.  Defendants' Motion to Dismiss State Negligence Claim 3 is GRANTED regarding the 09/29/2015 castration attempt and DENIED regarding the 12/31/2016 attempt.

DATED: June 7, 2018

B. Lynn Winmill
Chief U.S. District Court Judge