Lori Rifkin, Esq. (CA # 244081)
(*pro hac vice*)
Rifkin Law Office
3630 High St., # 18197
Oakland, CA 94619
Telephone: (510) 414-4132
Email: lrifkin@rifkinlawoffice.com

Dan Stormer, Esq. (CA # 101967)
(*pro hac vice*)
Shaleen Shanbhag, Esq. (CA # 301047)
(*pro hac vice*)
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
         sshanbhag@hadsellstormer.com

Attorneys for Plaintiff

Craig Durham (ISB # 6428)
Deborah Ferguson (ISB # 5333)
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, ID 83702
Telephone: 208-345-5183
Facsimile: 208-908-8663
Emails: chd@fergusondurham.com
         daf@fergusondurham.com

Amy Whelan, Esq. (CA # 215675)
(*pro hac vice*)
Julie Wilensky, Esq. (CA # 271765)
(*pro hac vice*)
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone: 415-365-1338
Facsimile: 415-392-8442
Email: AWhelan@NCLRights.org
         jwilensky@NCLRights.org

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADREE EDMO (a/k/a MASON EDMO),<br><br>Plaintiff,<br><br>v.<br><br>IDAHO DEPARTMENT OF CORRECTION, ET AL.<br><br>Defendants. | Case No.: 1:17-cv-00151-BLW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES THROUGH SEPTEMBER 30, 2021** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION ........................................................................................................... 1

RELEVANT FACTS AND PROCEDURAL HISTORY ............................................................. 1

FACTS RELATED TO PLAINTIFF'S REQUEST FOR A MULTIPLIER ..................................... 5

ARGUMENT ................................................................................................................. 6

I.      Plaintiff is the Prevailing Party .............................................................................6

II.     Plaintiff Is Entitled to Recover Her Requested Fees and Expenses, and a 2.0 Multiplier is Warranted ...............................................................................................................7

        A.      Plaintiff's Hours and Expenses Are Reasonable ................................................. 9

        B.      Plaintiff is Entitled to a Fully Compensatory Fee ............................................. 11

        C.      The *Kerr* Factors Support a 2.0 Multiplier ..................................................... 12

                1.      The Customary Fee in Similar Litigation ................................................. 13

                2.      Time Limitations Imposed by the Client or Circumstances ..................... 14

                3.      Exceptional Results Due to Superior Performance of Counsel ............... 15

                4.      The Experience, Reputation, and Ability of the Attorneys....................... 16

                5.      The Undesirability of the Case ................................................................ 16

                6.      The Nature and Length of the Client Relationship ................................. 17

                7.      Awards in Similar Cases ......................................................................... 18

CONCLUSION.............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Balla v. Idaho State Bd. of Corr.*,
No. CV-81-1165-S-BLW, 2016 WL 6762651 (D. Idaho Feb. 1, 2016).......................8, 13, 19

*Bown v. Reinke*,
No. 1:12-CV-262-BLW, 2016 WL 2930904 (D. Idaho May 19, 2016)...........................13, 18

*Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human, Resources*
532 U.S. 598 (2001).....................................................................................................7

*Camacho v. Bridgeport Financial, Inc.*,
523 F.3d 973 (9th Cir. 2008) ......................................................................................8

*Clark v. City of Los Angeles*,
803 F.2d 987 (9th Cir. 1986) .....................................................................................10

*Davis v. City & Cty. Of San Francisco*,
976 F.2d 1536 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984
F.2d 345 (9th Cir. 1993) ............................................................................................17

*Edmo v. Corizon*,
935 F.3d 757 (9th Cir. 2019) ......................................................................................3

*F.V. v. Barron*,
286 F. Supp. 3d 1131 (D. Idaho 2018) ......................................................................6

*Farrar v. Hobby*,
506 U.S. 103 (1992).................................................................................................6, 9

*Fischer v. SJF-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000) ................................................................................7, 12

*Fox v. Vice*,
563 U.S. 826 (2011)....................................................................................................7

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1993) ..............................................................................8, 13, 14

*Ginest v. Bd. of Cty. Comm'rs of Carbon County*,
423 F. Supp. 2d 1237 (D. Wyo. 2006).......................................................................13

*Gomez v. Gates*,
804 F. Supp. 69 (C.D. Cal. 1992) .............................................................................16

*Guerrero v. Cummings*,
  70 F.3d 1111 (9th Cir. 1995) ................................................. 10

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ................................................... 10

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................... 7, 9, 11, 12

*Idaho Dep't of Corr. v. Edmo*,
  Nos. 19-35017, 19-35019, Pet. for Cert. 33, 35, 36 (May 6, 2020) ......... 16

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ............................................... 18

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ...................................... *passim*

*Kerr v. Screen Extras Guild*, *Inc.*,
  526 F.2d 67 (9th Cir. 1975) ........................................ *passim*

*Mendez v. County of San Bernardino*,
  540 F.3d 1109 (9th Cir. 2008) ............................................... 8

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) ............................................... 18

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ......................................... 7, 12, 13

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ............................................. 10

*Oviatt v. Pearce*,
  954 F.2d 1470 (9th Cir. 1992) ............................................... 7

*Padgett v. Loventhal*,
  706 F.3d 1205 (9th Cir. 2013) ............................................. 11

*Parsons v. Ryan*,
  949 F.3d 443 (9th Cir. 2020), *cert. denied sub nom. Shinn v. Jensen*, 141 S.
  Ct. 1054 (2021) ......................................................... 8, 12

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ....................................................... 16

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ............................................. 12, 13, 18, 19

*Perez v. Cate*,
    632 F.3d 553 (9th Cir. 2011) ........................................................................8

