Lori Rifkin, Esq. (CA # 244081)
(*pro hac vice*)
Rifkin Law Office
3630 High St., # 18197
Oakland, CA 94619
Telephone: (510) 414-4132
Email: lrifkin@rifkinlawoffice.com

Dan Stormer, Esq. (CA # 101967)
(*pro hac vice*)
Shaleen Shanbhag, Esq. (CA # 301047)
(*pro hac vice*)
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
         sshanbhag@hadsellstormer.com

Craig Durham (ISB # 6428)
Deborah Ferguson (ISB # 5333)
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, ID 83702
Telephone: 208-345-5183
Facsimile: 208-908-8663
Emails: chd@fergusondurham.com
         daf@fergusondurham.com

Amy Whelan, Esq. (CA # 215675)
(*pro hac vice*)
Julie Wilensky, Esq. (CA # 271765)
(*pro hac vice*)
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone: 415-365-1338
Facsimile: 415-392-8442
Email: AWhelan@NCLRights.org
         jwilensky@NCLRights.org

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADREE EDMO (a/k/a MASON EDMO),<br><br>Plaintiff,<br><br>v.<br><br>IDAHO DEPARTMENT OF CORRECTION, ET AL.<br><br>Defendants. | Case No.: 1:17-cv-00151-BLW<br><br>**DECLARATION OF DEBORAH FERGUSON IN SUPPORT OF PLAINTIFF'S MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES THROUGH SEPTEMBER 30, 2021** |

I, Deborah Ferguson, hereby declare and state as follows:

1.      I am a partner at Ferguson Durham, PLLC, and local counsel for Ms. Edmo in this action. I am submitting this declaration in support of the Plaintiff's Motion for Reasonable Attorneys' Fees and Expenses. I have personal knowledge of the matters stated in this declaration and could competently testify to these facts.

2.      I am a member in good standing of the Idaho State Bar, and am admitted to practice before this Court, the Ninth Circuit Court of Appeals and the Supreme Court of the United States.

3.      Ferguson Durham has expended **313.6** hours in this case. If we are compensated at the Prison Litigation Reform Act ("PLRA") rate of $232.50 per hour, our work totals $72,912. My time and the time of my law Partner, Mr. Durham, as well as the $ 272.42 of costs incurred in the litigation are reflected in our timesheets in **Exhibit A** to this Declaration.

## MY AND CRAIG DURHAM'S LEGAL BACKGROUND

4.      I am a 1986 graduate of Loyola University Chicago School of Law. I have practiced law in the area of civil litigation for 35 years. I began practicing law in Chicago, Illinois in September 1986. I worked initially at a small law firm specializing in litigation, and then from 1987-1991 for Katten Muchin & Zavis, a national law firm in its Chicago litigation department, where I tried cases in federal and state court.

5.      I left private practice in 1991 and for twenty years, I was an Assistant United States Attorney in the U.S. Department of Justice. I served in the Civil Division of the Northern District of Illinois (Chicago) from 1991-1995 and in the District of Idaho from 1995-2012. During those two decades with the U.S. Department of Justice, I was lead counsel on hundreds of civil cases on behalf of a wide array of agencies and individuals, before the federal District Court of

Idaho and the Northern District of Illinois, and on appeal before the Ninth and Seventh Circuit Courts of Appeals. As lead counsel, I handled and tried a wide variety of complex civil litigation, such as constitutional torts, environmental challenges, and medical malpractice defense. In March 2012, I left the U.S. Department of Justice to return to private practice, and began litigating and mediating civil matters.

6.    In 2014 Craig Durham and I formed Ferguson Durham, PLLC after we successfully established a right to same sex marriage in Idaho and the Ninth Circuit in the landmark case of *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014).

7.    We are primarily a boutique firm that focuses on impact civil litigation in the area of plaintiff's side civil rights and similar actions. A sample of recent cases of this type include:

> *Reclaim Idaho and the Committee to Protect the Idaho Constitution v. Denney*, No. 48784 (Idaho Supreme Ct., August 23, 2021) unanimously striking down as unconstitutional two statutes that impermissibly infringed on the people's power to enact legislation independent of the legislature through the initiative and referendum. For the first time in decades, the Idaho Supreme Court awarded fees under the private attorney general doctrine).

> *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) (establishing a right to marriage for lesbian and gay couples in Idaho);

> *Coeur D'Alene Tribe v. Denney*, 387 P.3d 761 (Idaho 2015) (granting a petition for writ of mandamus and finding that the Governor's veto of duly enacted legislation was invalid);

> *Visual Arts Collective, LLC v. Powell, et al*., 1:16-cv-00414-BLW (D. Idaho 2016) (resulting in a settlement that changed an Idaho law that had chilled first amendment expression in artistic spaces);

> *Billy Ray Bartlett v. Atencio et al*., 1:17-cv-00191-CWD (D. Idaho, 2017) (resulting in a settlement requiring the Idaho Department of Correction to provide a Kosher meal option for Jewish inmates);

> *Idaho Press Club v. Ada County, CV01-19-16277* (Fourth Judicial Dist. 2019) (finding that Ada County had improperly and frivolously withheld public

documents in violation of the public records act from journalists);

*Lee Arthur Rice v. Morehouse, et al,* 989 F.3d 1112 (9th Cir. 2021) (reversing the district court's grant of summary judgment in excessive force case and remanding for trial);

8.     I have been appointed to serve as a Special Master by a federal Senior District Judge in a complex international electronic discovery dispute that arose in a commercial litigation in the District of Idaho. I have also been selected to serve as a Special Master in state court cases, and requested to serve as a mediator and an arbitrator in dozens of civil cases each year.

9.     I am active in the legal community in Idaho and in leadership positions in many professional organizations such as the Idaho State Bar where I served as President in 2011 and as a Bar Commissioner from 2008 to 2011.  I also was the founding chair of the Idaho Academy of Leadership for Lawyers. I have also served as the Idaho State Delegate and the Idaho State Bar Delegate from 2013 to 2021 in the House of Delegates of the American Bar Association, and I am a Life Time Fellow of the American Bar Foundation.

10.     Mr. Durham is a member in good standing of the state bar of Idaho.  He is licensed to practice in the United States District Court for the District of Idaho, the United States Court of Appeals for the Ninth Circuit, and the Supreme Court of the United States.

11.     Mr. Durham graduated from the University of Kansas School of Law in 1996 and has been an attorney since that time. He first received a license to practice law in Kansas in September of 1996.

12.     From 1996 until 2001, Mr. Durham worked at the Kansas Appellate Defender's Office, where he represented convicted felony defendants on appeal to the Kansas Court of Appeals and the Kansas Supreme Court.  He also mentored and supervised junior attorneys, and began working on death penalty cases.  At the time, the death penalty had recently been re-instated

in Kansas, and his team worked efficiently on complex issues of first impression that were presented to the Kansas Supreme Court.

13. In 2001, Mr. Durham moved to Boise and became a member of the Idaho State Bar. He continued to practice appellate and death penalty law at the Idaho State Appellate Defender's Office. Between his experience in Kansas and Idaho, he has written well over 175 appellate briefs, has orally argued dozens of cases in the appellate courts, and has been counsel or co-counsel in several death penalty appeals and post-conviction cases.

14. For nearly ten years, from 2003 until 2012, Mr. Durham worked as a staff attorney at the United States District Court for the District of Idaho. He was the only death penalty law clerk for the District of Idaho during that time, and in that capacity, he assisted judges in researching the law, drafting opinions, and resolving capital habeas corpus matters. Each case often spanned several years, contained thousands of pages of documents and records, and demanded knowledge of a large and arcane body of case law that is unique to the death penalty.

