J. Kevin West, ISB #3337
KWest@parsonsbehle.com
Dylan A. Eaton, ISB #7686
DEaton@parsonsbehle.com
Parsons, Behle & Latimer
800 W. Main Street, Suite 1300
Boise, Idaho 83702
Telephone:     (208) 562-4900
Facsimile:      (208) 562-4901

Counsel for Defendants Corizon, LLC
and Scott Eliason

LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO

Steven R. Kraft (ISB No. 4753)
Special Deputy Attorney General
steve@melawfirm.net
Peter E. Thomas (ISB No. 9756)
peter@melawfirm.net
*Moore Elia & Kraft, LLP*
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031
*Attorneys for Defendants Idaho Department*
*of Correction, Henry Atencio, Jeff Zmuda,*
*Howard Keith Yordy, Richard Craig, and*
*Rona Siegert*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADREE EDMO,<br><br>          Plaintiff,<br><br>v.<br><br>IDAHO DEPARTMENT OF<br>CORRECTION; ET AL.;<br><br>          Defendants. | CIVIL ACTION FILE<br><br>NO. 1:17-cv-151-BLW<br><br>**DEFENDANTS' JOINT RESPONSE IN**<br>**OBJECTION TO PLAINTIFF'S**<br>**MOTION FOR ATTORNEYS' FEES**<br>**AND EXPENSES THROUGH**<br>**SEPTEMBER 30, 2021** |

Defendants, Corizon, LLC, Scott Eliason, Idaho Department of Correction, Henry Atencio,

Jeff Zmuda, Howard Keith Yordy, Richard Craig, and Rona Siegert by and through their

undersigned counsel of record, hereby submit this joint response in opposition to Plaintiff's Motion for Attorneys' Fees and Expenses Through September 30, 2021 (Dkt. 315).

## I.      <u>INTRODUCTION</u>

Plaintiff seeks over $1.365 million in attorney fees for the excessive use of 19 attorneys (at 6 different law firms) who spent almost 6,000 hours (equivalent to over 2 years of working normal business hours every day, including weekends) on the case obtaining a gender reassignment surgery, even though Plaintiff ultimately did not succeed on 6 of 7 causes of action, did not obtain all of the relief sought in the complaint, and 6 of 10 individual defendants were ultimately dismissed because there was no evidence to support Plaintiff's claims against them. Moreover, this is a case that did not go to trial and did not follow a standard litigation schedule where there would be at least a year of discovery. Rather, this case involved very limited discovery (about 3 months) and a three-day hearing. Plaintiff has failed to meet her burden of proving, as the PLRA requires, the fees sought are directly related to and proportional to the injunction they obtained.

To the extent the court does award fees, the fees sought by Plaintiff should be reduced by at least 70% for the reasons detailed herein. Such a reduction is justified to account for the lack of success on many claims and against numerous defendants. Separately, a 70% reduction of the fees submitted is justified due to excessive, unreasonable, and duplicative billings.

Plaintiff also asks the court for an <u>additional</u> $1.365 million by applying a highly unusual and rare multiplier (she seeks a 2.0 multiplier) that is contraindicated by the PLRA and is certainly contraindicated in this case where the courts ultimately held that a permanent injunction was ordered after a final trial on the merits even though Plaintiff's counsel took the exact opposite position in the case. This multiplier is not tied to any direct work by Plaintiff's attorneys in this case. Hence, awarding the multiplier would provide Plaintiff's counsel with an improper windfall

and essentially result in improper punitive damages against defendants in a case where at least 10 Ninth Circuit judges expressed concerns about errors of law in the Ninth Circuit 3-judge panel's opinion and the District Court's injunction order in this case.

Finally, the Bill of Costs should be denied for failure to comply with local court rules, and expenses should be denied because Plaintiff fails to support the claim with documentation, such as receipts and invoices.

## II.    PROCEDURAL BACKGROUND

On April 6, 2017, Plaintiff originally filed a pro se complaint in this case and motion for injunction, which was later withdrawn. (Dkts. 3 & 7.)[1] The case was initially reviewed by the District Court under the Prison Litigation Reform Act (PLRA) determining that Plaintiff failed to state a claim against Defendant Hofer, but allowing Plaintiff to proceed on certain claims against some Defendants. (Dkt. 12.) On June 8, 2017, Plaintiff then filed a pro se First Amended Complaint. (Dkt. 25.) On June 19, 2017, counsel began appearing for Plaintiff. (Dkts. 26 & 27.)

On September 1, 2017, Plaintiff, through her counsel, filed a Second Amended Complaint (SAC) asserting seven causes of action and naming ten Defendants. (Dkt. 36.)

On November 1, 2017, Defendants filed a Motion for Dispositive Relief seeking certain claims be dismissed. (Dkt. 39.) On June 7, 2018, the District Court issued an Order granting, in part, and denying, in part, Defendants' motion. (Dkt. 66.) The Court dismissed Plaintiff's claims related to a name change and transfer to a women's facility, dismissed some claims against State defendants due to Plaintiff's failure to comply with the Idaho Notice of Tort Claim Act, and

---

[1] All references to the docket number are to the District Court docket unless otherwise stated.

granted Defendants' request to preclude Plaintiff from seeking damages arising from events that occurred prior to April 6, 2015 per the applicable statute of limitations. (*Id.*)

A.      **Motion for Preliminary Injunction**

On June 1, 2018, Plaintiff filed a new "Motion for Preliminary Injunction." (Dkt. 62.) Plaintiff sought the following relief:

> Plaintiff requests the Court issue a preliminary injunction: (1) ordering Defendants to provide her immediate access to necessary medical treatment, including (1) sex-reassignment surgery; (b) reinstatement of spironolactone, or an equivalent type of care; (c) access to gender-appropriate underwear, clothing, and commissary items; (d) any other treatment a medical professional qualified to  assess and treat gender dysphoria determines to be medically urgent; and (2) prohibiting Defendants from (a) implementing their policy and/or practice of blanket denial of access to such treatment for transgender persons incarcerated in the Idaho Department of Corrections; and (b) disciplining or retaliating against Plaintiff for expressing her gender identity, including wearing gender-appropriate underwear and clothing, and adhering to female grooming standards with regards to makeup and hair styling.

(Dkt. 62, p. 27.) The motion was brought pursuant to only three of Plaintiff's seven causes of action: her Eighth Amendment claim for inadequate medical care, her Fourteenth Amendment equal protection claim, and her Affordable Care Act claim. (Dkt. 62.)

B.      **Discovery and the Evidentiary Hearing**

The District Court made clear it would only allow limited discovery leading to an evidentiary hearing on the motion for preliminary injunction. It entered a scheduling order on July 1, 2018 with a fact discovery cutoff only two months later and expert discovery cutoff three months later. (Dkt. 73.) A three-day evidentiary hearing began on October 10, 2018 before the judge. (Dkt. 131-133.) Pre and post hearing briefing and proposed findings of fact and conclusions of law were submitted by the parties. There was no jury trial.

## C.      District Court's Order Granting the Preliminary Injunction

On December 13, 2018, the District Court issued its Findings of Fact, Conclusions of Law, and Order (Dec. 13 Order), granting Plaintiff's motion for preliminary injunction in part. The Court ordered Defendants to provide Plaintiff "adequate medical care" including gender confirmation surgery.[2] (Dkt. 149, p. 45.) The District Court determined that IDOC's implementation of an updated gender dysphoria policy on October 5, 2018 appeared to provide Plaintiff with her requested injunctive relief related to accessing gender-appropriate underwear, clothing, and commissary items and, therefore, determined it would not address that request for relief at that time. (*Id.*) The Court noted that Plaintiff may be able to raise the issue in the future, however. (*Id.*) While the Court found that Plaintiff was likely to succeed on the merits of her Eighth Amendment claim (*Id.*, p. 41), the Court found that Plaintiff had "not met her burden on a preliminary injunction on her Fourteenth Amendment and Affirmative Care Act claims" at that time. (*Id.*, p. 44.)

## D.      Stay of the Injunction, Appeals and Related Subsequent Matters

On January 9, 2019, Defendants timely filed Notices of Appeal from the District Court's December 13 Order granting Plaintiff's motion for preliminary injunction. (Dkts. 154 & 155.)

On March 8, 2019, Defendants filed a Motion to Stay with the Ninth Circuit seeking a stay of the court ordered injunction, including a stay of the ordered gender confirmation surgery. (9th Cir. Dkt. 15.) The parties fully briefed the stay request issue. (9th Cir. Dkts. 16, 17 & 18.) On March 20, 2019, two Ninth Circuit judges granted Defendants' motion to stay citing to *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (See Dkt. 175). The Ninth Circuit's citation to *Hilton* suggests that the appellate judges addressing the stay considered the standard factors regulating

---

[2] Gender confirmation surgery is also known as sex reassignment surgery.

the issuance of stays, including the factor of whether Defendants made a strong showing that they were likely to succeed on the merits. (*Id.*)

The appeal was fully briefed on an expedited basis and the case then went to oral argument before a Ninth Circuit 3-judge panel (hereinafter "3-judge panel" or "panel") on May 16, 2019.

On May 30, 2019, the 3-judge panel issued a remand asking the District Court to (1) clarify whether its order denying Defendants' motion for stay pending appeal was meant to renew the injunction, and (2) clarify if it also granted permanent relief and if Plaintiff succeeded on the merits of her Eighth Amendment claim. (Dkt. 195.) In response, on May 31, the District Court  made additional factual findings and stated that it had already entered a permanent injunction, but was also renewing the preliminary injunction. (Dkt. 196.) This holding appeared to create some ambiguity procedurally and, out of an abundance of caution, Defendants timely filed a Notice of Appeal of the District Court's May 30th Order on limited remand because it raised a variety of additional issues not at issue in the first appeal. (See Ninth Circuit Case No. 19-35552, Dkt. 10.) Much later, this second appeal became moot once Defendants exhausted their appeal options and Plaintiff was provided with gender confirmation surgery. (*Id.*, Dkt. 25.)

