## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADREE EDMO,<br><br>    Plaintiff,<br><br>    v.<br><br>IDAHO DEPARTMENT OF<br>CORRECTION, *et al.*,<br><br>    Defendants. | Case No. 1:17-cv-00151-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Before the Court is Ms. Edmo's Motion for Attorneys' Fees and Expenses. Dkt. 315. Having reviewed the parties' briefs and the record in this matter, the Court concludes that oral argument is not necessary. Accordingly, for the reasons explained below the Court will grant in part and deny in part Ms. Edmo's motion and award her attorneys' fees in the amount of $2,586,048.80 and non-taxable costs in the amount of $45,544.20.

## LITIGATION BACKGROUND

Plaintiff Adree Edmo, a male-to-female transgender person, brought this action against Defendants alleging various constitutional and statutory violations. At the time she filed suit in 2017, Ms. Edmo was a prisoner in the custody of the

Idaho Department of Corrections. Diagnosed with severe gender dysphoria, Ms. Edmo claimed that Defendants were failing to provide her with necessary medical treatment in the form of gender confirmation surgery.

After Ms. Edmo initially brought her case pro se, the Court appointed counsel to represent her. Ms. Edmo's attorneys promptly filed an amended complaint asserting seven claims against Defendants and seeking injunctive relief, declaratory relief, and damages. Dkt. 36. Two months later, Defendants filed a Motion for Dispositive Relief asking the Court to dismiss several of Ms. Edmo's claims. Dkt. 39. The Court granted that motion in part and denied it in part but left the core of Ms. Edmo's case intact. Dkt. 66.

Ms. Edmo's counsel then moved to the second and most time-consuming phase of this litigation. Based on three legal theories—primarily the Eighth Amendment prohibition against cruel and unusual punishment—Ms. Edmo sought an injunction requiring Defendants to provide her with a name change, transfer to a women's facility, access to gender-appropriate clothing and commissary items, and gender confirmation surgery. Dkt. 62. After a three-day evidentiary hearing, the Court granted Ms. Edmo an injunction on Eighth Amendment grounds and ordered Defendants to provide her with "adequate medical care," including gender confirmation surgery. Dkt. 146, at 45. But the litigation was far from over.

Soon after the Court granted the injunction, Defendants filed a notice of appeal and motion to stay the injunction in the Ninth Circuit. Dkts. 154 & 155. The Ninth Circuit granted the stay and set the appeal on an expedited briefing schedule. After oral argument on the appeal, the Ninth Circuit remanded for this Court to consider two limited issues. When this Court resolved those issues, Defendants filed yet another notice of appeal, challenging this Court's order on remand.

The Ninth Circuit then affirmed this Court's injunction except as it applied to five defendants in their individual capacities. Dkt. 209, at 85. Defendants sought rehearing en banc and, while that request was pending, refused to provide Ms. Edmo with pre-surgical care. As a result, Ms. Edmo successfully moved the Ninth Circuit to partially lift the stay of this Court's injunction and require Defendants to proceed with pre-surgical appointments. Dkt. 220. Eventually, the Ninth Circuit denied Defendants' request for rehearing en banc and dismissed yet another, third appeal. Dkts. 257 & 263.

In July 2020, nineteen months after this Court's injunction, Ms. Edmo received the ordered treatment. Yet the legal battle continued before the U.S. Supreme Court, where Defendants had filed an application for stay, petition for *certiorari*, and suggestion of mootness. Dkts. 278, 279 & 294.

Eventually, when the Supreme Court denied certiorari, this Court lifted the stay on Ms. Edmo's remaining claims and the parties engaged in judicially-

supervised settlement negotiations. As a result of those mediated negotiations, Ms. Edmo voluntarily dismiss her remaining claims against Defendants. Dkts. 307 & 313.

What remains is Ms. Edmo's request for attorneys' fees and expenses. Dkt. 315.

## LEGAL STANDARD

### 1.   Attorneys' Fees Under § 1988

Under the American Rule, each party to a lawsuit generally bears its own attorneys' fees unless Congress has statutorily provided otherwise. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Title 42 U.S.C. § 1988 authorizes an award of reasonable attorneys' fees to prevailing parties in civil rights actions brought under 42 U.S.C. § 1983. The purpose of awarding attorneys' fees in civil rights actions is to ensure that plaintiffs have "effective access to the judicial process." *Hensley*, 461 U.S. at 429. If successful plaintiffs always had to bear their own legal fees, "few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Jankey v. Poop Deck*, 537 F.3d 1122, 1131 (9th Cir. 2008). Therefore, in most cases the prevailing party should recover attorneys' fees. *Hensley*, 461 U.S. at 429.

### 2.   The Lodestar Method

Courts in the Ninth Circuit use the two-step "lodestar method" to calculate reasonable attorneys' fee awards. *Haegar v. Goodyear Tire and Rubber Co.*, 813 F.3d 1233, 1249 (9th Cir. 2016).

The first step is to determine whether the hourly rate and the hours expended by the attorneys were reasonable. *Hensley*, 461 U.S. at 433. The burden is on the party seeking the fees to document and "submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). But the court generally defers to the prevailing lawyer's professional judgment as to how much time the case required—"after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008). The hourly rate and the hours expended are then multiplied for an initial estimate of the attorneys' fees. *Hensley*, 461 U.S. at 433. The result—called the "lodestar figure"—is a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

Second, the court considers whether to adjust the lodestar figure based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.* "that are not already

subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96

F.3d 359, 363-64 (9th Cir. 1996).[1] These include:

> (5) the customary fee, ... (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 364 n.9. If the lodestar figure does not fully account for these factors, the

court has discretion to adjust the award to a reasonable amount. *Van Gerwen v.*

*Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045–47 (9th Cir. 2000).

### 3.    Limits Under the PLRA

The Prison Litigation Reform Act ("PLRA") applies to all civil rights

actions by prisoners and imposes two important limitations on the availability of

attorneys' fees. 42 U.S.C. § 1997e(d).

First, courts may award attorneys' fees to prisoners only to the extent that

(1) the fees were "directly and reasonably incurred in proving an actual violation of

---

[1] There are twelve *Kerr* factors in total: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

the plaintiff's rights," § 1997e(d)(1)(A), and (2) the fees are either "proportionately related to the court ordered relief for the violation" or "directly and reasonably incurred in enforcing the relief ordered for the violation," § 1997e(d)(1)(B). *See Jimenez v. Franklin*, 680 F.3d 1096, 1099 (9th Cir. 2012).

