LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO

Steven R. Kraft (ISB No. 4753)
Special Deputy Attorney General
steve@melawfirm.net
Peter E. Thomas (ISB No. 9756)
peter@melawfirm.net
*Moore Elia & Kraft, LLP*
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031

*Attorneys for Defendants Idaho Department of Corrections, Henry Atencio, Jeff Zmuda, Howard Keith Yordy, Richard Craig, and Rona Siegert*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ADREE EDMO, | ) Case No. 1:17-cv-151-BLW |
| | ) |
| Plaintiff, | ) **MEMORANDUM IN SUPPORT OF** |
| vs. | ) **DEFENDANTS' MOTION TO STAY** |
| | ) **JUDGMENT** |
| IDAHO DEPARTMENT OF | ) |
| CORRECTION; HENRY ATENCIO, in | ) |
| his official capacity; JEFF ZMUDA, in | ) |
| his official capacity; HOWARD KEITH | ) |
| YORDY, in his official and individual | ) |
| capacities; CORIZON, INC.; SCOTT | ) |
| ELIASON; MURRAY YOUNG; | ) |
| RICHARD CRAIG; RONA SIEGERT; | ) |
| CATHERINE WHINNERY; AND | ) |
| DOES 1-15; | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

COME NOW, Defendants, Idaho Department of Corrections, Josh Tewalt, Bree Derrick, and Al Ramirez, by and through undersigned counsel of record, Moore, Elia & Kraft, LLP, and

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY JUDGMENT – pg. 1**

hereby submit this *Memorandum in Support of Motion to Stay Judgment* as follows.

## INTRODUCTION

This motion seeks a stay of the *Memorandum Decision and Order* (Dkt. 323), *Abstract of Judgment* (DKT 325), *Writ of Execution* (DKT. 303), *Amended Abstract of Judgment* (Dkt. 335), and *Amended Writ of Execution* (Dkt. 336) (collectively "Judgment"), on the basis that Federal Rule of Civil Procedure 62(f) provides for a stay without bond because Defendants are "officers, agencies, and/or subdivisions" of the state of Idaho. Further, a stay of execution is warranted because Defendants are likely to prevail on appeal, the Judgment involves complex issues and parties, neither Plaintiff nor Plaintiff's counsel is likely to suffer any irreparable harm, while there is risk of irreparable harm to Defendants, and it is in the public interest to impose a stay without bond in this matter. In the alternative, this Court should stay execution of the Judgment until after the completion of the January 11, 2023 mediation because Plaintiff's ongoing efforts to execute upon that Judgment violates the Judgment's executory documents and Plaintiff's efforts to that end would render the mediation essentially moot.

## BACKGROUND

On September 30, 2022, the Court issued its *Memorandum Decision and Order* (Dkt. 323), in which it awarded Plaintiff $2,586.048.80 in attorney's fees and $45,544.20 in litigation costs, comprised of a base attorney's fees award of $1,317, 821.50 and a "2.0 multiplier." Dkt. 323, PP. 26-7, 39. On October 28, 2022, Defendants filed their *Joint Notice of Appeal* (Dkt. 324) with regard to the Court's award of attorney's fees and costs. On November 2, 2022, Plaintiff's counsel submitted their *Abstract of Judgment*, *Motion for Issuance of Writ of Execution,* and *Writ of Execution* (Dkts. 325, 326, & 326-2). On November 3, 2022, the Ninth Circuit Court of Appeals provided the parties *Mediation Letters* and *Questionnaires.* See Declaration of Peter Thomas, ¶ 3.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY JUDGMENT – pg. 2**

On November 23, 2022, Defendants filed their *Joint Objection to Abstract of Judgment and Writ of Execution* (Dkt. 331) because, among other things, that the *Writ of Execution* named previously-dismissed Defendants and was premature. See e.g. Dkt. 331, PP. 4-5. On November 28, 2022, the Court clarified that Plaintiff's *"Motion for Issuance of Writ of Execution"* was, in fact, an "application" rather than a motion and elicited no responsive briefing from Defendants. See Dkt. 334.

