UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ADREE EDMO,

      Plaintiff,

      v.

IDAHO DEPARTMENT OF
CORRECTION, et al.,

      Defendants.

Case No. 1:17-cv-00151-BLW

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Before the Court is Defendants' fully briefed Motion to Stay (Dkt. 338).[1]

For the reasons explained below, the Court will grant the motion in part and deny it

in part.

## BACKGROUND

In this action, Plaintiff Adree Edmo obtained an injunction ordering

Defendants to provide her with "adequate medical care," including gender

---

[1] Because the Court grants a stay of all enforcement proceedings pending mediation, this
Order also resolves IDOC Defendants' Motion for Protective Order. Dkt. 342.

**MEMORANDUM DECISION AND ORDER – 1**

confirmation surgery. Dkt. 149, at 45. After three years of appellate litigation surrounding the injunction, the parties negotiated a settlement of all remaining claims, and the underlying action came to an end.

In October 2021, Edmo filed a motion for attorneys' fees and expenses for representation over a four-year period before this Court, the Ninth Circuit Court of Appeals, and United States Supreme Court. Dkt. 315. On September 30, 2022, this Court issued its Memorandum Decision and Order awarding Edmo $2,586,048.80 in attorneys' fees and $45,544.20 in litigation expenses. Dkt. 323. Shortly thereafter, Defendants filed a timely Notice of Appeal as to the fee award. Dkt. 324.

Since the automatic stay of the fee award expired, Edmo has made repeated efforts to collect on the judgment. She has filed writs of execution (Dkts. 330 & 336), inquired with Court staff and the U.S. Marshals as to the requisite detail for such writs, and served Rule 69(a)(2) discovery on Corizon. *Pl.'s Resp.* at 4, Dkt. 341. Defendants have objected each step of the way and asked the Court to delay collection efforts. Dkts. 331 & 332. Denying Defenants' motion, the Court noted that if Defendants wish to delay enforcement of the fee award, they must squarely

ask the Court for a stay. Dkt. 337. They do so now.[2]

## LEGAL STANDARDS

### 1.    Mandatory Stays under Federal Rule of Civil Procedure 62(f)

A litigant who loses in federal court may seek to stay enforcement of the judgment pending appeal. Federal Rule of Civil Procedure 62 provides several avenues to do so, but ordinarily the appellant must post a bond under Rule 62(b).

One exception is found in Rule 62(f), which provides: "If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." Thus, if Rule 62(f) applies and a state court would grant a stay without requiring the appellant to post a bond, the federal court must do the same.

Idaho's rules governing stays are found in Idaho Rule of Civil Procedure 62. Relevant here, Rule 62(e) provides that "[t]he court must not require a bond, obligation or other security from the appellant when granting a stay on an appeal by the state of Idaho or its officers, agencies or subdivisions."

Taken together, Federal Rule 62(f) and Idaho Rule 62(e) mean that if a state

---

[2] Defendants Idaho Department of Corrections, Josh Tewalt, Bree Derrick, and Al Ramirez filed this Motion to Stay, Dkt. 338, which was subsequently joined by Defendants Corizon, LLC and Dr. Scott Eliason, Dkt. 340.

officer, agency, or subdivision loses in federal court and the federal judgment

constitutes a lien on state property under Idaho law, the federal court must grant a

stay on appeal without requiring a bond or other security. The key question, then,

is whether a given federal judgment creates a lien under Idaho law.

Idaho Code specifically prohibits "nonconsensual common law liens,"

defined to include any lien "not provided for by a specific state or federal statute."

I.C. § 45-811. Under that provision, though, judgment liens are excluded from the

definition of nonconsensual common law liens and therefore are not generally

prohibited. Case law has, nevertheless, made clear that "[a] judgment lien is purely

a creature of statute and does not exist in the body of our common law."

