Lori Rifkin, Esq. (CA # 244081)
(*pro hac vice*)
Rifkin Law Office
3630 High Street #18917
Oakland, CA 94619
Telephone: (510) 414-4132
Email: lrifkin@rifkinlawoffice.com

Dan Stormer, Esq. (CA # 101967)
(*pro hac vice*)
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com

Craig Durham (ISB # 6428)
Deborah Ferguson (ISB # 5333)
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, ID 83702
Telephone: 208-345-5183
Facsimile: 208-908-8663
Emails: chd@fergusondurham.com
        daf@fergusondurham.com

Amy Whelan, Esq. (CA # 215675)
(*pro hac vice*)
National Center for Lesbian Rights
870 Market Street, Suite 370
San Francisco, CA 94102
Telephone: 415-365-1338
Facsimile: 415-392-8442
Email: AWhelan@NCLRights.org

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADREE EDMO (a/k/a MASON EDMO),<br><br>Plaintiff,<br><br>v.<br><br>IDAHO DEPARTMENT OF CORRECTION, ET AL.;<br><br>Defendants. | Case No.: 1:17-cv-00151-BLW<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR ATTORNEYS' FEES AND EXPENSES FOLLOWING REMAND** |

## INTRODUCTION

On April 5, 2024, the Ninth Circuit Court of Appeals remanded this case back to the District Court for further consideration of the attorneys' fees award to Plaintiff consistent with the findings on appeal. ECF 372 ("Remand Order"). The Court of Appeals held that "the PLRA had limited and modified the general rules derived from *Hensley* and normal civil rights practice, in cases brought by prisoners." *Id.* at 11. Therefore, the Court found that Plaintiff "is fully entitled to fees incurred litigating her successful Eighth Amendment claim," but, "is not entitled to fees incurred litigating the unsuccessful claims advanced in her complaint, even if those claims are premised on the same facts that support her Eighth Amendment claim." *Id.* The Order then directs this Court to "recalculate the lodestar to include only fees incurred litigating Edmo's successful claim against the defendants who remained in the case." *Id.* at 12.

That Court also "affirm[ed] the district court's determination that there should be an enhancement to Edmo's fee award," finding that the District Court "reasonably applied" and "properly considered" the applicable standards. *Id.* at 12-13. Because "a multiplier is normally selected **after** the lodestar amount is correctly determined," the Court directed the District Court to decide the "precise amount of the enhancement" after it recalculates the lodestar. *Id.* at 13.

Pursuant to the Remand Order and this Court's Order, ECF 377, Plaintiff submits this memorandum in support of her renewed motion for attorneys' fees and costs. Because this Court already completed its reasonableness analysis of the billing entries that were awarded in the lodestar for its Original Fee Order, the task on remand is to subtract from that lodestar time Plaintiff's counsel spent on work related only to her unsuccessful claims or individual Defendants

who were dismissed following her successful defense of the injunction. ECF 372 at 11-12.[1]

Both the Court of Appeals and this Court have recognized the difficulty of separating out time spent on successful versus unsuccessful claims when they are based on the same common core of facts. However, the procedural history of this case, and Plaintiff's attorneys' detailed time records, provides the Court with sufficient information to adjust the lodestar without resorting to the disfavored approach of making blanket reductions of all time based on crude ratios of successful-to-unsuccessful claims or defendants. *See, e.g., Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1243 n.3 (9th Cir. 2019) ("[T]he percentage-of-recovery method is not typically used in civil rights cases."); *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 485 (9th Cir. 1988) ("Courts may not adopt rigid mathematical formulas tying the lodestar figure to the ratio of defendants remaining at trial to defendants served in the complaint.").

As detailed below and in the accompanying Declaration of Lori Rifkin, Plaintiff's counsel examined the underlying time records for each phase of the case to isolate and then exclude hours spent on unsuccessful claims and/or defendants. *See* ECF 372 at 10 ("Under the PLRA, only fees incurred litigating successful claims are compensable, and time attorneys spend on unsuccessful claims must be excluded from the lodestar calculation."). After deducting that time, counsel also isolated time entries that captured work spent on both the successful Eighth Amendment claim and unsuccessful claims. For the latter category, counsel further reduced the lodestar based on reasonable estimations of the ratio of work on successful versus unsuccessful claims. The resulting, recalculated lodestar accords with both the Remand Order and established Ninth Circuit law

---

[1] Plaintiff's original billing records are attached as **Exhibit A** to the Rifkin Declaration. The grayed-out entries show the entries this Court excluded from the lodestar in its Original Fee Order. *Id.* at ¶ 3 and Ex. A. The purple entries are the ones Plaintiff's counsel already excluded or reduced from the petition as an exercise of billing judgment. *Id.* at ¶ 4. All other highlights (pink, orange, yellow, green, and blue) correlate to categories of work identified herein for exclusion or reduction as further detailed below and in the Rifkin Declaration.

rejecting crude mathematical approaches that incorrectly assume lawyers allocate equal hours to each claim. *See Webb v. Sloan,* 330 F.3d 1158, 1169 (9th Cir. 2003) (discussing isolation of hours spent on unsuccessful claim as preferred approach for fee exclusion); *McGinnis v. Ky. Fried Chicken*, 51 F.3d 805, 809 (9th Cir. 1994) (affirming approach where "district court made a finding and a deduction for the time actually spent on the unsuccessful claims, and did not abuse his discretion with regard to the amount of the reduction").

