UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ADREE EDMO (a/k/a MASON EDMO), | Case No. 1:17-cv-00151-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| IDAHO DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

## INTRODUCTION

Before the Court are Plaintiff's Renewed Motion for Attorneys' Fees and Expenses (Dkt. 378) and Plaintiff's Motion Regarding Motion for Attorneys' Fees and Costs Since September 30, 2022 (Dkt. 383). The Court held a hearing on August 1, 2024, and now issues its opinion. For the reasons described below, the Court will award Plaintiff $2,438,906.73 in attorneys' fees and $45,404.14 in litigation expenses. The Court will also grant the Motion Regarding Motion for Attorneys' Fees and Costs.

## BACKGROUND

### 1. Edmo's Lawsuit

The underlying facts are familiar to the parties and will be repeated only briefly. Adree Edmo successfully filed suit to compel Defendants to provide her with medical treatment in the form of gender confirmation surgery while she was incarcerated at the Idaho Department of Corrections (IDOC). She initially filed pro se, in April 2017, and the Court appointed counsel to represent her. Counsel filed an amended complaint in September 2017, which asserted a total of seven claims against eleven defendants.[1] Dkt. 36. In June 2018, Edmo sought a preliminary injunction to require Defendants to immediately provide the treatment. Dkt. 62. To justify the injunction, she proffered three distinct legal theories: (1) the Cruel and Unusual Punishments Clause of the Eighth Amendment; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) the Affordable Care Act.

The Court held a three-day evidentiary hearing in October 2018 and granted the injunction on Eighth Amendment grounds—the theory that had been the focus of the briefing and argument. A complicated series of appeals and remands

---

[1] The claims were (1) failure to provide medical treatment under the Eighth Amendment; (2) sex discrimination in violation of the Equal Protection Clause; (3) discrimination based on diagnosis in violation of the Equal Protection Clause; (4) disability discrimination in violation of the Americans with Disabilities Act and Rehabilitation Act; (5) sex discrimination in violation of the Affordable Care Act; (6) failure to protect from harm under the Eighth Amendment; and (7) professional negligence. Defendants were the IDOC, the health care contractor Corizon, Inc., three IDOC officials, and six prison employees involved in Edmo's care.

followed, and the Ninth Circuit ultimately affirmed the injunction except as it applied to five defendants in their individual capacities. *See* Dkt. 323 at 3. Defendants then sought certiorari, but the Supreme Court declined to stay the injunction while considering their petition. Dkt. 279. In July 2020, Edmo received the surgery. The Supreme Court subsequently denied certiorari, and the parties eventually settled or dismissed Edmo's remaining claims.

### 2. First Motion for Attorneys' Fees

Edmo then filed for attorneys' fees of $2,729,846. Dkt. 315. This reflected 5,897.80 hours of work and a baseline rate of $232.50 pursuant to the Prison Litigation Reform Act (PLRA), yielding a lodestar amount of $1,364,923. To this, she argued that the Court should apply a multiplier of 2.0 based on the exceptional nature of the case. She also sought expenses of $91,878.73.

The Court awarded $2,586,048.80 in attorneys' fees and $45,544.20 in expenses. Dkt. 323. At the outset, the Court rejected Defendants' argument that the lodestar amount should be reduced by six-sevenths, in proportion to the number of unsuccessful claims—an approach that belies common sense about the nature of legal work. Rather, the Court concluded that the causes of action were sufficiently intertwined that fees attributable to both successful and unsuccessful claims were recoverable. The Court did, however, exclude fees incurred after the injunction was finalized, representing approximately 154 hours from November 2020 to

March 2021. The Court also deducted hours based on excessive billing, duplicative billing, vague descriptions, incidental travel, and improperly billed clerical tasks. This resulted in a total of 5,691.5 billable hours and a lodestar calculation of $1,317,821.75.

Next, the Court determined that the lodestar amount was unreasonably low based on *Kerr* factors including the customary fee, time limitations of the case, the results obtained, and similar awards. In light of the challenges of the litigation, the low PLRA rate cap, and counsel's excellent results, the Court awarded a multiplier of 1.7 for Craig Durham and 2.0 for other attorneys. The brought total attorneys' fees to $2,586,048.80.

As far as expenses, the Court excluded travel expenses that lacked sufficient detail and routine expenses like software and office supplies. The Court additionally determined that Edmo could not recover costs because counsel failed to meet and confer as required by Local Rule 54.1(a)(1). This brought Edmo's recoverable expenses to $45,544.20.

### 3. Appeal and Remand

Defendants appealed the award, arguing that the Court failed to adjust the lodestar amount based on Edmo's degree of success as required by the PLRA and that the enhancement was improper.