*Planned Parenthood of Cent. & N. Ariz. v. State of Ariz.*,
    789 F.2d 1348 (9th Cir. 1986) ....................................................................16

*Rodriguez v. Cty. Of Los Angeles*,
    96 F. Supp. 3d 1012 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018)...........................18

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) ......................................................................9

*Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*,
    489 U.S. 782 (1989)......................................................................................6

**Statutes**

42 U.S.C. §1983 ................................................................................................6

42 U.S.C. § 1988 ..............................................................................................1

42 U.S.C. § 1988(b) ....................................................................................6, 10

42 U.S.C. § 1997e(d)(1).................................................................................12

**Other Authorities**

Admin. Office of the U.S. Courts, The Judiciary Fiscal Year 2021 Congressional
    Budget Summary 39 (Feb. 2020),
    https://www.uscourts.gov/sites/default/files/fy_2021_congressional_budget_s
    ummary_0.pdf (last visited July 20, 2021) ...................................................8

Fed. R. Evid. 201(c)(2) .....................................................................................8

## INTRODUCTION

As a result of this lawsuit, Plaintiff Adree Edmo became the first incarcerated person in the country to receive court-ordered surgery to treat the serious medical condition of gender dysphoria. She secured a permanent injunction requiring Defendants to provide this medically necessary treatment after more than a year of intensely contested litigation, followed by two more years of appellate litigation before the Ninth Circuit and the U.S. Supreme Court, as well as work required to enforce the remedy. Ms. Edmo's counsel represented her without charging fees of any sort, assuming the very high risk that they might never be compensated for their time. The demands on the attorneys' time over the litigation proved to be immense, as the case proceeded on an expedited injunction track and resulted in thousands of pages of legal filings in a relatively short period of time. Pursuant to District of Idaho Local Civil Rules 54.1 and 54.2, and 42 U.S.C. § 1988, Plaintiff now moves this Court for an award of attorneys' fees and expenses of $2,821,724.73 through September 30, 2021. This amount represents Plaintiff's counsel's lodestar of $1,364,923, after billing judgment reductions, in addition to a 2.0 multiplier due to the *Kerr* factors not subsumed in the lodestar. At an appropriate time, Plaintiff's counsel will update their fees and any expenses incurred after September 30, 2021.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Ms. Edmo filed this case pro se, and the Court then granted Ms. Edmo's motion to appoint counsel. Upon request of the Court, Plaintiff's counsel began representing Ms. Edmo in 2017. All counsel, at every stage of the case, agreed to represent Ms. Edmo on a contingency basis, meaning that they might never be compensated for either their legal work or expenses. Rifkin Decl. ¶ 18; Whelan Decl. ¶ 22; Ferguson Decl. ¶ 20; Stormer Decl. ¶ 35; Rao Decl. ¶ 8. Because of the urgency of Ms. Edmo's medical needs, counsel immediately filed an amended complaint, opposed Defendants' motion for partial summary judgment, and began preparing a motion for preliminary

injunction, which was filed on June 1, 2018. Rifkin Decl. ¶ 21. That motion was based on Ms. Edmo's Eighth Amendment claim, Equal Protection claim (based on sex), and Affordable Care Act claim (based on sex). *Id.* An intense period of discovery followed, during which the parties conducted thirteen depositions of fact and expert witnesses, worked with experts to prepare reports, and exchanged written discovery. *Id.* ¶ 22. The evidentiary hearing spanned three court days, with seven live witnesses, and the admission of nearly forty exhibits. *Id.* ¶ 23. Counsel for both sides filed post-trial briefs, proposed findings of fact and conclusions of law, and supplemental testimony. *Id.*

Based on this evidence, in December 2018, this Court held that Defendants were violating Ms. Edmo's Eighth Amendment right to necessary medical treatment, and granted not just a preliminary injunction, but a permanent injunction ordering Defendants to provide Ms. Edmo gender confirmation surgery. The Court found that Ms. Edmo presented "extensive evidence that, despite years of hormone therapy, she continues to experience gender dysphoria so significant that she cuts herself to relieve emotional pain. With full awareness of Ms. Edmo's circumstances, [Defendants] refuse to provide Ms. Edmo with gender confirmation surgery…[and] have ignored generally accepted medical standards for the treatment of gender dysphoria." *Id.* ¶ 24 (citing Dkt. 149).

Because the Court granted Ms. Edmo the requested injunctive relief related to her Eighth Amendment Claim, the Court found she could not show likelihood of other irreparable injury on the two other claims upon which Ms. Edmo sought injunctive relief, the Fourteenth Amendment and Affordable Care Act claims. Dkt. 149 at 44. The Court also determined that "a more developed record on Defendants' treatment of transgender inmates is necessary before making a broader ruling based upon the Fourteenth Amendment or Affordable Care Act."

Following that ruling, Defendants filed the first of three appeals to the Ninth Circuit, as well as the first of many stay motions. Rifkin Decl. ¶¶ 26-27. This Court denied Defendants' initial motion for a stay on March 4, 2019, highlighting its prior finding that "the risks of not providing gender confirmation surgery to Ms. Edmo include surgical self-treatment, emotional decompensation, and risk of suicide given her high degree of suicide ideation." Dkt. 175 at 1. Because Ms. Edmo's "medical needs are urgent," this Court urged Defendants "to act accordingly" to protect her Constitutional rights. *Id.* at 3.