15. While at the Court, Mr. Durham was also a member of the Prisoner Litigation Unit (PLU), which is a small team of staff attorneys who are responsible for managing pro se cases brought by prisoners. Prisoner cases make up approximately 25% to 33% of the Court's civil caseload from year-to-year, and the majority of those cases are brought under 42 U.S.C. § 1983. In 2011 and again in 2012, he was assigned to assist judges in two § 1983 cases brought by death-sentenced inmates who were challenging Idaho's lethal injection protocol at the eleventh hour. *See Rhoads v. Reinke*, *et al.,* 1:11-cv-00455-REB; *Creech, et al. v. Reinke*, *et al.*, 1:12-cv-00173-EJL. Each of these cases carried high stakes and required exacting work under significant time pressure.

16.     In May of 2013, Mr. Durham opened his own solo firm in Boise, where he concentrated on civil rights cases and on criminal defense.  Specifically, he represented, almost exclusively, prisoners and non-prisoners in § 1983 and *Bivens* cases, individuals claiming discrimination in employment, and criminal defendants in the state and federal courts.  In 2014, Mr. Durham and I opened the firm Ferguson Durham PLLC.

**FERGUSON DURHAM'S WORK IN THIS LITIGATION**

17.     Ms. Edmo originally filed her case pro se but also moved the court for appointment of counsel. Utilizing the standard that counsel should be appointed only in "exceptional circumstances," which can be met by showing likelihood of success on the merits and complex legal issues, the Magistrate Judge appointed pro bono counsel and directed court staff to begin a search. Dkt. 12.

18.     Court staff then reached out to our firm to see if we would be able to represent Ms. Edmo. It is my understanding that our firm is one of very few firms that the court reaches out to for prison-related cases and that it is incredibly difficult to find attorneys for prisoner cases that raise even straightforward issues. There are many reasons for this including the heavy burden on plaintiffs in Eighth Amendment cases, court deference to the decisions of prison administrators, the limits on attorneys' fees, and the general undesirability of having prisoners as clients. Based on my experience in Idaho, given the intersection of issues raised by Ms. Edmo's claims in terms of prisoners' rights and transgender health, there is no other firm or organization in the state who would have accepted Ms. Edmo's case. At the time, the ACLU in Idaho had only a single attorney who litigated cases and the ACLU would often refer cases to our firm.

19.     My firm did accept representation in this case, but only after securing the assistance of the NCLR and the Rifkin Law Office, as well as Ms. Rifkin's former firm, Hadsell

Stormer Renick & Dai. We knew that if we litigated this case, we would need attorneys who were experienced in both prison conditions cases and transgender healthcare issues more specifically. My firm would never have been able to represent Ms. Edmo without the assistance of our out-of-state counsel who were essential to mounting this challenge. Further, Ferguson Durham does not employ any paralegals, and our out of state co-counsel was also able to provide those services where needed, which were billed at lower hourly rates than those for the attorneys.

20.     Ms. Edmo has not been charged any fee to represent her, is not responsible for any costs of suit, and she has agreed that any awarded attorneys' fees and expenses will belong to and be paid to her counsel. Ms. Edmo's damage claim has been resolved in settlement.  The settlement did not involve any payment of fees and costs to counsel, reserving this issue for the Court.

21.     Plaintiff's counsel litigated this case efficiently and without unnecessary duplication of effort. Because of their long experience with the important federal constitutional issues involved in this case, as well as legal issues related to transgender people in particular, Ms. Rifkin and Ms. Whelan took primary responsibility for preparing initial drafts of most of the pleadings and briefs, including the briefing regarding the dispositive motions, the injunction, and the appeals. Ms. Rifkin took primary responsibility for depositions, Ms. Rifkin and Ms. Shanbhag took primary responsibility for written discovery in the case, and Ms. Whelan and Ms. Rifkin divided responsibility for the expert work. Ms. Rifkin led our trial team, which divided preparation for Plaintiff's witnesses and Defendants' listed witnesses among the attorneys.

22.     For our part, Mr. Durham and I reviewed all pleadings, assisted in the preparation for oral arguments, deposed several witnesses in the case, prepared to cross-examine several witnesses designated defense witnesses, and ensured that all legal work complied with the

District of Idaho's rules of practice and procedure which require that as local counsel we must participate in all court conducted conferences and hearings. We made many visits to the prison to discuss the case with Ms. Edmo and keep her apprised of the latest developments, as we were the closest counsel to our client geographically. We also responded to numerous media requests, in an effort to educate the community about the prisoners' rights and transgender health issues of the case. Because the case presented complex and novel issues of first impression the media and the public had many questions about the litigation. At the time Ms. Edmo filed her case, no prisoner had ever received court-ordered gender affirming surgery. Our work with the media on this case was narrowly focused on fostering the litigation goals of our client, and addressing the animosity, misinformation and "fake news" about the claims of our client that was pervasive in the community, as set forth in more detail infra at ¶ 29.

23.     Plaintiff's counsel conducted much of their business during telephone conferences and through email, which served as a cost-effective means to divide tasks between the attorneys and staff while eliminating the need for travel by counsel.

### THE COMPLEXITY, RISK AND UNIQUE DEMANDS OF THE LITIGATION

24.     Idaho Rule of Civil Procedure 54(e)(3) provides that, in the event the Court grants attorney fees in a civil action, it must consider the following factors in determining the amount of such fees:

> (A) The time and labor required.
>
> (B) The novelty and difficulty of the questions.
>
> (C) The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.
>
> (D) The prevailing charges for like work.

(E) Whether the fee is fixed or contingent.

(F) The time limitations imposed by the client or the circumstances of the case.

(G) The amount involved and the results obtained.

(H) The undesirability of the case.

(I) The nature and length of the professional relationship with the client.

(J) Awards in similar cases.

(K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.

(L) Any other factor which the court deems appropriate in the particular case.

25.     These factors all weigh in favor of granting this fee request and awarding a 2.0 multiplier.

26.     This complex litigation was expedited over a short time period since it involved immediate injunctive relief for Ms. Edmo. There were also times when we were litigating in both the District Court and the Ninth Circuit (where Defendants filed three separate appeals) at the same time. The expedited nature of this case and the volume of work is evident from the District Court docket, as the case has generated thousands of pages of legal filings and more than 300 docket entries since April of 2017. During Ms. Edmo's case, our firm was forced to turn away other fee-paying matters so that we could focus our attention on this case.

27.     The case presented complex and novel issues of first impression. At the time Ms. Edmo filed her case, no prisoner had ever received court-ordered gender affirming surgery. As a result of this case, Ms. Edmo became the very first person to receive that care pursuant to a court order and also obtained the first federal Circuit decision in the nation affirming that treatment.

28.     Our firm took a large and significant financial risk when we agreed to represent Ms. Edmo at the request of the District Court following Ms. Edmo's motion for appointment of counsel. There was no assurance at the time that we would prevail or that we would ever be compensated for our work, even at the very low PLRA hourly rate. But we believed that Plaintiff and her constitutional rights deserved to be zealously represented, that her cause was just, and that experienced attorney representation of Ms. Edmo would assist the federal courts in efficaciously considering her case.