On August 23, 2019, the 3-judge panel issued its Opinion on the first and main appeal. (Dkt. 209.) Relying, in part, on the District Court's May 31st Order on remand, which clarified that the injunction was permanent (Dkt. 196), the panel held that the appeal was not moot because the injunction did not automatically expire under the PLRA because it was not preliminary. (Dkt. 209, p. 44.)  Otherwise, the unfinalized preliminary injunction would have automatically expired within 90 days under the PLRA. This was a critical decision that allowed the 3-judge panel to consider other issues on appeal since it had determined the appeal was not moot. The panel then affirmed the injunction against Dr. Eliason and held that "[b]ecause Edmo may properly pursue her Eighth

Amendment claim for injunctive relief against [the Director of the Idaho Department of Corrections (IDOC), the Deputy Director of IDOC, and the Warden of Idaho State Correctional Institution] in their official capacities, they are properly included within the scope of the district court's injunction." (*Id.*, pp. 63-65; 76.) However, the Court vacated the injunction to the extent it applied to Yordy, Siegert, Dr. Young, Dr. Craig, and Dr. Whinnery, in their individual capacities, because the evidence in the record was "insufficient to conclude that they were deliberately indifferent to Edmo's serious medical needs." (*Id.*, pp. 76.) The 3-judge panel went on to state: "In particular, the record does not show what [these individual defendants] knew about Edmo's condition and what role they played in her treatment or lack thereof. Edmo has not established their liability, and the district court improperly included them within the scope of the injunction." (*Id.*, pp. 76-77.)[3] Indeed, in the full and final trial on the merits of her Eighth Amendment claim, the only claim in which Plaintiff found *any* success, Plaintiff failed to prove the vast majority of her allegations against the individual Defendants.

On September 6, 2019, Defendants timely petitioned for a rehearing *en banc* before the Ninth Circuit. On February 10, 2020, Defendants' *en banc* petition was denied, but **ten** Ninth Circuit judges dissented from the denial of the petition identifying, in over 40 pages of analysis, various errors of law in the 3-judge panel's opinion and, relatedly, the District Court's Dec. 13 Order (Dkt. 263), which likely would have resulted in reversal of the injunction.

On September 26, 2019, Plaintiff moved the Ninth Circuit to partially lift its stay of the injunction to allow Plaintiff to begin receiving presurgical treatments, such as hair removal in the genital area. On October 10, 2019, the Ninth Circuit partially lifted the stay "so that Plaintiff may

---

[3] Corizon was also vacated from the injunction by the 3-judge panel.  (Dkt. 209, p. 77.)

receive all presurgical treatments and related corollary appointments or consultations necessary for gender confirmation surgery." (Ninth Circuit Case No. 19-35017; Dkt. 104.) On October 24, 2019, the District Court then issued an order requiring Defendants to provide: (1) laser hair removal or electrolysis beginning on November 8, 2019, (2) a gender confirmation surgery referral letter from a treating physician, and (3) payment approval for the surgery. (Dkt. 225.) This order resulted in a third timely appeal by Defendants who were concerned, among other things, that they had not been provided due process when the injunction was modified. Moreover, that there had not been any previous findings regarding what specific type of gender confirmation surgery (e.g., there are multiple vaginoplasties) was required by the Eighth Amendment, and what presurgical treatment was required (such as hair removal) for the specific surgery. (See Dkt. 250; Dkt. 252; see also Ninth Circuit Case No. 19-35917, Dkt. 6.) The District Court appeared to recognize Defendants' concerns because it initially allowed for a limited evidentiary hearing to determine what types of specific GCS would be medically appropriate treatment for Plaintiff and the required presurgical treatments for those surgeries. (Dkt. 244, pp. 17-18.) An in person hearing with the parties' counsel was conducted on November 21, 2019. (Dkt. 254.) Meanwhile, this third appeal was dismissed by the same 3-judge panel, which held that the District Court's Order was a clarification of the existing injunction and did not constitute a modification of an existing injunction that substantially altered the legal relation of the parties. (Dkt. 257.) Plaintiff subsequently received the presurgical requirements, including months of hair removal appointments, while the first appeal was still pending.

Defendants then filed an Application for Stay of the Injunction with the U.S. Supreme Court, which was denied without any opinion or analysis. (Dkt. 279.) (Justices Thomas and Alito dissenting.) Defendants also filed a Petition for Writ of Certiorari and, in the alternative,

Suggestion of Mootness with the U.S. Supreme Court. The Petition for Writ of Certiorari was denied without any opinion or analysis. (Dkt. 294.) (Justice Alito and Justice Thomas dissenting from the denial of certiorari indicating they would have held the case was moot and that the decision below should be vacated.)

Accordingly, after exhausting all appeal options, Defendants complied with the Court's order and Plaintiff received gender confirmation surgery on July 10, 2020. Plaintiff was discharged from prison on July 2, 2021.

## III.   SECTION 1988 AND THE PLRA

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). In 1976, "Congress exercised its power to partially abrogate the American Rule when it enacted the Civil Rights Attorney's Fees Awards Act" and 42 U.S.C. § 1988(b)." *Wilkins v. Gaddy*, 734 F.3d 344, 349 (4th Cir. 2013). Section 1988(b) authorized the courts to award a "reasonable attorney's fee" to a prevailing party in certain civil rights actions, including actions under 42 U.S.C. § 1983. *Venegas v. Mitchell*, 495 U.S. 82, 87 (1990). Congress left it up to the courts to determine what constitutes a "reasonable" fee, which resulted in courts adopting the "lodestar" method. *Perdue*, 559 U.S. at 550. The lodestar calculation multiplies (1) "the number of hours worked" by (2) the "prevailing market rates in the relevant community," and then, (3) in its discretion, the Court can adjust the presumptively reasonable measure of fees upward or downward to reflect what is actually "reasonable" for purposes of § 1988. *Id.* at 551-53.

In 1996, Congress enacted the PLRA to reduce the "ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary." *Wilkins*, 734 F.3d at 349. The primary purpose of the PLRA was "to curtail frivolous prisoners'

suits <u>and minimize the costs</u>—which are borne by taxpayers—associated with those suits." *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999). Among other "provisions intended to reduce the number of lawsuits," *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), the PLRA places a stringent limitation on the scope and amount of attorneys' fees that can be awarded to a prevailing party. *See* 42 U.S.C. § 1997e(d); *see also* H.R.Rep. No. 104-21, at 28 (1995), *reprinted in* 1 Bernard D. Reams, Jr. & William H. Manz, *A Legislative History of the Prison Litigation Reform Act of 1996*, Pub. L. No. 104-134 Stat. 1321 (1997) ("This subsection permits prisoners challenging prison conditions under 42 U.S.C. § 1983 to receive attorney fees but reasonably limits the circumstances under which fees may be granted as well as the amount of the fees.").

The PLRA limits attorney's fees in at least two ways. First, the PLRA provides that in cases brought by a prisoner "in which attorney's fees are authorized under § 1988, such fees shall <u>not</u> be awarded, <u>except</u> to the extent that" it was "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and "the amount of the fee is proportionately related to the court ordered relief for the violation[.]" 42 U.S.C. § 1997e(d)(1) (emphasis added). Second, the PLRA provides that "[n]o award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under" the Criminal Justice Act for court-appointed counsel. 42. U.S.C. § 1997e(d)(3).

As the U.S. Supreme Court recognized, "[t]he fee landscape changed with the passage of the PLRA." *Marin v. Hadix*, 527 U.S. 343, 349 (1999). The PLRA "set substantive limits on the award of attorney's fees that may be awarded in prison litigation suits." *Id.* at 350, 354. It "caps all fees that are ordered to be paid after the enactment of the PLRA". *Id.* at 351-52; *see also Webb v. Ada Cty.*, 285 F.3d 829, 840 n.6 (9th Cir. 2002) (explaining that although the lodestar method

was the proper fee calculation in prisoner cases "[p]rior to the enactment of the PLRA," now "the method of calculating the hourly rate for attorney's fees is dictated by the PLRA").

Thus, an attorney's fee award under the PLRA is calculated by (1) determining the number of hours billed that were directly and reasonably incurred (§1997e(d)(1)) and (2) multiplying that number by the limited hourly rate under §1997e(d)(3). The PLRA expressly denies attorney's fees "except to the extent" allowed by the above formula. *See* 42 U.S.C. § 1997e(d). The PLRA's specific formula does not include any kind of discretion for district courts to enhance an award beyond the express limits of the statute. Thus, the PLRA places a cap on fee awards in prisoner cases and abrogates the traditional, judicially created lodestar method of calculating fee awards under 42 U.S.C. § 1988.

## IV.   PLAINTIFF DID NOT PREVAIL ON SEVERAL CLAIMS AND AGAINST SEVERAL INDIVIDUAL DEFENDANTS AND DID NOT SHOW WHICH FEES WERE DIRECTLY RELATED TO HER SUCCESSFUL CLAIMS

The PRLA expressly provides that any fee award must be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d). Similarly, under the traditional principles of fee awards under Section 1988, the court can reduce the lodestar amount in light of the limited success of the plaintiff. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 434–37 (1983) ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."); *Graves v. Arpaio*, 633 F. Supp. 2d 834, 843 (D. Ariz. 2009), *aff'd*, 623 F.3d 1043 (9th Cir. 2010). Plaintiff failed to meet her burden to demonstrate which fees were directly related to the claims on which she prevailed. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (holding that the fee applicant bears the burden

of "documenting the appropriate hours expended . . . [and] submit[ting] evidence in support of those hours worked").