Second, the PLRA dictates that that fee awards shall not be based on an hourly rate "greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). For these purposes, the relevant rate for court-appointed counsel is the one "the Judicial Conference authorized and requested from Congress," as reflected in the Congressional Budget Summary. *Parsons v. Ryan*, 949 F.3d 443, 464-65 (9th Cir. 2020).

## ANALYSIS

The threshold question when considering a fee petition is whether the party requesting fees was the "prevailing party" in the action. *See* 42 U.S.C. § 1988. Ms. Edmo was clearly the prevailing party in this case. She sought an injunction ordering gender confirmation surgery, and that is exactly what she got. Defendants do not appear to dispute that Ms. Edmo was the prevailing party, but instead object to the reasonableness of the fees incurred.

## 1.    Reasonableness of the Requested Fees

### A.    Hourly Rate

The hourly rate used to calculate counsel's fees is dictated by the PLRA. During this case's five-year lifespan, the rates authorized by the Judicial Conference for court-appointed counsel have changed several times. As an adjustment for the delay in payment, the Court will use the FY 2021 rate applicable at the time of Ms. Edmo's fee request. *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989). The rate authorized by the Judicial Conference for the payment of court-appointed counsel in FY 2021 was $155 per hour.[2] Calculating 150% of that rate yields the hourly rate applicable in this case—$232.50 per hour.

## B.    Hours Expended

Having determined the applicable hourly rate, the next step is to evaluate whether the hours expended by Ms. Edmo's attorneys are reasonable. *Hensley*, 461 U.S. at 433.

Ms. Edmo's attorneys have provided the Court with declarations and timesheets detailing the services they provided, as well as attorney biographies and their regular hourly rates. Dkts. 315-2 through 315-7. In total, the timesheets record 5,968.30 hours billed for work on Ms. Edmo's case. *Id.*; *Pl.'s Reply*, Ex. A,

---

[2] Admin. Office of the U.S. Courts, The Judiciary Fiscal Year 2021 Congressional Budget Summary 39 (Feb. 2020), https://www.uscourts.gov/sites/default/files/fy_2021_congressional_budget_summary_0.pdf (last visited July 20, 2021).

Dkt. 321. Ms. Edmo has also submitted a declaration from Howard Belodoff, an experienced Idaho civil rights litigator, attesting to the reasonableness of her fee request. *Belodoff Aff.*, Dkt. 315-8. After reviewing each declaration and timesheet, the Court finds that, except as detailed below, Ms. Edmo has met her burden to submit evidence supporting her attorneys' hours. *Gates*, 987 F.2d at 1397-98.

Defendants object on numerous grounds to the hours expended by Ms. Edmo's attorneys. First, Defendants asks the Court to reduce the number of hours by 86 percent because only one of her seven original claims ultimately succeeded. *Def.'s Resp.* at 13, Dkt. 319. Essentially, they argue that any time spent on claims other than the successful Eighth Amendment claim was not directly related to Ms. Edmo's success and therefore is not recoverable. Next, Defendants assert numerous specific objections that can be categorized as follows: (i) overstaffing; (ii) excessive billing; (iii) duplicative billing; (iv) block billing and vague descriptions; (v) travel time; and (vi) clerical tasks.

### C.    Time Spent on Unsuccessful Claims

Ms. Edmo did not succeed on all of her original claims or against all original defendants. Only one of her original claims ultimately formed the basis for her injunction against Defendants. Two of her other claims were rejected at the injunction stage. Dkt. 149. And the four remaining claims were ultimately dismissed. Dkts. 66, 301 & 311. According to Defendants, Ms. Edmo's fee award

should therefore be reduced in proportion to the number of unsuccessful claims—by their calculations, a reduction of six-sevenths, or 86%. *Def.'s Resp.* at 13, Dkt. 319.

At the outset, the Court rejects Defendants' strictly mathematical approach. Four of the seven claims that Ms. Edmo asserted in her Second Amended Complaint were not pursued during the injunction phase. Further, the Court "cannot imagine why a lawyer would allocate equal hours to each claim," so an automatic pro rata reduction would "make[] no practical sense." *McGinnis v. Ky. Fried Chicken*, 51 F.3d 805, 808 (9th Cir. 1994). Indeed, the Ninth Circuit squarely rejected Defendants' mathematical approach in *McGinnis*. *Id.* at 809; *see also Hensley*, 461 U.S. at 435 n.11. Instead of resorting to crude proportionality calculations, the Court must carefully consider whether the attorneys' fees were "directly reasonably incurred" in proving that Ms. Edmo's rights were violated. 42 U.S.C. § 1997e(d)(1).

In *Hensley*, the Supreme Court set forth the two-part framework for determining whether a plaintiff's success on only some claims requires an attorneys' fee reduction. *Hensley*, 461 U.S. at 434-37. The first step is to determine whether the plaintiff failed on any claims wholly unrelated to her successful claims. *Id.* at 435. If so, she should not recover the fees incurred for work on those unrelated claims. *Id.* at 434-35. The second step is to determine whether the

plaintiff failed on any claims that *were* related to her successful claims. *Id.* at 436. If so, she should nevertheless recover a full fee award so long as she ultimately "obtained excellent results." *Id.* at 435. In other words, where a highly successful plaintiff "presents different claims for relief that involve a common core of facts or are based on related legal theories, the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (cleaned up).

Beginning with step one, the Court finds that Ms. Edmo's case did not involve wholly unrelated claims. All seven claims in Ms. Edmo's Second Amended Complaint made essentially the same point: Defendants were denying her necessary medical treatment by refusing to provide gender confirmation surgery.[3] *Sec. Am. Compl.* ¶¶ 62, 71, 84, 92, 99, 103, & 111, Dkt. 36. Although each claim advanced a different legal justification for relief, each involved the same "common core of facts" surrounding Ms. Edmo's need for, and Defendants' refusal of, medical treatment for gender dysphoria. The Court therefore finds that Ms. Edmo's claims were essentially alternative legal theories seeking the same result, not distinct claims for relief. Dkt. 62. Ms. Edmo clears the first hurdle.

---

[3] The Court recognizes that Ms. Edmo also sought additional forms of relief, including equal access to gender-appropriate clothing and items, transfer to a female facility, and unspecified compensatory and punitive damages. *Sec. Am. Compl.*, Dkt. 36.