On November 29, 2022, the parties attended a mediation conference with the Ninth Circuit Court of Appeals, in which all parties indicated that they would be willing to mediate towards a settlement of the judgment and award of attorney's fees at issue on appeal. Declaration of Peter E Thomas, ¶ 4. On that matter, the Ninth Circuit tentatively set a mediation date of January 11, 2023. *Id.*, ¶ 5. Also on November 29, 2022, the Court issued an *Amended Writ of Execution* (Dkt. 336) which states, in relevant part:

> The above-listed **Defendants are required to satisfy** the Judgment…out of the property (goods, chattels, lands, or tenements) of Defendants, and make return of this writ **within ninety (90) days** after receipt of this writ.

Dkt. 336 (emphasis added). Meanwhile, it has come to the IDOC Defendants' attention that Plaintiff's counsel recently directed a copy of the *Amended Writ of Execution* (Dkt. 336) and/or *Amended Abstract of Judgment* (Dkt. 335) to Chief U.S. Deputy Marshall Paul Baxley for the purpose of having state of Idaho bank funds seized immediately and prior to the expiration of the ninety (90) day window for Defendants to satisfy the *Writ of Execution*. See Thomas Declaration, ¶ 6. However, Chief Deputy Marshall Baxley has informed Lead Deputy Attorney General Karin Magnelli that he had multiple concerns about the Amended Writ of Execution, including that it directed him to seize state of Idaho funds from a bank without specifying the bank. *Id*. Chief

Deputy Baxley also indicated that, based on its current form, the *Amended Writ of Execution* and/or *Amended Abstract of Judgment* could not be executed upon. *Id*.

## ARGUMENT

### I.     Enforcement of the Judgment Should be Stayed Under Rule 62(f) Without Bond.

Federal Rule of Civil Procedure 62(f) states: "[i]f a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." F.R.C.P. 62(f). With regard to bond requirements on appeal in Idaho, Idaho Rule of Civil Procedure 62(e) states that "**the court must not require a bond…or other security from the appellant when granting a stay on appeal by the state of Idaho or its officers, agencies, or subdivisions**." I.R.C.P. 62(e) (emphasis added). In other words, the district court must grant a stay without a bond if the requirements of Rule 62(f) are met when a state of Idaho agency, such as the Idaho Department of Corrections, is a defendant. A stay under I.R.C.P. 62(e) is not discretionary. In other words, the district court must grant a stay without a bond if the requirements of Rule 62(f) are met because the judgment on appeal constitutes a lien.

A judgment is a lien when the judgment constitutes a lien under state law. Under Idaho law, "a lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." I.C. § 45-101. While "nonconsensual common law liens" are prohibited, that prohibition does not apply to "court imposed equitable, judgment, or constructive liens," which are <u>not</u> "nonconsensual common law liens" by Idaho Code Section 45-811. Idaho law also recognizes the operation of unrecorded liens. *Kalange v. Rencher*, 136 Idaho 192, 196, 30 P.3d 970, 974 (2001) (indicating that a purchaser with "actual knowledge of a prior encumbrance by a subsequent purchaser…renders his interest inferior

to that encumbrance <u>though not recorded</u>") (emphasis added). Liens can attach to personal property, real property, profits, and numerous other categories of assets. See, e.g. Idaho Code Section 22-2201 (liens in trespassing animals); Idaho Code Section 47-45-801 (vendor's liens). Furthermore, from the commencement of an action, or the service of an answer containing a counterclaim, the **<u>attorney who appears for a party has a lien upon his client's…judgment</u>**. Idaho Code Section 3-205.