*Messenger v. Burns*, 86 Idaho 26, 29 (1963) (citing *Platts v. Pacific First Federal*

*Savings & Loan Ass'n of Tacoma*, 62 Idaho 340, 340-347 (1941)).

Idaho statutes specifically provide for creation of judgment liens on real

property. Under Idaho Code § 10-1110, a judgment creates a lien on real property

when a "transcript or abstract of any judgment or decree" is "recorded with the

recorder of any county of this state . . . from the time of such recording, and not

before, the judgment so recorded becomes a lien upon all real property of the

judgment debtor in the county." Thus, as the Idaho Supreme Court has explained,

the "judgment lien is obtained by the act of recording a judgment, not by the act of

obtaining a judgment." *Golub v. Kirk-Scott, Ltd.*, 342 P.3d 893, 901 (Idaho 2015).[3]

Conversely, Idaho Code does not broadly provide for the creation of judgment liens on personal property. Instead, it identifies specific circumstances in which such liens arise. *See, e.g.*, I.C. § 22-2201 (liens in trespassing animals); I.C. § 47-45-801 (vendors' liens); I.C. § 3-205 (attorney liens in client judgments). Thus, because judgment liens are creatures of statute and nonconsensual common law liens are prohibited, a federal court judgment only becomes a lien on personal property in Idaho if it falls within one of the statutorily prescribed circumstances.[4]

## 2.    Discretionary Stays under Federal Rule of Civil Procedure 62(b)

A litigant may also stay enforcement of a federal court judgment "by providing a bond or other security" at "any time after judgment is entered." Fed. R. Civ. P. 62(b). The two main reasons for requiring a bond are to (1) protect the

---

[3] *See also Amato v. U.S.*, 94 F.Supp.2d 1077, 1081 (D. Idaho 1999) ("A lien simply does not exist if the judgment . . . has not been recorded."); *Alpha Mortgage Fund II v. Drinkard*, 169 Idaho 446, 451 (2021) (quoting *Grazer v. Jones*, 154 Idaho 58, 65 (2013)) ("A judgment lien is distinct from the underlying judgment . . ..."); *Fulton v. Duro*, 107 Idaho 240, 247 (Idaho Ct. App. 1984).

[4] Defendants argue that Federal Rule 62(f) is not limited to judgment liens but includes all types and varieties of lien. A plain reading of the Rule suggests otherwise: a judgment that "is a lien" is called a judgment lien. Moreover, Idaho Code specifically prohibits nonconsensual common law liens. I.C. §§ 45-811(1) & (2). Thus, to the extent Defendants claim the fee award created a non-statutory lien simply because it falls within the definition of "lien," that argument plainly fails.

MEMORANDUM DECISION AND ORDER - 5

prevailing party "from the risk of a later uncollectible judgment and [2] compensate him for delay in the entry of the final judgment." *N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).

Although a full bond "should be the requirement in normal circumstances," *Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980), district courts nevertheless have "broad discretionary power to waive the bond requirement" as they see fit. *Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 796 (9th Cir. 1989), *vacated on other grounds*, 929 F.2d 1358 (9th Cir. 1990). Because bonds protect prevailing parties' interests, however, "the burden is on the moving party to demonstrate the reasons for 'departing from the usual requirement of a full security supersedeas bond.'" *Estate of Casillas v. City of Fresno*, 471 F.Supp.3d 1035, 1037 (E.D. Cal. 2020) (quoting *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979)).

## A.    Applicable Standard

Courts have used two different tests to analyze motions for unbonded stays of money judgments: the traditional four-factor *Hilton* test and the five-factor *Dillon* test. Some courts apply only one of the two tests. *See, e.g.*, *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, No. CV 07-06-M-DWM, 2013 WL 12134035, at *1

n.1 (D. Mont. May 13, 2013); *Balla v. Idaho State Board of Corrections*, No. 1:CV 81–1165–BLW, 2010 WL 3001442 (D. Idaho July 28, 2010). Others apply both tests in sequence. *See, e.g.*, *Cayuga Indian Nation of New York v. Pataki*, 188 F.Supp.2d 223, 255 (N.D.N.Y. 2002); *United States v. Moses*, No. 4:19-cv-00108-DCN, 2021 WL 1617376 (D. Idaho Apr. 23, 2021). Recognizing these competing approaches, the parties address both tests in their briefing. The Court takes this opportunity to clarify the proper approach.