As the Court of Appeals affirmed on appeal, Plaintiff is also entitled to an enhancement to the lodestar amount based on findings previously made by this Court. Plaintiff requests that the Court apply the same enhancements to the newly-calculated lodestar, resulting in a revised award of attorneys' fees and expenses of $2,446,330.00.[2] Finally, Plaintiff has identified costs this Court should reduce in accordance with the Remand Order. ECF 372 at 14.

## RELEVANT PROCEDURAL HISTORY

Plaintiff incorporates the facts and procedural history in her original Memorandum in Support of her Motion for Reasonable Attorneys' Fees and Expenses, ECF 315-1 at 1-6, and does not repeat them here given the Court's familiarity with this long-running case. As shown in the detailed time records for this case, Plaintiff's counsel's time falls into the following major categories and time periods:

(1) Work completed between the Court's request for attorneys to represent Plaintiff and the filing of the Second Amended Complaint (approximately May 18, 2017 - September 1, 2017);

(2) Work completed in response to Defendants' motions for dispositive relief (approximately November 1, 2017 - April 4, 2018);

---

[2] This number does not include post-judgment interest at the applicable interest rate of 4.08% dating for the week ending September 23, 2022. *See* 28 U.S.C. § 1961. This number also does not include work on this case subsequent to the original motion for attorneys' fees and costs. Plaintiff's counsel expressly reserves the right to move for further reasonable attorneys' fees and costs that have been incurred since that time, including for work on the appeal and this renewed motion. *See Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995).

(3) Work completed in preparation for and filing of Plaintiff's motion for injunctive relief (approximately May 3, 2018 - October 2, 2018);

(4) Work completed as part of discovery and the evidentiary hearing on Plaintiff's motion for injunctive relief (approximately June 1, 2018 - October 12, 2018);

(5) Work completed as part of the post-hearing briefing in this Court on Plaintiff's motion for injunctive relief (approximately October 2, 2018 - November 9, 2018);

(6) Work related to defending and enforcing this Court's injunction, including on appeal and (approximately December 14, 2018 – October 13, 2020);

(7) Work after this Court issued its injunction relating to claims that were ultimately settled or dismissed (approximately December 31, 2018 - March 31, 2021).

As is apparent from these phases of litigation, counsel did not spend an equal amount of time on each claim or defendant in the case. As detailed below and in the concurrently-filed Rifkin Declaration, the majority of Plaintiff's attorneys' work in this case directly related to the expedited injunctive relief sought, obtained, defended, and enforced by Plaintiff for the violation of her Eighth Amendment right to medical treatment. *See* 42 U.S.C. § 1997e(d)(1). All the work during Phase 6, for example, was to enforce and defend on appeal Plaintiff's successful Eighth Amendment claim. Similarly, Phases 3 through 5 include the filing of Plaintiff's motion for injunctive relief and subsequent proceedings related to defending and enforcing that relief. Although two other claims were part of that injunctive relief motion, Plaintiff's counsel devoted most of their time and resources to developing and proving Defendants' violations of Plaintiff's Eighth Amendment right to necessary medical treatment for gender dysphoria—the central claim in the case and the claim for which Plaintiff "is fully entitled to fees." ECF 372 at 11; *see also* *McGinnis*, 51 F.3d at 808-09 ("We cannot imagine why a lawyer would allocate equal hours to each claim. . . .The district court made a finding and a deduction for the time actually spent on the unsuccessful claims, and did not abuse his discretion with regard to the amount of the reduction.").

## ANALYSIS

**I.    Lodestar Reductions Should be Made to the Actual Time Plaintiff's Counsel Spent on Unsuccessful Claims and Dismissed Parties or By Reasonable Approximations**

**Phase 1: Work completed between the Court's request for attorneys to represent Plaintiff and the filing of the Second Amended Complaint (approximately May 18, 2017 – September 1, 2017)**

Plaintiff filed this case *pro se* on April 6, 2017, and filed a first amended complaint ("FAC") on June 8, 2017. ECF 3 & 25. The FAC asserted two claims based on her right to medical treatment under the Eighth Amendment against IDOC, Corizon, the Idaho State Board of Corrections, and ten individual Defendants (unspecified as to individual or official capacity). ECF 25. Subsequently, the Court granted Plaintiff's request to appoint counsel. Plaintiff's counsel began representing Ms. Edmo in 2017 and filed a second amended complaint ("SAC") on September 1, 2017. ECF 36. The SAC asserted seven causes of action against Idaho Department of Correction ("IDOC"), Corizon, two individual defendants in their official capacities only, one individual defendant in his official and individual capacity, and five individual defendants. *Id*. In so doing, Plaintiff's counsel added six additional causes of action, but reduced the number of defendants. Plaintiff's counsel's time in this period consisted of reviews of the case documents, meeting and communicating with Ms. Edmo, assessing the facts of the case, and researching and drafting the Second Amended Complaint. Rifkin Decl. ¶ 9.