In June 2024, the Ninth Circuit issued a decision that affirmed in part and

reversed in part this Court's ruling. *Remand Order*, Dkt. 372. Reviewing the award for abuse of discretion, the Ninth Circuit determined that Edmo could not recover fees incurred litigating unsuccessful causes of action, even if they involved the same core facts as the successful claim. *Id.* at 10-11. On the multiplier, the Ninth Circuit affirmed the decision to apply an enhancement but held that the multiplier amount should be reassessed based on the new lodestar.

The Ninth Circuit remanded the case back to this Court to recalculate the award. After attempting to identify and exclude hours billed for work on unsuccessful claims, Edmo filed her Renewed Motion for Attorneys' Fees. Dkt. 378. This time, Edmo seeks fees for 5,290.82 hours of work, resulting in a lodestar figure of $1,224,724.97. Edmo contends that the same multipliers of 1.7 and 2.0 should apply, yielding a total award of $2,400,925.86. Regarding litigation expenses, she argues that the Court's previous award of $45,544.20 should be reduced by no more than $140.06.

After the Ninth Circuit's judgement, Edmo also filed a motion to transfer consideration of attorneys' fees on appeal to the district court, which the appellate court granted. App. Ct. Dkt. 83, 84. Edmo then moved this Court for an order that any supplemental motion for attorneys' fees and costs, based on work performed since the original fee order, would not be due until after a ruling on the renewed motion. Dkt. 383. Though Defendants did not oppose the motion to transfer, they

now argue that Edmo has waived the right to seek those fees and costs.

## LEGAL STANDARD

In civil rights actions brought under 42 U.S.C. § 1983, Congress has authorized an award of reasonable attorneys' fees to prevailing parties. 24 U.S.C. § 1988. The purpose of this law—which overrides the default that each party to a lawsuit bears its own fees—is to ensure that plaintiffs have "effective access to the judicial process." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). If successful plaintiffs always had to bear their own legal fees, "few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." *Jankey v. Poop Deck*, 537 F.3d 1122, 1131 (9th Cir. 2008). Normally, a prevailing plaintiff can recover for both successful and unsuccessful claims, provided that the failed claims were related to the ones that succeeded. *Hensley*, 461 U.S. at 434-35.

The PLRA, however, imposes further limitations on attorneys' fees in civil rights actions by prisoners. The statute provides that any awarded fees must be (1) "directly and reasonably incurred in proving an actual violation of the plaintiff's rights," and (2) either "proportionately related to the court ordered relief for the violation" or "directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1). The Ninth Circuit has now clarified that this requires the exclusion of time spent on unsuccessful claims even if they "share

a 'common core of facts' with a successful claim." *Edmo v. Corizon*, 97 F.4th 1165, 1169-70 (9th Cir. 2024). Likewise, a plaintiff cannot recover for time spent litigating against defendants who were ultimately dismissed from the action. *Id.*

This restriction adds an additional stage to the typical two-step "lodestar method" used by courts in the Ninth Circuit to calculate reasonable fee awards. For cases implicating the PLRA, the court must first determine how much of attorneys' time was spent on successful claims against defendants who remained in the case. *See id.* Second, the court proceeds into the usual lodestar calculation: it considers whether the hourly rate and hours expended on these claims were reasonable and multiplies the two to determine the presumptively reasonable "lodestar figure." *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Third, the court decides whether to adjust the lodestar based on the remaining *Kerr* factors, such as the customary fee, time limitations, results obtained, and the "undesirability" of the case. These factors reflect characteristics of the litigation that are otherwise unaccounted for but could indicate that the lodestar is unreasonably low. *Id.* at 363-64, nn.8-9.

## ANALYSIS

### 1. Renewed Motion for Attorneys' Fees

#### A. Methodology for Calculating Fees

The Ninth Circuit's remand order raises the question of how to determine

which fees were "directly and reasonably incurred" because of Edmo's successful Eighth Amendment claim. Edmo's counsel have gone to great lengths to isolate unrelated time entries or otherwise estimate an appropriate reduction based on the record of the case. Defendants reassert their previous argument that the award should be reduced by a flat 86% (or more) to reflect Edmo's success on one of seven claims against five of eleven defendants.

The Court again rejects Defendants' argument that Edmo's award must be reduced in mathematic proportion to her number of unsuccessful claims. *See* Dkt. 323 at 10. In ruling on Defendants' appeal, the Ninth Circuit did not reverse this Court's determination that a blunt proportionality approach is inappropriate. Rather, the court required that any percentage reduction be "based on the district court's *reasonable estimate* of the time spent on unsuccessful claims or dismissed parties." *Remand Order* at 12 n.2, Dkt. 372 (emphasis added). Every lawyer knows that not all claims—nor all defendants—require the same amount of time. *See McGinnis v. Ky. Fried Chicken*, 51 F.3d 805, 808 (9th Cir. 1994) ("We cannot imagine why a layer would allocate equal hours to each claim."). The 86% reduction sought by Defendants would fly in the face of the Ninth Circuit's holding that "Edmo is fully entitled to fees incurred litigating her successful Eighth Amendment claim." *Remand Order* at 11, Dkt. 372.