The Ninth Circuit ordered expedited briefing and argument of the appeal, including briefing on Defendants' further motions to stay. Rifkin Decl. ¶ 27. Meanwhile, Defendants took the position in the District Court that they did not have to provide pre-surgical appointments to Ms. Edmo that were necessary prerequisites to surgery. *Id.* ¶ 28. Accordingly, Plaintiff's counsel filed an emergency motion in the Ninth Circuit to specifically exempt those appointments from the stay, which the Ninth Circuit granted. Plaintiff's counsel filed Ms. Edmo's appellate brief on April 4, 2019, coordinated five amicus briefs in support of the District Court's injunction, and argued the appeal on May 16, 2019. *Id.*

On August 23, 2019, the Ninth Circuit issued its ruling upholding this Court's fact-specific determination that Defendants violated the Eighth Amendment by denying Ms. Edmo surgery and affirmed the injunction due to Ms. Edmo's "severe, ongoing psychological distress and high risk of self-castration and suicide she faces absent surgery." *Id.* ¶ 31; *Edmo v. Corizon*, 935 F.3d 757, 797 (9th Cir. 2019). Despite both this Court's and the Ninth Circuit's findings regarding Ms. Edmo's ongoing and desperate need for care, Defendants made litigation decisions in the subsequent months that further delayed Ms. Edmo's medical care and significantly increased the attorney fees in this case. For example, Defendants elected to seek rehearing *en banc*, belatedly contested the scope of this Court's orders about pre-surgical care and surgery (resulting in

additional briefing and an in-person hearing), filed multiple appeals of the District Court's orders (one of which Plaintiff successfully moved to dismiss), and filed additional stay motions (including on an "emergency" basis that the Ninth Circuit ruled improper). Rifkin Decl. ¶¶ 32-33, 43.[1] When the Ninth Circuit denied rehearing *en banc*, Defendants initiated yet another round of stay motions, first in the Ninth Circuit, and then in the U.S. Supreme Court, both of which were denied after Plaintiff filed oppositions. *Id.* ¶ 35.

In July 2020, nineteen months after this Court ordered Defendants to provide Ms. Edmo surgery—and after another round of motions necessitated by Defendants' failure to take necessary COVID-19 precautions to ensure surgery could move forward—Ms. Edmo finally received the treatment ordered. *Id.* ¶¶ 36-37. Plaintiff's legal fight did not end there, however, as litigation continued before the U.S. Supreme Court. Because this case involved the first transgender incarcerated person in the country to receive court-ordered surgery—a precedent that, while unique to the facts of Ms. Edmo's case, was significant in the fields of constitutional rights and prisoner litigation—it was essential to protect the lower court rulings. *Id.* ¶ 38. That was especially true because Defendants sought *certiorari* review based on extreme legal arguments that, if granted, could have upended Eighth Amendment legal precedents as they relate to incarcerated people and their medical needs. *Id.* Because of the importance of these issues not only for Ms. Edmo, but for all prisoners, Ms. Edmo retained Supreme Court counsel for this phase of the litigation. *Id.* ¶ 39. Between May and August 2020, Plaintiff's counsel successfully opposed Defendants' application for a stay, and filed oppositions to both Defendants' petition for *certiorari* and their subsequent

---

[1] IDOC Defendants also filed a motion in Idaho state court in July 2018, without any notice to Plaintiff's counsel, that improperly disclosed Ms. Edmo's confidential criminal and medical information. Rifkin Decl. ¶ 43. To protect Ms. Edmo's rights, Plaintiff moved to strike a declaration containing confidential information about Ms. Edmo and for a Protective Order. Dkt. 81.

suggestion of mootness. *Id.* ¶ 41. On October 13, 2020, the Supreme Court denied *certiorari* and rejected the mootness argument. *Id.*

With surgery completed and having prevailed on appeal, Ms. Edmo voluntarily dismissed her remaining claims other than her outstanding Eighth Amendment claim for non-injunctive damages relief. *Id.* ¶ 42. The parties then participated in judicially-supervised settlement negotiations, which resolved Ms. Edmo's claim for damages, leaving attorneys' fees and expenses as the only remaining issue for litigation. *Id.*

### FACTS RELATED TO PLAINTIFF'S REQUEST FOR A MULTIPLIER

Additional facts related to this case support a fees multiplier. Ms. Edmo originally filed her case pro se and sought appointment of counsel. Utilizing the standard that counsel should be appointed only in "exceptional circumstances," the Magistrate Judge directed court staff to begin a search for pro bono counsel. Ferguson Decl. ¶¶ 17-18; Dkt. 12. Court staff contacted Plaintiff's local counsel, who agreed to represent Ms. Edmo only after securing the assistance of outside counsel with expertise in both constitutional prisoners' rights cases and issues related to transgender people specifically. Ferguson Decl. ¶ 19. There are very few attorneys in Idaho who litigate even straightforward prisoner civil rights cases; the ACLU of Idaho has only a single attorney who does so, and the Legal Aid office is prohibited from representing prisoners. Belodoff Decl. ¶¶ 7, 14; Ferguson Decl. ¶ 18. There are many reasons that few attorneys will litigate these cases, including the Prison Litigation Reform Act (PLRA) cap on hourly rates far below the market, the cap on damages, court deference to the decisions of prison administrators, and the incredible expense of litigating against taxpayer funded prison systems. Belodoff Decl. ¶ 18; Ferguson Decl. ¶ 18. Because Ms. Edmo's case also related to medical care, her attorneys had to pay for experts, an expense not recoverable under 42 U.S.C. § 1988. Whelan Decl. ¶ 28; Belodoff Decl. ¶ 18.