29.     In addition to requiring a substantial amount of time and resources, including thousands of dollars in case expenses that Plaintiff's counsel may never have recovered, Ms. Edmo's case was extremely unpopular in Idaho. The Governor, who was never a named Defendant in the lawsuit, repeatedly politicized Ms. Edmo's serious medical issues because she is transgender and a prisoner. In one "Opinion" he published, he claimed that "[a]ctivist federal judges overstepped" their role by attempting to replace prison staff member's medical decisions. *See https://gov.idaho.gov/pressrelease/opinion-fight-in-transgender-inmates-surgery-case-is-a-fight-for-what-is-right-and-reasonable/.* The "Opinion" misstates the facts of Ms. Edmo's case and ignores the copious findings by this Court that the prison officials subjected Ms. Edmo to cruel and unusual punishment. In another press release, the Governor commented that "hardworking taxpayers of Idaho should not be forced to pay for a convicted sex offender's gender assignment surgery," implying that there is a connection between a person's commitment offense and a prison's duty to provide constitutionally adequate medical care. https://gov.idaho.gov/pressrelease/governor-little-comments-on-courts-decision-in-transgender-inmates-gender-reassignment-surgery-case/. The Governor's statements also ignored the fact that taxpayers pay a set, daily price per inmate for medical care to Defendant

Corizon that covers all medical care for prisoners—including the care Ms. Edmo sought, which did not increase the tax burden of Idahoans.

30.     There is also deep-seated animosity toward transgender people in general in Idaho. The state has no statutes that explicitly protect transgender people from discrimination in employment, housing, education, or public accommodations. To the contrary, Idaho had a policy of prohibiting transgender people from correcting their birth certificates. And even after this Court struck down that policy as unconstitutional and enjoined Idaho from enforcing it (*F.V. v. Barron*, 286 F. Supp. 3d 1131 (D. Idaho 2018), state lawmakers passed HB 509 to circumvent the Court's ruling and again ban transgender people from correcting their birth certificates. In 2020, Idaho also became the first state to enact a law that attempts to ban transgender children from playing sports in schools. That law is being challenged in court but was also heavily supported within the state. *See Hecox v. Little*, Case No. 1:20-cv-184-CWD (D. Idaho).

31.     There is also deep-seated animosity in Idaho toward prisoners, and toward prisoners who have been convicted of sex offenses in particular. As far as I am aware, and because of all of these factors, our firm was the only one in Idaho willing to represent Ms. Edmo. Again, however, we never would have been able to undertake her representation on our own and without the assistance of out-of-state counsel.

32.     I personally observed the animosity toward Ms. Edmo, her case and toward us as her attorneys on several occasions. I was frequently interviewed by the media regarding case developments and the unpopularity of our client was often commented upon in the interviews. Because the case was the focus of extensive media coverage, it was routine for me and my law partner Mr. Durham to be questioned by other attorneys in the community over why we had

agreed to represent such a "vile" and unpopular client. This occurred on a regular basis in other settings as well, such as a dental visit. There was a tremendous amount of misinformation about her medical condition being circulated in the community.

33.     In addition, as Plaintiff's counsel we received harassing emails and voicemails for representing Ms. Edmo in the litigation. One voicemail from a self-identified "taxpayer" in Idaho that was left on my voicemail repeatedly stated that I was "wrong" for representing Ms. Edmo in the lawsuit and urged me to "go back to wherever [I] came from." Another voicemail informed me that I should be "ashamed of [my]self" for representing Ms. Edmo and that I was a "sick, f…..g pervert." An email sent to Ms. Rifkin from "Mark Boyd" referred to her as "counsel for the male convict who wants to have Idaho foot the bill to get his Johnson chopped off," stated that Ms. Rifkin is "an a..hole, and that her insane clients are a..holes as well" and ended by telling her to "eat sh.t." Another email to Ms. Rifkin from "Matt Wood" stated: "If you are the one that is Edmos [sic] attorney, you need to be fired and locked away in a psych ward. Trying to force Idaho taxpayers to pay for this nonsense. SHAME ON YOU." Another email from "John Sevic" addressed to Ms. Rifkin stated: "So braindead lawyers and their pedophilia-crazed fruitcake clients can improve their lot above that of a sack of nails. A challenge, yes, but as rats deserve a chance at life, so to [sic] do lawyers." Another email from "Mark Christensen" to Ms. Whelan at NCLR asked Ms. Whelan whether she planned to "give the law-abiding citizens checks for the same amount given to the criminal pedophile" and why "Californians give such special treatment to pedophiles, anyway?"

34.     Despite these demands and challenges, Plaintiff's counsel produced an excellent result, as we prevailed Ms. Edmo's Eighth Amendment claim and secured the first ever court-ordered surgery for a transgender prisoner anywhere in the country. Our legal team

zealously represented Ms. Edmo, kept her informed about every step of her litigation and even

provided her with appropriate, non-prison clothing for her court appearances.

**BILLING RATES AND REASONABLE HOURS SPENT**

35.     The detailed time records for our firm are attached hereto as **Exhibit A**. As those

records show, Craig Durham and I have devoted 313.6 hours to the merits of this case through

September 30, 2021. Mr. Durham and I recorded those hours contemporaneously and all of them

were necessary to the prosecution of this action.

36.     Mr. Durham's 2021 rate is $400 an hour and my rate is $475 per hour. These rates

are obviously far below the PLRA rate of $232.50. If this Court awards only the PLRA rate,

Plaintiff's counsel will be compensated for only a fraction of our time on this case. These rates

are in line with or below the hourly rates of other attorneys in the Boise area with similar

backgrounds, experience, and skill. *See* Declaration of Howard A. Belodoff filed concurrently in

Support of the Motion to Award Reasonable Attorney Fees and Expenses, ¶16.

37.     These rates are also well in line with what Mr. Durham and I have been awarded

by courts in the past. For example, an Idaho state court awarded me $400 per hour and Mr.

Durham $350 per hour for work performed in 2019 in *Idaho Press Club v. Ada County*, CV-01-

19-16277, Fourth Judicial District, Ada County. In the two years since we litigated that case, we

increased our fees to be more consistent with the market. Five years ago, I received an hourly

rate of $400 per hour and Mr. Durham received an hourly rate of $ 325 per hour in *Latta v. Otter*,

771 F.3d 456 (9th Cir. 2014).  In 2017, I received a rate of $425 per hour in *Idaho Rivers United

v. U.S. Forest Service*, 16-cv-102-CWD.  In 2018, I represented Hydro One Ltd., a publicly

traded Canadian utility in a merger before the Idaho Public Utilities Commission at a rate of

$450 an hour. In that case, I was assured of payment for my services, without any contingency

whatsoever. Likewise, and in direct contrast to this case, I was paid each month without delay, upon a submission of my invoice, and without the need to prevail in the matter and then submit a petition for fees.

38.     Last month, the Idaho Supreme Court awarded attorney fees in *Reclaim Idaho and the Committee to Protect the Idaho Constitution v. Denney*, No. 48784 (Idaho Supreme Ct., August 23, 2021) when it unanimously struck down as unconstitutional two statutes that impermissibly infringed on the people's power to enact legislation independent of the legislature through the initiative and referendum. For the first time in decades, the Idaho Supreme Court awarded attorney fees under the private attorney general doctrine. It did so because the Idaho Supreme Court found that "[t]he contested legislation constituted a grave infringement on the people's constitutional rights, making this matter vital to the public interest to people across Idaho." (Reclaim Decision at p. 46). I have submitted a fee petition with a rate of $475 an hour for my work, and Mr. Durham is requesting a rate of $400 per hour. Our petition for those reasonable fees is now pending before the Court to review our rates and time entries. The parties have reached a tentative settlement of the amount of fees and costs wherein the State would pay the full amount billed by Ferguson Durham, subject to the reservation and understanding that Respondents did not agree that the total amount billed—consisting of hourly rate times hours billed—or the discretionary costs incurred, were necessary or reasonable. This settlement agreement is not final, and is subject to the State's further approval.

39.     My rate is also consistent with what I have received as a Special Master. In 2012-2013, I charged $300 an hour for those services. That rate, charged eight years ago, is comparable to the $475 hourly rate I request here given the amount of time that has passed. As a Special Master, I was assured of payment for my services, without any contingency whatsoever.