Courts have repeatedly restricted and/or reduced attorney's fee awards in prisoner cases when the plaintiff prevails on some but not all claims or against some but not all defendants. For example, in *Johnson v. Breeden*, 280 F.3d 1308, 1327 (11th Cir. 2002), the Eleventh Circuit reversed the district court's award of attorney's fees because "the district court failed to restrict the award, as required by § 1997e(d)(1)(A), to only those hours directly and reasonably incurred in proving a violation of Johnson's rights under the Eighth Amendment by Breeden and Gomez, the only claim and defendants against whom he was successful." *Id.* The court concluded there was "no finding in the record about, and no indication that an inquiry was made concerning, whether the work done and expenses incurred on the unsuccessful claims were 'directly and reasonably incurred.' *Id.* "[Plaintiff] is only entitled to payment for work and reimbursement of expenses that meet that standard." *Id.*

Several courts in the Ninth Circuit have similarly restricted or reduced awards when the plaintiff does not prevail on all claims. In *Dannenberg v. Valadez*, 338 F.3d 1070 (9th Cir. 2003), after the plaintiff prevailed on only some of his § 1983 claims, the district court awarded full attorneys' fees and costs. On appeal, the Ninth Circuit vacated and remanded the order, finding that circumstances warranted reduction of the fees award. Specifically, the Court concluded that the plaintiff "did not prevail on all of his claims" and that certain causes of action were "decided against him." *Id.* at 1075. Additionally, even on his successful claim, he did not prevail against some of the defendants. *Id.* The court also found it relevant that the plaintiff obtained only a fraction of the damages sought. *Id.*; *see also Watts v. Dep't of Corr.*, No. 1:03-CV-5365OWWDLBP, 2007 WL 1752519 (E.D. Cal. June 15, 2007) (magistrate judge reduced

attorney's fee award by 50% to reflect the plaintiff's lack of success of all claims, and the reviewing district judge further reduced the award to 25% to reflect the plaintiff's success on only one of four claims); *Smith v. Beauclair*, No. CV03-222-C-EJL, 2010 WL 4641333 (D. Idaho Nov. 4, 2010) ("[S]ince Plaintiff prevailed on two of five claims he is entitled to 40% of his requested attorneys fees hours.").[4]

Here, Plaintiff brought seven causes of action but only obtained injunctive relief through one cause of action (Eighth Amendment) and failed to prove any wrongdoing on the part of numerous Defendants; all other counts were dismissed. Thus, with the exception of the limited success on her Eighth Amendment claim, Plaintiff failed to prove any of her claims against any Defendant and cannot be said to have prevailed on those other claims. Accordingly, as in *Smith v. Beauclair*, supra, Plaintiff should only be entitled to 14% of the fees and expenses sought (1 of 7 claims). As the evidentiary hearing was deemed a final trial on the merits, Plaintiff was not successful in proving any of the other causes of action.

Plaintiff's attorneys may argue that they only brought the motion for preliminary injunction pursuant to three causes of action: Eighth Amendment, Fourteenth Amendment, and Affordable Care Act. Not only does this cut against Plaintiff's argument that all of her causes of action were intertwined with seeking the injunction, but it also still supports a substantial reduction in the fees sought. As indicated above, the District Court found that Plaintiff had "not met her burden on a preliminary injunction on her Fourteenth Amendment and Affirmative Care Act claims." (*Id.*, p.

---

[4] The court also reviewed the descriptions of time request and found that some of the time expended was "excessive" and reduced certain of that time by 50% "based on the lack of complexity." The court was critical of research time spent to get up to speed on prisoner civil rights issues as "Defendants should not have to pay for the extra time Plaintiff's counsel needed to get up to speed in this matter." *Id.* Other reductions included duplicative time at a deposition.

44.)  Again, as it was deemed a final trial on the merits, Plaintiff did not succeed on two of the three claims under which the preliminary injunction was sought. So, from this viewpoint Plaintiff could still only be said to have prevailed on 33% of her claims for relief and would only be entitled to 33% of the fees and expenses sought (1 of 3 claims).

Again, it is significant that the Ninth Circuit reversed the District Court's original finding, in part, holding that Plaintiff did not prove five of the named individual defendants (Yordy, Siegert, Dr. Young, Dr. Craig, and Dr. Whinnery) were deliberately indifferent, holding the record did not show what these individual defendants knew about Edmo's condition and what role they played in her treatment or lack thereof, and vacating them from the injunction. Corizon was also vacated from the injunction on appeal. In other words, Plaintiff was unsuccessful on claims against six of ten named defendants. Indeed, Plaintiff presented zero evidence to support any cause of action against the other Defendants. It was never determined that any of the claims against these Defendants had any basis in law or fact. Yet, these Defendants, who were successful on appeal, had to defend themselves in discovery, at the evidentiary hearing, and on appeal, not to mention were subject to the stresses of high-profile litigation. Accordingly, under this analysis, Plaintiff would only be entitled to 40% of the fees and expenses sought (4 of 10 defendants).

Because Plaintiff did not prevail on several claims and several individual defendants were dismissed, Plaintiff's fees and costs cannot all be construed as "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" under the PLRA. Even under general principles of fee awards under Section 1988, a fee reduction is appropriate when a party has achieved "only partial or limited success." *Hensley*, 461 U.S. at 436-37. Plaintiff fails to appreciate her lack of success on numerous claims and against over half the defendants and failed to distinguish which fees and costs were "directly" incurred "in proving an actual violation of the

plaintiff's rights." Instead, Plaintiff contends that all of her claims "involved a common core of facts and were simply alternative legal theories of liability[.]" [Dkt. 315-1, p. 16.] That is not the standard. *Hensley*, 461 U.S. at 438-39 ("We emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.") Indeed, almost <u>any</u> lawsuit involves a common core set of facts and alleges alternative legal theories of liability. Plaintiff's causes of action concerned different statutes and applicable laws (and some different facts), different legal standards and burdens, and different legal theories, and Plaintiff did not succeed on many of those claims. Plaintiff also ignores that fact that most individual defendants—who had varying and different levels of involvement in the matter—were dismissed.

Even when it is impracticable to identify which hours counsel spent on the successful portion and which hours counsel spent on the unsuccessful portion, a general reduction is appropriate. *Hensley*, 461 U.S. at 436-37 ("The district court may attempt to identify specific hours that should be eliminated, <u>or it may simply reduce the award to account for the limited success</u>.") (emphasis added); *Smith v. Beauclair*, No. CV03-222-C-EJL, 2010 WL 4641333 (D. Idaho Nov. 4, 2010) (reducing fees based on lack of total success using a percentage formula because the court could not "separate the legal hours spent on the unsuccessful claims from those spent on the successful claims based on the detailed attorney time sheets submitted"); *See also U.S. v. Bright*, No. 07-00311, 2010 WL 2734779, at *11 (D. Haw. Jul. 9, 2010) (reducing total fees based on the party's percentage of success in the case); *see also Puente Arizona v. Penzone*, No. CV-14-01356, 2017 WL 4805116, at *4 (D. Ariz. Oct. 25, 2017) ("Rather than attempting an hour-by-hour reduction for the many lawyers and law students who worked on Plaintiffs' case, the Court

concludes that a further 25% reduction . . . is required to accurately reflect the mixed success of this case.")

Plaintiff chose to make several claims and sue numerous individuals. There was no basis for those claims that were dismissed, and there was no basis to sue the individual defendants who were dismissed. **Ultimately, in light of all the considerations set forth above, the Court should reduce any fee award by at least 70% due to Plaintiff's failure to prevail on numerous claims and six of the ten defendants, and because not all the relief requested was granted based on Plaintiff's limited success in the case**.

## V.    PLAINTIFF'S FEES ARE NOT REASONABLE

The PRLA expressly provides that any fee award must be "reasonably incurred." 42 U.S.C. § 1997e(d).[5] Many of the fee charges Plaintiff seeks to recover are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433.

### A.    Plaintiff's Case Was Overstaffed.

While it was Plaintiff's prerogative to retain however many and whatever types of attorneys she wished, she does not have a constitutional or statutory right to a fee award for attorney work that is excessive, redundant, or otherwise unnecessary. Indeed, cases may be "overstaffed," but attorneys must still use proper billing judgment in assessing fees, just as they are ethically obligated to do for their clients. *Hensley*, 461 U.S. at 434; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 2010 (9th Cir. 1986) (holding that hours claimed "may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed and hours are duplicated,

---

[5] Similarly, under the lodestar formula, the district court may also reduce the lodestar amount in light of the limited success of the plaintiff. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Hensley*, 461 U.S. at 434–37.

[or] if the hours expended are deemed excessive or otherwise unnecessary"). "Substantial reductions" of attorney's fees are warranted when a party's documented hours are replete with "needless peer review." *Grove Cement Co. v. Liberty Mut. Ins. Co.*, 649 Fed. Appx. 585, 589 (9th Cir. 2016); *cf. Jackson ex rel. Dupree v. Director, Office of Workers' Compensation Programs*, 505 Fed. Appx. 616, 617 (9th Cir. 2013) (upholding disallowance of 60.6 of the 80.4 hours spent on two reply briefs because the hours were "duplicative" and excessive).

Overall, Plaintiff's fee request is excessive and unreasonable because the case was overstaffed. The following is unreasonable on its face:

- Plaintiff was represented by attorneys from **six different law firms** from all over the country, including Idaho, California, and Georgia, all of which billed significant time in the case (the lowest number hours billed by any of the six firms was local counsel, Ferguson Durham, which still billed over 300 hours).

- **Nineteen different attorneys** billed time in this matter on behalf of Plaintiff. One of those attorneys alone billed over 2,300 hours. One attorney billed over 1,100 hours. One attorney billed over 800 hours. One attorney billed over 300 hours. One attorney billed over 200 hours. Three attorneys billed between 100-200 hours. Five attorneys each billed between 40-75 hours. The remaining 6 attorneys billed a combined approximately 75 hours.

- Combined, Plaintiff's counsel billed for a total of **nearly 6,000 hours** (equivalent to over 2 years of working normal business hours every day, including weekends).