Moving to step two, Defendants correctly note that Ms. Edmo did not succeed on all of her related claims. Indeed, only one—based on the Eighth Amendment—ultimately formed the basis for the injunction. But this case cannot simply be reduced to the number of claims asserted and succeeded on. Doing so obscures the reality that Ms. Edmo's claims substantially overlapped, and her attorneys obtained the result she was seeking—an injunction requiring Defendants to provide her with gender confirmation surgery. That was not "partial success," despite how Defendants' numerical analysis makes it seem. *Hensley*, 461 U.S. at 435. That was exactly—and almost exclusively—what she was seeking. The Court will not attempt to divide Ms. Edmo's fee award on a "claim-by-claim basis." *McCown*, 565 F.3d at 1103; *see also Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013). As the Supreme Court put it in *Hensley*: "The result is what matters." *Hensley*, 461 U.S. at 435.

The PLRA's fee limitation does not change the Court's conclusion on this issue. Considering that Ms. Edmo's claims were all closely intertwined and sought the same basic result (which was obtained), the Court finds that the fees attributable to all of her claims were "directly and reasonably incurred" in proving that Ms. Edmo's rights were violated. 42 U.S.C. § 1997e(d)(1). The Ninth Circuit has made clear that fees attributable to counsel's unsuccessful efforts—so called "fees for losing" —may be recovered in PLRA cases so long as they are

reasonably incurred. *Balla v. Idaho*, 677 F.3d 910, 918 (9th Cir. 2012). In other words, a plaintiff can lose the battle with an unsuccessful argument or motion but win the war by obtaining the relief she seeks. *Id.* at 920.

Ms. Edmo won the war by obtaining and defending an injunction ordering Defendants to provide her with the medical treatment she sought. Her attorneys' efforts advancing alternative legal theories in the Second Amended Complaint and motion for injunction were directly and reasonably related to Ms. Edmo's ultimate victory—even if she did not "prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.

The Court therefore will not proportionately reduce the attorneys' fees incurred for preparing and defend the Second Amended Complaint and Motion for Preliminary Injunction.

### (1) Fees Incurred Litigating, Mediating, and Settling the Remaining Claims

The Court will, however, exclude the fees incurred for litigating, mediating, and settling Ms. Edmo's four remaining claims after the injunction was obtained and defended. Those hours, billed between November 2020 and March 2021, were not "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." § 1997e(d)(1). The actual violation had already been proven and remedied. Nor were they incurred "in enforcing the relief ordered for the

violation." § 1997e(d)(1). Again, Ms. Edmo had already received her court-ordered surgery.

After reviewing the timesheets, the Court finds that Ms. Edmo's attorneys billed approximately 154 hours to litigate, mediate, and settle her remaining claims between November 2020 and March 2021. Accordingly, the Court will deduct 154 hours from the lodestar calculation.

### D.     Specific Objections

#### (1)     Overstaffing

Defendants ask the Court for a fee reduction because Ms. Edmo's case was overstaffed. They argue that having six law firms and nineteen attorneys involved was "facially unreasonable." *Def.'s Resp.* at 16-17, 19, Dkt. 319.

But the Court will not reduce attorneys' fees based on an abstract notion that the number of attorneys involved seems high. *See De Jesus Ortega Melendres v. Arpaio*, Nos. 13-16285 & 13-17238, 2017 WL 10808812, at *7 (9th Cir. March 2, 2017) (rejecting generalized objections to the sheer number of timekeepers). As Ms. Edmo points out, most of the hours—4,314 of the total 5,968.3—were billed by just three attorneys over the course of several years and involved dozens of motions, memoranda, depositions, and numerous appeals. Accordingly, the Court will not reduce the fee award based on this objection.

#### (2)     *Excessive Billing*

Defendants repeatedly argue that counsel billed excessive hours. Most of the specific objections merely restate the number of hours billed for certain tasks without explaining why those hours are unreasonable. This case involved extensive motion practice before three courts and depended heavily on expert testimony related to unique medical issues. Over the course of several years, multiple appeals were taken, stays sought, and briefing deadlines expedited. Based on these circumstances and the Court's familiarity with the record and the nature of this litigation, the Court finds that, except as discussed below, counsel did not bill excessive hours.

Defendants first challenge the number of hours spent researching issues they view as uncomplicated or irrelevant, including "how to request medical records in Idaho," *Def.'s Resp.* at 19, Dkt. 319, and an "unrelated Hep-C case," *Id.* at 21. Both objections are off the mark. As to the first, careful review of the docket and entry description shows that this matter was highly relevant to Ms. Edmo's Motion to Strike and for a Protective Order, Dkt. 83, where the disclosure of Ms. Edmo's medical records was directly at issue. *Stormer Aff.* at 52, Dkt. 315-4. As to the second, the Court finds that .5 hours researching the "Hep-C case" was reasonable as a precaution against waiving Ms. Edmo's rights in this case. *See Pl.'s Reply* at 4, Dkt. 321.

Next, Defendants challenge "close to 40 hours" billed by Shaleen Shanbhag "to prepare for the 6.5-hour deposition of Dr. Eliason." *Def.'s Resp.* at 19, Dkt. 319. In fact, of the 45.7 hours Ms. Shanbhag billed related to that deposition, 12.5 hours involve travel to and from Idaho for the deposition and another 6.5 hours account for the deposition itself. *Stormer Aff.* at 54, Dkt. 315-4. That leaves 26.7 hours of preparation for the 6.5-hour deposition, which the Court finds is reasonable.

Defendants' also object to 73 hours spent "preparing and reviewing statements made to the media," most of which have already been excluded through billing judgment reductions. *Def.'s Resp.* at 21, Dkt. 319; *see e.g.*, *Whelan Aff.* at 95 & 100, Dkt. 315-3; *Rifkin Aff.* at 39, 40, 41 & 43, Dkt. 315-2. But Ms. Edmo still requests 12.9 hours billed by local counsel for media-related tasks, including radio interviews and responding to media requests. Public relations work is compensable only if it is "directly and intimately related to the successful representation of a client." *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on other grounds on denial of reh'g, 984 F.2d 345 (9th Cir.1993)*. According to Ms. Ferguson, media work in this case "focused on fostering the litigation goals of our client, and addressing the animosity, misinformation and 'fake news' about the claims of our client." *Ferguson Aff.* ¶ 22, Dkt. 315-5. Laudable as those goals might be, the Court finds

that these efforts were not intimately related to Ms. Edmo's success and will therefore exclude 12.9 hours from the lodestar calculation.