In this case, the *Writ of Execution* (Dkt. 330) and/or *Amended Writ of Execution* (Dkt. 336) and *Amended Abstract of Judgment* (Dkt. 335) create liens against the State of Idaho, its subdivision(s), and/or an agency thereof. This is because the *Amended Writ of Execution* identifies a "charge imposed [against Defendants] in some mode…upon specific property by which [the property] is made security for the performance of an act." See Idaho Code Section 45-101. Specifically, the Amended Writ of Execution secures the performance of the act of "satisfying the judgment" by and for the benefit of Plaintiff, to be satisfied in and from specific property, including Defendants' "goods, chattels, lands, or tenements." See Dkt. 335, P. 2. This language is sufficient to create a lien in that specifically identified property, whether or not such liens have been perfected. See *Kalange v. Rencher*, 136 Idaho 192, *supra* ("renders his interest inferior to that encumbrance <u>though [the prior encumbrance was] not recorded</u>.") In addition to creating a lien upon *Defendants'* property, the Judgment in this case *also* creates, in the favor of Plaintiff's counsel, a lien in the corpus of Plaintiff's proceeds. See Idaho Code Section 3-205. As such, under the plain meaning of Federal Rule 62(f) the Judgment and Writ of Execution in this case create multiple liens under Idaho law and the Court must apply Idaho Rule of Civil Procedure 62, including that Rule's prohibition on imposing a bond "when granting an appeal by the state of Idaho or its subdivisions."

**II.     The Judgment Should be Stayed Under Rule 62(b)**

Federal Rule of Civil Procedure 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." However, district courts have "inherent discretionary authority in setting supersedeas bonds," *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n. 1 (9th Cir. 1987), including the discretion to allow alternative types of security <u>or to waive the bond requirement</u>. *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 796 (9th Cir. 1989); *In re Combined Metals Reduction Co.*, 557 F.2d 179, 193 (9th Cir. 1977); *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F.Supp. 1101, 1104 (S.D. Cal. 1990); *Aldasoro v. Kennerson*, 915 F.Supp. 188, 191 (S.D. Cal. 1995). An appellant has the burden to "objectively demonstrate" the reasons for departing from the usual requirement of a full supersedeas bond. *Dixon v. City of Coeur d'Alene*, No. 2:10-CV-00078-LMB, 2011 WL 13137320, at *2–3 (D. Idaho Dec. 19, 2011) (citing *See Poplar Grove Planting & Refining Co. v. Bache Hasley Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979)).

In determining whether to waive the bond requirement or allow alternative types of security, there is no clear test, although courts—including the District of Idaho—have considered various factors. This Court has applied the traditional stay standard outlined in *Nkhen v. Holder*, 556 U.S. 418, 434 (2009) and *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)):

> Under the *Hilton* test, a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776.; "The first two factors of the traditional standard are the most critical." *Nkhen*, 556 U.S. at 434. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Id.*

*Moses*, No. 4:19-CV-00108-DCN, 2021 WL 1617376, at *1–5. *See also Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*, No. 1:19-CV-00009-DCN, 2020 WL 7265839, at *2–7 (D. Idaho Dec. 10, 2020); *Balla v. Idaho State Bd. of Correction*, No. 1:CV 81-1165-BLW, 2010 WL 3001442, at *1–2 (D. Idaho July 28, 2010). Yet in other cases, this Court has considered the five *Dillon* factors:

> Although the Ninth Circuit has not articulated what factors should be considered when determining whether to waive the bond requirements, courts within the circuit have often considered those laid out in *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988)." *San Diego Comic Convention v. Dan Farr Productions*, No. 14-CV-1865 AJB (JMA), 2018 WL 4852199, at *2 (S.D. Cal. Oct. 5, 2018) (internal quotation marks omitted) (collecting cases). The five *Dillon* factors are:
>
> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court had in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the costs of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position. *Id.* (quoting *Dillon*, 866 F.2d at 904–07).

*Moses*, 2021 WL 1617376, at *1–5.