The United States Supreme Court set forth the traditional standard governing motions to stay enforcement of federal court judgments in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *See also Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). Courts applying that test look to four equitable factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776. Balancing these factors, courts exercise discretion to decide whether a stay is appropriate. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

The *Dillon* test, in contrast, was first articulated by the Seventh Circuit in *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988), and has since been

adopted by many federal courts across the country. Courts applying the *Dillon* test

look to five factors:

> (1) the complexity of the collection process; (2) the amount of time
> required to obtain a judgment after it is affirmed on appeal; (3) the
> degree of confidence that the district court had in the availability of
> funds to pay the judgment; (4) whether the defendant's ability to pay
> the judgment is so plain that the costs of a bond would be a waste of
> money; and (5) whether the defendant is in such a precarious financial
> situation that the requirement to post a bond would place other
> creditors of the defendant in an insecure position.

*Id.* at 904–07.

The Ninth Circuit has not directly weighed in, but many federal courts apply

the *Dillon* test rather than the traditional *Hilton* test when deciding whether to

waive the bond requirement and stay a money judgment under Rule 62(b).[5] The

Court agrees with that approach.

While the *Hilton* and *Dillon* tests both help courts determine whether a stay

---

[5] *See, e.g.*, *Pacific Rim Land Dev.*, No. 19-cv-00016, 2020 WL 4361150, at *2 (D. N. Mariana Islands June 4, 2020) ("[T]he *Hilton* test, while applicable to appeals involving injunctive relief, does not apply to motions to stay money judgments."); *Compania de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua, S.A.B. de C.V.*, No. 1:15-CV-02120-JLK, 2019 WL 8223560, at *3 (D. Colo. May 21, 2019); *United States v. Birdsong*, CV 17-72-M-DWM, 2019 WL 1026277, at *2 (D. Mont. Mar. 4, 2019); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018); *Rajala v. Gardner*, No. 09-2482, 2014 WL 4455038, at *1 n.4 (D. Kan. Sept. 10, 2014); *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, No. CV 07-06-M-DWM, 2013 WL 12134035, at *1 n.1 (D. Mont. May 13, 2013); *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F.Supp.2d 999, 1028 (N.D. Cal. 2012); *Bolt v. Merrimack Pharm., Inc.*, No. S-04-0893 WBS DAD, 2005 WL 2298423, at *2 (E.D. Cal. Sept. 20, 2005); *Schreiber v. Kellogg*, 839 F. Supp. 1157, 1161 (E.D. Pa. 1993).

is appropriate, they derive from different provisions of the federal rules and therefore apply in different circumstances. The traditional *Hilton* test applies when a party seeks to stay an injunction pending appeal under Rule 62(d).[6] Accordingly, it balances the competing equities of pre- and post-appeal enforcement of injunctive relief. The *Dillon* test, in contrast, helps a court decide whether to waive the bond requirement and grant a stay under Rule 62(b). Accordingly, its factors focus on the purposes of requiring a bond in the first place. *In re Nassau Cty.*, 783 F.3d 414, 418 (2d Cir. 2015); *Moses*, 2021 WL 1617376, at *4.

In sum, when a party seeks to stay a money judgment without posting bond under Rule 62(b), the *Dillon* test provides the proper analytical framework. Here, Defendants ask the Court to stay enforcement of the attorneys' fee award—a money judgment—without requiring a bond. The Court will therefore apply the *Dillon* test.