As this Court has recognized, the claims in the SAC were "essentially alternative legal theories seeking the same relief" that "involved the same 'common core of facts.'" ECF 323 at 11. Accordingly, most of Plaintiff's counsel's work in this Phase was undertaken for the purpose of understanding Ms. Edmo's history, medical needs, and related facts, and thus was necessary to prove her successful Eighth Amendment claim. Rifkin Decl. ¶ 9. However, in drafting the SAC, Plaintiff's counsel researched and drafted six claims for which she ultimately did not procure a

judgment. *Id.* ¶ 10. Based on this analysis, the Court should reduce Plaintiff's counsel's time for this Phase by: 1) subtracting individual time entries that on their face relate to claims other than the Eighth Amendment; and 2) subtracting 6/7 (86%) of the remaining time counsel spent researching and drafting the SAC. *Id.* ¶ 11. Although Plaintiff did not spend an equal amount of time on each of the 7 claims, this reduction is fair and reasonable for these particular entries given the difficulty of separating out that time. *See* ECF 372 at 12 fn. 2 (permitting a percentage reduction based on the district court's reasonable estimate of the time spent on unsuccessful claims or dismissed parties."). Because Plaintiff's counsel did not add any defendants against whom relief was not obtained, no reductions in time based on defendants should be made. Rifkin Decl. ¶ 10.

The time entries for Phase 1 are attached as **Exhibit B** to the Rifkin Declaration. The GRAY and PURPLE highlighted entries are those entries the Court already excluded as part of its Original Fee Order and that Plaintiff's counsel excluded as an exercise of billing judgment in the prior attorneys' fees motion. Plaintiff's proposed reductions are highlighted in PINK and result in an additional reduction of 21.79 hours from the lodestar. All remaining time entries reflect work that was reasonable and necessary to prove the Eighth Amendment violation. *Id.* ¶ 12.

### Phase 2: Work completed in response to Defendants' motion for dispositive relief (approximately November 1, 2017 – April 4, 2018)

Following filing of the SAC, Defendants moved for dispositive relief as to Plaintiff's Eighth Amendment claims, Affordable Care Act (ACA) claim, Americans with Disabilities Act (ADA) claim, and state law negligence claims. ECF 39-43 & 46. Plaintiff opposed Defendants' joint motion. ECF 44. While Plaintiff succeeded in keeping virtually all her claims in the case, what is now determinative is how much of Plaintiff's counsel's time opposing that motion can be attributed to her successful Eighth Amendment claim. Because the time records generally do not reflect the specific cause of action being researched or drafted (as is consistent with legal

timekeeping practices), the Court should look at the relative amount of briefing devoted to the successful claim as a proxy for estimating the amount of time counsel spent on each claim. In briefing the opposition to Defendants' dispositive motions, Plaintiff dedicated approximately half of the pages to arguments solely related to the ACA, ADA, and negligence claims. The portion of the opposition addressing the negligence claim was also the only part of the brief that related to dismissed Defendants. Therefore, the Court should reduce time for this Phase by 1) deducting all individual time entries that on their face relate to claims other than the Eighth Amendment; and then 2) subtracting 1/2 (50%) of the time counsel spent researching and drafting Plaintiff's opposition to the dispositive relief motion. Rifkin Decl. ¶¶ 14-15.

The time entries for Phase 2 are attached as **Exhibit C** to the Rifkin Declaration. The GRAY and PURPLE highlighted entries are those entries the Court already excluded as part of its Original Fee Order and that Plaintiff's counsel excluded as an exercise of billing judgment in the prior attorneys' fees motion. Plaintiff's proposed reductions for this phase are highlighted in ORANGE and result in an additional reduction of 50.1 hours from the lodestar. All remaining work was reasonable and necessary to prove the Eighth Amendment violation. Rifkin Decl. ¶ 16.

### Phase 3: Work completed in preparation for and filing Plaintiff's Motion for Injunctive Relief (approximately May 3, 2018 – October 2, 2018)

While Defendants' motion for dispositive relief was pending, Plaintiff's counsel prepared a motion for injunctive relief because of the urgency of Ms. Edmo's need for appropriate medical treatment. Plaintiff filed that motion on June 1, 2018, based on three claims: Eighth Amendment, Fourteenth Amendment (based on sex), and ACA (based on sex). ECF 62. As this Court has already found, all of Plaintiff's claims "made essentially the same point: Defendants were denying her necessary medical treatment by refusing to provide gender confirmation surgery." ECF 323 at 11. Plaintiff's main argument in seeking this relief was that Defendants were violating her right

under the Eighth Amendment to necessary medical treatment, and she asserted her claims of sex discrimination under the Fourteenth Amendment and the ACA as alternative legal theories for obtaining this relief. ECF 62. All the facts Plaintiff asserted in her memorandum in support of her motion for preliminary injunction, *id.*, and attested to in her supporting declaration, ECF 62-2, were related to and were the basis for her Eighth Amendment claim. The expert declarations Plaintiff submitted in support of her motion addressed whether gender confirmation surgery was necessary and appropriate treatment for Ms. Edmo under the accepted medical standard of care, directly supporting her Eighth Amendment claim. Rifkin Decl. ¶ 17. However, because Plaintiff included two alternative legal theories for injunctive relief, this Court must reduce her counsel's lodestar to account for any fees "specifically related to" these claims. *See* ECF 372 at 12.