The Court also notes that Defendants' characterization of Edmo's "degree of

defeat" is a plain attempt to rewrite history. *See Defs.' Resp to Mot. for Attys' Fees* at 1, Dkt. 380. Defendants state that "six defendants *prevailed* against Plaintiff in every respect, and the remaining five defendants *prevailed* against Plaintiff on 86% of the claims alleged." *Id.* But the reality is that Edmo obtained the primary relief she sought—gender confirmation surgery—which Defendants' fought tooth-and-nail to deny her. As the Ninth Circuit observed:

> The district court . . . reasonably found that Edmo's counsel achieved excellent results in what may properly be viewed as a landmark case. Edmo was the first person to obtain a court order compelling a prison to provide gender-confirmation surgery. Edmo's counsel successfully defended this ruling through several appeals. Defendants attempt to downplay this success and incorrectly assert that the district court's order compelling this relief (along with our published opinion affirming) "did not create binding precedent."

*Remand Order* at 12-13, Dkt. 372.

Yes, Edmo initially brought eight claims. But only three of those pertained to the injunction, which represented the overwhelming majority of counsel's time. And work on the injunction overwhelmingly focused on the ultimately successful Eighth Amendment theory. Under these circumstances, a seven-eighths reduction would fall absurdly short of reflecting the attorneys' work on the successful claim. Although Congress implemented the PLRA to address excessive—and often baseless—lawsuits by prisoners, the statute did not seek to make such litigation financially untenable for attorneys. *See* H.R. Rep. No. 104-21, at 28 (1995).

Following the remand order, the correct approach to the lodestar calculation

is to include only time that counsel would have expended had Edmo brought only the Eighth Amendment claim against the five undismissed defendants. For instance, consider factual research into Edmo's gender dysphoria, which pertained to all claims against all defendants. If counsel would have conducted the same research had they only filed the single Eighth Amendment claim, the fee award should represent all the time expended; to hold otherwise would penalize diligent representation. Conversely, work pertaining only to other legal issues must be excluded even though it stemmed from that common core of facts. The burden is on Edmo to document hours spent on the successful claim and to provide supporting evidence. Defendants then bear the burden of rebutting the accuracy or reasonableness of those charges. *See Lozeau v. Lake County*, 98 F. Supp. 2d 1157, 1169 (D. Mont. 2000).

Defendants suggest that this approach is unworkable in practice. It does take additional effort, and the Court hopes that civil rights litigators working with prisoners will adjust their timekeeping practices accordingly. But it is hardly impossible. Indeed, the Supreme Court has imposed an analogous framework for fee awards involving frivolous § 1983 claims.[2] *See Fox v. Vice*, 563 U.S. 826, 836

---

[2] Normally, attorneys' fees are only available to prevailing plaintiffs, a one-way fee shifting designed to incentivize civil rights litigation. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968). Defendants, however, can recover fees incurred defending frivolous or unreasonable § 1983 claims. *Fox*, 563 U.S. at 833.

(2011). When a plaintiff brings related frivolous and non-frivolous claims, the prevailing defendant may "recover reasonable attorney's fees incurred because of, but only because of, a frivolous claim." *Id.* For example, work on a deposition relevant to both frivolous and non-frivolous claims would not be recoverable if the same deposition would have been taken had the plaintiff brought only the non-frivolous allegation. *Id.* "[I]f the defendant would have incurred those fees anyway, to defend against *non*-frivolous claims, then a court has no basis for transferring the expense to the plaintiff." *Id.*

For Edmo's case, the challenge is rather to exclude fees incurred because of, and only because of, the unsuccessful claims, but a similar logic applies. If this approach is workable for frivolous § 1983 actions, surely it can be implemented in the PLRA context.

### B. Hours Attributable to Eighth Amendment Claim

Having established that Edmo can recover reasonable fees incurred because of her Eighth Amendment claim, the first task is to identify which time entries can be reasonably attributed to that claim. To facilitate this process, Edmo has identified seven distinct (though sometimes overlapping) phases of the litigation and proposed slightly different methodologies for identifying compensable time in each. Where possible, Edmo traces time entries to specific claims and subtracts accordingly. For time spent researching and writing briefs—where records do not

reflect the specific cause of action—Edmo generally relies on the relative amount of briefing as a proxy for time spent on each claim. As discussed in more detail below, the Court finds that this approach is broadly sound.