Securing competent counsel to represent Ms. Edmo was especially important given the unpopularity of her case, Belodoff Decl. ¶ 22, and the legal landscape in Idaho. Idaho has no state laws that expressly protect transgender people from discrimination and was the first state to try to ban transgender children from playing sports. Ferguson Decl. ¶ 30. Until 2018, Idaho banned transgender people from correcting their birth certificates. *Id.* After this Court struck down that policy as unconstitutional, *F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018), state lawmakers passed HB 509 to circumvent the Court's order and again ban transgender people from correcting their birth certificates. *Id.* The Governor of Idaho repeatedly politicized Ms. Edmo's serious medical issues and issued press releases implying a connection between a person's commitment offense and a prison's duty to provide medical care. *Id.* Plaintiff's counsel experienced animosity due to their representation of Ms. Edmo numerous times, including during interviews with the media, social gatherings, and even a dental visit. *Id.* ¶ 32. They also received harassing emails and voicemails from self-identified Idaho "taxpayers" who, among other things, referred to them as a "sick, f….g pervert," and claimed they should be "locked away in a psych ward" for representing Ms. Edmo. *Id.* ¶ 33.

## ARGUMENT

### I.    Plaintiff is the Prevailing Party

In an action pursuant to 42 U.S.C. §1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ." 42 U.S.C. § 1988(b). A prevailing party is one who has "succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (internal quotations omitted); *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.").

Plaintiff is the "prevailing party" under § 1988(b) and is entitled to an award of reasonable attorneys' fees and expenses. She succeeded on her claim that Defendants violated the Eighth Amendment by denying her necessary medical treatment, resulting in serious harm and ongoing substantial risk of serious harm. Through her lawsuit, Plaintiff obtained a court order for the permanent injunctive relief sought—gender confirmation surgery. This order was affirmed on appeal and Plaintiff received surgery through enforcement of the court order. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human*, *Resources* 532 U.S. 598, 604 (2001) (prevailing party is one who secures an "enforceable judgment[] on the merits."). As such, a fee award is necessary to compensate Plaintiff for the cost of vindicating her civil rights and to hold Defendants accountable for violating federal law. *Fox v. Vice*, 563 U.S. 826, 833 (2011).

## II.   Plaintiff Is Entitled to Recover Her Requested Fees and Expenses, and a 2.0 Multiplier is Warranted

Calculating a fee award is a two-step process. First, the court calculates the "lodestar" amount, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *Fischer v. SJF-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The lodestar method of calculating fees is strongly presumed to be reasonable. *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992); *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996). Second, the court has the discretion to adjust the lodestar amount based on the factors set forth in *Kerr v. Screen Extras Guild*, *Inc.*, 526 F.2d 67 (9th Cir. 1975) (the "*Kerr* factors")[2] that have not already been subsumed in the lodestar calculation. *Fischer v. SJF-P.D.*

---

[2] The *Kerr* factors include: (1) the time and labor required of the attorneys, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other work by the attorney due to acceptance of the case, (5) the customary fee for similar cases, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount of money, or the value of the rights involved, and

*Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008); *Balla v. Idaho State Bd. of Corr.*, No. CV-81-1165-S-BLW, 2016 WL 6762651, at *10 (D. Idaho Feb. 1, 2016).

In most civil rights cases, reasonable hourly rates are those that are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Financial*, *Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). In civil rights cases on behalf of incarcerated people, however, the hourly rate is predetermined by the Prison Litigation Reform Act (PLRA), which establishes the baseline PLRA rate as 150 percent of the rate the "Judicial Conference authorized and requested from Congress" in the "Congressional Budget Summary and the Report of the Proceedings of the Judicial Conference of the United States[.]" *Parsons v. Ryan*, 949 F.3d 443, 464-65 (9th Cir. 2020), *cert. denied sub nom. Shinn v. Jensen*, 141 S. Ct. 1054 (2021). The current rate authorized by the Judicial Conference for the payment of court-appointed counsel is $155 per hour for FY 2021,[3] and accordingly, 150 percent of that rate is $232.50 per hour.[4] *Cf. Gates v. Deukmejian*, 987 F.2d 1392, 1406-07 (9th Cir. 1993) (holding that use of current rather than historic rates are appropriate to make up for delay in payment).

---

[3] the results obtained, (9) the experience, reputation and ability of counsel, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

[3] Admin. Office of the U.S. Courts, The Judiciary Fiscal Year 2021 Congressional Budget Summary 39 (Feb. 2020), https://www.uscourts.gov/sites/default/files/fy_2021_congressional_budget_summary_0.pdf (last visited July 20, 2021). Plaintiff requests the Court take judicial notice of this government document. Fed. R. Evid. 201(c)(2).

[4] Like attorney fees under the PLRA, the hourly rate for paralegals is also capped by the PLRA at 150% of the hourly rate determined by the Judicial Conference. *See Perez v. Cate*, 632 F.3d 553, 556-58 (9th Cir. 2011) (paralegal fees awarded to prevailing plaintiffs in prison civil rights litigation are subject to same hourly cap under the PLRA as attorney fees where award is below paralegal market rate in relevant area); *Parsons*, 949 F.3d at 466 ("[P]aralegals are entitled to the PLRA's maximum hourly rate if the paralegal market rate exceeds that cap.").

As set forth below, applying this two-step process in this case demonstrates the number of hours Plaintiff's counsel spent is reasonable, and the *Kerr* factors strongly support a 2.0 multiplier to the lodestar.

**A.      Plaintiff's Hours and Expenses Are Reasonable**

The most critical factor in determining the reasonableness of a fee award is "the degree of success obtained." *See*, *e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The moving party bears the burden of establishing the reasonableness of the hours claimed, and the party must carry that burden by submitting adequate documentation of those hours. *See Hensley*, 461 U.S. at 437. The Court should not grant a fee award for "hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 433–34.