Likewise, and in direct contrast to this case, I was paid each month without delay, upon a submission of my invoice, and without the need to submit a petition for fees.

40.     In light of the skill and experience needed to prosecute this case, the risks taken, the work required, the undesirability of the case, the need to attract competent counsel, and the excellent results achieved, we respectfully request that the Court approve this fee request, in addition to awarding a multiplier.

41.     In the event Defendants dispute Plaintiff's fee petition, Plaintiff's counsel will submit supplemental time records, at the appropriate time, for any time incurred after September 30, 2021.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Boise, Idaho on October 14, 2021.

Deborah Ferguson

# EXHIBIT A

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 08/10/2017 | Phone conference with Co-counsel on client visit and case strategy | 0.60 |
| 08/30/2017 | Consultation with Adree Edmo at the Idaho State Correction Institution re: second amended complaint and other litigation matters. | 1.30 |
| 08/31/2017 | Review of draft of Second Amended Complaint suggested edits emailed same to co-counsel. | 0.40 |
| 08/31/2017 | Reviewed AW's edits and responded to CD's bond question. | 0.10 |
| 09/08/2017 | Obtained references for 2 possible medical experts; emailed co-counsel re; same. | 0.20 |
| 03/19/2018 | Meeting with co-counsel on expert's exam of client and status of case. | 0.50 |
| 04/04/2018 | Attended hearing on defendants' motion to dismiss. | 1.40 |
| 04/04/2018 | Debriefing with CD and LR on hearing and case strategy. | 0.30 |
| 04/04/2018 | Email on hearing to AW and locating a 2nd expert witness. | 0.10 |
| 04/16/2018 | Follow up on scheduling second expert witness prison visit. | 0.10 |
| 04/25/2018 | Follow up with 2nd expert on prison visit on 4/30. | 0.10 |
| 04/25/2018 | Review emails with co-counsel on possibility of adding additional plaintiffs. | 0.10 |
| 04/27/2018 | Discussion with CD on modification to birth certificate for client; email to co-counsel re: proceeding with same. | 0.20 |
| 04/30/2018 | Discussion with expert Dr. Gorton on case issues and medical record. | 0.50 |
| 04/30/2018 | Meeting at prison with client and Dr. Gorton for assessment. | 2.50 |
| 04/30/2018 | Email to co-counsel on Dr. Gorton's meeting and records missing from the medical record. | 0.10 |
| 05/09/2018 | Drafted request for birth certificate from Vital Records coordinated same with client advised co-counsel of same. | 0.10 |
| 05/17/2018 | Review of Dr. Gorton's initial draft expert report. | 2.20 |
| 05/21/2018 | File application for PHV for J.W. | 0.20 |
| 05/30/2018 | Review of experts' declarations in support of PI and edits/ suggestions re: same; review of client's declaration and comments on same to co-counsel. | 1.00 |
| 05/31/2018 | Review of brief in support of PI. | 0.40 |
| 06/07/2018 | Review of Court's decision on Defendants' motion to dismiss. | 0.50 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 06/07/2018 | Review Defendants' motion to extension response time to PI; confer with co-counsel re; same. | 0.30 |
| 06/08/2018 | Review Stewart and Hall declarations of Defendants. Confer with LR on release of Edmo's confidential medical information. | 0.40 |
| 06/11/2018 | Received Certified copy of AE's birth certificate  researched new procedures of Dept. of Vital Records' to request gender change on AE's birth certificate. | 0.30 |
| 06/12/2018 | Status conference with the Court. | 0.30 |
| 06/14/2018 | Review and confer with Co-counsel on discovery stipulation and local practice. | 0.20 |
| 06/21/2018 | Review co-counsel email on expert disclosure and respond to same. | 0.20 |
| 07/06/2018 | Research IME requirements and Idaho practice and email co-counsel re: same. | 0.30 |
| 07/09/2018 | Review draft expert report of Dr. Ettner. | 0.20 |
| 07/09/2018 | Coordinate case work re: IME  experts and discovery with co-counsel. | 0.20 |
| 07/16/2018 | Meet and confer on discovery disputes with opposing counsel. | 0.40 |
| 07/16/2018 | Follow up call on discovery issues with co-counsel. | 0.30 |
| 07/17/2018 | Review and respond to co-counsel on disputed discovery issues. Date for IME moved to 7/31. | 0.30 |
| 07/23/2018 | Discussions re: IME of IDOC and attendance at IME  emails re: same. | 0.50 |
| 07/23/2018 | Draft email to outside firm requesting participation of paralegal in IMG. | 0.20 |
| 07/23/2018 | Respond to LR email on 30(b)6 dep dates and paralegal at IMG. | 0.10 |
| 07/25/2018 | Review of motion for PO and IDOC's motion in state court of PSE. | 0.50 |
| 07/26/2018 | Discussions with LR on discovery conflicts and local practice. | 0.40 |
| 07/27/2018 | Communication to Hadsell Stormer re docs from client | 1.00 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 08/22/2018 | Phone call with co-counsel on issues to be covered in 30(b)(6) depositions. | 1.30 |
| 08/23/2018 | Review of dep transcript of Dr. Eliason's deposition and notes re; same for prep of Corizon 30 b6 deposition. | 2.40 |
| 08/24/2018 | Review of training documents produced at Elison's deposition by Corizon; discussions with co-counsel re; same for deposition prep. | 2.60 |
| 08/25/2018 | Assisting in preparation for 30 b 6 depositions. | 1.50 |
| 08/27/2018 | Deposition of Dr. Menard  Corizon's Medical Director. | 3.50 |
| 08/30/2018 | Conferred with LR and AW on issues in deposition of Deposition of Dr. Alviso. | 0.80 |
| 08/31/2018 | Deposition of Ashley Dowell. | 3.50 |
| 09/24/2018 | Phone conference with co-counsel to discuss case developments and PI hearing strategy. | 1.00 |
| 09/27/2018 | Review reply brief. | 0.40 |
| 09/28/2018 | Emails with co-counsel on status conference and hearing | 0.20 |
| 10/01/2018 | Client preparation for hearing. | 2.00 |
| 10/01/2018 | Email to BH on arrangements to visit client in prison for hearing preparation. | 0.10 |
| 10/02/2018 | Email to chambers and opposing counsel on arrangements with Marshalls Office. | 0.10 |
| 10/03/2018 | Confer with Co-counsel on witness lists of Defendants. | 0.30 |
| 10/04/2018 | Client preparation for hearing. | 1.80 |
| 10/04/2018 | Confer with Co-counsel on meet and confer re: witness list of IDOC. | 0.20 |
| 10/04/2018 | Client clothing and shoes for PI hearing. | 1.00 |
| 10/04/2018 | Phone conference with co-counsel on witnesses and hearing | 1.30 |
| 10/06/2018 | Client preparation for hearing. | 0.50 |
| 10/06/2018 | Hearing preparation for cross exam of IDOC Stewart. | 3.00 |
| 10/08/2018 | Team meeting at prison with AE; trial preparation. | 3.00 |
| 10/08/2018 | Document review in preparation of cross of Stewart. | 0.50 |
| 10/09/2018 | Delivery to Marshall's Office AE's trial clothes  follow up email re: same. | 0.30 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 10/09/2018 | Preparation for cross examination of K. Stewart and general hearing preparation. | 7.50 |
| 10/10/2018 | Court hearing at PI; witnesses preparation. | 7.30 |
| 10/10/2018 | Post hearing meeting with co-counsel for debriefing and review of anticipated testimony for day 2. | 1.80 |
| 10/10/2018 | Review of cross exam outline of Stewart with LR. | 0.40 |
| 10/11/2018 | Revisions to outline of cross examination of Stewart. | 1.30 |
| 10/11/2018 | Hearing on PI. | 6.50 |
| 10/11/2018 | Confer with co-counsel and email notes on comments and | 0.40 |
| 10/12/2018 | Hearing on PI motion. | 7.50 |
| 10/12/2018 | Post hearing de-briefing with co-counsel. | 0.40 |
| 10/25/2018 | Review of proposed FOF and COL; emailed co-counsel with comments. | 0.40 |