Such hours are facially unreasonable and not proportional to the needs and nature of this case. Notably, there was no jury trial in this matter; discovery was limited (only about three months of discovery leading up to the evidentiary hearing and then discovery was very restricted after that while the case was on appeal); and the U.S. Supreme Court denied Certiorari and therefore the case was not fully briefed or argued before the Supreme Court.

**B.    Many of the Time Entries and Fees Are Unreasonably Excessive, Duplicative, Redundant, or Otherwise Unnecessary.**

The Court may exclude any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433. Plaintiff's counsel did not exercise sound billing judgment because the billing records demonstrate duplicative billing, block billing, excessive amounts of time for certain activities, inconsistent time entries, and billing for clerical tasks, much of which would not be reasonably pushed onto a client. A review of Plaintiff's counsel's time entries reveals unreasonable and excessive time incurred. (*See generally* Plaintiff's counsel's time entries at Dkt. 315-2, pp. 22-74; Dkt. 315-3, pp. 42-135; Dkt. 315-4, pp. 51-78; Dkt. 315-5, pp. 17-34; Dkt. 315-6, pp. 14-15; Dkt. 315-7, pp. 12-18). The vast number of attorneys on the case resulted in many duplicative efforts, including numerous attorneys reviewing and editing the same briefs, reviewing the same orders and decisions by the courts, conducting, or reviewing the same research, and otherwise participating in the same activities.

The following is a non-exhaustive list and examples of duplicative efforts and/or excessive time incurred, as well as time incurred that was not directly related to the injunction:

- <u>Over 100 hours</u> billed time for the initial workup on the case and preparing the second amended complaint. This involved work by 5 different attorneys, a legal assistant, and a law clerk (Whelan, Rifkin, Durham, Ferguson, Minter, Valdenegro, Smith), and included travel to Idaho by out-of-state counsel. (*See generally* time entries from 5/18/17 to 9/1/17.)

- <u>200.5 hours</u> billed for driving and other travel time by several difference attorneys. There is no indication that any productive work was done during travel time directly related to this case or the injunction. Most of this time was by out-of-state counsel for unnecessary travel to Idaho for work that could have been done by local counsel (client meetings, meetings with experts, hearings, depositions). The time included travel to Idaho for the preliminary injunction hearing by attorneys (such as Alex Chen) who did not argue at the hearing. (*See generally* time entries referencing travel.)

- <u>At least 83.3 hours</u> billed for opposing Defendants' partial MSJ/MTD. This work included involvement of 5 attorneys (Chen, Durham, Ferguson, Rifkin and Whelan) and a moot court in advance of the hearing, resulting in duplicative work. Two local counsel billed for attending the hearing even though only one attorney argued at the hearing. Moreover, Defendants prevailed on many of the issues in their motions, successfully limiting certain claims and precluding claims over 2 years before the complaint was filed. Any success by Plaintiff on certain issues only preserved allegations and claims, many of which were not related to the injunction. (*See generally* time entries from 11/7/17 to 11/22/17 and 3/29/18 to 4/4/21.)

- Over <u>228.1 hours</u> from 4/11/18 (when Attorney Whelan met with expert Ettner regarding the PI motion) through 6/1/18 (when Plaintiff's preliminary injunction was filed), incurred by six different attorneys (Ferguson, Wilensky, Shanbhag, Chen, Minter, Durham) primarily on what appears to be work preparing and filing Plaintiff's motion for preliminary injunction. Not only is this excessive, but the number of attorneys resulted in duplicative and redundant billings. (*See generally* time entries from 4/11/18 to 6/1/18.)

- <u>1515.2 hours</u> from 6/2/18 through 10/9/18 (the day before the evidentiary hearing) for a variety of tasks, but primarily related to the limited discovery that was conducted. There were about two months of fact discovery and an additional month of expert discovery leading up to the hearing. (*See generally* time entries from 6/2/18 to 10/9/18.) Defendants assert the following regarding this time period:

    o The involvement of numerous attorneys (over 11 attorneys) involved during this stage was excessive, duplicative, and unreasonable.

    o Many hours were billed researching issues that did not come to a head and/or were not at issue in the injunction, such as conflict issues (that didn't exist), and out of state counsel researching how to request medical records in Idaho, for which an SOP and discovery rules provide an easy answer.

    o Counsel billed excessive time trying opposing things like a protective order and an IME of Plaintiff, which the Court granted.

    o Counsel billed excessive hours of preparation for depositions. For example, Attorney Shanbhag billed close to 40 hours to prepare for the 6.5-hour deposition of Dr. Eliason. (*See* Shanbhag billed hours from 8/8/18 to 8/14/18 at Dkt. 315-4, p. 54.).

    o Attorney Chen billed <u>41.4 hours</u> preparing a timeline of Plaintiff's medical history. (*See* Chen's billed hours from 8/1/18 to 8/14/18 at Dkt. 315-3, p. 125.)

- Excessive entries by single attorneys with vague descriptions, such as 15.7 hours by Attorney Rifkin for "prep for pretrial hearing, confs w counsel" on 10/9/18 and 18.7 hours by Attorney Rifkin on 10/8/18 for "Prep for Preliminary Injunction hearing, confs w team re same". (Dkt. 315-2, p. 30.)

- <u>201.4 hours</u> billed by seven attorneys for the three-day evidentiary hearing. This equates to all seven attorneys each billing, on average, 9.6 hours for each day of the hearing. One example of the unreasonable nature of these hours is Attorney Rifkin's two entries on the <u>same day</u> (10/11/18), one for 14 hours "prepping for preliminary injunction," and the other 6.5 hours for attending the hearing (a total of 20.5 hours in a single day). (Dkt. 315-2, p. 30.)

- <u>227.8 hours</u> billed for post-evidentiary hearing briefing up to the time the Court issued its injunction order on December 13, 2018, including approximately 150 hours preparing proposed findings of fact and conclusions of law. Attorney Rifkin <u>alone</u> billed <u>60 hours</u> in four days (from 10/23/18 – 10/26/18) (i.e., average of 15 hours per day for 4 days straight) for post-trial briefing and proposed findings of fact. (Dkt. 315-2, p. 31.)

- <u>1305.8 hours</u> billed primarily on the Ninth Circuit appeal and stay issues (with minimum discovery and district court activity), from time this Court issued its injunctive order until the 3-judge Ninth Circuit Panel issued its opinion on August 23, 2019. Having 19 attorneys involved during this time resulting in duplicative, excessive, and unreasonable work, including numerous hours opposing Defendants initial motion to stay with the Ninth Circuit, <u>which was granted</u>; involvement with the media; 85.3 hours billed for coordination and review of amicus briefs (involving even more attorneys in addition than the 19 attorneys directly involved in the case) that were not relied on in Ninth Circuit decision; 1.5 hours researching page and word limits for the Ninth Circuit (2/12/19 entry by Shaleen Shanbhag); excessive time on briefing appeals by numerous different attorneys, some billing 15-17 hours per day; two moot/mock oral arguments before the actual oral argument before the Ninth Circuit; and four attorneys attending oral argument before the Ninth Circuit on 5/16/19 even though only one attorney argued. From 5/2/19 through 5/16/19, counsel billed <u>178.9 hours</u> just preparing for and attending oral argument. (*See generally* all time entries from December 2018 through August 2019.)

- <u>867.7 hours</u> from 8/24/19 through 2/10/20, mostly related to en banc petition, with numerous attorneys involved. (*See generally* time entries from 8/24/19 to 2/10/20.) The second appeal did not involve significant briefing, and the third appeal was dismissed quickly for lack of jurisdiction.

- <u>923.6 hours</u> billed from 2/11/20 through 10/13/20, primarily related to the United States Supreme Court appeal. (*See generally* time entries from 2/11/20 to 10/13/20.) Numerous attorneys were involved, and the Court denied Certiorari and therefore the case was never fully briefed on the merits.

- 428.6 hours billed related to remaining issues in case, including mediation and a partial settlement not related to the injunction. Time entries also include reviewing releases in an unrelated Hep-C case, as well as excessive time entries related to this motion for fees, which they began preparing in mid-June 2021.

- 263.3 hours billed from 6/14/21 through 9/30/21, the vast majority of which relate to preparing the motion for fees over a 2.5-month time period. (*See generally* time entries from 6/14/21 to 9/30/21.)

- 73 hours billed related to preparing and reviewing statements made to the media. (*See generally* time entries related to media statements and coverage.)

Additionally, block billing, i.e., when lawyers aggregate multiple smaller tasks into a single "block" time entry, is unreasonably ambiguous because it disables a court from reasonably discerning how an attorney attributed his or her time, hides accountability, and may increase the time sought by 10% to 30% by lumping together tasks. *See Yeager v. Bowlin*, No. 2:08-102, 2010 WL 1689225, at *1 (E.D. Cal. Apr. 26, 2010); aff'd 495 Fed. App'x 780 (9th Cir. 2010) (citation omitted); *see also Brandt v. Astrue*, No. 08–0658, 2009 WL 1727472, at *4 (D. Or. Jun. 16, 2009) (reducing the hours counsel block billed by 50 percent). Thus, where a fee applicant chooses to "block bill some of its time rather than itemize each task individually," the court may "impose a reduction," as long as it explains how the reduction properly balances the hours that counsel actually billed. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (citations omitted). Relatedly, the Court should deny or reduce fees that are not facially attributable to the claim on which Plaintiff succeeded. *See Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ("Where billing records are lacking in detail, a reviewing court may reduce the fee to a reasonable amount."). Time entries are unreasonably ambiguous when the court cannot discern how the time billed is directly attributable to the case. *Center for Food Safety v. Vilsack*, No. C–08–00484 JSW, 2011 WL 6259891 at *8 (N.D. Cal. Oct. 13, 2011).