Next, Defendants twice object to the number of hours Lori Rifkin billed in a single day or series of days. *Rifkin Aff.* at 30, Dkt. 315-2 (20.5 hours in a single day during the injunction hearing); *Id.* at 31 (60 hours over four days for post-trial briefing and proposed findings of fact). The Court does not agree, however, that these long hours were unreasonably excessive. As lead counsel at the injunction hearing, Ms. Rifkin presented the opening and closing statements and examined six witnesses. Dkts. 137, 138 & 139. The time she spent on post-trial briefing is also unsurprising considering the product was a 40-page Proposed Findings of Fact and Conclusions of Law, Dkt. 144, and an 11-page post-hearing brief, Dkt. 143. Defendants have given no reason why these hours, however demanding, were unreasonably excessive—and the Court finds none.

Another of Defendants' objections is more convincing. Ms. Shanbhag billed 1.5 hours to research page and word limits for the Ninth Circuit brief. *Stormer Aff.* at 60, Dkt. 315-4. The Court agrees that 1.5 hours was excessive for this task and will reduce the time to .5 hours.

Finally, Defendants argue that billing for three moot courts was excessive: one before the injunction hearing and two before the Ninth Circuit oral argument. The Court is not convinced that holding one moot court before the injunction

hearing was unreasonable. That hearing covered a great deal of ground and involved testimony from seven witnesses and the admission of ninety-four exhibits. Defendants' argument is stronger when it comes to the two moot courts before the Ninth Circuit argument. Counsel billed a combined 17.8 hours for moot courts in preparation for Ms. Rifkin's 1.5-hour oral argument. The Court finds that this was excessive and will reduce those hours by one-half, or 8.9 hours.

As for Defendants' remaining excessiveness objections, the Court has reviewed each challenged entry and finds that none are unreasonable excessive.

### (3)   Duplicative Billing

Defendants next object that Ms. Edmo's counsel duplicated efforts. Although it is "no easy task" to determine what work is unnecessarily duplicative, *Moreno*, 534 F.3d at 1110, the Ninth Circuit has made clear that "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (citation omitted). Rather, "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Johnson v. Univ. College*, 706 F.2d 1205, 1208 (11th Cir. 1983).

### (a)   *Hearing Attendance by Multiple Attorneys*

On several occasions, multiple attorneys attended the same hearing: (1) two local attorneys billed to attend the dispositive relief hearing where neither argued; (2) seven attorneys attended the three-day preliminary injunction hearing where three argued; and (3) four attorneys attended the oral argument before the Ninth Circuit where only one argued.

It is not always unreasonable for multiple attorneys to attend the same deposition or hearing. *See Kelly*, 7 F.Supp.3d 1069, 1079 (D. Idaho 2014), *aff'd by 822 F.3d 1085 (9th Cir. 2016)*. If an attorney may assist during the hearing or will be working on the case in the future, for example, her attendance is usually reasonable. *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).

Here, the Court finds that it was reasonable for one local attorney, but not both, to attend the dispositive motion hearing on April 4, 2018. The timesheets show that Ms. Ferguson and Mr. Durham met with the lead attorney, Ms. Rifkin, for discussions before and after the hearing. *Ferguson Aff.* at 17-19, 30-31, Dkt. 315-5. Both attorneys were also involved in the case in the months immediately following the hearing. *Id.* The Court finds, however, that it was not reasonable for both attorneys to bill to attend and will deduct 1.4 hours.

Next, the Court finds that it was reasonable for five attorneys to bill for attending the three-day preliminary injunction hearing.[4] That hearing was the main act of this case. Three of Ms. Edmo's attorneys appeared on the record to present arguments and examine witnesses. *Hearing Tr.* at 9, Dkt. 137; *Hearing Tr.* at 231, Dkt. 138; *Hearing Tr.* at 457, Dkt. 139. The other two billing attorneys were local counsel who had been the primary point of contact for Ms. Edmo leading up to the hearing. *Ferguson Aff.* at 19-20, 30-31, Dkt. 315-5. Moreover, both were heavily involved in preparing Ms. Edmo and the expert witnesses for the hearing. *Id.* Each day after the hearing session, all five attorneys met to debrief and prepare for the following day. *Stormer Aff.* at 58, Dkt. 315-4; *Whelan Aff.* at 53-54, Dkt. 315-3; *Rifkin Aff.* at 30, Dkt. 315-2; *Ferguson Aff.* at 20 & 31, Dkt. 315-5. Considering these facts and the great deal of ground covered in the hearing, the Court finds that it was reasonable for all five attorneys to attend the hearing.

The Court does, however, agree with Defendants that it was unreasonable for four attorneys to bill for attending oral argument at the Ninth Circuit on May 16, 2019. Only Ms. Rifkin argued at the hearing. Aside from participating in moot courts before the hearing, Julie Wilensky was apparently uninvolved in the pre-

---

[4] Defendants state that seven attorneys billed to attend the hearing, but the timesheets show only six attorneys attending, and Mr. Chen's hours were already removed as a billing judgment reduction. *Whelan Aff.* at 128, Dkt. 315-3.

hearing research and preparation. *Whelan Aff.* at 123, Dkt. 315-3. In contrast, Ms. Whelan and Ms. Shanbhag were heavily involved leading up to oral argument, and therefore could reasonably have been needed for assistance during the argument. *Id.* at 70; *Stormer Aff.* at 62-63, Dkt. 315-4. The Court will therefore deduct 1.5 hours for Ms. Wilensky's attendance at the hearing.

### (b)    Collaboration by Multiple Attorneys

The Court is not persuaded that counsel needlessly duplicated efforts when researching and preparing pleadings. Defendants note that five attorneys worked on the opposition to Defendants' motion for dispositive relief, and six attorneys collaborated on Ms. Edmo's Motion for Preliminary Injunction. *Def.'s Resp.* at 19, Dkt. 319. But those generalized groupings are unhelpful—in both cases, the vast majority of hours were billed by just one attorney. *Rifkin Aff.* at 23-24, 25-26, Dkt. 315-2.