With that in mind, (1) this Court clearly has the "inherent discretionary authority" in setting supersedeas bonds, including the authority to waive the bond requirement entirely; and (2) while the court has articulated various tests and factors to be consider, there is no one factor, or set of factors, that is determinative. Indeed, the district court has **"broad discretionary power to waive the bond requirement if it sees fit."** *Townsend*, 881 F.2d at 796-97 (emphasis added).

A. **The Court Should Stay Execution of the Attorneys' Fee Award and Waive the Supersedeas Bond Requirement.**

This Court has the "inherent discretionary authority" to stay execution and a judgment and

to "waive the bond requirement if it sees fit." *Townsend v. Holman Consulting Corp.*, 881 F.2d at 796. The following circumstances in the instant case support denying Plaintiff's Motion for Issuance of Write of Execution, staying execution of the attorneys' fee award util Defendants' appeal has been adjudicated, and waiving the supersedeas bond requirement.

**i. Defendants are Likely to Succeed on Appeal**

In awarding fees to Plaintiff, this court took the unusual and extraordinary step of awarding a "multiplier" despite the PLRA's explicit cap on attorneys' fees. As a result of this error (among others), Defendants have a strong basis for having the award overturned, or substantially reduced, on appeal.

1. The district court erred because the PLRA does not provide the district court with discretion to enhance a fee award beyond what is statutorily prescribed.

The PLRA's specific formula places a cap on fee awards and does not include any kind of discretion for district courts to enhance an award beyond the express limits of the statute. Allowing such discretion is contrary to the plain language of the PLRA and inconsistent with the Supreme Court's recent ruling that the PLRA governs over § 1988's lodestar framework, *Murphy v. Smith*, 138 S. Ct. 784, 789 (2018).

The First, Second, Sixth, and Eleventh Circuits recognize that the PLRA is the standard for awarding attorneys' fees in prisoner cases, not the lodestar method. *See Johnson v. Breeden*, 280 F.3d 1308 (11th Cir. 2002) (holding that the "common lodestar method" to a fee request in a prisoner case "is not the proper legal standard" and instead, the provisions of the PLRA controlled. "Although the lodestar method provides the correct approach for determining a reasonable attorney fee under § 1988 generally, the amount which may be awarded in a case brought by a prisoner is now capped. Specifically, both the availability of fees and their amount have been restricted by

[the PLRA])"; *Shepherd v. Goord*, 662 F.3d 603, 606 (2d Cir. 2011) ("With the 1996 enactment of the PLRA, Congress imposed 'substantial restrictions' on § 1988(b) attorney's fees awards to prevailing prisoner plaintiffs."); *Walker v. Bain*, 257 F.3d 660, 665 (6th Cir. 2001) ("Among the many new changes relating to prisoner civil rights suits, the PLRA modifies the application of 42 U.S.C. § 1988 to prevailing prisoners by providing stringent limitations on both the availability and the amount of attorney fee awards."); *Boivin v. Black*, 225 F.3d 36, 39 (1st Cir. 2000) ("In enacting the PLRA, Congress deviated from this pattern, choosing to place some explicit limitations on the fees that courts can award to prisoners' lawyers in civil cases.").

   2. <u>The district court erred because even when applying the lodestar under the Ninth Circuit precedent, there is a strong presumption in favor of no enhancers, and many of the *Kerr* factors are "subsumed" in the initial lodestar calculation.</u>

The Lodestar initial amount should be adjusted only in **"exceptional cases."** *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (emphasis added). [E]ven when an enhancement is appropriate, of course, it may not be based on considerations already subsumed in the PLRA rate." *Kelly v. Wengler*, 822 F.3d 1085, 1102 (9th Cir. 2016); *Balla v. Idaho State Bd. of Correction*, No. CV-81-1165-S-BLW, 2016 WL 6762651, at *10 (D. Idaho Feb. 1, 2016): "In adjusting an award, however, the district court must focus on the *Kerr* factors "that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)).