## ANALYSIS

Defendants first argue that they are entitled to a mandatory stay under

---

[6] *See Compania de Inversiones Mercantiles*, 2019 WL 8223560, at *2 ("It is in the context of current Rule 62(d), not Rule 62(b), that courts typically apply the four-factor test traditionally used to evaluate injunctions."); *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, No. 86–5763, 1992 WL 114953, at *1 (E.D. Pa. May 18, 1992) ("[Nearly] every court that has applied the four-factor test in the Rule 62 context has done so upon a motion to stay an injunction . . . not a motion to stay a monetary judgment.").

Federal Rule of Civil Procedure 62(f) because the fee award created liens against state property under Idaho law. Alternatively, Defendants ask the Court to exercise its discretion under Federal Rule of Civil Procedure 62(b) to stay execution of the fee award (1) pending appeal, (2) until the date specified in the Amended Writ of Execution, or (3) until thirty days after issuance of a decision in the ongoing mediation.

For the reasons explained below, the Court finds that Defendants are not entitled to a mandatory stay because no judgment liens have arisen against them under Idaho law. The Court will, however, exercise its discretion and stay enforcement of the fee award until the conclusion of mediation.

1. **The Court is not required to stay enforcement of the fee award under Rule 62(f).**

Defendants' arguments for a mandatory stay rest on the premise that the abstract of judgment, writs of execution, and/or fee award automatically created liens against them under Idaho law. That premise does not hold up.

First, no judgment liens arose against Defendants' real property because Edmo did not record anything with any county recorder. *Pl.'s Resp.* at 7, Dkt. 341. Since it is the "act of recording a judgment" that creates a judgment lien against real property in Idaho, no lien exists. *Golub*, 157 Idaho at 901.

Second, Defendants have not pointed to any Idaho statute under which a

judgment lien was created against their personal property. They rely, instead, on Idaho's broad statutory definition of "lien," Idaho Code § 45-101, and on inapposite case law stating that purchasers of real property take subject to existing unrecorded liens of which they are aware. *See Kalange v. Rencher*, 136 Idaho 192, 196 (2001) (holding actual knowledge of an existing consensual lien eliminates recordation requirement). But there is no dispute that, under Idaho law, liens may arise in many ways against many forms of property. That does not, however, change the fact that judgment liens are creatures of statute and Defendants have not pointed to any statute arguably creating a lien in this case.

Finally, the fee award could not have created any broad non-statutory lien because Idaho law specifically prohibits any lien "not provided for by a specific state or federal statute." I.C. § 45-811.

In sum, Defendants have not established the prerequisites for a mandatory stay under Idaho Rule 62(e) and Federal Rule 62(f). Accordingly, whether a stay should issue is within the Court's discretion.

**2.      The Court will exercise its discretion under Rule 62(b) to stay enforcement of the fee award pending the outcome of mediation.**

**A.      Defendants have not shown why this Court should grant an unbonded stay pending appeal.**

Defendants first ask the Court to stay execution of the fee award until their

appeal concludes. But ultimately, the *Dillon* factors do not support granting such a lengthy unbonded stay.

### (1)   Complexity of Collection Process and Time to Obtain Judgment

Addressing the first two *Dillon* factors, Defendants assert that the collection process in this case is complex and time consuming due to the number and character of defendants subject to the fee award. *Def.'s Br.* at 11, Dkt. 338-2; *Def.'s Joinder* at 4, Dkt. 340. They believe this complexity supports granting an unbonded stay because, without one, it could be difficult to "unscramble the egg" if they succeeded on appeal. *Def.'s Resp.* at 11, Dkt. 338-2. Edmo rejects Defendants' characterization, stating that even if Defendants succeeded on appeal, "it would result in a simple accounting transaction" that they "should easily be able to grasp." *Pl.'s Resp.* at 11, Dkt. 341.

The Court agrees that collections in this case may be somewhat complex and time consuming. The number and character of defendants and size of the award are all contributing factors. [7] Indeed, Edmo's collection efforts have already prompted significant motion practice before this Court. Dkts. 326, 331, 332, 333 & 342.