Because the time entries do not generally delineate between these claims, the Court should again look to the underlying briefs and supporting documents to estimate the relative amount of time Plaintiff's counsel spent on her Eighth Amendment claim. Of the 20 pages in Plaintiff's memorandum in support of her motion for injunctive relief, approximately 2.5 pages (12.5%) related to the Fourteenth Amendment and ACA claims. Rifkin Decl. ¶ 18; ECF 62. Of the 15 pages in Plaintiff's reply brief, approximately 3.5 pages (23%) related to the Fourteenth Amendment and ACA claims. ECF 111.[3] Neither Plaintiff nor Defendants made any arguments in any of the briefing regarding specific defendants who did not remain in the case following injunctive relief. Therefore, the Court should reduce Plaintiff's counsel's time in this Phase by 1) deducting all individual time entries that on their face relate to claims other than the Eighth Amendment; and

---

[3] While not as relevant as Plaintiff's actual time in the case, Defendants' briefs similarly confirm that the Eighth Amendment claim was the primary one being litigated. The IDOC defendants spent roughly 3 of 20 (15 percent) pages on these claims. ECF 99. And the Corizon defendants included only two sentences in their entire 17-page brief related to these discrimination claims, one of which was to "reserve [them] for further briefing." ECF 100; Rifkin Decl. ¶ 18.

then 2) subtracting 12.5% of the time counsel spent researching and drafting Plaintiff's motion for injunctive relief and memorandum in support, and 23% of the time counsel spent researching and drafting Plaintiff's reply in support of injunctive relief. Rifkin Decl. ¶ 18-19.

The time entries for Phase 3 are attached as **Exhibit D** to the Rifkin Declaration. The GRAY and PURPLE highlighted entries are those entries the Court already excluded as part of its Original Fee Order and that Plaintiff's counsel excluded as an exercise of billing judgment in the prior attorneys' fees motion. Plaintiff's proposed reductions for this phase are highlighted in YELLOW and result in an additional reduction of 44.41 hours from the lodestar. All remaining time was reasonable and necessary to prove the Eighth Amendment violation. Rifkin Decl. ¶ 20.

### Phase 4: Work completed as part of discovery and the evidentiary hearing on Plaintiff's Motion for Injunction (approximately June 1, 2018 – October 12, 2018)

After Plaintiff filed her motion for injunctive relief, this Court scheduled an evidentiary hearing for mid-October 2018 and set discovery and briefing deadlines related to that hearing. ECF 73. In July, August, and September 2018, the parties engaged in discovery solely for the purpose of preparing for the evidentiary hearing, including exchange of written discovery, preparation of expert reports, and depositions of percipient and expert witnesses. After that abbreviated and intense period of discovery, the Court held a three-day evidentiary hearing in October 2018 that included live testimony and opening and closing arguments. To identify any reductions that should apply to this phase, Plaintiff's counsel reviewed the written discovery requests, information related to depositions, expert reports, exhibit lists, and transcripts from the evidentiary hearing. Rifkin Decl. ¶ 22. Plaintiff's counsel also reviewed the factual and evidentiary contentions Plaintiff made in her briefing in support of her need for medical treatment, including gender confirmation surgery, and the factual and evidentiary contentions Defendants made in their briefing as defenses to Ms. Edmo's asserted need for medical treatment including gender confirmation surgery. *Id.*

With respect to discovery, Plaintiff served three sets of requests for production of documents—one to Corizon and two to IDOC. All of those requests focused on (1) the policies, procedures, and practices of IDOC and its health care contractor related to provision of medical care, including treatment of gender dysphoria; (2) IDOC and its health care contractor's responses to Ms. Edmo's medical needs; and (3) the various reasons Defendants proffered to contend that gender confirmation surgery was not necessary or appropriate for Ms. Edmo. Rifkin Decl. ¶ 22 and Ex. I. Plaintiff also took 30(b)(6) depositions of IDOC and Corizon focused on these same topics. Rifkin Decl. ¶ 23. Plaintiff also took seven other depositions: two of Defendants' "retained experts" (Garvey and Andrade), who each opined that gender confirmation surgery was not appropriate or necessary for Ms. Edmo; two of IDOC's "non-retained experts" regarding provision of medical treatment to Ms. Edmo (Stewart and Clark); one of IDOC's "non-retained experts" regarding IDOC policies and procedures (Warden Yordy); one of Defendant Eliason, who was directly responsible for Ms. Edmo's treatment for gender dysphoria while she was incarcerated in IDOC; and one of the doctors contracted by IDOC to provide limited medical treatment to Ms. Edmo (Alviso). *Id.* and ECF 116-117 (Defendants' Witness Disclosures). Plaintiff's two retained experts offered opinions only as to the medical treatment appropriate and necessary to treat Ms. Edmo, and whether the treatment provided by Defendants met the standard of care. Rifkin Decl. ¶ 24; ECF 115 (Plaintiff's Final Witness List). Plaintiff did not devote any time during discovery pursuing evidence related to proving her Eighth Amendment claim as to any individual Defendants other than Defendant Eliason. Rifkin Decl. ¶ 23.

At the evidentiary hearing itself, Plaintiff offered three witnesses: Ms. Edmo and Plaintiff's two experts, who all testified on topics directly related to Ms. Edmo's Eighth Amendment claim and the defenses raised by IDOC and Corizon. *Id.* ¶ 25. Plaintiff's cross-examinations of

Defendants' witnesses similarly concerned central Eighth Amendment issues. *Id.* None of the dismissed Defendants were called as witnesses at the hearing, nor did Plaintiff present any evidence specifically related to any of the individual Defendants in the case other than Defendant Eliason, against whom the injunction was granted and affirmed. *Id.*

Based on all this information, there are no billing entries within this June-October 2018 phase that encompass time unrelated to affirmatively proving the violation of Ms. Edmo's Eighth Amendment right to medical treatment, including rebutting Defendants' defenses to that claim. *Id.* ¶ 26. Plaintiff's motion for injunctive relief primarily sought treatment for gender dysphoria, ECF 62 at 9. Plaintiff argued that Defendants were violating her right to necessary medical treatment under the Eighth Amendment by failing to provide her gender confirmation surgery and other medically necessary treatment that would allow her to live in accordance with her gender identity. Plaintiff also argued that Defendants' refusal to provide her with medically necessary care because she is transgender constituted discrimination on the basis of sex in violation of the Fourteenth Amendment and Affordable Care Act. Rifkin Decl. ¶ 26.