### i.    Filing of Second Amended Complaint

The first phase ran from counsel's appointment to the filing of the second amended complaint, approximately May 18, 2017 to September 1, 2017. This work included reviewing case documents, meeting and communicating with Edmo, and drafting the second amended complaint.

For this phase, counsel first subtracts time entries that, on their face, relate to claims other than the Eighth Amendment. For the remaining time spent researching and drafting the complaint, Edmo proposes a proportionate six-sevenths reduction (86%) to reflect the number of successful claims. Most other time entries reflect things like travel, introductory meetings, and the review of prison and medical records. This work, she argues, would have been necessary even if she had brought only the one successful claim, so further subtractions are unwarranted. Additionally, because counsel did not add any of the defendants ultimately dismissed from the case, there is no need to adjust on that basis.

The Court finds that Edmo's approach identifies time spent on the successful claim with reasonable accuracy. As explained above, the key problem is to remove hours that would not have been expended but for the unsuccessful claims. In some

cases, it will be impossible to disentangle individual time entries, but the Court has discretion to apply a percentage reduction based on a "reasonable estimate of the time spent on unsuccessful claims or dismissed parties." *Remand Order* at 12 n.2, Dkt. 372. That method is appropriate here.

In addition to Plaintiff's proposed reductions, several additional time entries relate on their face to the preparation of the second amended complaint—either drafting the complaint or reviewing it with Edmo—and should be reduced proportionately.[3] *See Ex. B*, Dkt. 379-2. This results in an additional subtraction of 3.27 hours. While the 86% reduction to the consultations with Edmo likely excludes some time properly spent on the Eighth Amendment claim, the perfect should not be the enemy of the good. The Ninth Circuit's decision implicitly recognizes that slight under-compensation in some places will balance out with slight over-compensation in others.

This results in the reduction of 25.06 hours for Phase 1.

### ii.    Defendants' Motion for Dispositive Relief

The second phase consists of Edmo's work responding to Defendants'

---

[3] These are (1) "Reviewing draft amended complaint and emailing comments to co-counsel" [Craig Durham – 8/28/17, 0.50 hours]; (2) "Consultation with Adree Edmo at the Idaho State Correction Institution re: second amended complaint and other litigation matters" [Deborah Ferguson – 8/30/17, 1.30 hours]; (3) "Reviewing draft second amended complaint and email from LR and making notes on the same" [Craig Durham – 8/30/17, 0.70 hours]; and (4) "Consultation with Adree Edmo at the Idaho State Correction Institution re: second amended complaint and other litigation matters" [Craig Durham – 8/30/17, 1.30 hours].

motion for dispositive relief—roughly November 1, 2017 to April 4, 2018.

For time spent researching and drafting the response, counsel estimates the hours dedicated to the Eighth Amendment claim based on the relative length of their briefing. Approximately half of the response addressed the other claims, so Edmo proposes a reduction of 50% for those entries. Other time entries that relate on their face to unsuccessful claims are excluded entirely. The remaining entries reflect work that would have been necessary had Edmo only brought the Eighth Amendment claim—for instance, opposing a motion for extension of time to intervene—so she does not make any further reductions.

The Court finds that the relative length of briefing provides a reasonable estimate of the time spent on unsuccessful claims or dismissed parties. As Defendants point out, other courts have held that "the length of briefing is not in itself indicative of a reasonable expenditure of time." *Marrocco v. Hill*, 291 F.R.D. 586, 588 (D. Nev. 2013); *see Coates v. Colvin*, No. 12-cv-13900, 2014 WL 1389328, at *4 (E.D. Mich. Apr. 9, 2014). But Edmo does not argue that the length of her brief makes counsel's time *reasonable*. Rather, she proposes that the proportion of space dedicated to the Eighth Amendment reflects approximately the amount of time counsel dedicated to that claim compared to the other issues. The Court agrees with this exercise in common sense.

This results in the reduction of 50.10 hours for Phase 2.

**MEMORANDUM DECISION AND ORDER - 14**

### iii.    Plaintiff's Motion for Injunctive Relief

The third phase focused on the preparation and filing of a motion for injunctive relief, from May 3, 2018 to October 2, 2018. That motion was based on only three of the seven original causes of action: the Eighth Amendment, the Fourteenth Amendment, and the ACA.