Here, Ms. Edmo achieved superlative results—obtaining an injunction resulting in life-saving surgery and defending that relief through numerous appeals, a petition for rehearing *en banc*, and an application for stay and petition for *certiorari* to the U.S. Supreme Court. *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (excellent results occur when a plaintiff fulfills the goal of the litigation or "accomplishes its mission"). As a result of this case, Ms. Edmo was the first transgender incarcerated person in the country to receive gender confirmation surgery pursuant to court order. The Ninth Circuit decision upholding this Court's ruling in her favor has already been cited more than 200 times by other courts and law review articles. Rifkin Decl. ¶ 44.

Plaintiff's counsel's lodestar in this case is reasonable, and fully supported by detailed timesheets documenting the hours and the tasks that were completed.[5] Rifkin Decl. ¶ 46 and Ex. B; Whelan Decl. ¶ 28 and Ex. B; Ferguson Decl. ¶ 35 and Ex. B; Stormer Decl. ¶ 24 and Ex. C; Hartnett Decl. ¶ 15 and Ex. 1; Rao Decl. ¶ 12 and Ex. C; Belodoff Decl. ¶ 19. As the Court is

---

[5] For ease of reference, a summary of the claimed fees and expenses, divided among the law offices, is attached as **Appendix A**.

aware, the case involved thousands of pages of legal filings, discovery, an evidentiary hearing, and appellate work on complex constitutional issues of first impression on an expedited basis. Plaintiff's attorneys conscientiously avoided duplication of effort, and time constraints required counsel to divide and delegate tasks. As the timesheets and results of this case demonstrate, Plaintiff's counsel's work was reasonable and necessary to obtain the injunction and defend it on appeal. Moreover, Plaintiff's counsel have already exercised appropriate billing judgment reductions, including by excluding various timekeepers, and engaging in the same reductions of bills that the firms would do for fee-paying clients. Rifkin Decl. ¶ 48; Whelan Decl. ¶ 29; Stormer Decl. ¶ 37; Hartnett Decl. ¶ 21; Rao Decl. ¶ 13. The hours claimed are not excessive, redundant, or otherwise unnecessary and, in light of the billing judgment reductions already made, are entitled to deference by the Court. *See, e.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

Plaintiff's time records also include time spent preparing this motion for attorneys' fees, which is compensable. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (citations omitted); *see also Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995) (same). Plaintiff is also entitled to reimbursement of expenses that would normally be billed to fee-paying clients. 42 U.S.C. § 1988 (b); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Plaintiff's attorneys have incurred a total of $72,662.79 in expenses related to the case,[6] as supported by the accompanying

---

[6] These expenses are in addition to the statutory costs outlined in Plaintiff's final Bill of Costs. Dkt. 312. That final Bill of Costs does not include $292.90 of statutory costs awarded by the Ninth Circuit on February 19, 2020, Dkt. 109, but which remains unpaid, or the $129.70 of costs filed previously with this Court, which is similarly unpaid. Dkt. 261.

attorney declarations. *See* Appendix A; Rifkin Decl. ¶ 49 and Ex. C; Stormer Decl. ¶ 45 and Ex. C; Whelan Decl. ¶ 32 and Ex. C; Hartnett Decl. ¶ 18 and Ex. 1.

### B.     Plaintiff is Entitled to a Fully Compensatory Fee

Plaintiff anticipates that Defendants may seek to reduce her fees because the Court did not grant relief on each of her original claims. Decades of Supreme Court and Ninth Circuit precedent establish that any such reduction would be improper. In *Hensley*, the Supreme Court considered whether the district court could grant attorneys' fees for time expended on claims on which plaintiffs did not prevail. The Court held that even though a plaintiff was not entitled to an award of fees for time spent on unsuccessful claims that were unrelated to successful claims, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." 461 U.S. at 440. Thus, a court's duty in a complex case is not to parse out and determine fees on a claim-by-claim basis, since "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. Rather, where the plaintiff presents different claims for relief that "involve a common core of facts" or are based on "related legal theories," the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*; *see also Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013) ("Often, attorney work will bear on multiple claims, only some of which are successful. Fees for work which relates only to unsuccessful claims should not be awarded. But where attorney work proves beneficial to a successful claim, district courts should generally award these fees in full, even if the work is also useful to an unsuccessful claim.") (citing *Hensley*, 461 U.S. at 436)).

Ms. Edmo's claims are related because they all involved a common core of facts and were simply alternative legal theories of liability to seek redress for the conditions of confinement to

11

which Defendants subjected Ms. Edmo related to her gender dysphoria, including Defendants'
failure to provide her with medically necessary care. As such, her claims were legally and factually
intertwined and her attorneys' work was "devoted generally to the litigation as a whole." *Hensley*,
461 U.S. at 435. Moreover, the primary relief Ms. Edmo sought when she moved for injunctive
relief on three of her claims was gender confirmation surgery and she successfully obtained that
relief.

### C.   The *Kerr* Factors Support a 2.0 Multiplier

The PLRA "authorizes multipliers to the base hourly rate above the cap set by 42 U.S.C. §
1997e(d)(1)." *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020), *cert. denied sub nom. Shinn v.
Jensen*, 141 S. Ct. 1054 (2021); *see Kelly v. Wengler*, 822 F.3d 1085, 1093, 1102-06 (affirming
2.0 and 1.3 multiplier in prisoner civil rights case where attorneys demonstrated superior
performance and the need to attract competent counsel). A fee applicant bears the burden of
proving that a fee enhancement is necessary and must produce "specific evidence" supporting the
award. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).