| 10/26/2018 | Review draft of post trial briefing. | 0.40 |
| 11/01/2018 | Review draft press release. | 0.20 |
| 12/11/2018 | Client meeting at prison on current status of medical care; update post hearing. | 2.00 |
| 12/11/2018 | Email debrief co-counsel on updates from client meeting. | 0.40 |
| 12/11/2018 | Review AW's letter to opposing counsel on lack of medical treatment; suggested edits re: same. | 0.20 |
| 12/13/2018 | Review of Court's PI Decision. | 0.40 |
| 12/17/2018 | Email with co-counsel to develop plan for client's medical treatment. | 0.20 |
| 12/18/2018 | Email from Deputy clerk on phone conference confer with co-counsel and respond re: same to chambers. | 0.20 |
| 12/19/2018 | Phone conference with co-counsel on case strategy status call with court and obtaining client's surgery. | 1.00 |
| 12/21/2018 | Conference call with Chambers and counsel on status of case after PI decision. | 0.40 |
| 12/21/2018 | Discussion with CD on case strategy and appeal. | 0.50 |
| 12/21/2018 | Discussion with LR and CD on case strategy and issues post call with chambers. | 0.30 |
| 12/28/2018 | Emails from AW and LR on Adree's medical test results and potential settlement talks. | 0.30 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 01/03/2019 | Emails from LR and AW on AE's current medical condition and necessary treatment  meet and confer issues with opposing counsel. | 0.40 |
| 01/09/2019 | Review Notices of Appeal from IDOC and Corizon; Review co-counsel's draft letter to co-counsel on surgical options | 0.30 |
| 01/09/2019 | Review Defendants' joint motion to stay and memorandum filed in district court. | 0.40 |
| 01/10/2019 | Review IDOC's press release  discuss same with co-counsel  preparation for multiple media interviews  draft talking points; edit and review same | 1.80 |
| 01/21/2019 | Meeting with GP  Boise Weekly reporter and CD on article about litigation. | 0.80 |
| 01/27/2019 | Review of draft response in opposition for motion to stay in district court; email to co-counsel re: same. | 0.40 |
| 01/30/2019 | TSC with the Court and opposing counsel. | 0.50 |
| 01/31/2019 | Confer with Co-counsel on Defendants request fro an extension. | 0.30 |
| 02/12/2019 | P/c with AW on research into surgeon time table for appeal. | 0.20 |
| 02/15/2019 | Review defendants' reply on motion to stay in district court. | 0.30 |
| 03/04/2019 | Review District Court order denying motion to stay PI; email to co-counsel re; same. | 0.20 |
| 03/08/2019 | Review Urgent Jt Motion for Stay to 9th Circuit | 0.70 |
| 03/11/2019 | Review Appellants Opening Brief | 2.50 |
| 03/15/2019 | Review Answer of IDOC to Amended Complaint; Review Answer of Corizon to Amended Complaint. | 0.50 |
| 03/18/2019 | Review email from IDOC in advance of Court status conference; confer with co-counsel on same. | 0.30 |
| 03/18/2019 | Review Defendants' Jt Reply on Urgent Motion to Stay before 9th Circuit. | 0.40 |
| 03/19/2019 | Confer with co-counsel on draft status report; edits to same. | 0.60 |
| 03/21/2019 | Review of 9th Cir. order granting stay  confer with Co-counsel on same | 0.40 |
| 03/21/2019 | Schedule prison visit with Adree Edmo. | 0.10 |
| 03/21/2019 | Court status conference | 1.00 |
| 03/22/2019 | Prison visit with AE to discuss recent case developments. | 1.50 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 03/25/2019 | Meeting with LR, AW on media issues; prep for NPR radio interview. | 0.60 |
| 03/28/2019 | Confer with co-counsel on local practice for expedited motions | 0.20 |
| 03/28/2019 | Review FRCP 60 and 62 motion for relief; draft motion re: same and email LR with comments | 0.30 |
| 03/29/2019 | Review court order expediting Rule 60/62 motion | 0.10 |
| 04/03/2019 | Interview on "Idaho Matters" on BSU Public radio on status of case before 9th Cir. and prep for interview. | 1.30 |
| 04/04/2019 | Prision visit with Dr. Lin Frazer for client evaluation. | 3.40 |
| 04/05/2019 | Follow up email with Dr. Frazer. | 0.20 |
| 04/08/2019 | PC with LR and AW on NPR's request for pod casts and client contact; discussion of amici coverage | 0.90 |
| 04/08/2019 | Review draft amicus brief on economic impact and confer with co-counsel on same. | 0.60 |
| 04/09/2019 | Discussion with co-counsel in preparation on hearing re: indicative ruling from Judge Winmill; TC with team re updated Jody Herman amicus brief and what data means for underlying case | 0.30 |
| 04/09/2019 | Review revised amicus draft on economic impact of GCS; respond to AW. | 0.30 |
| 04/09/2019 | Phone status conference and hearing with Court on indicative ruling and pre surgery consultation. | 0.50 |
| 04/09/2019 | Confer with Co-counsel AW and LR on briefings to be filed and indicative ruling. | 0.50 |
| 04/10/2019 | PC with LR and AW on handling media requests and client. | 0.70 |
| 04/11/2019 | Review amicus brief of Legal Scholars. | 0.40 |
| 04/12/2019 | Review amicus brief of Former Corrections officials. | 0.40 |
| 04/15/2019 | Review amicus brief of medical associations. | 0.40 |
| 04/15/2019 | Review amicus brief of Civil rights organizations. | 0.40 |
| 04/16/2019 | Review amicus of Jody Hermann. | 0.40 |
| 04/24/2019 | Interview with NPR on status of legal case. | 1.50 |
| 05/06/2019 | Phone conference with co-counsel re: preparation for oral argument | 1.30 |
| 05/06/2019 | Review of Defendants' Jt response to Plaintiff's motion to amend appellate record with Judge Winmill's indicative order | 0.30 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 05/13/2019 | Review Appellants' Joint reply brief. | 2.10 |
| 05/13/2019 | Participated in 9th Cir. moot court argument with co-counsel. | 1.40 |
| 05/13/2019 | Email co-counsel on next steps in timeline to orchestrate surgery for client. | 0.40 |
| 05/13/2019 | Email prison to schedule client attorney client visit and confirm same. | 0.10 |
| 05/16/2019 | Listened to live streaming of oral argument in 9th Cir. | 0.80 |
| 05/17/2019 | Client visit in prison to discuss status of case and surgical options. | 2.30 |
| 05/23/2019 | Phone conference with Amanda Peacher/ BSU NPR radio responding to her procedural questions on the case and the coverage. | 0.70 |
| 06/28/2019 | Review Defendants' new notice of appeal  Doc. 203 | 0.30 |
| 07/09/2019 | Review 9th Cir order on supplementing record. | 0.10 |
| 07/09/2019 | Conference with co-counsel on status of case and response to podcasts. | 0.50 |
| 07/09/2019 | Listen to episode 4 and 3; report to co-counsel on content of episode 4. | 1.00 |
| 08/23/2019 | Read 9th Circuit opinion affirming district court. | 1.90 |
| 08/26/2019 | Email to co-counsel on next steps and scheduling conference call. | 0.20 |
| 08/28/2019 | Review LR's agenda and response to same. | 0.30 |
| 08/28/2019 | Phone conference with co-counsel on order lifting discovery stay and meet and confer surgery details 9th Cir and SCOTUS deadlines and plans  press and media issues. | 1.50 |
| 08/28/2019 | Research on state's assertions on costs of litigation and surgery and email to co-counsel re: same. | 0.30 |
| 08/29/2019 | Email with co-counsel on comments of Gov. on SCOTUS appeal and media issues. | 0.50 |
| 08/30/2019 | Client visit to review status of case and possible SCOTUS appeal. | 1.70 |
| 08/30/2019 | Follow up with co-counsel on client visit. | 1.60 |
| 08/31/2019 | Responding to media issues. | 1.80 |
| 09/01/2019 | Responding to media issues  conferring with Co-counsel re: same. | 2.00 |
| 09/04/2019 | PC with High Country news reporter re: status of case. | 0.50 |