Numerous time entries by Plaintiff's counsel constitute block billing and/or they are ambiguous as to what work was actually done. By way of example only, most entries regarding conferences and calls (such as conferences and calls among Plaintiff's counsel) are vague and do not state the topics that were discussed. For example, Attorney Dan Stormer's time entries include the following descriptions: "conference/strategy"; "calls/strategy"; "calls/conference"; "calls/discussion"; "research/conference"; "discussion re: planning"; "conference"; "strategy meeting"; "discussion/discovery"; "conf w LR re case strategy"; "review briefs"; "discussion/review argument/strategy"; "strategy"; "conference call/preparation"; "review case/calls"; "review issues"; "call with LR, SS"; "status meeting/call"; "review cases"; "calls"; "tasks"; "meeting." (*See generally* Dkt. 315-4, pp. 51-78.) Many other entries by Plaintiff's counsel are similarly vague and ambiguous regarding telephone calls and conferences among counsel. Others, such as most, if not all, entries by timekeeper Jessica Valdenegro are vague, ambiguous, and constitute "clerical tasks." (Dkt. 315-4, pp. 51-78.) Valdenegro's entries state things like "conf with LR, conf with TG" and "call re direct bill," and they constitute clerical tasks such as "prep files" and "call with prison." *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (reducing fees for "clerical tasks").

Finally, the time sheets provided by Plaintiff also demonstrate that the vast majority of work billed on this case was done by partner-level attorneys and at partner level rates. For example, attorney Rifkin apparently did not use an associate or lower billing attorney for virtually any work at all. She herself drafted initial pleadings and did much of the work which, under prudent and reasonable billing, could have and should have been done by associates or lower billing attorneys. There is no explanation for why even local counsel and their firm could not have done more of this kind of work at billing rates significantly lower than attorney Rifkin. This is significant

because although Plaintiff's counsel claims to be seeking fees at the PLRA rate, they simultaneously argue that the PLRA rate does not fairly compensate them for their work based on their normal hourly rates.

**In light of all the clearly excessive, redundant, duplicative, ambiguous, and otherwise unnecessary or unrelated fees, the Court should reduce the fees submitted by Plaintiff's counsel by at least 70%.**

## VI.     THE COURT SHOULD REJECT PLAINTIFF'S REQUEST FOR A MULTIPLIER

### A.     The PLRA Does Not Provide the District Court with Discretion to Enhance a Fee Award Beyond What is Statutorily Prescribed.

The PLRA's specific formula places a cap on fee awards and does not include any kind of discretion for district courts to enhance an award beyond the express limits of the statute. Allowing such discretion is contrary to the plain language of the PLRA and inconsistent with the Supreme Court's recent ruling that the PLRA governs over § 1988's lodestar framework:

> In 1976, Congress enacted what is now 42 U.S.C. § 1988(b) to authorize discretionary fee shifting in civil rights suits. For years that statute governed the award of attorney's fees in a large variety of civil rights actions, including prisoner civil rights lawsuits like this one. But in the [PLRA] of 1995, Congress reentered the field and adopted § 1997e's new and specialized fee shifting rule for prisoner civil rights suits alone. Comparing the terms of the old and new statutes helps to shed a good deal of light on the parties' positions.

*Murphy v. Smith*, 138 S. Ct. 784, 789 (2018). The Supreme Court explained that whereas "[§] 1988(b) confers discretion on district courts in unambiguous terms . . . , § 1997e(d) expressly qualifies the usual operation of § 1988(b) in prisoner cases." *Id.* And "[i]f Congress had wished to confer the same discretion in § 1997e(d) that it conferred in § 1988(b), we very much doubt it would have bothered to write a new law; omit all the words that afforded discretion in the old law;

and then replace those old discretionary words with new mandatory ones." *Id.* Although the Court did not expressly reject discretionary fee enhancements under § 1997e(d) (since the appeal did not involve the question of enhanced fee awards), the Court specifically pointed to Subsections 1997e(d)(1) and (d)(3), noting that these subsections "also limit the district court's pre-existing discretion under § 1988(b)." *Id.* "All this," the Court reasoned, "suggests a statute that seeks to restrain, rather than replicate, the discretion found in § 1988(b)." *Id.*

Consistent with *Murphy*, multiple circuit courts have recognized that the PLRA prescribes the standard for awarding attorney's fees in prisoner cases, not the lodestar method (including any multiplier). In *Johnson v. Breeden*, 280 F.3d 1308, 1326-27 (11th Cir. 2002), the Eleventh Circuit held that the district court abused its discretion by following the lodestar method because that "is not the proper legal standard, because it ignores the limitations set forth in [the PLRA]." *Id.* (citing *Walker v. Bain*, 65 F. Supp. 2d 591, 596 (E.D. Mich. 1999) ("Although the lodestar method provides the correct approach for determining a reasonable attorney fee under § 1988 generally, the amount which may be awarded in a case brought by a prisoner is now capped. Specifically, both the availability of fees and their amount have been restricted by [the PLRA].")). In *Shepherd v. Goord*, 662 F.3d 603, 606 (2d Cir. 2011), the Second Circuit affirmed the district court's application of an attorney's fee award cap. The court found that "[w]ith the 1996 enactment of the PLRA, Congress imposed 'substantial restrictions' on § 1988(b) attorney's fees awards to prevailing prisoner plaintiffs." *Id.*; *see also Walker v. Bain*, 257 F.3d 660, 665 (6th Cir. 2001) ("Among the many new changes relating to prisoner civil rights suits, the PLRA modifies the application of 42 U.S.C. § 1988 to prevailing prisoners by providing stringent limitations on both the availability and the amount of attorney fee awards."); *Boivin v. Black*, 225 F.3d 36, 39 (1st Cir. 2000) ("In enacting the PLRA, Congress deviated from this pattern [under Section 1988], choosing

to place some explicit limitations on the fees that courts can award to prisoners' lawyers in civil cases.[]").

Awarding Plaintiff a fee enhancement (such as a multiplier) would constitute an end-run around the limitations prescribed by Section 1997e(d). It would effectively allow an increase in the PLRA hourly rate, which is, in fact, what Plaintiff's counsel is doing by asking the Court to double the PLRA rate. *See, e.g.*, Dkt. 315-1, pp. 18-25 (arguing under the PLRA formula and without the enhancement, Plaintiff would be compensated "for only a fraction of their work" and asserting that the PLRA rates are far below market rates). Thus, Plaintiff's briefing on this issue directly asks the Court to disregard 42 U.S.C. Section 1997 and apply 42 U.S.C. 1988 instead, something which would violate both the plain meaning of 42 U.S.C. Section 1997 as well as the intent behind that statute. Section 1997e(d)(3)'s rate cap effectively becomes meaningless if the Court can simply turn around and enhance the total fee award under the cloak of a multiplier. Plaintiff's attorneys' argument on this point amounts to nothing more than their disagreement with Congress' reasoning behind Section 1997e and their request that the Court simply ignore that statute. Any such argument cannot be valid in light of 42 U.S.C. Section 1997e's unambiguous application to this case. For these reasons, the Court should apply the PLRA formula, not the lodestar method, and therefore deny Plaintiff's request for any kind of "multiplier" or "enhancement," let alone the unreasonable and excessive 2.0 multiplier she requests. The applicable statute leaves no discretion for the Court to award any such fee.

**B.    Even Under Ninth Circuit Precedent Allowing the Court Discretion to Award a Multiplier, a Multiplier is Not Appropriate in this Case.**

The Ninth Circuit has—contrary to the PLRA's express language and policy and purpose behind the statute—authorized a fee enhancement in prisoner cases governed by the PLRA. *See*

*Kelly v. Wengler*, 822 F.3d 1085, 1100 (9th Cir. 2016) ("[T]he PLRA allows enhancement of the lodestar figure in appropriate circumstances."); *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020) ("The PLRA . . . authorizes multipliers to the base hourly rate above the cap set by 42 U.S.C. § 1997e(d)(1)"). Defendants maintain that the Ninth Circuit's allowance of a fee enhancement violates the PLRA for the reasons stated above.

However, even under Ninth Circuit precedent, a multiplier or fee enhancement is not warranted in the instant case. Nothing about the Ninth Circuit precedent requires the Court to apply any kind of multiplier, let alone a 2.0 multiplier. To the contrary, "[a] strong presumption exists that the lodestar figure represents a reasonable fee[.]" *Parsons*, 949 F.3d at 467 (emphasis added). "Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996) (emphasis added).

The Ninth Circuit has held that the district court must "'decide whether to enhance or reduce the lodestar figure based on an evaluation' of the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), 'that are not already subsumed in the initial lodestar calculation.'" *Parsons*, 949 F.3d at 467 (emphasis added) (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 & n.4 (9th Cir. 2000) (citations and internal quotation marks omitted). "[A]ny reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion." *Parsons*, 949 F.3d 443 at 467 (quoting *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988))."

In adjusting an award, however, the district court must focus on the *Kerr* factors "that are not already subsumed in the initial lodestar calculation." *Morales*, 96 F.3d at 363-64, *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). Factors one through four and six are considered subsumed in the lodestar calculation. *Id.* at 364 n.9. Those *Kerr* factors determined not

subsumed in the lodestar calculation therefore could include: "(5) the customary fee ... (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.*; *Kerr*, 526 F.2d at 70; *see Graves v. Arpaio*, 633 F. Supp. 2d 834, 842 (D. Ariz. 2009) *aff'd*, 623 F.3d 1043 (9th Cir. 2010).

The burden of proving that enhancement is necessary must be borne by the fee applicant and the fee applicant must produce specific, fair and reasonable evidence that supports the enhancement. *Perdue*, 559 U.S. at 553.

*Kerr* factors 5, and 7-12 do not support a multiplier or enhancement in this case for the following reasons:

### 1.  Customary Fee in Similar Litigation (*Kerr* factor 5)

Using a multiplier or fee enhancement to make up for the perceived notion of under compensation based on the PRLA rates renders the PLRA fee cap meaningless (not to mention circumvents the PLRA). This is one of the reasons the discretionary fee enhancement or multiplier scheme violates the PLRA and should not be applied. In any event, Plaintiff has failed to meet her burden of demonstrating a "customary fee in similar litigation."