Although Defendants don't object, counsel's timesheets also include many entries for intra-office meetings and communications. Billing for such meetings can be unnecessarily duplicative. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 929 (9th Cir. 2008). In this case, however, the Court finds that those hours were reasonable considering the need for regular coordination between legal teams located in different states. Where numerous attorneys work closely to represent a

client, some overlap is unavoidable. Additionally, many of those entries are deducted anyway, as discussed below, due to vagueness.

### (4)   Block Billing and Vague Descriptions

Defendants state, without identifying any specific examples, that "numerous" entries are block billed. *Def.'s Resp.* at 22, Dkt. 319. After carefully reviewing the timesheets, the Court has identified only one instance of block-billing: 40.1 hours billed in one entry by Sairah Budwhani for "Review review IDOC production." *Stormer Aff.* at 55, Dkt. 315-4. That entry clumps numerous days of work into one block, making it difficult to evaluate the reasonableness of the hours. The Court will therefore reduce that entry by fifty percent.

The Court also agrees that numerous billing entries are vague. Timesheets must be detailed enough for the court to determine how the time is directly attributable to the claims in the case, although counsel need not "record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12. When entries are vague, the Court has discretion to reduce the fee to a reasonable amount. *Welch*, 480 F.3d at 948.

The entry descriptions for 12.4 hours of Mr. Stormer's work use extremely broad terms, such as "calls," "strategy," and "review issues," insufficient to enable the Court to evaluate the reasonableness of the time spent. Those lean entries provide no real sense of what Mr. Stormer was doing, who he was conferring with,

or what those conversations were about. Nor do the surrounding entries or the docket provide clarity. The same is true of 7.8 hours billed by Ms. Shanbhag, 5.1 hours billed by Ms. Valdenegro, and 8.7 hours billed by Ms. Rifkin, all of which use comparably vague terms.

The Court will therefore exclude a total of 34 hours from the lodestar calculation due to vagueness.

### (5)    Travel Time

Defendants object to 200.5 hours billed for "driving and other travel time," almost all of which involved out-of-state counsel traveling to Idaho.[5] *Def.'s Resp.* at 18, Dkt. 319. The Ninth Circuit has established that travel time is "reasonably compensated at normal hourly rates if such is the custom in the relevant legal market." *Davis*, 976 F.2d at 1543.

Idaho courts only award fees for attorney travel time as a sanction. *Portfolio Recovery Assoc., LLC v. Ruiz*, No. 42982, 2015 WL 6441722, at *4 (Idaho Ct. App. Oct. 23, 2015). But Idaho is not the "relevant legal market" in this case, so that custom is not controlling. Ms. Edmo's case presented unique issues of prisoner conditions and transgender healthcare. It was therefore reasonable for Ms. Edmo to

---

[5] As Ms. Edmo noted in her Reply, this number includes time already deducted by counsel for Mr. Chen's travel to and from the injunction hearing. *Reply*, Dkt. 321, at 4.

retain outside counsel that specialized in those areas. *Ferguson Aff.* ¶¶ 19 & 31,
Dkt. 315-5. Even Ms. Edmo's local counsel who have substantial prisoner
litigation experience would not have accepted her case without the assistance of
outside counsel. *Id.* at ¶ 19. Nor does it appear that any other Idaho law firm could
or would have done so. *Id.* at ¶ 18; *Belodoff Aff.* ¶ 18, Dkt. 315-8; *see Saint
Alphonsus Med. Ctr.-Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 1:13-CV-
00116-BLW, 2016 WL 1232656 (D. Idaho March 28, 2016) (awarding
$247,237.50 in attorneys' fees for travel time by specialized out-of-state counsel).
Consequently, extensive travel by outside counsel was necessary. *Marbled
Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308, 327 (N.D. Cal. 1995) (refusing to
disallow travel time where it would "deter out-of-town attorneys from undertaking
this type of representation in the future.").

The Court will, however, exclude time for travels not necessitated by outside
counsel's absence from Idaho. This includes incidental travels—such as driving to
and from home, hotels, meetings, and depositions—that are a routine feature of
every lawyer's day. *Stormer Aff.* at 54, Dkt. 315-4. After reviewing the timesheets,
the Court will deduct 6.2 hours of incidental attorney travels.

### (6)  Clerical Tasks

Defendants object to fees incurred for performing what they view as clerical
work. *Def.'s Resp.* at 22, Dkt. 319. Work that is secretarial in nature should be

absorbed into overhead costs, not billed separately. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Some examples of clerical work are document filing and organization, scheduling, copying or scanning, and transcription. *See Scott v. Jayco Inc.*, Case No. 1:19-cv-0315 JLT, 2021 WL 6006411 (E.D. Cal. Dec. 20, 2021). After reviewing the timesheets, the Court finds that several hours billed by numerous attorneys and paralegals, reflected in the table below, were for non-substantive work that should not be billed separately. Accordingly, 37.3 hours will be excluded from the lodestar calculation.

| Professional | Description[6] | Hours |
|---|---|---|
| Jessica Valdenegro | File Preparation & Organization | 3.8 |
| Jessica Valdenegro | Scheduling/Coordinating | 2.1 |
| Norma Molina | File Preparation & Organization | 3.4 |
| Norma Molina | Scanning/Copying | 0.6 |
| Norma Molina | Scheduling/Coordinating | 1.9 |
| Maxie Bee | File Preparation & Organization | 3.3 |
| Shaleen Shanbhag | File Preparation & Organization | 3.0 |
| Shaleen Shanbhag | Scheduling/Coordinating | 0.7 |
| Jordyn Bishop | Transcription | 18.5 |
| | **Total** | **37.3** |

### E.    Conclusion Regarding Expended Hours

---

[6] These are not the descriptions provided in the actual time entries submitted by Ms. Edmo. The Court has grouped the relevant entries into categories based on a broad description of the task performed for ease of reference.

In sum, the Court finds that Ms. Edmo's attorneys' fees are reasonable, except as discussed above. The result is a total of 5,691.5 expended hours to insert into the lodestar calculation.