**Factors one through four and six are considered subsumed in the lodestar calculation**. *Id.* at 364 n.9. Those *Kerr* factors determined not subsumed in the lodestar calculation therefore include: "(5) the customary fee ... (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation,

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY JUDGMENT – pg. 9**

and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.*; *Kerr*, 526 F.2d at 70; *see Graves v. Arpaio*, 633 F. Supp. 2d 834, 842 (D. Ariz. 2009) *aff'd*, 623 F.3d 1043 (9th Cir. 2010)." Under *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020), "[a] strong presumption exists that the lodestar figure represents a reasonable fee," and the district court must "decide whether to enhance or reduce the lodestar figure based on an evaluation" of the factors listed in *Kerr,* 526 F.2d at 67, "<u>that are not already subsumed in the initial lodestar calculation.</u>" *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 & n.4 (9th Cir. 2000) (citations and internal quotation marks omitted). "[A]ny reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988)."

Among the factors already subsumed are factors "relevant to the determination of a reasonable attorney's fee, including the novelty and complexity of the case and the quality of the attorney's performance." *Parsons* 949 F.3d at 467. However, although the lodestar generally may not be enhanced on the basis of an attorney's performance, <u>in certain " 'rare' and 'exceptional' " circumstances</u>, "superior attorney performance is not adequately taken into account in the lodestar calculation" and therefore an enhancement justified. *Bala*, 2016 WL 6762651, at *11 (D. Idaho Feb. 1, 2016).

> 3. <u>The District Court erred by failing to recognize that Plaintiff did not prevail on many claims and against many defendants</u>

The PRLA expressly provides that any fee award must be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d). Similarly, under the traditional principles of fee awards under Section 1988, the court can reduce the lodestar amount in light of the limited success of the plaintiff. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992);

*Hensley v. Eckerhart*, 461 U.S. 424, 434–37 (1983) ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."); *Graves v. Arpaio*, 633 F. Supp. 2d at 843. Plaintiff failed to meet her burden to demonstrate which fees were directly related to the claims on which she prevailed. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (holding that the fee applicant bears the burden of "documenting the appropriate hours expended . . . [and] submit[ting] evidence in support of those hours worked").

   ii.   **Complexity of the Collections Process and Time Required to Obtain a Judgment After it is Affirmed on Appeal**

There are multiple defendants in this case, and as described above, there is a defect in the *Abstract of Judgment* regarding which defendants the attorneys' fee award applies to and for which claims Plaintiff's counsel might be entitled to fees. The process and time that will be required to sort out these issues and pursue execution will therefore be complicated and potentially time consuming. This consideration is significant as there are numerous claims against numerous parties, and it is Defendants' contention that many of those claims were not "successful" for the purpose of attorney's fees. To the extent that Plaintiffs' counsel is entitled to fees should be determined prior to payment of fees. Moreover, if Defendants are required to pay the Plaintiffs' fees and costs now, and then prevail on appeal, Plaintiffs will be required to refund some or all of the amounts collected, and it will be difficult to "unscramble the egg." From an accounting standpoint, and in light of the multiple defendants involved and subject to the attorneys' fee award, it makes sense to avoid this type of multiple transaction exchange and simply wait until resolution of the appeal.

   iii.   **Irreparable Injury if Execution is Not Stayed, Balancing Harm to the Parties, and Public Interest.**