---

[7] If anything, Edmo's allegations regarding Corizon's recent restructuring make it even more likely that post-appeal collections would be time consuming.

**MEMORANDUM DECISION AND ORDER - 12**

But the complexity of collections cuts both ways. Ordinarily, complexity weighs *against* waiving the bond requirement, because the more complex the collection process, the more difficult it will be for the prevailing party to enforce the judgment after defending the appeal. *See Moses*, 2021 WL 1617376, at *3 (finding complexity of collections weighed against granting an unbonded stay); *Twin Falls NSC, LLC v. Southern Idaho Ambulatory Surgery Center, LLC*, No: 1:19-cv-00009-DCN, 2020 WL 7265839, at *4 (D. Idaho Dec. 10, 2020) (same). That is true here. If Edmo cannot begin the time-consuming collection process until the appeal concludes, the already-lengthy delay in executing on the judgment would be substantially extended.

On the other hand, the complexity of collections can *support* a short unbonded stay where, for example, the appeal is likely to conclude while collections are ongoing—or to use Defendants' metaphor, while the egg is still on the griddle. In such cases, it may ultimately be less burdensome to delay collections for a short period until a final outcome is clear. But that rationale is inapplicable here. It is not clear how long Defendants' appeal will take, but civil

appeals to the Ninth Circuit often take a year or more.[8] And, as Edmo notes, it could take much longer if either party seeks further appellate review, including a motion for rehearing en banc before the Ninth Circuit, or a petition for certiorari before the U.S. Supreme Court.  Consequently, staying execution for a lengthy and indeterminate period in this case would not promote simplicity.

In sum, the relative complexity of collections in this case weighs against granting an unbonded stay pending appeal.

### (2)     Ability to Pay the Judgment

Next, Defendants address the third and fourth *Dillon* factors by providing a detailed report of IDOC Defendants' solvency. *Def.'s Joinder* at 4–7, Dkt. 340. Because all Defendants are jointly and severally liable for the fee award, they explain, "the State of Idaho is a backstop for the judgment" which eliminates all risk to Edmo of not collecting after the appeal. *Id.* Detailing the State's solvency accordingly to several metrics, Defendants argue that the main purpose of the bond requirement—to protect against uncollectable judgments—is served without a bond in this case.

---

[8] United States Court of Appeals for the Ninth Circuit, *Frequently Asked Questions*, https://www.ca9.uscourts.gov/general/faq/#:~:text=For%20a%20civil%20appeal%2C%20approx imately,months%20after%20briefing%20is%20complete (last visited Dec. 15, 2022).

Evidence of a government entity's solvency weighs in favor of granting an unbonded stay by minimizing the risk of an uncollectible judgment. *See Dixon v. City of Coeur d'Alene*, No. 2:10-cv-00078-LMB, 2011 WL 13137320, at *3 (D. Idaho Dec. 19, 2011). Put another way, proof of a defendant's solvency is sometimes itself sufficient, without a bond, to protect a prevailing part from the risk of a judgment becoming uncollectible. For example, this Court applied that rationale to grant an unbonded stay in *Dixon v. City of Coeur d'Alene*, where the City gave "adequate assurances" of its ability to pay the judgment after appeal. *Id.* In the same vein, federal courts across the country have granted unbonded stays to demonstrably solvent government entities.[9]

Here, Defendants have demonstrated that at least one defendant—the Idaho Department of Corrections—is and will almost certainly remain capable of paying