In response to Plaintiff's motion, Defendants contended primarily that they were not acting with deliberate indifference to Plaintiff's medical needs because gender confirmation surgery was not medically necessary or appropriate for Ms. Edmo. *Id.* ¶ 27. As Plaintiff summarized in her post-hearing brief, ECF 143 at 2-5, over the course of the injunctive relief briefing and evidentiary hearing, Defendants proffered a shifting spectrum of reasons why gender confirmation surgery was purportedly inappropriate for Ms. Edmo. Rifkin Decl. ¶ 27. Defendants lumped many of these together as "uncontrolled mental health concerns," including: Ms. Edmo's history of being a victim of prior sexual abuse, emotional abuse, and domestic violence; suicide attempts more than six years old; "maladaptive behaviors" such as "cutting, co-dependence, disobedient behaviors, and

sexually acting-out"; failure to complete mandated sex offender treatment programming; post-traumatic stress disorder (PTSD) and borderline personality disorder; and poor self-worth, poor self-esteem, dependency issues, sexually-charged behaviors, and unhealthy relationships. ECF 143 at 3. During the evidentiary hearing, an IDOC clinician whom Defendants called as a "non-retained expert" testified that gender confirmation surgery was not appropriate for Ms. Edmo because her mental health concerns were not well controlled as reflected by depression, anxiety, borderline personality traits, antisocial traits, disciplinary reports, self-harming behaviors, and failures to attend therapy groups consistently. *Id.* at 4. Defendants' expert Dr. Garvey also opined that Ms. Edmo did not have persistent well-documented gender dysphoria and had not presented in a gender role congruent with her gender identity for twelve months. *Id*. at 3. Plaintiff successfully opposed and rebutted each argument. Rifkin Decl. ¶ 27.

That Plaintiff's work in this Phase focused on her Eighth Amendment claim is also reflected in the Court's resulting order, which found Plaintiff had "not met her burden for a preliminary injunction on her Fourteenth Amendment and Affordable Care Act claims." ECF 149 at 44 ¶ 58; *see also id.* at ¶ 61 (finding "a more developed record on Defendants' treatment of transgender inmates is necessary before making a broader ruling based upon the Fourteenth Amendment or the Affordable Care Act."). Accordingly, the Court should not subtract time from this phase of litigation other than the time entries the Court already excluded as part of its original Fee Order. This accords with the Remand Order because, as described herein, these fees were reasonably and directly related to proving Plaintiff's successful Eighth Amendment claim against the Defendants who remained in the case, and, thus, counsel is "fully entitled" to the entirety of these fees. ECF 372 at 11; Rifkin Decl. ¶ 28. This result also accords with *Dannenberg v. Valdez*, 338 F.3d 1070, 1075 (9th Cir. 2003), because the record shows Plaintiff's counsel's work during

discovery and the evidentiary hearing was necessary to prove her Eighth Amendment claim. Rifkin Decl. ¶ 28. While counsel spent time briefing the additional two claims on which she based her motion for injunctive relief, reductions for that time are duly accounted for in Phases 3 and 5. *Id.*

The time entries for Phase 4 are attached as **Exhibit E** to the Rifkin Declaration. The GRAY and PURPLE highlighted entries are those entries the Court already excluded as part of its Original Fee Order and that Plaintiff's counsel already excluded as an exercise of billing judgment in the prior attorneys' fees motion. All other work was reasonable and necessary to prove the Eighth Amendment violation against Defendants who remained in the case. Rifkin Decl. ¶ 29.

## <u>Phase Five: Work completed as part of the post-hearing briefing on Plaintiff's motion for injunctive relief (approximately October 2, 2018 – November 9, 2018)</u>

After the evidentiary hearing concluded, Plaintiff filed a post-hearing brief and proposed findings of fact and conclusions of law. While much of this work centered on the evidence Plaintiff presented and refuted at the hearing related to her Eighth Amendment claim, Plaintiff's counsel also spent some time on the two additional legal claims at issue for injunctive relief: sex discrimination under the Fourteenth Amendment and the ACA. Plaintiff's counsel devoted approximately 6 of 51 pages (12%) of the briefing specifically to these two other legal claims. Rifkin Decl. ¶¶ 30-31; ECF 143-144.[4] Consistent with Phases Two and Three of the litigation, the Court should thus reduce Plaintiff's counsel's time for this Phase by 1) deducting all individual time entries that on their face relate to claims other than the Eighth Amendment; and 2) subtracting 12% of the time counsel spent preparing her post-trial briefs. Because none of the briefing addressed dismissed defendants, no reductions should be made on this basis. Rifkin Decl. ¶ 31.

---

[4] Defendants' briefs similarly show very little focus on the Equal Protection and ACA claims. The IDOC defendants never even mentioned either claim in its closing statement (ECF 145) and the Corizon defendants dedicated less than a page to these claims in its 15-page brief (ECF 148). Defendants' joint proposed findings of fact and conclusions of law similarly dedicate just over one (1) page of forty (40) pages to these claims. ECF 146 at 38-39; Rifkin Decl. ¶ 32.