Again, Edmo looks to the relative amount of briefing to determine appropriate reductions. Of the 20-page memorandum, approximately 2.5 pages concerned the Fourteenth Amendment and ACA, so Edmo proposes a 12.5% reduction in time spent researching and drafting the motion. For the reply brief, approximately 23% related to the Fourteenth Amendment and ACA, and Edmo proposes a corresponding reduction. As before, she also subtracts entries that relate on their face to unsuccessful claims but leaves fees that would have been incurred had only the Eighth Amendment claim been litigated, such as work on expert declarations.[4]

Beyond challenging the underlying methodology—an argument addressed above—Defendants object that there should be further reductions to account for the Procedural Status and Statement of Facts sections "that invariably have some

---

[4] Because the declarations addressed the standard of care and Edmo's experience with gender dysphoria, they relate directly to the Eighth Amendment claim. Again, counsel would have done the same work to litigate only the Eighth Amendment claim, so it would be patently unfair to reduce fees because that time also happened to support unsuccessful claims.

connection to the failed claims." *Defs.' Resp. to Mot. for Attys' Fees* at 7, Dkt. 380. This is unwarranted. The one-page Procedural Status section merely mentions that Edmo was permitted "to move forward on many of her claims." Dkt. 62 at 1-2. This cursory note does not reflect any meaningful amount of time dedicated to unsuccessful claims. And the Statement of Facts contains no information unrelated to Edmo's Eighth Amendment claim; the exact same description would be appropriate in a motion based exclusively on the Eighth Amendment. Thus, a further reduction would be unjust.

This results in the reduction of 44.41 hours for Phase 3.

### iv.    Evidentiary Hearing

The fourth phase consisted of a three-day evidentiary hearing and associated discovery, from approximately June 1, 2018 to October 12, 2018 (a period that overlaps with both Phase 3 and Phase 5).

Edmo argues that the Court should not make any further reductions to this phase because all of counsel's time reflected work necessary for the successful Eighth Amendment claim. For example, discovery requests primarily concerned IDOC policies on medical care, medical treatment Edmo had received, and Defendants' reasons for contending that Edmo did not need gender confirmation surgery. Depositions and testimony at the hearing had a similar focus.

The Court finds that the hours billed during this phase, except those already

excluded under the previous fee order, were incurred directly and reasonably because of the Eighth Amendment claim. The point of the evidentiary hearing was to provide evidence about Edmo's medical needs, not to argue legal theories regarding the significance of that evidence. For instance, during the three-day evidentiary hearing, neither the ACA nor the Fourteenth Amendment was mentioned even once. And at a factual level, Edmo would have presented the same evidence to litigate only the Eighth Amendment issue. Thus, fees during this phase were incurred directly and necessarily because of her prevailing claim.

In addition to rearticulating broad objections to Edmo's methodology, Defendants identify three time entries related to Edmo's opposition to a motion for extension of time. *Defs.' Resp to Mot. for Attys' Fee* at 10, Dkt. 380. But that work, on its face, had nothing to do with the ACA and Fourteenth Amendment claims. If Edmo had brought only the Eighth Amendment claim, Defendants would still have filed their motion for extension of time, and Edmo would still have responded. Ironically, the objection here underscores the merits of Edmo's methodology.

Thus, the Court will not exclude any further hours for Phase 4.

### v.    Post-Hearing Briefing

The fifth phase represented work on post-hearing briefing and ran from approximately October 2, 2018 to November 9, 2018.

Here, Edmo again uses the relative length of the briefing on each issue to

approximate the time expended on the Eighth Amendment claim, in addition to deducting entries that facially relate to other claims. The ACA and Fourteenth Amendment claims took up approximately 12% of the briefing, so time entries that reflect work on the brief will be reduced accordingly. Based on this, Edmo proposes a reduction of 22.78 hours.

As before, the Court agrees that this approach provides a reasonable estimate. In addition to Edmo's proposed reductions, the Court finds that several more time entries concern the post-hearing brief but are not marked for reductions.[5] Consequently, the Court will deduct an additional 0.35 hours.

This results in a total reduction of 23.13 hours for Phase 5.

### vi.    Defending the Injunction

The sixth phase was the defense and enforcement of this Court's injunction through multiple appeals from December 14, 2018 to October 13, 2020.

The Court's injunction rested on the finding that Defendants violated Edmo's Eighth Amendment rights, and Defendants appealed accordingly. As a result, the Eighth Amendment claim was the only issue on appeal. While

---

[5] These are (1) "conference with Norma and jessica; Lori" [Shaleen Shanbhag – 10/16/18, 1.20 hours]; (2) "review of legal research re medical cases for post-evidentiary hearing brief; email from/to LR re same" [Amy Whelan – 10/18/18, 0.80 hours]; (3) "reviewing brief for suggestions and comments" [Craig Durham – 10/27/18, 0.50 hours]; and (4) "several w/SS, LR, Saira re: case law prep to court" [Norma Molina – 10/29/2018, 0.30 hours]. *Ex. F*, Dkt. 379-6.