Any enhancement to the lodestar must be determined based on an evaluation of the *Kerr*
factors "that are not already subsumed in the initial lodestar calculation." *Parsons*, 949 F.3d at 467
(quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 & n.4 (9th Cir. 2000)). *Kerr* factors one
through four and six[7] are considered subsumed in the lodestar calculation. *Morales v. City of San
Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981
(9th Cir. 1997). The *Kerr* factors relevant to determining whether to enhance the lodestar figure
therefore include:

> (5) the customary fee, . . . (7) time limitations imposed by the client or the
> circumstances, (8) the amount involved and the results obtained, (9) the

---

[7] Including the time and labor required, novelty and difficulty of issues, requisite skill necessary,
preclusion of other work, and whether the fee is fixed or contingent. *Kerr*, 526 F.2d at 70.

experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*; *Bown v. Reinke*, No. 1:12-CV-262-BLW, 2016 WL 2930904, at *2 (D. Idaho May 19, 2016); *Balla*, 2016 WL 6762651, at *10. These factors, taken together, support a multiplier of 2.0 due to Plaintiff's counsel's superior performance and extraordinary results, as well as the need to attract competent counsel for important but unpopular civil rights cases on behalf of marginalized and vulnerable people.

### 1. The Customary Fee in Similar Litigation

The fifth *Kerr* factor considers the customary fee in similar litigation. Reasonable hourly rates for civil rights cases are usually determined by the local forum where the case is litigated, but non-local rates can be awarded if local counsel are unavailable "either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to properly handle the case." *Gates*, 987 F.2d at 1405. This *Kerr* factor supports a multiplier regardless of whether the Court applies local or non-local rates.

First, a lodestar based on the PLRA rate cap of $232.50 per hour would compensate Plaintiff's counsel for only a fraction of their work using even local Idaho rates. Ferguson Decl. ¶ 36. Using Ms. Ferguson and Mr. Durham as examples, the PLRA rate would compensate them for only 49 percent and 58 percent of their work, respectively.[8] This, by definition, is not a reasonable fee. *See, e.g., Kelly*, 822 F.3d at 1104 ("When the lodestar figure based on the PLRA rate is insufficient to induce competent attorneys to accept appointment in meritorious civil rights cases, it is by definition not a reasonable fee.") (citing *Perdue*, 559 U.S. at 552); *see also Bown v. Reinke*, 2016 WL 2930904, at *2 ("The PLRA rates are far below market rates in this region for this type

---

[8] The PLRA rate divided by Ms. Ferguson's $475 and Mr. Durham's $400 per hour rates.

of work based on the Court's long experience in evaluating fee petitions."); *Ginest v. Bd. of Cty. Comm'rs of Carbon County*, 423 F. Supp. 2d 1237, 1241 (D. Wyo. 2006) (finding "the PLRA fees are exceptionally low and an enhancement is permissible to make the fee more fair").

This gulf in compensation between the PLRA cap and a customary rate becomes even more extreme when considering outside counsel rates, which would be warranted in the absence of the PLRA. Local counsel agreed to represent Ms. Edmo at the Court's request and only *after* securing the assistance of outside counsel who specialize in both prison constitutional issues and transgender medical issues in particular. Ferguson Decl. ¶ 18-19; Rifkin Decl. ¶ 17. Without that assistance, local counsel would not have been able to represent Ms. Edmo, Ferguson Decl. ¶¶ 19, 31, and it is highly unlikely that any other attorney in Idaho would have taken the case. *Id.* ¶ 18; Belodoff Decl. ¶¶ 14. 18. Accordingly, this is precisely the type of civil rights case where outside hourly rates would otherwise apply, *Gates*, 987 F.2d at 1405, further supporting a multiplier. Those rates, which range from $400 to $1,200 for the attorneys who litigated the case before the District Court and the Ninth Circuit, are hundreds of dollars per hour more than the PLRA rate. Rifkin Decl. ¶ 46; Whelan Decl. ¶ 30; Stormer Decl. ¶ 21. At the Supreme Court stage, it was reasonable for Ms. Edmo to retain attorneys who specialize in litigation before that Court. Belodoff Decl. ¶ 20; Rifkin Decl. ¶ 39. When the City of Boise filed a petition for *certiorari*, for instance, it paid $75,000 to Supreme Court counsel just to file the petition for *certiorari* and would have paid another $225,000 had the case been accepted. Belodoff Decl. ¶ 20. The City of Boise's contract also specifically contemplated paying a multiplier similar to the one sought by Plaintiff here. *Id.* ¶ 21. This prong strongly supports a 2.0 multiplier.

## 2. Time Limitations Imposed by the Client or Circumstances

*Kerr* factor seven considers unusual time limitations imposed by the client or the circumstances. *Kerr*, 526 F.2d at 70; *Kelly*, 822 F.3d at 1103 (affirming enhancement of the

lodestar in part because "Plaintiffs' counsel labored 'under extreme time pressure and with very limited resources'"). Here, counsel prioritized the ongoing and extensive work required by the circumstances of this case, including Plaintiff's urgent need for lifesaving medical care and Defendants' resistance to providing that care at every step. Whereas Ninth Circuit appeals can typically take years to complete, that process was condensed to only five months for the main appeal in this case—after Defendants filed their first notice of appeal in January 2019, Defendants and Plaintiff filed their appellate briefs in March and April of 2019 and oral argument was held in May 2019. Rifkin Decl. ¶ 28. Litigation also included multiple motions that were heard on an urgent or emergency basis, including stay motions and motions for exemptions from the stay so that Ms. Edmo could receive presurgical care. *Id.* ¶¶ 26-28, 31-33. Indeed, Plaintiff's counsel was frequently litigating issues in both the appellate and district court at the same time, including a last-minute *ex parte* motion to ensure that Defendants took reasonable measures, given the COVID pandemic, to comply with the injunction. *Id.* ¶ 34; Ferguson Decl. ¶ 26.