# Edmo v. IDOC
## Ferguson Durham LLC
### Deborah Ferguson Time through September 30, 2021

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 09/04/2019 | Review of new client retainer agreement edits re: same. | 0.30 |
| 09/04/2019 | Response to Channel 2 TV reporter. | 0.30 |
| 09/05/2019 | Prison meeting with client on status update of litigation. | 3.00 |
| 09/06/2019 | Email to co-counsel on meeting with client. | 0.30 |
| 09/09/2019 | Review petition for en banc review. | 0.40 |
| 09/10/2019 | Status conference with Court. | 0.30 |
| 09/12/2019 | Phone conference with Co-counsel on status of litigation meet and confer debriefing and strategy of defendants further appeals. | 0.90 |
| 09/13/2019 | Respond to High Country News reporter and email co-counsel re: same. | 0.20 |
| 09/16/2019 | Team call after TC with Court. | 0.40 |
| 09/20/2019 | Reviewing response to petition for rehearing en banc comments on same | 0.60 |
| 09/25/2019 | Review motion to modify stay and email co-counsel re: same. | 0.40 |
| 09/26/2019 | Email from LR re: negotiation with OC on possibility of parole | 0.20 |
| 09/30/2019 | Review Defendants' Jt motion and memo to stay | 0.30 |
| 10/03/2019 | Conference call with co-counsel on Def.s motion to stay and litigation strategy | 0.40 |
| 10/07/2019 | Review of response to our motion to partially lift stay in 9th Cir. | 0.30 |
| 10/10/2019 | Review of CD's email on client meeting for status and updates of litigation. | 0.10 |
| 10/11/2019 | Review of 9th Cir order granting our motion to partially lift stay to allow for pre-surgical treatment. | 0.30 |
| 10/15/2019 | Email from LR on negotiations with OC re: discovery and stay. | 0.20 |
| 10/17/2019 | Review AW's notes from status conference with Court. | 0.10 |
| 10/18/2019 | 9th Circuit issues scheduling order on appeal. | 0.10 |
| 10/21/2019 | Review our draft response on motion to stay. | 0.30 |
| 10/21/2019 | Review draft report to court on necessary pre surgical treatment. | 0.20 |
| 10/24/2019 | Review court's order requiring Defendants to provide necessary pre surgical treatment; discuss same with co-counsel | 0.30 |

**Edmo v. IDOC**
**Ferguson Durham LLC**
**Deborah Ferguson Time through September 30, 2021**

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 10/29/2019 | Email from client and discussion of possibility of parole with co-counsel. | 0.20 |
| 10/30/2019 | Email from LR re: her call to OC re: stay and negotiations for limited discovery and doctor referral letter. | 0.20 |
| 10/30/2019 | Status conference with Court. | 0.50 |
| 11/01/2019 | Review of Defendants' motion to expedite briefing. | 0.20 |
| 11/01/2019 | Review of Defendants' Jt status report under seal. | 0.20 |
| 11/04/2019 | Review of Defendants' reply on Jt. motion to stay. | 0.20 |
| 11/05/2019 | Reviewed plaintiff's draft response to defendants' motion to stay pending new appeal. | 0.40 |
| 11/05/2019 | Review of draft of our motion to strike Declaration of Dawson. | 0.20 |
| 11/05/2019 | Review of notice of appeal to 9th Cir. (3rd appeal). | 0.10 |
| 11/06/2019 | Review of Defendants' response to our motion to strike. | 0.20 |
| 11/06/2019 | Review Court's order vacating hair removal treatment. | 0.10 |
| 11/06/2019 | Email from AW on responding to Defendants' tactics for delay. | 0.20 |
| 11/07/2019 | Review and docket 9th Cir. schedule on 3rd appeal. | 0.10 |
| 11/07/2019 | Review email for LR re: litigation strategy and possible motion to dismiss 3rd appeal for lack of jurisdiction. | 0.30 |
| 11/08/2019 | Review of Court's order denying defendants expedited motion to | 0.50 |
| 11/09/2019 | Phone conference with co-counsel discussing hearing and motion for reconsideration | 0.60 |
| 11/09/2019 | Emails with co-counsel on order denying stay modifications. | 0.20 |
| 11/12/2019 | Review of draft of motion for reconsideration of evidentiary hearing and comments on same. | 0.40 |
| 11/13/2019 | Review of Defendants' ER Motion under Rule 27-3 in No. 19-35917. | 0.30 |
| 11/13/2019 | Review of Defendants' Objections to Court's order and 2nd Declaration of Dr. Stiller and Ex. A. | 0.40 |
| 11/14/2019 | Review of order denying Plaintiff's motion for Reconsideration. | 0.30 |
| 11/16/2019 | Review of Defendants' Jt opening 9th Cir. brief in appeal No. 19-35552. | 0.50 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 11/17/2019 | Review of Defendants' Jt Brief on Evidentiary Hearing. Email re: comments on same with co-counsel. | 0.50 |
| 11/18/2019 | Email with co-counsel on coordinating assignments on multiple filings within team. | 0.30 |
| 11/18/2019 | Emails with co-counsel on evidence to present at 11/21 hearing and draft of declaration from client re: same. | 0.20 |
| 11/18/2019 | Review motion to Dismiss appeal No. 19-35917 and opp to emergency stay | 0.50 |
| 11/19/2019 | Review of co-counsel's memo on plaintiff's response to defendants' 2nd 9th Cir appeal (No. 19-35552) | 0.30 |
| 11/19/2019 | Review motion to dismiss and reply in support of emergency stay.w defendants' response to m | 0.50 |
| 11/19/2019 | Review draft declaration for client for hearing; discuss revisions with co-counsel | 0.40 |
| 11/19/2019 | Preparation for client meeting on 11/20/2019 in advance of hearing. | 0.80 |
| 11/19/2019 | Review of draft declaration of Dr. Schechter; comments to co-counsel. | 0.40 |
| 11/20/2019 | Prison visit with client to discuss and review her declaration and litigation issues prior to tomorrow's hearing. | 1.70 |
| 11/20/2019 | Send AE's declaration to co-counsel  with update on client visit. | 0.20 |
| 11/20/2019 | Review of draft of declaration of Dr. Gorton. | 0.20 |
| 11/20/2019 | Review of draft of Plaintiff's brief re: hearing on surgical | 0.50 |
| 11/20/2019 | Review of dismissal of 9th Cir. appeal # 19-35917 for lack of jurisdiction and discussion re: same on hearing on 11/22/2019. | 0.50 |
| 11/21/2019 | Attendance at hearing on surgical procedure. | 2.70 |
| 11/21/2019 | Pre-hearing meeting with co-counsel. | 0.30 |
| 11/22/2019 | PC with Idaho Press reporter on hearing on 11/21. | 0.30 |
| 12/12/2019 | Review of draft of Answering brief in 9th Cir. appeal 19-35552; emails with co-counsel re: same. | 0.40 |
| 01/02/2020 | Review of Jt 9th Cir. reply brief in 19-35552. | 0.50 |
| 02/10/2020 | Review 9th Circuit's opinion and dissents on denial to rehear case en banc. | 0.80 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 02/10/2020 | Emails with co-counsel on deadlines for cert. petition and motions for stay. | 0.20 |
| 02/13/2020 | Preparation and interview on NPR "Idaho Matters". | 1.00 |
| 02/21/2020 | Status conference with court. | 0.50 |
| 03/04/2020 | Review of AW email on communications with Dr. Stiller re: planning of AE's surgery. | 0.20 |
| 05/07/2020 | Review of State's petition for cert. to SCOTUS. | 1.60 |
| 05/08/2020 | Review of State's application for stay to SCOTUS. | 1.20 |
| 05/15/2020 | Review of initial draft of LR and AW opposition to application to stay. | 1.20 |
| 05/17/2020 | Review of drafts and edits to opposition to stay. | 0.80 |
| 05/27/2020 | Update on preparations for surgery from AW per Dr. Stiller. | 0.20 |
| 06/08/2020 | Phone conference with LR AW and SB discussing whether to permit client interview. | 0.70 |
| 06/11/2020 | Review email re: surgical arrangements. | 0.30 |
| 06/12/2020 | Conference call with SCOTUS co-counsel on opposition to cert. petition. | 0.60 |
| 06/16/2020 | Review co-counsel agreement with SCOTUS counsel. | 0.20 |
| 06/18/2020 | Sign and return the co-counsel agreement. | 0.10 |
| 06/25/2020 | Discussion with co-counsel on Covid pre-surgery concerns. | 0.30 |
| 06/26/2020 | Additional emails exchanged on covid concerns at prison and impact on surgery; next steps to protect Ms. Edmo. | 0.30 |
| 06/29/2020 | Phone conference with co-counsel on Covid in ICCU and threat to AE. | 0.30 |
| 06/29/2020 | Discussion with CD on the procedure to alert the court of COVID threat. | 0.30 |
| 06/29/2020 | Review of communications re: COVID with AE with LR and AW. | 0.20 |
| 06/29/2020 | Review of ex parte motion to test and transport AE. | 0.30 |
| 06/30/2020 | Review IDOC response to ex parte motion; email to co-counsel re: same and our reply. | 0.40 |
| 06/30/2020 | Emails between BH and co-counsel on testing and transport issues | 0.40 |
| 06/30/2020 | Conference set by the court for 9 am on 7/1/2020. | 0.10 |
| 07/01/2020 | Telephone status conference with Court. | 0.50 |