First, Plaintiff's briefing fails to cite other similar cases in order to demonstrate that the fees requested are reasonable or within the normal range for similar cases. On this point, Plaintiff's counsel asserts that there *is no such* similar litigation. This argument is unavailing: this lawsuit involved applying well-established Eighth Amendment precedent on prison medical care to the facts of this case. Indeed, Plaintiff's counsel has previously argued that this case is not "novel" or "groundbreaking", stating that the "rare medical condition of gender dysphoria does **not** transform

the District Court's application of settled Eighth Amendment law into a case raising novel legal issues." See Case No. 19-35017, Dkt. 17, P. 8 (emphasis added). Moreover, Plaintiff's counsel has previously argued that "gender dysphoria does <u>not</u> create a novel legal issues…[and] determinations about applicable medical standards of care are…factual determinations <u>regularly made by district courts</u>." *Id*., p. 20. Thus, Plaintiff's counsel should not be allowed to take the opposite position for the purpose of seeking attorney's fees.

Second, Plaintiff fails to demonstrate what a reasonable hourly rate for similar litigation is in the local forum (Boise, Idaho). Plaintiff relies upon (1) the self-serving affidavit of Deborah Ferguson, one of the attorneys attempting to obtain a fee award; and (2) the affidavit of Howard Belodoff, whose credibility regarding reasonable fee awards has been significantly called into question.

Ms. Ferguson states, in conclusory fashion, that her and her partner's hourly rates ($475/ hr. and $400/ hr. respectively) are "in line with or below the hourly rates of other attorneys in the Boise area with similar backgrounds, experience, and skill." (Dkt. 315-5, pp. 13-14.) However, she does not limit her comparison to hourly rates in "similar litigation." Additionally, she provides no examples of attorneys in the community who have the rate of $475/ hr. or higher, and no examples of fees awarded in any cases at the rate of $475 or higher. To the contrary, the examples of fee awards provided by Ms. Ferguson were awards based on significantly lower hourly rates that what she is claiming. (*Id.*) Indeed, she does not provide a single example of a fee award at the rate she now claims to be "customary."

As for Mr. Belodoff's affidavit, he not-so-subtly claims to have the exact same hourly rate as Ms. Ferguson ($475/hr.). It is also improper for Mr. Belodoff to be making hearsay representations on behalf of other specific attorneys at other firms regarding their 2021 rates,

especially given that he provides no information as to those attorneys' practice areas, or any basis, foundation, or evidence in support of making those statements. Importantly, Mr. Belodoff lacks credibility on the reasonableness of attorney's fees and his declaration should be wholly ignored by this Court. In *Ayala v. Armstrong*, No. 1:16-cv-00501-BLW, 2019 WL 96299 (D. Idaho Jan. 3, 2019), this Court recently reduced the number of hours Mr. Belodoff was seeking by <u>345 hours</u> (which represented more than half the number of hours he was seeking) to account for the unreasonable number of hours expended, the "unhelpful" and "troubling" briefing filed by Mr. Belodoff, and Mr. Belodoff's advocacy that "shrouded, rather than illuminated," the issues in the case and "failed to offer much" that ultimately yielded a favorable result for the plaintiffs. *Id.* at *2. It is also notable that Mr. Belodoff's rate in that case was $425/hr.—in contrast to the $475/hr. that he now claims to be his rate and the customary rate in the community. *Id.*

An examination of the case law demonstrates that recent fee awards for local attorneys in federal civil rights cases have been based on an hourly rate substantially lower than Mr. Durham's and Ms. Ferguson's claimed rates. *See, e.g.*, *Kelly v. Wengler*, 7 F. Supp. 3d 1069 (D. Idaho 2014), *aff'd*, 822 F.3d 1085 (9th Cir. 2016) ($275-$300/hr. for local counsel; $435 for east coast counsel with 45 years of experience); *Balla v. Idaho State Bd. of Correction*, No. CV-81-1165-S-BLW, 2016 WL 6762651 (D. Idaho Feb. 1, 2016) ($190-$375/hr. for local Stoel Rives counsel, including counsel with 20 years of experience); *Bown v. Reinke*, No. 1:12-CV-262-BLW, 2016 WL 2930904 (D. Idaho May 19, 2016) ($275/ hr. for local counsel/$350 for outside Wyoming counsel with 27 years of experience).

Finally, Plaintiff's representation regarding the "customary" hourly rate in Boise for similar litigation is contradicted by the hourly rates of counsel in this very case. Counsel for the IDOC Defendants is compensated at $150/hr. for partners and $125/hr. for associates, which is

less than the PLRA fee cap and less than 50% the hourly rate Plaintiff contends is "customary" in similar cases. (Declaration of Peter Thomas ("Thomas Decl."), ¶ 2.) Further, lead counsel for Corizon Defendants was compensated at $250/hr., and associates were compensated at $200/hr. (Declaration of Dylan Eaton ("Eaton Decl."), ¶ 3.).

### 2. Time Limitations Imposed by the Client or Circumstances (Factor 7)

Plaintiff states in conclusory fashion that counsel "prioritized the ongoing and extensive work required by the circumstances of this case" (Dkt. 315-1, p. 20.) and overstates the time limitations imposed by the client or circumstances. Plaintiff vaguely refers to multiple motions in the District Court, as well as a five-month appeal before the Ninth Circuit. However, Plaintiff overstates the amount of "overlap" between proceedings in the District Court and proceedings before the Ninth Circuit, and she ignores the fact that several of the hearings and issues that had to be addressed by both courts was Plaintiff's counsel's own doing by failing to seek a permanent injunction, failing to consolidate, and failing to seek the specific and necessary relief needed for a gender confirmation surgery as part of the relief sought, resulting in additional briefing and hearings that would have otherwise been unnecessary.

Plaintiff fails to acknowledge other significant facts regarding the procedural background showing that Plaintiff's counsel was not operating under significant time pressure, including that significant portions of the case were stayed and/or put on hold at various times. For example, discovery was limited to narrow issues related to the injunction, the District Court largely did not allow the damages part of the case to proceed while the case was on appeal, and the Ninth Circuit issued a stay of the injunction during appeal. Also, there is no indication or evidence that Defendants ever failed to comply with any court order or injunction. For instance, the Court never awarded sanctions against Defendants, and there is no evidence or argument by Plaintiff that

Defendants imposed time limitations or pressure on Plaintiff's counsel, any more so than would occur in any litigation.

Finally, Plaintiff does not contend that counsel had limited resources, which is part of this factor. Clearly Plaintiff and her counsel did not have limited resources—indeed, there was local and national counsel, six law firms, and nineteen attorneys working on the case. One such resource included the National Center for Lesbian Rights, an organization that, by its own description: "is a non-profit, public interest law firm that litigates precedent-setting cases at the trial and appellate court levels."[6] In other words, Plaintiff's counsel did *not* have limited resources in this matter: their resources included national interest groups whose primary purpose is to seek out and support litigation.

In short, in many respects, this case was no different than any other case in that the parties had to comply with deadlines, conduct discovery (albeit limited discovery), attend hearings, and file briefs both in the district court and the Ninth Circuit. There was no "extreme time pressure"[7] or "very limited resources." Plaintiff only cites to one case, *Kelly v. Wengler*, in support of this factor. In *Kelly*, unlike the present case, plaintiff's counsel, which consisted of only two attorneys, had 26 days to conduct discovery in preparation for a contempt hearing. During that short time period, counsel engaged in "extensive motions practice, writing numerous pre-trial briefs; they

---

[6] See: https://www.nclrights.org/about-us/.

[7] Plaintiff's continual argument throughout this case that the gender confirmation surgery was urgent or emergent was a red herring and unsupported. Plaintiff did not urgently file suit or seek an injunction. Indeed, Plaintiff did not file suit until a year after her appointment with Dr. Eliason in April 2016 and counsel did not file the motion for preliminary injunction until almost two years after the appointment with Dr. Eliason. Additionally, the Ninth Circuit did not find that gender confirmation surgery was so urgent that it would preclude it from issuing a stay of the injunction at the outset. Additionally, Plaintiff's own medical expert admitted gender confirmation surgery was not emergent.

also conducted an extraordinary amount of discovery[,]" including "interview[ing], depos[ing], and prepar[ing] numerous witnesses in three states and obtain[ing] and review[ing] roughly 7,000 pages of discovery[,]" most of which "were produced for their review only five days before the beginning of the hearing[.]" *Kelly*, 822 F.3d at 1103. Here, Plaintiff's counsel had nowhere near such time limitations imposed on them, and they had significant resources to manage the litigation.

### 3. Exceptional Results Due to Superior Performance of Counsel (Factor 8) and the Experience, Reputation, and Ability of the Attorneys (Factor 9)

To the extent the PLRA even allows a multiplier and consideration of this factor, the circumstances are indeed "rare" and "exceptional" where superior attorney performance can support enhancement of an attorney fee award. *Perdue*, 559 U.S. at 554. The experience in other litigation and biographies of the numerous attorneys involved in the case should not be relevant to this inquiry. Rather, the Court, if at all, should look to the performance of counsel in this litigation. *But see Perdue*, 559 U.S. at 553 (the quality of an attorney's performance generally should not be used to adjust the lodestar.) At the end of the day, this is not a case where Plaintiff's counsel's "superior attorney performance" led to "exceptional results."