## 2.    Presumptive Lodestar Calculation

Taking into account the reductions discussed above, the presumptive lodestar amount is $1,317,821.75, as illustrated below.

| Professional | Rate | Adjusted Hours | Lodestar |
|---|---|---|---|
| Lori Rifkin | $232.50 | 2,286.8 | $531,681.00 |
| Dan Stormer | $232.50 | 30.2 | $7,021.50 |
| Shaleen Shanbhag | $232.50 | 1,112.5 | $258,656.25 |
| Caitlan McLoon | $232.50 | 73.1 | $16,995.75 |
| Jordyn Bishop | $232.50 | 33.6 | $7,812.00 |
| Sairah Budwhani | $220 | 43.7 | $9,614.00 |
| Norma Molina | $210 | 62.4 | $13,104.00 |
| Jessica Valdenegro | $175 | 9.2 | $1,610.00 |
| Elizabeth Prelogar | $232.50 | 69.5 | $16,158.75 |
| Barrett J. Anderson | $232.50 | 247.6 | $57,567.00 |
| Jamie D. Robertson | $232.50 | 11.7 | $2,720.25 |
| Kathleen R. Hartnett | $232.50 | 40.9 | $9,509.25 |
| Deborah Ferguson | $232.50 | 170.8 | $39,711.00 |
| Craig Durham | $232.50 | 108.2 | $25,156.50 |
| Devi Rao | $232.50 | 16.2 | $3,766.50 |
| Cheryl L. Olson | $232.50 | 6.7 | $1,557.75 |
| Eliza McDuffie | $232.50 | 24 | $5,580.00 |
| Amy Whelan | $232.50 | 820 | $190,650.00 |
| Shannon Minter | $232.50 | 7.1 | $1,650.75 |
| Julie Wilensky | $232.50 | 120.6 | $28,039.50 |
| Alex Chen | $232.50 | 314.4 | $73,098.00 |
| Ary Smith | $220 | 39.1 | $8,602.00 |
| Maxie Bee | $175 | 43.2 | $7,560.00 |
| **Totals** | | **5,691.5** | **$1,317,821.75** |

3.     **Lodestar Enhancement**

Ms. Edmo asks the Court to enhance the presumptive lodestar by applying a 2.0 multiplier. *Mtn.* at 12, Dkt. 315. Defendants respond that Ms. Edmo has not carried the heavy burden of overcoming the presumption that the lodestar represents a reasonable fee. After carefully reviewing the relevant *Kerr* factors and briefing, the Court finds that Ms. Edmo has demonstrated an extraordinary reason to enhance the lodestar.

The burden is on the party seeking an enhancement to produce specific evidence showing that the lodestar amount is unreasonably low. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). There is a strong presumption that the lodestar figure represents a reasonable fee and modifications are proper only in "rare and exceptional circumstances and must be supported by specific evidence in the record and detailed findings by the court." *Id.* at 546–62. Ultimately, though, the decision whether to enhance the lodestar is within the district court's discretion. *Stranger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016).

At the outset, the Court disagrees with Defendants that multipliers are never appropriate in PLRA cases. *Def.'s Resp.* at 23, Dkt. 319. The Ninth Circuit has explicitly rejected that argument on more than one occasion. *See Parsons*, 949 F.3d at 466 n.14; *Kelly v. Wengler*, 822 F.3d 1085, 1100 (9th Cir. 2016). This Court will not ignore that binding precedent.

Turning to whether a multiplier is appropriate here, the Court finds that several of the *Kerr* factors not subsumed in the lodestar calculation support an enhancement.

### A.    Customary Fees and Excellent Results

Ms. Edmo argues that the PLRA rate cap of $232.50 per hour undervalues her counsel considering customary fees (fifth *Kerr* factor) charged by other attorneys and the excellent results obtained (eighth *Kerr* factor) in this case. The Court agrees.

The quality of an attorney's performance and the results obtained are typically not grounds for an enhancement because they "normally are reflected in the reasonable hourly rate." *Perdue*, 559 U.S. at 553 (citation omitted). But in "rare circumstances," a court may enhance the lodestar based on counsel's exceptional success. *Perdue*, 559 U.S. at 554-55. As the Supreme Court explained in *Perdue v. Kenny*, one such circumstance exists where "the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id.* Under those circumstances, an enhancement is appropriate "so that an attorney is compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes." *Id.* at 555. The court should therefore "adjust the

attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate." *Id.*

Ms. Edmo's case is precisely the kind of rare circumstance described in *Perdue. See Kelly v. Wengler*, 7 F.Supp.3d 1069, 1082 (D. Idaho 2014), *aff'd by 822 F.3d 1085* (9th Cir. 2016) (awarding multiplier where PLRA did not "fully reflect" counsel's success); *see also Ginest v. Board of Cnty. Com'rs of Carbon Cnty., WY*, 423 F.Supp.2d 1237, 1241 (D. Wyo. 2006) ("[T]he PLRA fees are exceptionally low and an enhancement is permissible to make the fee more fair."). There is a substantial disparity between the PLRA rate and customary fees for comparable attorneys, and Ms. Edmo's counsel obtained excellent results through superior performance in this litigation.

### (1)    Customary Fees

First, the Court agrees that the PLRA rate is exceptionally low when compared with the customary fees charged by civil litigators with comparable experience in this region. Ms. Edmo's local counsel—Ms. Ferguson and Mr. Durham—charge regular hourly rates of $475 and $400 per hour, respectively. *Ferguson Aff.* ¶ 36, Dkt. 315-5. According to Howard Belodoff, an experienced Idaho civil rights lawyer, those rates are "in line with or below the market rates charged by other attorneys in the Boise area." *Belodoff Aff.* ¶ 16, Dkt. 315-8. Mr. Belodoff, who himself litigates prisoner civil rights cases, further attests that (1)

his own hourly rate is $475 per hour, (2) two Holland & Hart attorneys with less experience than local counsel charge $400 and $485 per hour, and (3) Ms. Ferguson's and Mr. Durham's "excellent reputation[s], background, and experience" support their regular hourly rates. *Id.* at ¶ 12. The Court credits these declarations and finds that customary rates for comparable civil litigators in the Boise area range between $400 and $485 per hour.