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY JUDGMENT – pg. 11**

Another factor relevant to whether a court should waive the bond requirement for a stay on appeal is the risk of irreparable harm to the <u>parties</u>. Importantly, the focus here is <u>not</u> on the "parties' attorneys." With that in mind, the risk of personal harm to Plaintiff in staying the execution of the attorney's fees award judgment is nonexistent. Indeed, this is not a judgment for any money damages which would compensate Plaintiff for any alleged injuries, which were all resolved through settlement, and no amount of the judgment will flow to Plaintiff now or in the future. Rather, the judgment at issue solely concerns the payment of attorneys' fees to counsel who agreed to litigate this case *pro bono*. Accordingly, Plaintiff herself owes no money to her counsel and suffers no harm whatsoever if execution of the attorneys' fee award is stayed pending appeal. By staying execution, the Plaintiff herself will not be deprived of any ordered relief and will not suffer any prejudice. Defendants note, also, that the judgment in question is accruing interest at the rate of approximately $18,000 per month—even if the focus of the analysis *were* on whether Plaintiff's counsel was subject to irreparable injury, it is difficult to see how a delay would cause them "injury" in light of the accruing interest. Plaintiff's counsel's interest is sufficiently protected by the imposition of interest in this case. More fundamentally, by and through agreeing to mediate in good faith, Plaintiff's counsel has already conceded that it's ultimate award of attorney's fees may be less than the full amount upon which they are currently attempting to execute there is no good argument that Plaintiffs' counsel can make that it would be irreparably injured if it does not obtain the total amount of the award immediately.

On the other hand, the risk of irreparable injury to Defendants is high. The amount of attorney's fees is in dispute and it is not clear what that total award may be after an appeal, not to mention the possible outcomes of the upcoming mediation. Indeed, "there can be no certainty

about who is in the right until the appeals are done." *Exxon Valdez v. Exxon Mobil*, 568 F.3d 1077, 1084 (9th Cir. 2009). If Defendants prevail on appeal after having already satisfied Plaintiff's judgment, then Defendants will be forced to expend additional time and effort to recover those funds, subject to whatever procedural roadblocks Plaintiff's counsel decides to employ—all of which would be unnecessary if the Judgment is stayed until it is determined whether or not the Judgment was correct to begin with. To the extent this concern touches on the state of Idaho Defendants, those potentially unnecessary efforts would come at the taxpayers' expense. Furthermore, the funds potentially tied up in the bond or executed upon by Plaintiff would not be available for Defendants in the management of their day-to-day operations as entities.

### iv. Public Interest

The public has a direct interest in this appeal, considering that the Judgment is against the state of Idaho Defendants as well as Corizon. To the extent that the Plaintiffs are attempting to execute upon a greater sum of tax dollars than they may ultimately be entitled to and/or the imposition of a bond that would tie up taxpayer funding that could otherwise have been used towards some other end, there is a strong public interest in staying execution of the Judgment and/or imposition of a bond until such time as the total amounts owed to Plaintiffs are determined. On the other hand, the sole remaining issue—the amounts owned to various private attorneys—presents a negligible public concern. The questions of public concern in this case, addressing the scope of Plaintiff's rights under the Eighth Amendment, have been determined. All that remains is the scope of Plaintiff's attorney's private interests in their attorney's fees. Consideration of the public interest favors the imposition of a stay and waiver of bond requirements in this case.

Ultimately, this Court should impose a stay of execution pending the outcome of Defendants' appeal of the Judgment for Attorney's fees. Defendants have demonstrated that they

are likely to succeed on appeal, the complexity of the parties and issues on appeal favor imposition of a stay, there is a likelihood of irreparable harm to Defendants—but not Plaintiff—if Plaintiffs are allowed to execute on the Judgment while appeal is pending, and the public interest favors a stay on appeal.

### III. In the Alternative, the Court Should Impose a Stay Pending the Outcome of Mediation.

The parties have agreed to conduct good faith mediations of the award of attorney's fees currently on appeal, and the Ninth Circuit has tentatively set the mediation for January 11, 2023. The *Writ of Execution* (Dkt. 336), issued November 28, 2022, provided the Defendants ninety (90) days in which to satisfy the writ, out of "goods, chattels, lands **or** tenements". Dkt. 336, P. 2. Nonetheless, Plaintiff's counsel has made clear that they intend to *immediately* direct Chief U.S. Deputy Marshall Baxley to seize funds from state of Idaho bank accounts. Because such efforts were not made in conjunction with Defendants, it is not clear whether, and to what extent, Plaintiff's counsel has made similar efforts to collect from Defendant Corizon.