[9] *See Manriquez v. Vangilder*, 16-cv-01320-HSG, 2021 WL 1749915, at *2 (N.D. Cal. May 4, 2021); *Lewis v. County of San Diego*, 13-CV-02818-H-JMA, 2018 WL 1071704 (S.D. Cal. Feb. 27, 2018); *Grant v. Lockett*, No. 5:15-cv-0445 (DNH/TWD), 2019 WL 1872967, at *4-5 (N.D.N.Y. Apr. 26, 2019); *Ramirez v. Escondido Unified Sch. Dist.*, No. 11cv1823 DMS (BGS), 2014 WL 12675341, at *2 (S.D. Cal. Apr. 17, 2014); *Cayuga Indian Nation of New York*, 188 F.Supp.2d at 255; *Ortiz v. New York City Housing Authority*, 22 F.Supp.2d 15, 40 (E.D.N.Y. 1998); *River Oaks Marine, Inc. v. Town of Grand Island*, No. 89–CV–1016S, 1992 WL 406813 (W.D.N.Y. Dec. 10, 1992); *Olympia Equip. Leassing, Co. v. W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986).

the entire judgment.[10] *Def.'s Joinder* at 5–6, Dkt. 340. And it is undisputed that Edmo may collect the fee award from any named defendants regardless of any indemnity agreements that may exist between IDOC and Corizon. Moreover, unlike in the cases Edmo cites, Defendants have so far made no improper attempt to avoid payment of the judgment. They do not wish to pay and are appealing the award. That is their prerogative. But it does not itself suggest any disregard for the rule of law or authority of this Court. Accordingly, the Court finds that there is little risk that Edmo will be unable to enforce the judgment after appeal.

But does a defendant's ability to pay always justify granting an unbonded stay pending appeal? No. Why? Because protection against uncollectible judgments is not the only interest served by the bond requirement. *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F.Supp.2d 999, 1028 (N.D. Cal. 2012) ("Defendants' ability to pay the judgment is but one of many factors the Court is to consider in connection with a request to waive a supersedeas bond."). As already noted, bonds also "compensate [the prevailing party] for delay in the entry of the final judgment." *Westphal*, 859 F.2d at 819. In other words, a bond

---

[10] To demonstrate the State's solvency, Defendants point to a state constitutional requirement to keep a balanced budget, a "very healthy general fund," a AAA Issuer Default Rating from Fitch, and a AA+ rating from Standard and Poor. *Def.'s Joinder* at 5-6, Dkt. 340.

counterbalances the detriment a prevailing party suffers from delayed recovery by ensuring that, once the appeal has concluded, the prevailing party does not have to wage yet another battle to collect the judgment. Instead, the funds are there for the prevailing party's taking.

Here, Edmo prevailed on her motion for attorneys' fees on September 30, 2022 and has an interest in timely collection of the award.[11] Regardless of Defendants' solvency, an unbonded stay would deprive Edmo of that interest without any countervailing benefit and force her to refrain from initiating potentially time-consuming collection efforts until after she prevails on appeal. It therefore cannot be said that a bond would be a waste of money; rather, it would ensure that Edmo can promptly enforce the judgment after appeal without the burden of time-consuming collection efforts. Thus, although Defendants' ability to pay weighs in their favor, something more is necessary to justify a lengthy unbonded stay in this case.

In sum, taking all the *Dillon* factors into account, Defendants have not

---

[11] Defendants argue that Edmo has no interest in the fee award because she already received the benefits of pro bono representation. But a party's interest in attorneys' fees is not extinguished simply because she was represented pro bono. *Venegas v. Mitchell*, 495 U.S. 82, 87–88 (1990). Put another way, client-attorney fee arrangements do not abridge the enforceability of attorneys' fee awards.

persuaded the Court to depart from the ordinary practice of requiring a bond before granting a stay pending appeal.[12]

### B.   The Court will not stay enforcement of the fee award for a period of ninety days after receipt of the Amended Writ of Execution.