The time entries for Phase 5 are attached as **Exhibit F** to the Rifkin Declaration. The GRAY and PURPLE highlighted entries are those entries the Court already excluded as part of its Original Fee Order and that Plaintiff's counsel already excluded as an exercise of billing judgment in the prior attorneys' fees motion. Plaintiff's proposed reductions for this phase are highlighted in GREEN and result in an additional reduction of 22.78 hours from the lodestar. All remaining work was reasonable and necessary to prove the Eighth Amendment violation. Rifkin Decl. ¶ 34.

### Phase Six: Work related to defending and enforcing this Court's injunction, including on appeal (approximately December 14, 2018 – October 13, 2020)

Following this Court's order finding that Defendants violated Plaintiff's Eighth Amendment right to medical care and enjoining Defendants to provide Plaintiff necessary medical treatment for gender dysphoria, Defendants filed a notice of appeal and motion to stay the injunction. ECF 323 at 3. The appellate process involved a host of additional briefing and procedures, including numerous additional motions by Defendants and the Ninth Circuit's remand to the District Court to consider limited issues. *Id.* Defendants also filed two additional appeals of the same injunctive relief. *Id.* After this Court's injunction was largely affirmed, Defendants sought rehearing en banc, and eventually, filed an application for stay, petition for certiorari, and suggestion of mootness in the U.S. Supreme Court. *Id.* Meanwhile, Defendants continued to resist providing Plaintiff with pre-surgical medical treatment necessary for gender confirmation surgery, and the parties continued to litigate those issues in the Ninth Circuit and District Court, until Ms. Edmo finally received the ordered surgery in July 2020. *Id.*

All of Plaintiff's counsel's work defending and enforcing this Court's injunctive relief order plainly related directly to Plaintiff's successful Eighth Amendment claim, which was the only claim on which the injunctive relief was based, and the only claim at issue in the appeals. Rifkin Decl. ¶ 36. Moreover, as reflected in Plaintiff's answering brief in the Ninth Circuit, none

of Plaintiff's counsel's time was directed at keeping individuals in the case against whom Plaintiff did not ultimately prevail. *Id.* Therefore, none of Plaintiff's counsel's time in Phase Six should be reduced based on the Remand Order. *Id.*

The time entries for Phase 6 are attached as **Exhibit G** to the Rifkin Declaration. The GRAY AND PURPLE highlighted entries are those entries the Court already excluded as part of its Original Fee Order and that Plaintiff's counsel already excluded as an exercise of billing judgment in the prior fee motion. All other time entries reflect work that was reasonable and necessary to defend and enforce the injunction against the Defendants who remained in the case. Rifkin Decl. ¶ 37. For the reasons above, the Court should not further reduce time in this Phase.

### Phase 7: Work post-injunction on claims ultimately settled or dismissed (and not part of the injunction motion) (approximately December 31, 2018 – March 31, 2021)

Although Plaintiff's case was stayed for several stretches of time while appellate proceedings were pending, Plaintiff's counsel did work in the District Court to advance Plaintiff's other remaining causes of action that were not the bases for her injunctive relief motion.[5] Rifkin Decl. ¶ 38. This work mainly included: filing a Third Amended Complaint; submitting joint discovery and litigation plans with Defendants; issuance of written discovery requests; taking one deposition; and limited discovery motion practice. *Id.* Pursuant to the Remand Order, the Court should subtract all of this time from the lodestar for the revised attorneys' fee award. *See* ECF 372 at 11-12. The Court already addressed some of this time (between November 2020 and March 2021) in its Original Fee Order when it "exclude[d] the fees incurred for litigating, mediating, and settling Ms. Edmo's four remaining claims after the injunction was obtained and defended." ECF 323 at 13. Plaintiff has identified additional entries outside that time period that should also now

---

[5] Plaintiff's litigation of her Fourteenth Amendment and ACA claims based on sex stopped after she was unsuccessful on those claims during the expedited injunctive relief proceedings.

be excluded as part of this category in accordance with the Remand Order. Rifkin Decl. ¶ 39.

The time entries for Phase 7 are attached as **Exhibit H** to the Rifkin Declaration. The GRAY and PURPLE highlighted entries are those entries the Court already excluded as part of its Original Fee Order and that Plaintiff's counsel already excluded as an exercise of billing judgment in the prior attorneys' fees motion. The additional time entries that we identified for exclusion or reduction are highlighted in BLUE and result in an additional reduction of 261.6 hours from the lodestar. All remaining time was reasonable and necessary to prove the Eighth Amendment violation against the Defendants who remained in the case. Rifkin Decl. ¶ 40.