Defendants suggest that there is no way to know whether time spent defending the injunction corresponded to the Eighth Amendment claim, this conclusion requires only a basic knowledge of civil procedure. As far as the dismissed defendants, none of Edmo's briefing reflected an attempt to keep them in the case, indicating the counsel did not spend any time on this.

Accordingly, no reductions are warranted for Phase 6.

### vii.    Post-Injunction Work

Finally, the seventh phase involved post-injunction work on claims that were ultimately settled or dismissed. It runs from approximately December 31, 2018 to March 31, 2021, though several stays paused work on the remaining claims while the appeal of the injunction played out.

Edmo acknowledges that hours billed for post-injunction efforts must be subtracted from the fee award, per the Ninth Circuit's remand order. A significant portion of this time was already addressed in the Court's previous fee order, which excluded time spent litigating Edmo's remaining claims after the injunction was obtained and defended (from November 2020 to March 2021). Dkt. 323 at 15. Edmo now identifies earlier time entries to exclude because they reflect work on the third amended complaint and discovery efforts.

The Court endorses this approach but finds several additional time entries,

not deducted by Edmo, that reflect post-injunction discovery efforts.[6] These total

3.8 hours in addition to Edmo's proposed reduction of 261.60 hours.

Defendants further complain that Edmo inconsistently excludes time spent in

October 2019 on a motion to stay. *Defs.' Resp to Mot. for Attys' Fee* at 14, Dkt.

380. This objection overlooks the fact that there were two different motions to stay

filed that month. The first concerned claims not resolved in the injunction,

meaning that counsel's work was unrelated to the Eighth Amendment claim and

must be excluded. *See* Dkt. 214. The second motion to stay was an attempt to stay

the injunction itself, meaning that it pertained directly and exclusively to the

Eighth Amendment issue. *See* Dkt. 228. Therefore, it was appropriate for counsel

to exclude time spent on the former but not the latter.

### C. Lodestar Figure

This leaves Edmo's counsel with 5,283.40 billable hours dedicated to the

Eighth Amendment claim against non-dismissed defendants. The figure represents

the exclusion of approximately 10% of counsel's time because the hours billed

---

[6] These are (1) "meeting with Lori" [Shaleen Shanbhag – 01/02/2019, 1.2 hours]; (2) "team emails re discovery production & review" [Lori Rifkin – 02/28/19, 0.3 hours]; (3) "discussion/discovery" [Dan Stormer – 03/26/2019, 0.30 hours]; (3) "meet and confer emails re: supp disclosure" [Shaleen Shanbhag – 03/29/2019, 0.30 hours]; (4) "email SS re discovery & suppl disclosures" [Lori Rifkin – 03/28/2019, 0.10 hours]; (5) "draft meet and confer letters to opp counsel re: discovery responses" [Shaleen Shanbhag – 04/09/2019, 1.2 hours]; and (5) "call with Lori re: discovery; motion to supplement" [Shaleen Shanbhag – 04/22/2019, 0.4 hours]. *Ex. H*, Dkt. 379-8.

**MEMORANDUM DECISION AND ORDER - 20**

were not "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d)(1).[7] While necessarily an estimate, the Court is confident that the figure reflects with sufficient accuracy the division of counsel's time. The Eighth Amendment issue predominated from the beginning, and at some stages it was the only matter being litigated. Naturally, the lion's share of the attorneys' efforts went to that claim.

Turning to counsel's hourly rate, the PLRA imposes a cap of no more than 150% the rate established for payment of court-appointed counsel. *Id.* § 1997e(d)(3). In FY 2021, the rate for court-appointed counsel was $155 per hour,[8] providing an applicable PLRA hourly rate of $232.50.

After accounting for the reductions discussed above, this yields a presumptive lodestar amount of $1,223,000.15, as illustrated below.

| Professional | Rate | Adjusted Hours | Lodestar |
|---|---|---|---|
| Lori Rifkin | $ 232.50 | 2115.58 | $ 491,872.35 |
| Dan Stormer | $ 232.50 | 26.74 | $ 6,217.05 |
| Shaleen Shanbhag | $ 232.50 | 953.02 | $ 221,577.15 |
| Caitlan McLoon | $ 232.50 | 73.10 | $ 16,995.75 |
| Jordyn Bishop | $ 232.50 | 29.10 | $ 6,765.75 |
| Sairah Budwhani | $ 220.00 | 43.70 | $ 9,614.00 |

[7] In addition to the exclusion here of 408.1 hours, the Court previously excluded 154 hours billed after the injunction was obtained and defended because that time was not directly related to the Eighth Amendment claim. Dkt. 323 at 13-14. Further time entries were excluded for different reasons, such as vagueness or the improper billing of travel expenses.