### 3.   Exceptional Results Due to Superior Performance of Counsel

The eighth *Kerr* factor requires courts to consider the results obtained by the lawsuit. *Kerr*, 526 F.2d at 70. As set forth above, Plaintiff's counsel obtained exceptional results for Ms. Edmo, securing the first court-ordered gender confirmation surgery in the nation for an incarcerated person and successfully defending this Court's orders on appeal, including in the Ninth Circuit and the Supreme Court. Rifkin Decl. ¶ 45. And while the rulings were specific to Ms. Edmo, the Ninth Circuit decision has already been cited more than 200 times, including 85 case citations. *Id*. Indeed, Defendants themselves have recognized the vital importance of this case, noting in their petition for *certiorari* that this case "raises questions of vital importance to prison systems, medical and mental health providers, administrators, governments, and inmates nationwide," will "affect prison medical claims in all contexts," and that "[e]ven if the import of this case were limited to the

treatment of gender dysphoria in prison (and it is not), the issue of constitutionally appropriate treatment for gender dysphoric inmates is arising with increasing frequency across the country." *Idaho Dep't of Corr. v. Edmo*, Nos. 19-35017, 19-35019, Pet. for Cert. 33, 35, 36 (May 6, 2020).

### 4.   The Experience, Reputation, and Ability of the Attorneys

In non-PLRA cases, where an attorney's skill and experience is typically reflected in their hourly rate, the use of the ninth *Kerr* factor—the experience, reputation and ability of the attorneys—has been limited. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (holding that an attorney's skill and experience is typically already reflected in their hourly rate). This factor is essential here, however, where the PLRA rate is far below typical rates even in the Boise market. Counsel in this matter have litigated numerous civil rights and prisoner rights cases around the country, including before the U.S. Supreme Court, and Plaintiff's local counsel are skilled civil rights litigators in Idaho. Rifkin Decl. ¶¶ 3-16, Whelan Decl. ¶¶ 4-19; Ferguson Decl. ¶¶ 4-16; Stormer Decl. ¶ 2-15. Plaintiff also secured preeminent Supreme Court counsel for that stage of the litigation, including an attorney now serving as the acting Solicitor General and who has been nominated to hold that position permanently. Hartnett Decl. ¶¶ 1-8, 17, Rao Decl. ¶¶ 2-9. This factor thus heavily weighs in favor of a multiplier in order to compensate counsel for the skill and expertise they brought to the litigation.

### 5.   The Undesirability of the Case

The tenth *Kerr* factor considers the "undesirability" of the case. *Kerr*, 526 F.2d at 70; *see Planned Parenthood of Cent. & N. Ariz. v. State of Ariz.*, 789 F.2d 1348, 1354 (9th Cir. 1986) ("We recognize that the 'undesirable' nature of a case is an appropriate factor in determining attorneys' fees."); *Gomez v. Gates*, 804 F. Supp. 69, 76 (C.D. Cal. 1992) (awarding 1.75 multiplier in excessive force case given the "undesirable nature of this case"). Litigation on behalf of incarcerated persons is generally considered "undesirable" even by the civil rights bar, in part

because such cases are complex, fact-intensive, expensive to litigate, and the PLRA restricts the hourly rate for attorneys' fees far below the market. Ferguson Decl. ¶ 18; Belodoff Decl. ¶¶ 14, 18. These considerations applied especially in Ms. Edmo's case, where local counsel were the only Idaho attorneys who would accept Ms. Edmo's case and would not have done so without assistance from outside counsel who were experienced in both prison conditions cases and transgender healthcare issues. Ferguson Decl. ¶¶ 19, 31. Ms. Edmo's case was extremely unpopular in Idaho, which generally lacks any explicit nondiscrimination protections for transgender people and, during the pendency of Ms. Edmo's case, banned transgender people from correcting their birth certificates, first by policy and later by legislation, and became the first state in the nation to attempt to ban transgender children from playing sports. *Id.* ¶ 30. The Governor of Idaho, who was not a party to the lawsuit, repeatedly made public statements against Ms. Edmo's lawsuit, politicizing her serious medical needs and misrepresenting issues surrounding her case. *Id*. ¶29. Media coverage of the case frequently referenced its unpopularity, Ms. Edmo's attorneys received multiple harassing emails and voicemails during her case, and Ms. Edmo's local counsel experienced negative backlash during their daily lives. *Id.* ¶¶ 32-33.[9]

### 6.  The Nature and Length of the Client Relationship

The eleventh *Kerr* factor regards the professional relationship between counsel and plaintiff. *Kerr*, 526 F.2d at 70. Plaintiff's counsel began their relationship with Ms. Edmo prior to entering appearances in this case in June and August of 2017. They maintained close contact with Ms. Edmo throughout the case, both in-person and over the phone. This included work on Ms.

---

[9] Although media work is compensable in this case, Plaintiff's counsel has excluded most of their work responding to media requests apart from work necessary to protect Ms. Edmo's confidential information and respond to the State's public statements politicizing and misrepresenting her case. *Davis v. City & Cty. Of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) (media time compensable where "directly and intimately related to the successful representation of a client.").

Edmo's declarations, multiple witness preparation sessions for Ms. Edmo's deposition and hearing testimony, preparation sessions for the mediation, and phone calls and other communications to inform Ms. Edmo about the status of her case. Counsel also ensured that Ms. Edmo had all filings in the case via legal mail, Rifkin Decl. ¶ 47, and provided Ms. Edmo with appropriate, non-prison clothing for her court appearances. Ferguson Decl. ¶ 34. This relationship was especially important in this case, where Ms. Edmo had severely limited access to public information about her case, could not access the court docket or internet, and had no other support network.