# Edmo v. IDOC
## Ferguson Durham LLC
### Deborah Ferguson Time through September 30, 2021

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 07/05/2020 | Emails to co-counsel on IDOC's transportation of possessions to AE to Orofino. | 0.20 |
| 08/06/2020 | Review draft brief in opposition to cert. before Supreme Court. | 0.40 |
| 10/28/2020 | Zoom conference with co-counsel to discuss the next steps after the stay is lifted and remaining case issues to be tried. | 1.00 |
| 12/29/2020 | Review of opposing counsel's emails regarding settlement conference with a judge; respond to LR regarding same. | 0.20 |
| 01/14/2021 | Team zoom call to discuss litigation plan and strategy for damages trial. | 1.20 |
| 01/29/2021 | Review mediation order and email from LR  forwarding Defendants requests. | 0.30 |
| 02/01/2021 | Phone call with LR discussing mediation on 2/9 and strategy  and status zoom call. | 0.20 |
| 02/01/2021 | Status conference with the Court. | 0.20 |
| 02/23/2021 | Review of draft confidential settlement memo. | 0.30 |
| 03/07/2021 | Review of time entries for settlement conference. | 0.50 |
| 03/09/2021 | Participation in settlement conference before Judge Tallman. | 5.70 |
| 07/26/21 | Phone conference with AW and CD discussing fee petitions and supporting declarations | 1.00 |
| 08/11/21 | Revisions to my draft declaration | 1.00 |
| 08/18/21 | Review of CD edits to declarations, additional edits, and emailed draft to AW | 0.30 |
| 08/19/21 | Review additional edits of AW and LR to my declaration in support of fees and made further revisions | 0.30 |
| 08/19/21 | Response to an email from SS regarding costs on fee petition | 0.10 |
| 09/13/21 | Revisions and updates to my draft declaration ISO the fee petition | 1.00 |
| 09/30/21 | Addition to DF declaration to reflect the current status of fee recovery on Reclaim Idaho case, and update of hours billed through and including 9/30/2021 | 0.50 |
| | **Totals (in hours)** | **195.40** |