Although Plaintiff ultimately obtained an injunction, it was accomplished only after oversights by Plaintiff's counsel complicated litigation and led to the need for additional hearings and motions. The crux of the case at issue and the resulting appeals stem from Plaintiff's counsel's motion that improperly pursued an irreversible surgery as a preliminary (not permanent) injunction (Dkt. 62). Defendants obviously cannot control Plaintiff's motion or the relief sought therein and, therefore, were left to defend against this procedurally awkward preliminary motion that was in error as postured from the beginning. Plaintiff's counsel never moved to consolidate the injunction hearing with a final trial on the merits. (See Dkt. 62 and the docket, generally.) Notably, Plaintiff's

counsel submitted post-hearing conclusions of law specifically asserting that just because Plaintiff was seeking irreversible surgery, "it does not convert her request for urgent relief to a motion for permanent injunction that would result in a final trial on the merits of her claims. Accordingly, the Court evaluates Plaintiff's motion under the preliminary injunction standard." (Dkt. 144, p. 42.) Further, Plaintiff admitted in briefing on appeal that the District Court never converted the preliminary injunction hearing to a final trail on the merits. (Ninth Circuit Dkt. 32-1, p. 71.)

At oral argument, Ninth Circuit Judge McKeown was troubled by the procedural posture of the case. Judge McKeown noted that Plaintiff's counsel did not provide clarity on these issues at the district court level, Plaintiff's counsel did not ask for consolidation of the injunction hearing with a final trial on the merits, questioned whether the appeal was moot since Plaintiff continued to argue that it was a preliminary injunction that would have automatically expired under the PLRA, and noted that she thought it was where the lawyers went wrong since neither Plaintiff or Defendants responded to the concerns raised by the District Court's about a final injunction at play. (See Ninth Circuit audio of oral argument, https://www.ca9.uscourts.gov/media/video/?20190516/19-35017/, time stamps at approximately 19:25-24:30; 43:35-44:15.)

Subsequently, the Ninth Circuit panel issued a limited remand asking the District Court to (1) clarify whether its order denying Defendants' motion for stay pending appeal was meant to renew the injunction, and (2) clarify if it also granted permanent relief and if Plaintiff succeeded on the merits of her Eighth Amendment claim. (Dkt. 195.) In response, the District Court  stated that it had already entered a permanent injunction but was also renewing the preliminary injunction. (Dkt. 196.) Relying on the District Court's order on remand, the panel held that the

appeal was not moot as the injunction was permanent after a final trial on the merits (rather than preliminary) and therefore did not automatically expire under the PLRA.

In summary, the courts were able to address the merits and other issues in this case only by construing the injunction as permanent after a final trial on the merits, which was directly contrary to Plaintiff's position throughout the case that it was a preliminary injunction. While the court's decisions have been made, it cannot be said that such decisions were reached due to exceptional, extraordinary, or superior efforts by Plaintiff's counsel. To the contrary, the courts' decisions were reached despite missteps in how Plaintiff pursued the case as were highlighted in oral argument before the Ninth Circuit panel.

Additionally, Plaintiff never proved at the October 2018 evidentiary hearing what specific type of gender confirmation surgery was required for Plaintiff and what presurgical workup was needed for that specific surgery. This oversight by Plaintiff's counsel resulted in further motions and briefing at the district court and appellate level to address these issues.

Also, while Plaintiff's counsel stresses their involvement and successes in other civil rights or LGBTQ litigation, they do not specifically identify experience associated with gender confirmation surgery or related cases. Indeed, Plaintiff's counsel states that they had to spend a "significant amount of time" consulting with experts to get familiar with the medical issues in this case. (Rifkin Decl., ¶ 44.) Tellingly, Plaintiff's counsel did not address (or apparently even contemplate) hair removal or other presurgical procedures that may need to be considered for Plaintiff in their original motion and at the evidentiary hearing. Plaintiff's counsels' failure to raise this issue at the outset resulted in additional hearings and protracted litigation that could have been avoided had Plaintiff's counsel had a better understanding of the details and scope of the injunction

they were seeking. Accordingly, the experience Plaintiff's counsel touts in their motion for fees does not correlate with exceptional or superior experience that would justify a multiplier.

Finally, although Plaintiff obtained an injunction, the result in this case was not as "exceptional" and groundbreaking as Plaintiff seeks to portray in this motion. For starters, the novelty and complexity of a case generally may not be used as the ground for an enhancement. *Perdue*, 559 U.S. at 553. This lawsuit was not about whether gender confirmation surgery might ever qualify as medically necessary under the Eighth Amendment—Defendants already agreed that gender confirmation surgery could be medically necessary. This case was merely about whether Plaintiff's medical condition <u>also</u> necessitated gender confirmation surgery. To that end, Plaintiff's counsel essentially obtained a factual finding about that their client's medical condition was such that gender confirmation surgery was appropriate, despite her treating physician opining otherwise—this is not a "groundbreaking" result in any way. Moreover, to the extent it is analyzed by the Court, both the District Court and the Ninth Circuit expressly held that the findings and opinions are limited to the facts of this case. (Dkts. 149 & 209.) In other words, the orders and opinions were not intended to create any new law, or otherwise create a new constitutional right.[8] Additionally, at least ten Ninth Circuit judges (twelve if you include the two judges who granted the original stay of the injunction) appeared to agree with many of Defendants' arguments and/or found ambiguities and  issues  in the District Court's and the Ninth Circuit panel's rulings. (Dkts. 175 & 263.) Therefore, this is not a groundbreaking case, as Plaintiff portrays it, and, if anything, leaves more questions than answers.

---

[8] If it was so intended, there still remains "tension" with the fifth and other circuit courts on some of the issues in this case. (Dkt. 209, p. 67.)

### 4.   Undesirability of the Case (Tenth Factor)

First, the mere fact that this case involved an incarcerated person should have no bearing on whether to award a multiplier. All prisoner litigation cases under the PLRA involve incarcerated persons.

While Plaintiff's counsel asserts, without evidence, that the "Governor of Idaho repeatedly politicized Ms. Edmo's serious medical issues" as support for the claim that this lawsuit was undesirable, it is notable that Plaintiffs' counsel decided to take this case more than fifteen months prior to the Governor making any statement about Plaintiff or this lawsuit.[9] In any event, Governor Little's indication that the State of Idaho intended to exercise its constitutional right to appeal the District Court's decision has no bearing on whether this case was desirable to Plaintiff's counsel.

Moreover, the Court should ignore any argument that the "press attention" this case received made the case undesirable to Plaintiff's counsel. Plaintiff's counsel's repeatedly and intentionally publicized and politicized this case in interviews with numerous media sources. See, e.g.,   https://www.inlander.com/spokane/federal-judge-rules-in-favor-sex-reassignment-surgery-for-idaho-prisoner/Content?oid=17659996 ("Everyday that Ms. Edmo doesn't receive the surgery is another day of grave harm and suffering to her," **Lori Rifkin**, an attorney for Edmo, **tells the Inlander**.") (emphasis added); https://www.courthousenews.com/high-court-wont-intervene-in-transgender-inmates-surgery ("Idaho has fought this case tooth and nail and done everything that they can to try to fight providing this surgery to our client," **Rifkin said in an interview**.") (emphasis added) https://m.idahostatejournal.com/news/local/the-costs-and-possible-precedents-

---

[9] Defendants note, also, that Plaintiff's counsel provides no citation to any statement made by Governor Little or provide the alleged substance of any such comment. As such, the Court should not consider any argument on this point.

of-idahos-transgender-inmate-lawsuit/article_75ca5612-224e-57ff-9ab3-16d9eb94c5bd.html

("We don't think the (U.S. Supreme Court) will take the case or should take the case," Lori Rifkin, one of Edmo's attorneys, **said in a phone interview** earlier this week) (emphasis added). Plaintiff's counsel should not now be allowed to suggest that this case was undesirable because of its high-profile status in the media when Plaintiffs' counsel voluntarily helped to make it so. Plaintiff's counsel intentionally helped elevate public awareness of this lawsuit—something that will be professionally beneficial to them for years—and must take the good of that publicity with the bad.

It is disingenuous to suggest that this lawsuit would be "undesirable" to Ms. Rifkin, who advertises herself as experienced in the field of LGBTQ rights, or that this lawsuit is anything but desirable to the National Center for Lesbian Rights. Successful civil rights attorneys, such as Ferguson Durham, also benefit from handling cases such as this one, which they try to use to increase national attention, visibility, and popularity in the legal community. This can serve to promote their stature in the legal community and generate business. Therefore, the desirability of this lawsuit cuts against Plaintiff's counsel with regard to their position on attorney's fees.[10]

### 5. Nature of the Client Relationship (Eleventh Factor)

Plaintiff provides no evidence or relevant information that makes counsel's relationship with Plaintiff particularly unique or different than any other attorney-client relationship. They met Plaintiff shortly before filing the complaint, they remained in close contact with her throughout the case in-person and by phone, they had witness preparation meetings, and they provided her

---

[10] Plaintiff points to harassing emails and voicemails received by local counsel. Such emails and voicemails are truly unfortunate, and Defendants do not condone or endorse any part in those communications. Moreover, Plaintiff has not, and cannot, show any tie to any of the Defendants' conduct and those emails and voicemails.

with non-prison clothing for court appearance. Those are steps that any attorney representing any client should take in ethically and zealously advocating for their client. Moreover, there is no evidence or indication that most of the 19 attorneys who did work on her case ever met or spoke to Plaintiff.

### 6. Awards in Similar Cases

Plaintiff does not cite to any cases similar to this one. Indeed, as Plaintiff herself argues, this is the first case in the country where a court has ordered gender confirmation surgery for an incarcerated person. To that end, Plaintiff relies primarily on the unsupported argument that this case was not "run-of-the-mill." But that is not the standard for this factor. This type of Eighth Amendment medical care case involves a well-recognized legal analysis that can be applied directly to the facts of this case. As noted, Plaintiff's counsel previously argued that "the fact that this case involves gender dysphoria does not create a novel legal issue," that the decision before the district court was "routine," and that "the Eight Amendment's prohibition on deliberate indifference to serious medical need is well-established and does not change based on the medical condition." (See Case No. 1935017, Dkt. 17, P. 20.)