That means the PLRA rate of $232.50 per hour undervalues local counsel's time by between forty and fifty percent. *Ferguson Aff.* ¶ 36, Dkt. 315-5; *Belodoff Aff.* ¶¶ 10, 16, 315-8. The rate disparity is even more pronounced for out-of-state counsel, with the PLRA rate constituting as low as twenty percent of those attorneys' regular rates. *See Rifkin Aff.* ¶ 46, Dkt. 315-2 (69% below regular rate); *Whelan Aff.* ¶ 30, Dkt. 315-3 (51% and 42% below regular rates); *Hartnett Aff.* ¶ 19, Dkt. 315-7 (81%, 78%, 65%, 78%, and 76% below regular rates); *Rao Aff.* ¶ 14, Dkt. 315-6 (74% below regular rate); *Stormer Aff.* ¶ 21, Dkt. 315-4 (81%, 60%, and 56% below regular rates). However, other than her own attorneys' declarations, Ms. Edmo has not submitted any evidence of the customary rates charged by out-of-state counsel with comparable skill and experience. Without "specific proof linking the attorney's ability to a prevailing market rate" for outside counsel, the Court cannot determine whether outside counsel's regular rates are the customary rates in their localities. *Perdue*, 559 U.S. at 543. The Court will

therefore use the local market rate as the comparator for both local counsel and outside counsel in this case.

Defendants' credibility challenges to Ms. Ferguson's and Mr. Belodoff's declarations are unpersuasive. First, there is nothing suspect about Ms. Ferguson stating that her own regular hourly rate of $475 per hour is in line with the customary rates in the area. Such statements are often credited when accompanying fee requests. *See, e.g.*, *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Second, the Court will not discredit Mr. Belodoff, an experienced civil rights lawyer, based on a three-and-a-half-year-old fee reduction in a different case. That has absolutely no bearing Mr. Belodoff's familiarity with customary rates charged by civil litigators in the Boise area.

### (2)    Excellent Results

Second, Ms. Edmo's counsel obtained excellent results through superior performance in this case. Through this Court's injunction—which her attorneys successfully defended on appeal to the Ninth Circuit and on petition for *certiorari* from the Supreme Court—Ms. Edmo became the first prisoner in the nation to receive court-ordered gender confirmation surgery. *Mtn.* at 15, Dkt. 315. Her counsel skillfully navigated novel legal issues involving transgender healthcare in the Eighth Amendment context, conducted extensive expert discovery, and

reviewed over ten-thousand pages of documents produced by Defendants. *Rifkin Aff.* ¶ 22, Dkt. 315-2. Moreover, their written and oral advocacy before this court, the Ninth Circuit, and the Supreme Court was exemplary.

In sum, the Court finds that the PLRA rate does not adequately measure counsel's true market value, as demonstrated during this litigation, and will apply a lodestar enhancement.

### B.     Time Limitations and Awards in Similar Cases

Two additional factors support an enhancement: unique time pressures (seventh *Kerr* factor) and awards in similar cases (twelfth *Kerr* factor).

In this case, Ms. Edmo sought medical treatment necessary to mitigate a "serious risk of life-threatening self-harm." *Findings of Fact, Conclusions of Law, and Order* at 45, Dkt. 149. Because the need for treatment was urgent, the litigation was expedited on numerous occasions.[7] A careful review of the district and appellate dockets reveal that Ms. Edmo's counsel faced serious time

---

[7] Expedited portions of this litigation include: (1) briefing and oral argument on Defendants' first appeal, 9th Circuit No. 19-35017, Dkt. 19; (2) briefing before this Court on Defendants' emergency motion to stay the order requiring pre-surgical treatments, 9th Circuit No. 1:17-cv-151, Dkt. 231; (3) briefing before the Ninth Circuit on Defendants' emergency motion to stay the same order, 9th Circuit No. 19-35917, Dkt. 7; (4) Ms. Edmo's emergency motion to modify the Ninth Circuit's stay by exempting pre-surgical appointments, 9th Circuit No. 19-35017, Dkt. 22; and Ms. Edmo's response to Defendants' application for stay in the Supreme Court, U.S. Supreme Court No. 19-1280.

constraints, especially from March to November of 2019, and in May of 2020. This factor favors an enhancement.

Looking to fee awards in similar cases, Ms. Edmo points to numerous prisoner civil rights cases in which multipliers have been used. *Bown v. Reinke*, No. 1:12-cv-00262-BLW, 2016 WL 2930904 (D. Idaho May 19, 2016) (awarding multipliers of 1.8 and 1.4 to bring PLRA rates in line with market rates); *Kelly*, 7 F.Supp.3d at 1083 (awarding multipliers of 2.0 and 1.3 to bring PLRA rates in line with market rates); *Balla v. Idaho State Bd. Of Corr.*, No. 81-cv-01165-BLW, 2016 WL 6762651, at *12 (D. Idaho Feb. 1, 2016) (awarding multipliers of 1.97, 1.39 and 1.26 to bring PLRA rates in line with market rates).

Over Defendants' objection, the Court is satisfied that the cases Ms. Edmo cites are sufficiently similar to be instructive here. Each case involved the use of a lodestar enhancement to avoid substantially undervaluing highly effective counsel who were subject to the PLRA rate cap. The Court agrees that this factor also favors an enhancement.

## 4.     Conclusion on Lodestar Enhancement

A lodestar enhancement is appropriate where a "successful plaintiff has demonstrated that [the] lodestar amount does not represent a fully compensatory fee." *Planned Parenthood of Cent. & N. Ariz. v. State of Ariz.*, 789 F.2d 1348, 1354 (9th Cir. 1986). Ms. Edmo has made that showing here. The Court will

therefore apply a multiplier of 1.7 for Mr. Durham and 2.0 for all other attorneys in order to more closely align the fee award with the market value of counsel's services.[8]

## 5. Litigation Expenses

Under § 1988, a prevailing party may recover reasonable out-of-pocket litigation expenses that "would normally be charged to a fee paying client." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), *amended by 808 F.2d 1373 (9th Cir. 1987)*. These include, for example, costs for travel, lodging, computer-assisted research, long-distance phone calls, postage, and photocopying.

Ms. Edmo requests $91,878.73 in litigation expenses. *Mtn.*, Dkt. 315-1. Defendants object that those expenses are excessive and not supported by sufficient documentation. *Def.'s Resp.* at 39-40, Dkt. 319.

### A. Lack of Documentation

Defendants object to the lack of "supporting documents, such as receipts or invoices," for Ms. Edmo's claimed expenses. *Id.* at 40. Without documentation,

---

[8] As discussed, the Court will use the local customary fee as a comparator for outside counsel's hours because Ms. Edmo has not demonstrated the customary fees for outside counsel. Based on the affidavits and the Court's experience assessing fee requests, however, the Court does find that outside counsel's rates should be enhanced to the upper end of the customary fee range in the Boise area.

they argue, the Court cannot evaluate "the reasonableness and appropriateness of the claimed expenses." *Id.* Defendants' point is well taken, but it is worth noting that there is no hard-and-fast requirement to submit documentation and receipts. Such evidence is only necessary if the Court would otherwise be unable to determine the reasonableness of a given expense.