Note, first, that Plaintiff's counsel's efforts to enforce the Judgment violate the November 23, 2022 *Amended Writ of Execution* (Dkt. 363), which states that "Defendants are required to satisfy the judgment…and make return of this writ within (90) days after receipt of this writ." See Dkt. 336, P. 2). It is not clear why, on December 1, 2022, *eight* days after the *Amended Writ of Execution* was issued, Plaintiff's counsel indicated to the U.S. Marshalls that "seventy-two days have passed since the [D]efendants were ordered to pay this Judgment." Of course, Defendants were "ordered to pay this Judgment" on November 23, not "seventy-two" days prior, but whatever reason Plaintiff's counsel has taken this position is irrelevant. To the extent that Plaintiff's efforts are geared toward having a United States Marshall execute upon the writ and immediately seize

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY JUDGMENT – pg. 14**

"goods, chattels, lands or tenements" of the State of Idaho, any such efforts <u>fail to provide Defendants ninety days within which to "make return of the writ" in satisfaction of the judgment of attorney's fees in the fashion and using the "goods, chattels, lands, or tenements" that Defendants particularly wish to use to satisfy that judgment</u>. Plaintiff's counsel's efforts thus violate the *Amended Writ of Execution* and they should be required to conform to the letter of that order.

Notwithstanding, Plaintiff's counsel's efforts to execute upon the judgment, if allowed, would essentially render their agreement to mediate moot. Plaintiff's counsel has agreed to appear on January 11, 2023 to mediate—in good faith—the differences between the parties regarding the $2.6 million dollar award of attorney's fees. Should Plaintiff's counsel execute on that amount prior to the mediation, Plaintiffs' counsel will have no longer have any incentive to mediate, and such execution efforts are not geared towards a good faith mediation in any reasonable way. In any event, as written, the Judgment's executory documents *already* provide Defendants until *after* the date of the mediation to satisfy the Judgment, and, at a minimum, this Court should stay execution of the Judgment until the later of: (1) the date specified in the Judgment's executory documents—the *Amended Writ of Execution*, specifically; or (2) thirty days after the issuance of the decision in the mediation of this case. This approach allows for a meaningful mediation of amount of the judgment, and in the event that no agreement is reached, will allow Defendants the time granted under this Court's orders, as well as sufficient time to avail themselves of any appellate relief that may be available.

## CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that the Court stay execution of the Judgment contained in the *Memorandum Decision and Order* (Dkt. 323) during

the pendency of its appeal <u>or</u>, in the alternative, to stay execution of that Judgment until the later of: (1) the date specified in the Judgment's executory documents—the *Amended Writ of Execution*, specifically; or (2) thirty days after the issuance of the decision in the mediation of this case, which is currently scheduled for January 11, 2023.

DATED This 2nd day of December, 2022.

MOORE, ELIA & KRAFT, LLP

By: */s/ Steven R. Kraft*
Steven R. Kraft

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of December, 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Lori Rifkin
lrifkin@rifkinlawoffice.com
RIFKIN LAW OFFICE
Dan Stormer
dstormer@hadsellstormer.com
Shaleen Shanberg
sshanberg@hadsellstormer.com
HADSELL STORMER & RENICK, LLP
*Attorneys for Plaintiff*

Craig Durham
chd@fergusondurham.com
Deborah Ferguson
daf@fergusondurham.com
FERGUSON DURHAM, PLLC
*Attorneys for Plaintiff*

Amy Whelan
awhelan@nclrights.org
NATIONAL CENTER FOR LESBIAN RIGHTS
*Attorney for Plaintiff*

Dylan Eaton
deaton@parsonsbehle.com
J. Kevin West
kwest@parsonsbehle.com
PARSONS, BEHLE & LATIMER
*Attorneys for Defendants Corizon, LLC, Dr. Scott Eliason, Dr. Murray Young and Dr. Catherine Whinnery*

*/s/ Ann McNeese*
Ann McNeese

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY JUDGMENT – pg. 16**