Defendants next ask the Court to stay enforcement of the fee award until "the date specified" in the November 23 Amended Writ of Execution—that is, until ninety days after Defendants' receipt of the writ. *Pl.'s Br.* at 14–15, Dkt. 338-2. Permitting execution before then, Defendants argue, would deny them the opportunity to use the property they "particularly wish to use to satisfy the judgment." *Id.*

Defendants misunderstand the interplay between the judgment and writ of execution. Their obligation to pay the fee award did not arise when the amended writ (Dkt. 336) was issued on November 23; it arose when the judgment (Dkt. 323) was issued on September 30. Thus, after the automatic 30-day stay lapsed, Defendants were obliged to pay the judgment regardless of whether a writ

---

[12] Even if the Court applied the *Hilton* test, the outcome would not change. Defendants are not likely to succeed on appeal by repeating arguments already carefully considered by this Court. Nor would they suffer irreparable harm without a stay: at worst, they would suffer the reparable harm of expending time and resources to recover any amount reversed on appeal. Nor does the public interest support a stay. Defendants do make a stronger balance-of-hardships argument: post-judgment interest reduces any harm of a stay to Edmo and, without a stay, the scheduled mediation would become meaningless. But that showing is not alone enough to justify granting a lengthy unbonded stay pending appeal.

subsequently issued.

Edmo's writs, in contrast, are simply attempts to enforce Defendants' pre-existing obligation to pay the judgment. Accordingly, the broad terms of one writ do not preclude her from seeking collection through, for example, a more detailed writ directing the U.S. Marshals to execute on particular accounts or assets. Moreover, the amended writ was specifically addressed to the U.S. Marshal and, as Defendants note, lacked sufficient detail to be executed. Dkt. 336.

The Court will not suspend Defendants' underlying obligation to pay based on one of Edmo's attempts to collect.

## C. The Court will, however, stay enforcement of the fee award pending the outcome of mediation.

Defendants alternatively request an unbonded stay pending the outcome of mediation. The *Dillon* factors apply differently to this request in three ways, and the Court finds that a temporary stay is appropriate.

First, the complexity of the collection process favors granting a stay pending the outcome of mediation. Given that mediation is set to occur in less than three weeks, collection efforts will likely still be ongoing at that time. Thus, if a settlement is reached while Edmo's collection efforts are under way, Defendants' concern with "unscrambling the egg" very well may materialize.

Second, Edmo's interest in timely collection of the judgment is minimally

impacted by a short stay pending mediation. Indeed, Edmo's discovery related to collections is ongoing and will likely continue beyond the scheduled mediation date. A short stay pending mediation will therefore not cause Edmo any significant hardship.

Finally, a temporary stay would promote settlement efforts. As noted, if collection occurs before the scheduled mediation, Defendants' incentive to settle will be substantially diminished. A short stay is therefore likely to promote the "just, speedy, and inexpensive" resolution of this appeal. Fed. R. Civ. P. 1.

The Court will therefore grant a stay of enforcement pending the outcome of mediation.

## ORDER

**IT IS ORDERED that:**

1.    Defendants' Motion to Stay (Dkt. 338) is **GRANTED in part and DENIED in part**. Accordingly:

    a.    Defendants' request for an unbonded stay pending appeal is **DENIED**.

    b.    Defendants' request for an unbonded stay pending the conclusion of mediation is **GRANTED**. The attorneys' fee award (Dkt. 323) and all proceedings to enforce it are

temporarily **STAYED** as to all Defendants.

    c.    This stay shall automatically terminate upon the conclusion of mediation with the Ninth Circuit Mediation Program. Within fourteen days after the stay lifts, Defendants shall pay the fees and costs awarded to Plaintiff by the Court's September 30, 2022 Order (Dkt. 323) or post a supersedeas bond to obtain a stay in accordance with Rule 62(b) of the Federal Rules of Civil procedure.

2.    IDOC Defendants' Motion for Protective Order (Dkt. 342) is **DENIED as MOOT**. The stay imposed by this Order extends to "all proceedings to enforce" the fee award, including Edmo's post-judgment discovery efforts, as to all defendants.

3.    Defendants' Joint Motion to Exceed Page Limit (Dkt. 343) is **GRANTED**.

DATED: December 28, 2022

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 21**