### **TOTAL REVISED LODESTAR**

Broken down by Plaintiff's professionals, the revised lodestar hours are reflected in the following table. *Cf.* ECF 323 at 26 (Presumptive Lodestar Calculation in Original Fee Order).

| PROFESSIONAL | RATE | ORIG. FEE ORDER HOURS | REVISED HOURS | REVISED LODESTAR |
|---|---|---|---|---|
| Lori Rifkin | $232.50 | 2286.80 | 2115.98 | $491,965.35 |
| Dan Stormer | $232.50 | 30.20 | 27.04 | $6,286.80 |
| Shaleen Shanbhag | $232.50 | 1112.50 | 956.26 | $222,330.45 |
| Caitlan McLoon | $232.50 | 73.10 | 73.10 | $16,995.75 |
| Jordyn Bishop | $232.50 | 33.60 | 29.10 | $6,765.75 |
| Sairah Budwhani | $220.00 | 43.70 | 43.70 | $9,614.00 |
| Norma Molina | $210.00 | 62.40 | 60.80 | $12,768.00 |
| Jessica Valdenegro | $175.00 | 9.20 | 9.20 | $1,610.00 |
| Elizabeth Prelogar | $232.50 | 69.50 | 69.50 | $16,158.75 |
| Barrett J. Anderson | $232.50 | 247.60 | 247.60 | $57,567.00 |
| Jamie D. Robertson | $232.50 | 11.70 | 11.70 | $2,720.25 |
| Kathleen R. Hartnett | $232.50 | 40.90 | 40.90 | $9,509.25 |
| Deborah Ferguson | $232.50 | 170.80 | 169.18 | $39,334.82 |
| Craig Durham | $232.50 | 108.20 | 103.91 | $24,159.08 |
| Devi Rao | $232.50 | 16.20 | 16.20 | $3,766.50 |
| Cheryl L. Olson | $232.50 | 6.70 | 6.70 | $1,557.75 |
| Eliza McDuffie | $232.50 | 24.00 | 24.00 | $5,580.00 |
| Amy Whelan | $232.50 | 820.00 | 786.05 | $182,756.63 |
| Shannon Minter | $232.50 | 7.10 | 7.10 | $1,650.75 |
| Julie Wilensky | $232.50 | 120.60 | 119.86 | $27,867.45 |
| Alex Chen | $232.50 | 314.40 | 292.62 | $68,034.15 |
| Ary Smith | $220.00 | 39.10 | 37.12 | $8,166.40 |

| Maxie Bee | $175.00 | 43.20 | 43.20 | $7,560.00 |
|---|---|---|---|---|
| **TOTALS** | | 5691.50 | 5290.82 | $1,224,724.87 |

## II.    The Court Should Apply 2.0 and 1.7 Enhancements to the Lodestar for the Reasons Set Forth in the Original Fee Order and Affirmed in the Remand Order

The Court of Appeals "affirm[ed] the district court's determination that there should be an enhancement," and each of the four factors supporting the enhancement. ECF 372 at 12 ("Defendants do not contest that Edmo's counsel operated under extraordinary time pressure and that the customary rate for counsel's services is well above the PLRA cap. The district court reasonably applied these factors, which were supported in part by uncontested expert testimony"); *id.* ("The district court also reasonably found that Edmo's counsel achieved excellent results in what may properly be viewed as a landmark case"); *id.* at 13 ("The district court also properly considered awards in similar cases to determine whether an enhancement was justified."). This is the settled law of the case. *See, e.g., In re Williams Sports Rentals, Inc.*, 90 F.4th 1032, 1039 (9th Cir. 2024) ("The law-of-the-case doctrine precludes a court from reconsidering an issue previously decided by the same court, or a higher court in the identical case.") (internal quotations omitted).

Because "a multiplier is normally selected **after** the lodestar amount is correctly determined," however, the Court of Appeals directed the District Court to decide the "precise amount of the enhancement" after it recalculates the lodestar. *Id.* at 13. Because this Court's prior selection of 2.0 and 1.7 multipliers was based on the 2021 PLRA hourly rate that continues to apply to this motion, the relation of that rate to the relevant market attorney rates at that time, and other evidence before this Court during the original fees briefing, there is no basis for the Court to alter its multiplier selection. The Court selected those multiplier amounts to provide adequate compensation to Plaintiff's counsel in accordance with the local market. ECF 323 at 29 (awarding the multiplier to account for the "substantial disparity between the PLRA rate and customary

fees"); *id.* at 30 (noting that the PLRA rate "undervalues local counsel's time by between forty and fifty percent"); *id.* at 32 ("PLRA rate does not adequately measure counsel's true market value"); *id.* at 34 (applying the 1.7 and 2.0 multipliers to "more closely align the fee award with the market value of counsel's services."). This same analysis, and all of these rationales, continue to apply to the revised lodestar amount since the same PLRA rate applies to this case, albeit with interest in order to account for the delay in payment. *See* 28 U.S.C. § 1961; *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995) (post-judgment interest runs from the date entitlement to fees was established even if fees are ultimately reduced on appeal) (internal citations omitted).

Accordingly, applying the same enhancements the Court determined appropriate in its Original Fee Order, *cf.* ECF 323 at 37, the Court should award revised attorneys' fees as follows:

| PROFESSIONAL | RATE | REVISED HOURS | MULTIPLIER | TOTAL |
|---|---|---|---|---|
| Lori Rifkin | $232.50 | 2115.98 | 2 | $983,930.70 |
| Dan Stormer | $232.50 | 27.04 | 2 | $12,573.60 |
| Shaleen Shanbhag | $232.50 | 956.26 | 2 | $444,660.90 |
| Caitlan McLoon | $232.50 | 73.10 | 2 | $33,991.50 |
| Jordyn Bishop | $232.50 | 29.10 | 2 | $13,531.50 |
| Sairah Budwhani | $220.00 | 43.70 | - | $9,614.00 |
| Norma Molina | $210.00 | 60.80 | - | $12,768.00 |
| Jessica Valdenegro | $175.00 | 9.20 | - | $1,610.00 |
| Elizabeth Prelogar | $232.50 | 69.50 | 2 | $32,317.50 |
| Barrett J. Anderson | $232.50 | 247.60 | 2 | $115,134.00 |
| Jamie D. Robertson | $232.50 | 11.70 | 2 | $5,440.50 |
| Kathleen R. Hartnett | $232.50 | 40.90 | 2 | $19,018.50 |
| Deborah Ferguson | $232.50 | 169.18 | 2 | $78,669.63 |
| Craig Durham | $232.50 | 103.91 | 1.7 | $41,070.43 |
| Devi Rao | $232.50 | 16.20 | 2 | $7,533.00 |
| Cheryl L. Olson | $232.50 | 6.70 | - | $1,557.75 |
| Eliza McDuffie | $232.50 | 24.00 | 2 | $11,160.00 |
| Amy Whelan | $232.50 | 786.05 | 2 | $365,513.25 |
| Shannon Minter | $232.50 | 7.10 | 2 | $3,301.50 |
| Julie Wilensky | $232.50 | 119.86 | 2 | $55,734.90 |
| Alex Chen | $232.50 | 292.62 | 2 | $136,068.30 |
| Ary Smith | $220.00 | 37.12 | - | $8,166.40 |

| | | | | |
|---|---|---|---|---|
| Maxie Bee | $175.00 | 43.20 | - | $7,560.00 |
| **TOTALS** | | 5290.82 | | $2,400,925.86 |

### III.   The Court Should Make Minimal Reductions to the Costs Awarded in the Original Fee Order Because its Cost Analysis is Generally Unaffected by the Remand Order

This Court awarded Plaintiff $45,544.20 in litigation expenses. ECF 323 at 34-8. The Court determined this number after reviewing Plaintiff's submissions regarding expenses, and Defendants' objections thereto, and then reducing expenses by $27,541.19.[6] *Id.* Neither party challenged this Court's award of expenses on appeal. Therefore, the litigation costs awarded should be reduced only if there were expenses incurred and awarded that were not "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" against a Defendant who remained in the case. ECF 372 at 14; 42 U.S.C. § 1997e(d)(1). Plaintiff's counsel's expenses generally fall into the following categories: court pro hac vice and admission fees; costs for communications between counsel and Ms. Edmo (i.e. phone and mailing); costs for meetings with Ms. Edmo; costs for attending court hearings; costs associated with discovery and experts; and legal research costs. Besides the discovery completed for the evidentiary hearing, only one deposition (Cassandra Jones, Idaho State Criminal Justice Services Manager) was taken as part of discovery on the remaining claims. Pursuant to the Remand Order, these costs should be excluded. This Court already excluded the travel costs as part of its Original Fee Order, ECF 323 at 35, and denied the deposition and transcript costs as part of its denial of requests contained in the Bill of Costs. *Id.* at 36. Thus, all such costs were already removed. The only other costs Plaintiff's counsel could have incurred that related only to unsuccessful claims or dismissed Defendants are legal research costs in which Plaintiff's counsel researched issues related only to these claims or Defendants. This is because there were no court hearings to which Plaintiff's counsel traveled that

---

[6] This number excludes the $18,793.34 amount in the Bill of Costs filed by Plaintiff, which the Court denied in whole based on its analysis under Local Rule 54.1(a)(1). ECF 323 at 36-7.

were related only to Plaintiff's unsuccessful claims or to dismissed Defendants. Rifkin Decl. ¶ 42. Similarly, and without waiving attorney-client privilege, the communications between Plaintiff and her counsel were to receive and share substantive updates with Ms. Edmo that might affect her case and to generally keep her apprised of the litigation. *Id.* Finally, both parties' experts' opinions related only to the medical necessity and appropriateness of gender confirmation surgery for Ms. Edmo, which was at the core of the Eighth Amendment issues and, except as noted above, Plaintiff did not incur discovery costs unrelated to proving the Eighth Amendment violation. *Id.*

Given that this Court already reduced Plaintiff's expenses by approximately 38% ($27,541.19 of $73,085.39), and that all of Plaintiff's counsel's legal research expenses were incurred in months in which Plaintiff's counsel was also completing legal research for her successful Eighth Amendment claim (which, given the amount of briefing in the District Court, Court of Appeals, and U.S. Supreme Court, accounted for the vast majority of the legal research needed), the Court should remove, at most, an additional 10% of the legal research costs. *Id.* ¶ 43. These costs are listed in Exhibit D to the Declaration of Dan Stormer in Support of Plaintiff's Motion for Attorneys' Fees and Costs, ECF 315-4 at 75, and total $1,400.61. Accordingly, the Court should reduce her $45,544.20 expense award by no more than $140.06.

## CONCLUSION

This Court should reduce Plaintiff's lodestar by 400.68 hours, should award the same multipliers it did in the Original Fee award, and should reduce the costs by no more than $140.06. With these modifications, the Court should award $2,446,330.00 for attorneys' fees and expenses, with post-judgment interest running from September 30, 2022 (the date of the Original Fee Order). *See* 28 U.S.C. § 1961; *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995).

Dated: June 7, 2024                        Respectfully Submitted,
                                           FERGUSON DURHAM

HADSELL STORMER RENICK & DAI LLP
NATIONAL CENTER FOR LESBIAN RIGHTS
RIFKIN LAW OFFICE

By:   /s/ *Lori Rifkin*
       Lori Rifkin
Attorneys for Plaintiff