[8] Admin. Office of the U.S. Courts, *The Judiciary Fiscal Year 2021 Congressional Budget Summary* 39 (Feb. 2020), https://www.uscourts.gov/sites/default/files/fy_2021_congressional_budget_summary_0.pdf.

| | | | |
|---|---|---|---|
| Norma Molina | $ 210.00 | 60.76 | $ 12,759.60 |
| Jessica Valdenegro | $ 175.00 | 9.20 | $ 1,610.00 |
| Elizabeth Prelogar | $ 232.50 | 69.50 | $ 16,158.75 |
| Barrett Anderson | $ 232.50 | 247.60 | $ 57,567.00 |
| Jamie Robertson | $ 232.50 | 11.70 | $ 2,720.25 |
| Kathleen Hartnett | $ 232.50 | 40.90 | $ 9,509.25 |
| Deborah Ferguson | $ 232.50 | 168.06 | $ 39,073.95 |
| Craig Durham | $ 232.50 | 101.70 | $ 23,645.25 |
| Devi Rao | $ 232.50 | 16.20 | $ 3,766.50 |
| Cheryl Olson | $ 232.50 | 6.70 | $ 1,557.75 |
| Eliza McDuffie | $ 232.50 | 24.00 | $ 5,580.00 |
| Amy Whelan | $ 232.50 | 785.94 | $ 182,731.05 |
| Shannon Minter | $ 232.50 | 7.10 | $ 1,650.75 |
| Julie Wilensky | $ 232.50 | 119.86 | $ 27,867.45 |
| Alex Chen | $ 232.50 | 292.62 | $ 68,034.15 |
| Ary Smith | $ 220.00 | 37.12 | $ 8,166.40 |
| Maxie Bee | $ 175.00 | 43.20 | $ 7,560.00 |
| **Totals** | | 5283.40 | $ 1,223,000.15 |

## D. Enhancement

The next question is whether to apply an enhancement to the lodestar to account for the exceptional nature of the litigation. The Court previously concluded that the lodestar failed to reflect several important *Kerr* factors: (1) the customary fee for comparable civil litigation, (2) counsel's excellent results, and (3) time limitations in the case. Dkt. 323 at 27-34. Accordingly, the Court applied a multiplier of 1.7 for Mr. Durham and 2.0 for other counsel. On appeal, the Ninth Circuit concluded that this Court did not err in applying an enhancement but instructed the Court to reconsider the multiplier after recalculating the lodestar. *Remand Order* at 12-13, Dkt. 372.

**MEMORANDUM DECISION AND ORDER - 22**

The revised lodestar figure leads to the same conclusion. Edmo has again shown that the lodestar fails to reflect "a fully compensatory fee." *Planned Parenthood of Cent. & N. Ariz. v. Arizona*, 789 F.2d 1348, 1354 (9th Cir. 1986). As a result, and for the reasons explained in more detail in the previous fee order, the Court will apply the same multipliers as in the previous award.

This results in a total attorneys' fee award of $2,438,906.73. Post-judgment interest on the award shall run from the date of the original fee order. *See* 28 U.S.C. § 1961; *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995).

**E. Litigation Expenses**

For litigation expenses, the task is again to remove expenses not "directly and reasonably incurred" in proving the violation of Edmo's Eighth Amendment rights. *See* 42. U.S.C. § 1997e(d). The Court previously awarded $45,544.20—a reduction of approximately 38% compared to the initial request. Beyond items already excluded, Edmo argues that the only expenses unrelated to the Eighth Amendment claim are legal research costs. She proposes reducing that portion of the expenses award—$1,400.61—by 10% to reflect the amount of research costs attributable to other claims. *Pl.'s Mem. in Supp. of Renewed Mot. for Attys' Fees* at 19-20, Dkt. 378-1; *see Aff. of Dan Stormer*, Dkt. 315-4 at 75. Defendants do not dispute this except to argue that costs should be reduced by 86% to reflect Edmo's percentage of success.

The Court will not reiterate the failings of Defendants' approach. A review of remaining expenses shows that fees for legal research services are the only items that do not fully and directly relate to the Eighth Amendment claim. Thus, the Court will subtract $140.06 from the expense award.

This results in an award of $45,404.14 for litigation expenses, with post-judgment interest running from the date of the original award.