### 7.   Awards in Similar Cases

The final *Kerr* factor instructs courts to consider awards in similar cases. *Kerr*, 526 F.2d at 70. "The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719; *see Moore v. James H. Matthews & Co.*, 682 F.2d 830, 838 (9th Cir. 1982). Courts have awarded multipliers in cases that raise Eighth Amendment challenges by incarcerated persons. *See, e.g., Bown*, 2016 WL 2930904, at *3 (awarding multiplier in case involving delayed medical care to prisoner); *Kelly*, 822 F.3d at 1104; *Rodriguez v. Cty. Of Los Angeles*, 96 F. Supp. 3d 1012, 1025-26 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) (awarding 2.0 multiplier in excessive force case where "Counsel faced substantial obstacles to success including representing Plaintiffs that were routinely described as the 'worst of the worst' prisoners who were challenging the actions of highly ranked Sheriff's office officials and supervisors").

Taken together, the *Kerr* factors support both the reasonableness of the fees requested and the addition of a 2.0 enhancement. In *Kelly*, the Ninth Circuit held that in both PLRA and non-PLRA cases, "the district court may enhance the lodestar when plaintiffs' counsel's 'superior performance and commitment of resources' is 'rare' and 'exceptional' as compared to run-of-the-mill representation in such cases." 822 F.3d at 1103 (citing *Perdue*, 559 U.S. at 553-54) (internal

citations omitted)); *see also Balla*, 2016 WL 6762651, at \*12 (awarding multipliers of 1.97, 1.39, and 1.26). Moreover, "[i]mproving the quality of prisoner suits requires that plaintiffs with meritorious civil rights cases be able to secure competent counsel." *See Kelly*, 822 F.3d at 1104.

Here, nothing about this case was run-of-the-mill. Ms. Edmo had no counsel when she filed the case. No Idaho attorneys were willing to take Ms. Edmo's case on their own. Local counsel did so at the request of the Court and only because they had the assistance of outside attorneys with extensive experience litigating prison and transgender civil rights cases. Throughout the litigation, Ms. Edmo and her counsel faced a flurry of motions and appeals, all the way to the U.S. Supreme Court, all while contending with the Governor's politicization of Ms. Edmo's case and intense public backlash. Ferguson Decl. ¶¶ 19, 29, 31; *see also* Belodoff Decl. at ¶ 22 (enhancement is justified due to low PLRA rate, Defendants' aggressive litigation tactics, the unpopularity of the case, and the excellent results achieved.). A fee award at the PLRA rate would have the perverse result of discouraging skilled counsel from taking difficult and unpopular civil rights cases such as Ms. Edmo's. A 2.0 multiplier is necessary and warranted to avoid this result.

## CONCLUSION

For the reasons above, Plaintiff requests that the Court award $2,821,724.73 in reasonable attorneys' fees and expenses incurred through September 30, 2021.

Respectfully Submitted this 21st day of October, 2021.

FERGUSON DURHAM
HADSELL STORMER RENICK & DAI LLP
NATIONAL CENTER FOR LESBIAN RIGHTS
RIFKIN LAW OFFICE

By:    /s/ *Amy Whelan*          
        Amy Whelan
        Attorneys for Plaintiff

## APPENDIX
## Summary of Claimed Fees and Expenses

| FIRM/ORG. | HOURS | LODESTAR | LODESTAR PLUS 2.0 MULTIPLIER |
|---|---|---|---|
| **Total Fees By Firm** | | | |
| National Center for Lesbian Rights (PLRA) | 1253.80 hrs | $ 291,508.50 | $ 583,017.00 |
| NCLR Law Student - $220/hr | 39.10 hrs | $ 8,602.00 | $ 17,204.00 |
| NCLR Paralegal Assistant - $175/hr | 46.50 hrs | $ 8,137.50 | $ 16,275.00 |
| Cooley LLP (PLRA) | 370.30 hrs | $ 86,094.75 | $ 172,189.50 |
| MacArthur Justice Center/Jenner (PLRA) | 47.00 hrs | $ 10,927.50 | $ 21,855.00 |
| Ferguson Durham, PLLC (PLRA) | 313.60 hrs | $ 72,912.00 | $ 145,824.00 |
| Hadsell Stormer Renick & Dai (PLRA) | 1304.60 hrs | $ 303,319.50 | $ 606,639.00 |
| HS&R Law Clerk - $175 | 20.20 hrs | $ 3,535.00 | $ 7,070.00 |
| HS&R Law Clerk - $210 | 68.30 hrs | $ 14,684.50 | $ 29,369.00 |
| HS&R Law Student - $220 | 63.70 hrs | $ 14,014.00 | $ 28,028.00 |
| Rifkin Law Office (PLRA) | 2370.70 hrs | $ 551,187.75 | $ 1,102,375.50 |
| **Totals** | **5897.80 hrs** | **$ 1,364,923.00** | **$ 2,729,846.00** |

| FIRM/ORG. | EXPENSES |
|---|---|
| **Total Expenses By Firm** | |
| National Center for Lesbian Rights | $ 14,351.74 |
| Cooley LLP | $ 1,327.40 |
| MacArthur Justice Center/Jenner | $ - |
| Ferguson Durham, PLLC | $ 272.42 |
| Hadsell Stormer & Renick, LLP | $ 55,585.39 |
| Hadsell Stormer Renick & Dai - Prior Bills of Costs | $ 19,215.94 |
| Rifkin Law Office | $ 1,125.84 |
| **Total** | **$ 91,878.73** |

| **Grand Total** | |
|---|---|
| Grand Total | $ 2,821,724.73 |