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 06/16/2017 | Meeting with Edmo at ISCI. Discussion of entry of appearance possible co-counsel and deadlines among other matters. | 0.70 |
| 06/16/2017 | Travel to and from ISCI. | 0.50 |
| 06/16/2017 | Reviewing filings in the case to date. | 0.50 |
| 06/19/2017 | Drafting and filing entry of appearance. | 0.20 |
| 06/19/2017 | Drafting email to opposing counsel regarding scheduling matters. | 0.20 |
| 06/22/2017 | Preparing circulating and filing stipulation to vacate and reset deadlines. | 0.70 |
| 08/10/2017 | Phone conference with co-counsel Amy Whelan Lori Rifkin and DAF. | 0.60 |
| 08/11/2017 | Phone call with Adree about Lori and Amy's visit. Also discuss motion for PI delay and housing situation. | 0.30 |
| 08/11/2017 | Email to Brady Hall re: status of motion for PI by 9/1. | 0.20 |
| 08/28/2017 | Reviewing draft amended complaint and emailing comments to co-counsel. | 0.50 |
| 08/28/2017 | Reviewing letter received by Adree and emailing letter with comments to co-counsel. | 0.50 |
| 08/30/2017 | Reviewing draft second amended complaint and email from LR and making notes on the same. | 0.70 |
| 08/30/2017 | Consultation with Adree Edmo at the Idaho State Correction Institution re: second amended complaint and other matters. | 1.30 |
| 08/30/2017 | Drafting and sending email to co-counsel Lori Rifkin and Amy Whelan regarding responses from Adree to their questions after our meeting at ISCI. | 0.40 |
| 10/05/2017 | TC with co-counsel regarding Adree's status and experts. | 0.50 |
| 10/12/2017 | Phone call with Adree. | 0.40 |
| 10/12/2017 | Telephone call with Deborah to discuss consultation with Adree this morning and next steps. | 0.30 |
| 02/05/2018 | Telephone call with Adree regarding new field memo cracking down on GD inmates. Email to co-counsel reflecting the same. | 0.40 |
| 03/19/2018 | Meeting with co-counsel to discuss client interview and expert exam. | 0.50 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 03/29/2018 | Video moot court with co-counsel. | 1.40 |
| 04/04/2018 | Meeting with co-counsel LR before and after motions hearing to discuss case. | 0.70 |
| 04/04/2018 | Attend hearing on defendants' motion to dismiss. | 1.40 |
| 05/17/2018 | Review of Dr. Gorton's initial expert report. | 0.50 |
| 05/31/2018 | Review of client's declaration in support of motion for preliminary injunction. | 0.40 |
| 05/31/2018 | Review of expert declarations and brief in support of motion for preliminary injunction. | 0.60 |
| 07/11/2018 | Travel to and from ISCI to meet with client. | 1.00 |
| 07/11/2018 | Meeting with client to discuss birth certificate change  scheduling of the proceedings  and additional matters related to discovery. | 0.70 |
| 07/11/2018 | Email to co-counsel with update regarding meeting with client today. | 0.40 |
| 08/08/2018 | Phone conversation with Lori Rifkin and SS regarding meet and confer on discovery issues and 30(b)(6) depositions. | 0.30 |
| 08/09/2018 | Reviewing reply to Corizon's motion to compel discovery. | 0.30 |
| 08/09/2018 | Participating on conference call to mediate discovery dispute for IME with David Metcalf and  counsel. | 0.40 |
| 08/23/2018 | Preparing for Corizon 30(b)(6) deposition. | 4.50 |
| 08/25/2018 | Preparing for Corizon 30(b)(6) deposition. | 5.00 |
| 08/26/2018 | Preparing for Corizon 30(b)(6) deposition. | 5.00 |
| 08/27/2018 | Taking 30(b)(6) deposition of Dr. Steven Menard. | 3.50 |
| 08/29/2018 | Telephone conference call with co-counsel regarding Dr. Alviso's deposition and upcoming IDOC 30(b)(6) deposition. | 1.00 |
| 08/30/2018 | Preparing for 30 b 6 deposition of IDOC representatives. | 10.00 |
| 08/31/2018 | Taking deposition of Ashley Dowell and Laura Watson of IDOC. | 5.00 |
| 09/05/2018 | Teleconference with co-counsel regarding defendants' expert reports and upcoming depositions of defendants experts and case strategy. | 1.30 |
| 09/20/2018 | Travel to and from ISCC to meet with client. | 1.00 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 09/20/2018 | Meeting with client to discuss expert reports  evidentiary hearing and status of the case. | 1.30 |
| 09/24/2018 | Phone call with all cocounsel to discuss recent depositions and strategy moving forward. | 1.00 |
| 09/27/2018 | Reviewing draft reply brief and making comments. | 0.60 |
| 09/27/2018 | Attending telephone status conference. | 0.70 |
| 10/04/2018 | Team call with co-counsel regarding strategy for upcoming hearing including witnesses exhibits and other matters. | 1.00 |
| 10/08/2018 | Team meeting with AE with co-counsel at prison. | 3.00 |
| 10/09/2018 | Preparing for cross examination of Dr. Steven Menard. | 3.00 |
| 10/10/2018 | Hearing on motion for PI. | 7.30 |
| 10/10/2018 | Further preparation for cross-examination of Dr. Steven Menard. | 1.50 |
| 10/11/2018 | Attending motion hearing on PI  confer with client and co-counsel. | 6.50 |
| 10/12/2018 | Hearing on motion for PI  conferring with client and co-counsel. | 7.50 |
| 10/12/2018 | Post-hearing debrief with co-counsel. | 0.40 |
| 10/27/2018 | Reviewing briefing for suggestions and comments. | 0.50 |
| 12/13/2018 | Review of memorandum decision and order. | 0.30 |
| 12/19/2018 | Phone call with co-counsel regarding strategy for TSC with the Court logistics for surgery and more. | 1.00 |
| 12/21/2018 | Discussion with DAF on case strategy after decision. | 0.50 |
| 12/21/2018 | Discussion with DAF and LR regarding case strategy re: possible appeal. | 0.30 |
| 12/21/2018 | Conference case with chambers regarding case status and next steps. | 0.40 |
| 01/04/2019 | Emails from co-counsel regarding medical tests and settlement possibilities. | 0.30 |
| 01/30/2019 | TSC with the Court and co-counsel. | 0.50 |
| 03/05/2019 | Attend telephonic status conference. | 0.40 |
| 05/06/2019 | Team strategy call re: upcoming oral argument. | 1.30 |
| 05/13/2019 | Participating in moot court with co-counsel via zoom. | 1.40 |

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 09/16/2019 | Attending telephone status conference. | 0.30 |
| 09/16/2019 | Team call after telephone status conference regarding strategy. | 0.40 |
| 09/20/2019 | Reviewing response to petition for rehearing en banc commenting on the same. | 0.50 |
| 09/25/2019 | Reviewing motion to modify stay and commenting on the same. | 0.40 |
| 10/08/19 | call w LR re prep for client visit | 0.50 |
| 10/10/2019 | Travel to and from ISCC to meet with client. | 1.00 |
| 10/10/2019 | Meeting with client to go over current status of case and retrieved signed documents. | 0.80 |
| 10/10/2019 | Draft email to the group regarding client meeting and update from client. | 0.40 |
| 10/17/2019 | Attend telephonic scheduling conference. | 0.50 |
| 11/05/2019 | Reviewing plaintiff's response to defendants' motion to stay pending new appeal. | 0.40 |
| 11/12/2019 | Reviewing draft of motion to reconsider order granting evidentiary hearing and commenting on the same. | 0.50 |
| 11/18/2019 | Review of motion to dismiss and opposition to Defendants' motion for emergency stay from Oct. 24 2019 district court order and comment on the same. | 0.30 |
| 11/19/2019 | Reading Defendants' Joint Brief on appeal from Judge Winmill's May 31 order on remand. | 0.50 |
| 11/19/2019 | Reviewing co-counsel's memorandum on responding to Defendants' Joint Brief on appeal from Judge Winmill's May 31 order on remand and commenting on the same. | 0.50 |
| 11/20/2019 | Travel to and from ISCC to meet with Adree to discuss hearing set by Judge Winmill on November 15 related to appropriate pre-surgical appointments and to review her declaration. | 1.00 |
| 11/20/2019 | Meeting with Adree at the prison to review her declaration for hearing in front of Judge Winmill regarding presurgical appointments. | 0.70 |

| DATE | DESCRIPTION | TIME |
|---|---|---|
| 11/20/2019 | Reviewing briefing for Judge Winmill regarding presurgical appointments and commenting on the same. | 0.30 |
| 11/21/2019 | Attendance at hearing on surgical technique and presurgical steps. | 2.70 |
| 02/12/2020 | Phone conference about possible petition for cert position on motions to stay and litigation in this district court. | 0.70 |
| 03/10/2020 | Reviewing plaintiff's response to defendant's motion to stay all discovery and matters in the district court pending petition for cert. | 0.50 |
| 08/06/2020 | Reviewing draft brief in opposition to cert. before Supreme Court. | 0.50 |
| 10/28/2020 | Zoom call with team members about strategy moving forward. | 1.00 |
| 12/15/2020 | Status conference with the court. | 0.40 |
| 01/14/2021 | Team zoom call to discuss litigation plan and strategy for damages trial. | 1.20 |
| 02/23/2021 | Reviewing proposed settlement statement and making edits on the same. | 0.50 |
| 03/07/2021 | Preparing attorney's fees for settlement conference. | 0.50 |
| 03/09/2021 | Participating in settlement conference | 5.70 |
| 07/26/21 | Phone conference with DF and AW re fee petitions and supporting declarations | 1.00 |
| | **Totals (in hours)** | **118.20** |

# Activities Export

| Date ▼ | Type | Description | Matter | User | Hours | Rate ($/hr) | Non-billable ($) | Billable ($) |
|---|---|---|---|---|---|---|---|---|
| 10/04/2018 | $ | Client clothing and shoes for PI hearing.<br>● Draft invoice 560 | 00151-Edmo<br>Civil Rights | Deborah<br>Ferguson | - | 160.02 | - | 160.02 |
| 07/27/2018 | $ | Documents from client shipped to Hadsell Stormer<br>● Draft invoice 560 | 00151-Edmo<br>Civil Rights | Deborah<br>Ferguson | - | 112.40 | - | 112.40 |
| | | | | | **0.00h** | | **$0.00**<br>0.0h | **$272.42**<br>0.0h |