That notwithstanding, this factor requires Plaintiff to demonstrate awards in "similar cases" to satisfy this factor. Plaintiff states generally that courts have awarded multipliers in Eighth Amendment cases brought by incarcerated persons, but fails to carry her burden to show how those cases were otherwise similar. *Bown*, 2016 WL 2930904, *2 (D. Idaho May 19, 2016) ("A fee applicant bears the burden of proving that a fee enhancement is necessary, and must produce 'specific evidence' supporting the ward.") (citing *Perdue*, 559 U.S. at 553).

Additionally, with the exception of one case (which is not similar to this case), the court did not apply a 2.0 modifier in any of the bases cited by Plaintiff. *See Bown*, 2016 WL 2930904 at

*2 (applying a 1.4 and 1.8 multiplier in a case factually distinguishable from this one); *Kelly*, 822 F.3d at 1093 (applying a 1.3 multiplier for some of the work in a case factually distinguishable from this one); *Balla*, 2016 WL 6762651, at *12 (awarding multipliers of 1.39 and 1.26 for some of the work in a case factually distinguishable from this one). In *Rodriguez v. Cty of Los Angeles*, 96 F. Supp. 3d 1012, 1025-26 (C.D. Cal. 2014), although the court applied a 2.0 multiplier, the court was applying a different set of factors, and the case involved egregious and serious facts that are not present case.

In conclusion, Plaintiff's counsel's claim for a 2.0 multiplier (or any multiplier) is completely arbitrary and is completely severed from reality. A 2.0 multiplier (or any multiplier) is not supported because Plaintiff has not proven that it is "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and the amount of the fee is not proportionately related to the court ordered relief for the violation as required under the PLRA. Applying any multiplier in this case would give Plaintiff's an unjustified windfall, which is contrary to the purpose of an award of fees and expenses. *See Perdue*, 559 U.S. at 552 (even under Section 1988, which is less restrictive than the PLRA, the aim is to enforce the covered civil rights statutes, not to provide "a form of economic relief to improve the financial lot of attorneys.")

## VII.   <u>EXPENSES</u>

Plaintiff also seeks $91,878.73 in expenses in addition to those claimed in the Bill of Costs (addressed below). The PLRA is silent on an award of expenses. However, presumably the expenses have to be directly related to the defense of the case, reasonable and proportional as with fees under the PLRA.

Even outside the PLRA context, nontaxable expenses are discretionary (may be awarded) and must be reasonable. See F.R.C.P. 54(d)(2). Plaintiff's expense request is unreasonable. The

most significant deficiency in Plaintiff's counsel's claims for expenses is they fail to provide any supporting documents, such as receipts or invoices. *See Miller v. Schmitz*, No. 1:12-CV-00137-LJO, 2014 WL 642729, at *5 (E.D. Cal. Feb. 18, 2014), *aff'd in part, vacated in part, remanded*, 654 F. App'x 261 (9th Cir. 2016) ("A district court is authorized to tax as costs the expenses reflected in Plaintiff's bill of costs <u>as supported by documentation</u> of costs incurred") (emphasis added); *See also Isbell v. City of San Diego*, No. 98CV688IEGAJB, 2007 WL 9777800, at *8 (S.D. Cal. July 5, 2007) (declining to award expenses because they were not supported by documentation, such as receipts). The failure to provide supporting documentation of claimed expenses not only violates standard principles in litigation that a party needs to prove any claimed damages, but also precludes Defendants and the court from being able to analyze the reasonableness and appropriateness of the claimed expenses. By way of examples, Plaintiff claims the following without any supporting documentation:

- Tens of thousands of dollars in flights, lodging and meal expenses are vaguely claimed without the restaurants (or specific food and drinks ordered, or company in attendance), hotels, or airlines being identified and without the supporting receipts or invoices being provided. (E.g., see Dkt. 315-2, p. 74; Dkt. 315-3, pp. 134-135; Dkt. 315-4, pp. 69-78). Accordingly, it cannot be evaluated if these expenses are related to Plaintiff's efforts in the case to obtain the injunction, whether the expenses are extravagant or otherwise unreasonable, and if there are any other unrelated costs wrapped up in those receipts or invoices, for example.

- Even more removed are numerous claims of expenses paid by a firm to other attorneys (some in other firms) for unspecified airfare, transportation, and lodging, etc. without any supporting documentation (See Dkt. 315-4, pp. 70-71).

- Almost $30,000 in expert invoices for Randi Ettner are claimed without any invoices accompanying or referenced in the motion that would itemize the work done by this expert (See Dkt. 315-3, p. 135).

Accordingly, the Court should deny Plaintiff's claim for $91,878.73 in expenses because it is not supported by any documentations, such as receipts or invoices. If the Court does still award

expenses, despite the lack of foundation and support for them, the expenses should be reduced by at least 70% (for the same reasons as argued above related to the fees, e.g., Plaintiff's failure to succeed on numerous claims and against numerous defendants).

## VIII.   OBJECTIONS TO PLAINTIFF'S BILL OF COSTS

Defendants object[11] to Plaintiff's Bill of Costs (Dkt. 312) for the following reasons:

First, Plaintiff failed to meet and confer. Local Rule 54.1(a)(1) ("No such bill may be filed before the parties have met and conferred regarding costs.") Plaintiff's counsel did not meet and confer prior to filing the Bill of Costs. (Eaton Decl., ¶¶ 4-5; Thomas Decl., ¶ 3.)

Second, Plaintiff failed to file a Certificate of Counsel. Local Rule 54.1(a)(1)(B) ("The cost bill must itemize the costs claimed and be supported by a certificate of counsel pursuant to 28 U.S.C. § 1924 that the costs are correctly stated.") No such Certificate of Counsel was filed with the Bill of Costs.

In *Blain Larsen processing, Inc. v. Hapco Farms, Inc.*, 2000 WL 35539979 (D. Idaho Aug. 9, 2000), this Court denied a party's motion to supplement costs because no Certificate of Counsel was filed as required by Local Rule 54.1(a)(1)(B), and the untimely supplemental affidavit that was filed did not comply with the local rule. "It has long been a tradition in this district to hold counsel strictly to the Local Rules, especially regarding bills of costs." *Id.* Thus, Plaintiff's Bill of Costs should be denied in its entirety based on Plaintiff's failure to meet and confer prior to filing the Bill and failure to support the itemization of costs with a Certificate of Counsel.

---

[11] Defendants' objection to the Bill of Costs is timely as the Court's order (Dkt. 313, section e) allows defendants to respond to the Bill of Costs within 30 days from when Plaintiff's motion for fees and costs is filed. Plaintiff's motion for fees and costs specifically cites the local rule for Bill of Costs and discusses the Bill of Costs in the motion and supporting memorandum. (See Dkt. 315 & 315-1.)

Third, Plaintiff was not the "prevailing" party on all claims or against all defendants as discussed in more detail above.

Finally, Defendants object to Exhibits 13, 14, 15, 16, 17 of Plaintiff's Itemization of Taxable Costs, which Plaintiff has failed to show are allowable costs. For example, "copies client's medical records" (see Exhibit 15) is not an allowable cost. As another example, Plaintiff's description of Exhibit 14, which she claims to be "velo binding for copies of Appellee's Answer Brief in Ninth Circuit," does not match the invoice and check memo for Exhibit 14, which states "Edmo Doc Production." Because Plaintiff failed to support her itemization of costs with a Certificate of Counsel pursuant to 28 U.S.C. § 1924, as required by Local Rule 54.1(a)(1)(B), Plaintiff has failed to provide sufficient and accurate information for the Court to determine whether the costs are allowable. Accordingly, Plaintiff's Bill of Costs should be denied.

## IX.   <u>CONCLUSION</u>

Based on the record before the court and the above arguments, Defendants ask the Court to deny any costs because Plaintiff did not comply with the local rules and deny expenses because they do not have any supporting documentation. Also, Defendants request that the Court deny any multiplier of fees because it is not appropriate under the PLRA and the circumstances of this case. Finally, Defendants request that the Court reduce the $1.365 million in fees sought for work on this case by at least 70% because they did not prevail on 6 of 7 claims, 6 of 10 defendants were dismissed from the case, they did not get all the relief sought in the complaint, and because the fees are excessive, duplicative, and otherwise unreasonable.

DATED this 22nd day of November, 2021.

                              PARSONS BEHLE & LATIMER


                              By:    /s/ Dylan A. Eaton
                                   Dylan A. Eaton
                                   Counsel for Defendants Corizon, LLC
                                   and Scott Eliason

DATED this 22nd day of November, 2021.

                              MORE ELIA & KRAFT, LLP


                              By:    /s/ Peter R. Thomas
                                   Steven R. Kraft
                                   Peter R. Thomas
                                   Counsel for Defendants Idaho Department of
                                   Correction, Henry Atencio, Jeff Zmuda, Howard
                                   Keith Yordy, Richard Craig, and Rona Siegert

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of November, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Craig H. Durham
Deborah A. Ferguson
FERGUSON DURHAM, PLLC
chd@fergusondurham.com
daf@fergusondurham.com
*(Counsel for Plaintiff)*

Steven R. Kraft
Peter R. Thomas
MOORE ELIA & KRAFT, LLP
steve@melawfirm.net
peter@melawfirm.net
*(Counsel for Defendants Idaho Department of Correction, Henry Atencio, Jeff Zmuda, Howard Keith Yordy, Richard Craig, and Rona Siegert)*

Lori E. Rifkin
RIFKIN LAW OFFICE
lrifkin@rifkinlawoffice.com
*(Counsel for Plaintiff)*

Amy Whelan
Julie Wilensky
National Center for Lesbian Rights
awhelan@nclrights.org
jwilensky@nclrights.org
*(Counsel for Plaintiff)*

Dan Stormer
Shaleen Shanbhag
HADSELL STORMER RENICK & DAI, LLP
dstormer@hadsellstormer.com
sshanbhag@hadsellstormer.com
*(Counsel for Plaintiff)*

By: */s/ Dylan A. Eaton*
Dylan A. Eaton