The Court agrees with Defendants that Ms. Edmo's travel expenses are lumped together and lack sufficient detail. For example, the Court has no way of evaluating the reasonableness of $9,188.13 spent on "case related travel expenses incurred by Lori Rifkin from June 9-October 13, 2018." *Stormer Aff.*, Ex. D, Dkt. 315-4. Nor can the Court evaluate $2,053.60 in "lodging charges" without more information—most obviously the length of stay. *Id.*

The Court will therefore exclude $20,492.29 in travel expenses from the fee award.

## B.    Routine Expenses

"Routine expenses which are incorporated into attorneys' rates as routine office overhead are not recoverable." *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F.Supp. 1017, 1023 (N.D. Ohio 1997). Whether expenses are routine depends on "the prevailing practice in [the] community." *Tr. of Const. Industry and Laborers Health and Welfare Trust v. Redlands Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted).

Among Ms. Edmo claimed expenses is $5,414.50 for "monthly word processing" costs and $826.80 for "office supplies." *Stormer Aff.*, Ex. D, Dkt. 315-4. The Court finds that these are routine costs that are ordinarily not billed separately and will therefore exclude them from the fee award.

Ms. Edmo also seeks reimbursement for $385 in meals and drinks purchased by her attorneys before and after hearings. *Whelan Aff.*, Ex. C, Dkt. 315-3; *Rifkin Aff.*, Ex. C, Dkt. 315-2. The Court will exclude those costs because they are not the kind which would normally be charged to a fee-paying client.

## 6.    Bill of Costs

Ms. Edmo filed a bill of costs in the amount of $18,793.34. *Pl.'s Bill of Costs*, Dkt. 312. Defendants raise four objections: (1) counsel did not meet and confer as required by Local Rule 54.1(a)(1) before filing the bill of costs; (2) counsel did not file a certificate of counsel as required by Local Rule 54.1(a)(1)(B); (3) Ms. Edmo was not the "prevailing party" on all claims or against all defendants; and (4) some of the claimed costs are not allowable. *Def.'s Resp.* at 41-42, Dkt. 319.

The first objection begins and ends the Court's analysis. Local Rule 54.1(a)(1) plainly states that no bill of costs "may be filed before the parties have met and conferred regarding costs." Counsel concedes that they did not meet and confer prior to filing the bill of costs. *Pl.'s Reply* at 13, Dkt. 321.

"It has long been a tradition in this district to hold counsel strictly to the
Local Rules, especially regarding bills of costs." *Blaine Larsen Processing, Inc. v.
Hapco Farms, Inc.*, No. 97–0212–E–BLW, 2000 WL 35539979, at *14 (D. Idaho
Aug. 9, 2000). The Court will continue that tradition here, recognizing that
awarding costs despite clear noncompliance with the local rules would reduce
those rules to mere suggestions. The Court will therefore deny Ms. Edmo's request
for costs.

### 7.      Final Calculation

Based on the foregoing, the Court awards attorneys' fees and costs as
follows:

#### A.      Attorneys' Fees

| Professional | Rate | Adjusted Hours | Multiplier | Total |
|---|---|---|---|---|
| Lori Rifkin | $232.50 | 2,286.8 | 2 | $1,063,362.00 |
| Dan Stormer | $232.50 | 30.2 | 2 | $14,043.00 |
| Shaleen Shanbhag | $232.50 | 1,112.5 | 2 | $517,312.50 |
| Caitlan McLoon | $232.50 | 73.1 | 2 | $33,991.50 |
| Jordyn Bishop | $232.50 | 33.6 | 2 | $15,624.00 |
| Sairah Budwhani | $220 | 43.7 | - | $9,614.00 |
| Norma Molina | $210 | 62.4 | - | $13,104.00 |
| Jessica Valdenegro | $175 | 9.2 | - | $1,610.00 |
| Elizabeth Prelogar | $232.50 | 69.5 | 2 | $32,317.50 |
| Barrett J. Anderson | $232.50 | 247.6 | 2 | $115,134.00 |
| Jamie D. Robertson | $232.50 | 11.7 | 2 | $5,440.50 |
| Kathleen R. Hartnett | $232.50 | 40.9 | 2 | $19,018.50 |
| Deborah Ferguson | $232.50 | 170.8 | 2 | $79,422.00 |
| Craig Durham | $232.50 | 108.2 | 1.7 | $42,766.05 |

| Devi Rao | $232.50 | 16.2 | 2 | $7,533.00 |
|---|---|---|---|---|
| Cheryl L. Olson | $232.50 | 6.7 | - | $1,557.75 |
| Eliza McDuffie | $232.50 | 24 | 2 | $11,160.00 |
| Amy Whelan | $232.50 | 820 | 2 | $381,300.00 |
| Shannon Minter | $232.50 | 7.1 | 2 | $3,301.50 |
| Julie Wilensky | $232.50 | 120.6 | 2 | $56,079.00 |
| Alex Chen | $232.50 | 314.4 | 2 | $146,196.00 |
| Ary Smith | $220 | 39.1 | - | $8,602.00 |
| Maxie Bee | $175 | 43.2 | - | $7,560.00 |
| **Totals** | | **5,691.5** | | **$2,586,048.80** |

## B.    Litigation Expenses

| Firm | Adjusted Expenses |
|---|---|
| National Center for Lesbian Rights | $13,571.63 |
| Cooley LLP | $1,327.40 |
| Ferguson Durham, PLLC | $272.42 |
| Hadsell Stormer & Renick, LLP | $29,268.19 |
| Rifkin Law Office | $1,104.56 |
| **Total** | **$45,544.20** |

## 8.    Disposition

After considering the totality of the record and the arguments of counsel, the Court awards Ms. Edmo's $2,586,048.80 in fees and $45,544.20 in litigation expenses. The Court finds this award is reasonable and appropriate based on its analysis.

## ORDER

**IT IS ORDERED that:**

1.     Plaintiff's Motion for Attorney Fees and Expenses (Dkt. 315) is

       **GRANTED in part and DENIED in part**.

DATED: September 30, 2022

B. Lynn Winmill
U.S. District Court Judge