## 2. Fees and Costs Since September 22, 2022

The final issue is whether Edmo is barred from seeking attorneys' fees and costs related to the Ninth Circuit appeal of this Court's original fee order. After the appellate ruling on April 5, 2024, and pursuant to Ninth Circuit Rule 39-1.8, Edmo timely filed an unopposed Motion to Transfer Consideration of Attorneys' Fees on Appeal to District Court. The motion was granted, and Edmo then asked this Court to enter an order making any supplemental motion for further attorneys' fees due after a ruling on the renewed fee motion. Dkt. 383. Defendants argue that Edmo has waived the right to seek those additional fees because she did not first file a request for attorneys' fees in the Ninth Circuit.

Rule 39-1.8 allows the Ninth Circuit to transfer consideration of attorneys' fees associated with appellate work back to the district court: "Any party who is or may be eligible for attorneys' fees on appeal to this Court may, within the time permitted in Circuit Rule 39-1.6, file a motion to transfer consideration of

attorneys' fees on appeal to the district court or administrative agency from which the appeal was taken." Rule 39-1.6 in turn requires that "a request for attorneys' fees shall be filed no later than 14 days after the expiration of the period within which a petition for rehearing may be filed"—effectively within 28 days of the entry of judgment.

Defendants interpret Rule 39-1.6 as a predicate for Rule 39-1.8. In other words, the party seeking the fees must file the request in the Ninth Circuit, then ask the Ninth Circuit to transfer consideration to the district court. Edmo contends that a party need only file a motion to transfer, which, if granted, allows the party to file the fee request with the district court in the first instance.

While the Ninth Circuit has not definitively clarified the interaction of the two rules, other district courts have recognized that parties can transfer consideration without first filing a fee motion in the appellate court. As a judge in the Northern District of California explained:

> I do not interpret the applicable Ninth Circuit Rules as requiring a party who is seeking appellate fees and wishes for the fee award to be made by the district court to file both an attorneys' fees motion as well as a motion requesting that the attorneys' fees motion be transferred. To the extent that there is any ambiguity in the Ninth Circuit Rules that could lead to such an interpretation, because the Rules seek to implement a remedial statute whose goal is to reward plaintiffs whose attorneys win civil rights cases, they should be construed in favor of the plaintiff.

*Freitag v. Cal. Dep't of Corr.*, No. C00-2278, 2009 WL 2485552, at *1 (N.D. Cal.

**MEMORANDUM DECISION AND ORDER - 25**

Aug. 12, 2009); *see Deocampo v. Potts*, No. CV 2:06-1283, 2017 WL 363142, at *2 (E.D. Cal. Jan. 24, 2017) ("Plaintiffs' motion for supplemental attorney's fees was not untimely in light of plaintiffs' timely motion to transfer."); *China Fortune Land Dev. v. 1955 Capital Fund I GP LLC*, No. 19-cv-07043, 2021 WL 2883183, at * 1 (N.D. Cal. July 9, 2021) ("Given that the rules specifically allow parties a full 14 days to file a motion to transfer consideration of fees, it would be strange to read into the rules an additional requirement that the motion for fees itself also be filed with the district court in the same 14-day timeframe.").

Defendants have not cited, and this Court has not found, any examples of a district court in the Ninth Circuit refusing to consider a motion for supplemental attorneys' fees when the party obtained a transfer order but did not file the request itself in the Ninth Circuit. Defendants' cases involve, rather, situations where the party failed to request a transfer of consideration from the Ninth Circuit. *Defs.' Resp. to Mot. Regarding Mot.* at 3, Dkt. 384. If that were the case, this Court would indeed lack jurisdiction to consider a motion for fees incurred on appeal. *Cummings v. Connell*, 402 F.3d 936, 948 (9th Cir. 2005) ("In the absence of such a transfer, the district court was not authorized to rule on the request for appellate attorney's fees."). Here, however, the Ninth Circuit did order a transfer. And it would be exceedingly strange for the Ninth Circuit to grant the motion to transfer consideration of attorneys' fees if Edmo had waived the right to seek those fees by

failing to first file a request in that court.

For these reasons, the Court will grant Plaintiffs' Motion Regarding Motion for Attorneys' Fees and Costs Since September 30, 2022. Any supplemental motion for attorneys' fees and costs regarding work performed since this Court's original fee order shall be due within 45 days of this Order.

# ORDER

**IT IS ORDERED that:**

1. Plaintiff's Renewed Motion for Attorneys' Fees and Expenses (Dkt. 378) is **GRANTED IN PART and DENIED IN PART**. Plaintiff is awarded attorneys' fees of $2,438,906.73 and litigation expenses of $45,404.14.

2. Plaintiff's Motion Regarding Motion for Attorneys' Fees and Costs Since September 30, 2022 (Dkt. 383) is **GRANTED**. Any supplemental motion for attorneys' fees and costs must be filed within 45 days of this Order.



DATED: February 25, 2025

B. Lynn Winmill
U.S. District Court Judge